UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMIL ABDUL MUHAMMAD,

                    Plaintiff,

v.                                         3:24-CV-1141
                                         (AJB/ML)

SUFFOLK CNTY. SUPPORT; NEW YORK
STATE CHILD SUPPORT PROCESSING
CENTER; CHILD SUPPORT ENFORCEMENT
BUREAU, (CSEB) Unit; BROOME CNTY.
DEP'T OF SERVS. COLLECTION, Unit #124;
OHIO CHILD SUPPORT PAYMENT CENT.;
CHILD SUPPORT SERVS. UNIT; SUMMIT
CNTY. CLERK OF COURT; SUMMIT CNTY.
CHILD SUPPORT ENFORCEMENT AGENCY,
(CSEA); NEW YORK STATE DEP'T OF
TAXATION AND FINANCE, Child Support
Enforcement Section/Defendant-Compliance
Agent M. Winner; DEP'T OF TREASURY-
INTERNAL REVENUE SERV.; and U.S. DEP'T
OF STATE, Defendant- Secretary of State/
Anthony Blinken,

                    Defendants.
_____

APPEARANCES:                           OF COUNSEL:

JAMIL ABDUL MUHAMMAD
  Plaintiff, *Pro Se*
2030 Route 26 South, Apartment 209
Vestal, New York 13850

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* ("IFP") (Dkt. No. 2) and Supplemental Filing (Dkt. No. 4) filed by

Jamil Abdul Muhammad ("Plaintiff") to the Court for review.  For the reasons discussed below, I

(1) grant Plaintiff's IFP application (Dkt. No. 2), and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed without leave to amend.

## I.    BACKGROUND

Liberally construed,[1] Plaintiff's Complaint asserts that his rights were violated by Defendants Suffolk County Support, New York State Child Support Processing Center, Child Support Enforcement Bureau, Broome County Department of Services Collection Unit #124, Ohio Child Support Payment Central, Child Support Services Unit, Summit County Clerk of Court, Summit County Child Support Enforcement Agency, New York State Department of Taxation and Finance, Department of Treasury – Internal Revenue Service, and U.S. Department of State (collectively "Defendants").  (*See generally* Dkt. No. 1.)

The Complaint alleges that Defendants have subjected Plaintiff to unconstitutional and illegal child support orders and negative consequences for failure to remain current on his child support obligations.  (*Id*.)  More specifically, the Complaint alleges that at some unspecified time, Plaintiff's 2009 BMW vehicle was impounded from his home by Defendant New York State Department of Finance with a warrant indicating that Plaintiff owed back child support. (Dkt. No. 1 at 10.)  Plaintiff alleges that the vehicle was improperly impounded because Defendant New York State Department of Finance was under the incorrect belief that Plaintiff had two vehicles in his name.  (*Id*.)  Plaintiff alleges that he provided the other vehicle's registration and insurance cards in "the new owner[']s" name and Defendant New York State Department of Finance informed Plaintiff that he must pay $2,000 to obtain his 2009 BMW. (*Id*.)  Plaintiff alleges that he obtained $2,000 from his brother "on an emergency based

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

agreement" to obtain possession of his vehicle but continues to face "worry of [his] vehicle being impounded again because the amount of $1,000.00 submitted was only part of the alleged payment owed with an outstanding balance [t]o be paid." (Dkt. No. 1 at 10-11.)

Based on these factual allegations, the Complaint appears to assert the following five causes of action: (1) a claim that Defendants violated Plaintiff's right to equal protection of the law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (2) a claim that Defendants violated Plaintiff's right to due process pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (3) a claim that Plaintiff's rights pursuant to the Seventh Amendment and 42 U.S.C. § 1983, were violated; (4) a claim that Defendants violated 5 U.S.C. §§ 3331, 7311; and (5) a claim of "extrinsic fraud" against Defendants.[2] (*See generally* Dkt. No. 1.)

As relief, Plaintiff seeks $100,000,000.00 in damages and a temporary restraining order to stop enforcement of any fraudulent judgments against Plaintiff, reinstate his passport, and return the $2,000 he paid to obtain his improperly impounded vehicle. (*Id.*)

Plaintiff filed a "Supplement" to the Complaint, which appears to duplicate several pages of the Complaint with the addition of a notary stamp.[3] (*Compare* Dkt. No. 1 at 8-11, *with* Dkt.

---

[2]    The Seventh Amendment preserves "the right to trial by jury" for certain cases brought in federal court. U.S. Const. amend. VII. Since the *federal* judiciary determines the extent to which a litigant in *federal* court may try his or her case before a jury, *see e.g., Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), persons acting under the color of *state* law (*i.e.*, those persons who may be named as defendants in a § 1983 action) generally lack the capacity to violate the Seventh Amendment. *See Kampfer v. Argotsinger*, 18-CV-0007, 2020 WL 906274 at *10 (N.D.N.Y. Feb. 25, 2020) (The Seventh Amendment does not "provide a [. . .] cause of action cognizable under § 1983." (citation and quotation omitted)). As a result, I recommend that "'Plaintiff's citation to the Seventh Amendment [be construed] as support for h[is] request for a civil jury trial,' rather than as an independent basis for relief." *Kampfer*, 2020 WL 906274, at *10 (citing *White v. City of New York*, 13-CV-7156, 2014 WL 4357466, at *8 n.13 (S.D.N.Y. Sept. 3, 2014)).

[3]    Pursuant to Fed. R. Civ. P 15(d) "[o]n motion and reasonable notice, the court may . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Plaintiff failed to file a motion

No. 4 at 1-5.)  In addition, the supplement appears to contain a photocopy of a Plaintiff's New York State identification card (Dkt. No. 4 at 6) and a letter from the United States Social Security Administration indicating that since April 2021, Plaintiff's Supplemental Security Income payments are in the amount of $595.50 (Dkt. No. 4 at 7-8).

Plaintiff also filed an application to proceed IFP.  (Dkt. No. 2.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[4]  After reviewing Plaintiff's IFP application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed IFP is granted.[5]  (*Id.*)

Plaintiff is advised that the ability to litigate an action without prepayment of fees is a privilege that can be denied, revoked, or limited based upon a showing of prior abuses.  *See In re Anderson*, 511 U.S. 364, 365-66 (1994) (denying the *pro se* petitioner's request for leave to proceed IFP where the Court found that, like the previous twenty-two petitions filed during the

_____

to supplement.  In addition, the "Supplement" filed by Plaintiff does not relate to events that occurred after the Complaint was filed on September 19, 2024.

[4]      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[5]      Plaintiff is reminded that, although his IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

three immediately preceding years, the instant petition was "patently frivolous"); *see also Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) ("The ability to proceed IFP is a privilege provided for the benefit of indigent persons.").  The authority of a court to deny or limit a request to proceed IFP is implicit in the permissive, rather than compulsory, language of the controlling statute, which provides that "any court of the United States *may* authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]"  28 U.S.C. § 1915(a)(1) (emphasis added); *In re McDonald*, 489 U.S. 180, 183 (1989).  For this reason, courts are regarded as possessing discretionary authority to deny IFP status to litigants who have abused the privilege.  *See Hurt v. Soc. Sec. Admin.*, 544 F.3d 308, 309-310 (D.C. Cir. 2008) (quoting *Butler v. Dep't of Justice*, 492 F.3d 440, 444-45 (D.C. Cir. 2007)) ("This Circuit grants IFP status to various plaintiffs, but asserts its discretion to deny or revoke this privilege for abusive litigants, looking to 'the number, content, frequency, and disposition of their previous filings[.]'").

Plaintiff's litigation history in this district suggests that he is on the brink of being found to have abused the privilege of proceeding IFP.  In addition to the case currently before the Court, Plaintiff has filed fifteen other lawsuits in this district within approximately the last twelve months.[6]  In all fifteen of the other actions, Plaintiff requested, and was granted,

---

[6]    *Muhammad v. Seiden*, 3:24-CV-0035 (LEK/ML) ("*Muhammad I*"); *Muhammad v. Breen*, 3:24-CV-0037 (DNH/ML) ("*Muhammad II*"); *Muhammad v. Securities Exchange Comm'n*, 3:24-CV-0089 (DNH/ML) ("*Muhammad III*"); *Muhammad v. Bd. of Governors of the Fed. Reserve Sys.*, 3:24-CV-0133 (DNH/ML) ("*Muhammad IV*"); *Muhammad v. Fed. Reserve Bank of New York*, 3:24-CV-0157 (DNH/ML) ("*Muhammad V*"); *Muhammad v. United States Dep't of Treasury*, 3:24-CV-0182 (DNH/ML) ("*Muhammad VI*"); *Muhammad v. Office of Mgmt. and Budget*, 3:24-CV-0197 (DNH/ML) ("*Muhammad VII*"); *Muhammad v. Int'l Monetary Fund*, 3:24-CV-0208 (DNH/ML) ("*Muhammad VIII*"); *Muhammad v. Tennessee Valley Authority*, 3:24-CV-0251 (DNH/ML) ("*Muhammad IX*"); *Muhammad v. Bank of Int'l Settlement*, 3:24-CV-

permission to proceed without prepayment of fees. (*Muhammad I*, Dkt. No. 9; *Muhammad II*, Dkt. No. 9; *Muhammad III*, Dkt. No. 10; *Muhammad IV*, Dkt. No. 9; *Muhammad V*, Dkt. No. 7; *Muhammad VI*, Dkt. No. 7; *Muhammad VII*, Dkt. No. 7; *Muhammad VIII*, Dkt. No. 8; *Muhammad IX*, Dkt. No. 6; *Muhammad X*, Dkt. No. 5; *Muhammad XI*, Dkt. No. 6; *Muhammad XII*, Dkt. No. 5; *Muhammad XIII*, Dkt. No. 5; *Muhammad XIV*, Dkt. No. 5; *Muhammad XV*, Dkt. No. 5.)

Common to the other dismissed actions filed by Plaintiff in this district (including, as will be discussed below, the current Complaint under consideration in this report) is his failure to include factual allegations in his complaints that plausibly suggest a claim upon which relief may be granted.[7]  Accordingly, Plaintiff is hereby cautioned that (1) proceeding IFP is a privilege that is extended to litigants at the discretion of the court, and (2) any further filing of patently frivolous lawsuits may result in the denial of any request to proceed IFP in an action and/or a recommendation to the Chief District Judge that a filing injunction be issued against Plaintiff, barring him from filing any future lawsuits in this district without prior permission.

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

---

0277 (DNH/ML) ("*Muhammad X*"); *Muhammad v. European Central Bank*, 3:24-CV-0288 (DNH/ML) ("*Muhammad XI*"); *Muhammad v. Eastern Caribbean Central Bank*, 3:24-CV-0298 (DNH/ML) ("*Muhammad XII*"); *Muhammad v. Central Bank of West African States*, 3:24-CV-0299 (DNH/ML) ("*Muhammad XIII*"); *Muhammad v. Bank of Central African States*, 3:24-CV-0300 (DNH/ML) ("*Muhammad XIV*"); and *Muhammad v. The World Bank Grp.*, 3:24-CV-0360 (DNH/ML) ("*Muhammad XV*").

[7]    The undersigned notes that in *Muhammad I*, one claim survived *sua sponte* review. *Muhammad I*, Dkt. No. 14.

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the

complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well

as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*,

505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221

F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even

when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant,*

*Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016)

(Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories

of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable

merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter*

*alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that the Complaint be dismissed in its entirety.

### A.    Claims Pursuant to 5 U.S.C. §§ 3331, 7311

To the extent that Plaintiff attempts to assert claims pursuant to 5 U.S.C. §§ 3331, 7311, he fails to state a claim upon which relief may be granted.

5 U.S.C. § 3331 requires certain federal officials to swear an oath of allegiance to the Constitution of the United States. *Manigault v. Spry*, 23-CV-0264, 2024 WL 1345340, at *4 (N.D.N.Y. Mar. 28, 2024) (Kahn, J.) (citing 5 U.S.C. § 3331). The Complaint does not allege action taken by any federal officials. (*See generally* Dkt. No. 1.) Although the Complaint includes Defendants Department of Treasury – Internal Revenue Service and U.S. Department of State, it does not allege any action taken by those entities or employees of those entities, nor does it allege that any federal official employed by those entities failed to take a required oath of allegiance to the Constitution of the United States. (*Id.*)

5 U.S.C. § 7311 is a criminal provision. *Martin v. Piotr Nowak ® v. JPMorgan Chase Bank, N.A.*, 23-CV-5783, 2023 WL 5952055, at *2 (E.D.N.Y. Aug. 9, 2023) (noting that 5 U.S.C. § 7311 is a criminal provision that restricts federal employees' ability to strike). There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non[-]prosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

As a result, I recommend dismissal of Plaintiff's claims that are premised on alleged violations of 5 U.S.C. §§ 3331, 7311. *See Foskey*, 2022 WL 3228271, at *3 (collecting cases holding that "none of these criminal statutes provide a private cause of action).

**B.    Claims Pursuant to 42 U.S.C. § 1983**

**1.    Claims Against Defendants New York State Child Support Processing Center, Ohio Child Support Payment Central, and New York State Department of Taxation and Finance**

"It is well settled that the ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court." *Clissuras v. CUNY*, 359 F.3d 79, 81 (2d Cir. 2004); *see also Murawski v. N.Y. State Bd. of Elections*, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) ("[I]t is well established that a non-consenting state is immune from suits brought by its own citizens in federal court."). Eleventh Amendment immunity extends "not only to a state but also to entities considered arms of the state," which include state agencies. *Clissuras*, 359 F.3d at 81. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is well-established that New York [and Ohio] ha[ve] not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010); *accord Steinberg v. Elkman*, 666 F. App'x 26, 27 (2d Cir. 2016) ("Congress has not abrogated sovereign immunity for § 1983 claims, nor has New York waived immunity."); *Sherrod Estate v. Madden*, 24-CV-0651, 2024 WL 5183205, at *3 (S.D. Ohio Dec. 20, 2024) (quoting *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020)) ("Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983.").

Defendants New York State Child Support Processing Center, Ohio Child Support Payment Central, and New York State Department of Taxation and Finance are entities against which claims are barred unless sovereign immunity has been otherwise abrogated. *See Gerken v. Gordon*, 24-CV-0435, 2024 WL 5001402, at *3 (N.D.N.Y. Dec. 6, 2024) (D'Agostino, J.) (citing *Grigoli v. 42 U.S.C. § 654(3) Child Support Enf't Div.*, 18-CV-3672, 2018 WL 2084172, at *5

(S.D.N.Y. May 1, 2018); *Skalaban v. Dep't of Child. & Fams.*, 314 F. Supp. 2d 101, 106 (D.

Conn. 2004)) (holding that the plaintiff's "complaint against the New York State Child Support

Processing Center, a state entity, is barred by the Eleventh Amendment."); *Anand v. New York*

*State Dep't of Taxation and Finance*, 10-CV-5142, 2012 WL 2357720, at *4 (E.D.N.Y. June 18,

2012) (quoting *Miller v. State of New York Div. of Tax Appeals*, 480 F. Supp. 2d 574, 581

(E.D.N.Y. 2007)) ("The Department of Taxation is a state agency entitled to Eleventh

Amendment immunity.").

      As a result, I recommend that Plaintiff's claims against Defendants New York State Child

Support Processing Center, Ohio Child Support Payment Central, and New York State

Department of Taxation and Finance be dismissed because sovereign immunity deprives this

Court of subject matter jurisdiction.[8]

      **2.**    **Claims Against Defendants Suffolk County Support, Child Support Enforcement Bureau (CSEB) Unit, Broome County Department of Services Collection Unit #124, Child Support Services Unit, and Summit County Child Support Enforcement Agency (CSEA)**

      I recommend that Plaintiff's claims against Defendants Suffolk County Support, Child

Support Enforcement Bureau (CSEB) Unit, Broome County Department of Services Collection

---

[8]     In the alternative, I recommend that all claims against Defendants New York State Child Support Processing Center and Ohio Child Support Payment Central be dismissed because the Complaint fails to allege facts that plausibly suggest wrongdoing on their part. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (Kahn, J.) (citing *Gonzalez v. City of New York*, 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

Unit #124, Child Support Services Unit, and Summit County Child Support Enforcement

Agency (CSEA) be dismissed for three separate and independent reasons.

First, Defendants Suffolk County Support, Child Support Enforcement Bureau (CSEB)

Unit, Broome County Department of Services Collection Unit #124, Child Support Services

Unit, and Summit County Child Support Enforcement Agency (CSEA), are merely

administrative arms of municipalities and are not proper parties amenable to suit.

"'[D]epartments that are merely administrative arms of a municipality do not have a legal

identity separate and apart from the municipality and, therefore, cannot be sued.'" *Burris v.*

*Nassau Cnty. District Attorney*, 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017)

(quoting *Harris v. Nassau Cnty.*, 13-CV-4728, 2016 WL 3023265, at *12 (E.D.N.Y. May 24,

2016) (dismissing claims against the Nassau County Police Department because it is an

administrative arm of the municipality of Nassau County); citing *Pooler v. Hempstead Police*

*Dep't*, 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012) (dismissing claims against Hempstead Police

Department and holding that the Hempstead Police Department is an "administrative arm" of the

Village of Hempstead)); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y.

2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New York*, 800

F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New

York City Police Department which cannot be sued independently because it is an agency of the

City of New York").

While Plaintiff could sue the municipalities—Suffolk County, Broome County, and

Summit County—themselves, rather than one of their "departments," a municipality may only be

named as a defendant in certain circumstances.  A municipality may not be held liable solely

because it employs a tortfeasor.  *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010).

Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Monell*, 436 U.S. at 694; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 61. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

The Complaint here essentially complains of one discrete incident, during which, an individual employed by New York State Department of Finance—which is immune from suit as set forth above in Part IV.B.1. of this Order and Report Recommendation—allegedly did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability against Defendants Suffolk County Support, Child Support Enforcement

Bureau (CSEB) Unit, Broome County Department of Services Collection Unit #124, Child

Support Services Unit, and Summit County Child Support Enforcement Agency (CSEA) based

on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate

indifference" to the rights of persons who would come into contact with Defendants.

 As a result, I recommend that, to the extent that Plaintiff's Complaint is construed as

asserting claims against Defendants Suffolk County, Broome County, and Summit County, it be

dismissed for failure to state a claim upon which relief may be granted.  *See Flagg v. NYS*

*Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5 (N.D.N.Y. Aug. 15, 2019) (Baxter,

M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if

it involved individuals below the policy-making level is insufficient to state a *Monell* claim."),

*report and recommendation adopted by*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy,

J.).

 Second, in the alternative, I recommend that Plaintiff's claims against Defendants Suffolk

County Support, Child Support Enforcement Bureau (CSEB) Unit, Broome County Department

of Services Collection Unit #124, Child Support Services Unit, and Summit County Child

Support Enforcement Agency (CSEA) be dismissed to the extent that it challenges his

underlying family court proceeding and is, in effect, an appeal from the state family court's

child-support order.

 "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in

effect are appeals from state court judgments, because the Supreme Court is the only federal

court with jurisdiction over such cases."  *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir.

2021); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005).

The Second Circuit "has articulated four requirements that must be met for *Rooker-Feldman* to

apply: (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Dorce*, 2 F.4th at 101-02 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in original and internal quotation marks omitted).  "The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him."  *Davis v. Westchester Cnty. Family Court*, 16-CV-9487, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017); *see generally Hoblock*, 422 F.3d at 87 ("If [a] father sues in federal court . . . on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.  This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.").

"Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license."  *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases); *see also Davis*, 2017 WL 4311039, at *8 ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears"); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at *4 (N.D.N.Y. Apr. 21, 2020) (Suddaby, C.J.); *Williams v. NYU Hosp. Ctr. Fin. & Payroll Support*, 19-CV-11612, 2020 WL 1878119, at *3 (S.D.N.Y. Apr. 14, 2020) (citing *Remy v. New York State Dep't of Taxation and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013) (summary order)).

Here, the *Rooker-Feldman* doctrine bars the Court from reviewing any claims arising from Plaintiff's assertion that the child support "ORDERS were illegally enforced by unconstitutional process / proceedings by family courts." (Dkt. No. 1 at 11.) All of the *Rooker-Feldman* factors are met in this case. The undersigned can reasonably infer that Plaintiff "lost in state court," *Dorce*, 2 F.4th at 101, as judgments and liens have been issued against him, his passport has been "frozen / deactivated," and his personal vehicle was "illegally impounded" as a result of the "illegal orders of support." (Dkt. No. 1 at 8.) Moreover, Plaintiff "complain[s] of injuries caused by a state-court judgment." *See Dorce*, 2 F.4th at 101. "Once a child support order has been entered . . . [a]ny past due support is treated as a judgment by operation of law and is enforceable in the same manner as a judgment." *O'Brien v. Hansell*, 09-CV-0629, 2010 WL 1371366, at *5 (E.D.N.Y. Mar. 31, 2010) (internal citations omitted). Here, Plaintiff complains about the impoundment of his vehicle for past due child support, and asks the Court to enjoin further collection or adverse consequences (like suspension of his driver's license), all of which stem from the state's child support order against him. (Dkt. No. 1 at 8; Dkt. No. 1, Attach. 1 at 14.) In seeking such an order, Plaintiff "invite[s]" the Court to review and reject a family court judgment that "rendered before the district court proceedings commenced," *Dorce*, 2 F.4th at 101, given that warrants were issued to collect past due child support dated April 18, 2019. (Dkt. No. 1, Attach. 1 at 2.) Consequently, under the *Rooker-Feldman* doctrine, the Court is barred from reviewing Plaintiff's claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order.

Third, in the alternative, the domestic relations abstention doctrine bars the Court from considering Plaintiff's claim seeking modification of his child support order. *Lions v. New York State Office of Child Support Enforcement*, 24-CV-7181, 2025 WL 81421, at *5-6 (S.D.N.Y.

Jan. 10, 2025).  In *American Airlines, Inc. v. Block*, the Second Circuit held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."  905 F.2d 12, 14 (2d Cir. 1990) (holding that court erred in not abstaining from adjudicating dispute over ex-spouse's maintenance obligations); *see Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition—in a non-diversity case involving a child custody dispute—that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.") (citations and internal quotation marks omitted).

Here, Plaintiff's challenge to the amount of his child support obligations falls squarely within the domestic relations doctrine.  *See, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, 19-CV-3633, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[E]ven if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing."); *Myers v. Sara Lee Corp.*, 08-CV-1421, 2009 WL 10706711, at *10 (E.D.N.Y. Apr. 13, 2009) ("[T]he income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court.  Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here . . . .").  Accordingly,

I recommend that the Court abstain from reviewing Plaintiff's family court proceeding to the

extent that he asserts a claim seeking modification of the underlying family court child support

order.

For each of these reasons, I recommend that Plaintiff's claims against Defendants Suffolk

County Support, Child Support Enforcement Bureau (CSEB) Unit, Broome County Department

of Services Collection Unit #124, Child Support Services Unit, and Summit County Child

Support Enforcement Agency (CSEA) be dismissed.[9]

### 3.    Claims Against Defendant Summit County Clerk of Court

To the extent that Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against Defendant

Summit County Clerk of Court, I recommend that they be dismissed.

Summit County Clerk of Court "enjoys absolute immunity from suits seeking monetary

damages on claims arising out of the performance of her quasi-judicial functions." *Gerald v.

Akron Bar Ass'n*, 18-CV-0414, 2018 WL 2985142, at *2 (N.D. Ohio June 14, 2018) (citing

*Wappler v. Carniak*, 24 F. App'x 294, 295-96 (6th Cir. 2001); *Foster v. Walsh*, 864 F.2d 416,

417-18 (6th Cir. 1988) (finding court clerk immune); *see Jennings v. Walsh*, 2010 WL 2901744,

at *2 (N.D. Ohio July 22, 2010) ("Summit County Clerk of Courts is entitled to absolute

immunity when performing judicial functions even if acting erroneously, corruptly or in excess

of jurisdiction.").

Based on the allegations set forth in the Complaint, it is impossible to decipher what, if

anything, Defendant Summit County Clerk of Court did to Plaintiff.  Hence, the undersigned is

---

[9]    In addition, the Complaint fails to allege any wrongdoing by Defendants Suffolk County
Support, Child Support Enforcement Bureau (CSEB) Unit, Broome County Department of
Services Collection Unit #124, Child Support Services Unit, and Summit County Child Support
Enforcement Agency (CSEA).  As a result, I recommend that in the alternative, Plaintiff's claims
against them be dismissal for the reasons stated in note 8.

unable to determine whether Defendant Summit County Clerk of Court is entitled to immunity.

Notwithstanding, I recommend that the claims against Defendant Summit County Clerk of Court

be dismissed because, other than the caption, the Complaint fails to allege facts plausibly

suggesting any wrongdoing by Defendant Summit County Clerk of Court. *See*, *supra*, note 8.

### 4. Claims Against Department of Treasury – Internal Revenue Service and U.S. Department of State

Suits against the United States and federal agencies require "a cause of action, subject

matter jurisdiction, and a waiver of sovereign immunity." *Presidential Gardens Assoc. v. Sec'y*

*of Hous. and Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (citing *United States v. Mitchell*, 463

U.S. 206, 212 (1983)); *see also Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004).

Unless Congress has specifically authorized an agency of the federal government to be sued in

its own name, an action may not be maintained against that agency. *Blackmar v. Guerre,* 342

U.S. 512, 515 (1952). Congress has not specifically authorized suit against Defendants

Department of Treasury – Internal Revenue Service and U.S. Department of State and therefore,

they are not suable entities. *See, e.g., Liffiton v. Keuker*, 850 F.2d 73, 77 (2d Cir. 1988) ("It is

well-settled that the United States is immune from suit except where congress, by specific

statute, has waived sovereign immunity; as to the I.R.S., no such waiver has been enacted for

claims such as these.") (internal citation omitted); *Celauro v. U.S. I.R.S.*, 411 F. Supp. 2d 257,

267-68 (E.D.N.Y. 2006) (Spatt, J.), *aff'd sub nom. Celauro v. U.S.*, 214 F. App'x 95 (2d Cir.

2007) (summary order); *Toriola v. I.R.S.*, 99 A.F.T.R.2d 2007-394 (E.D.N.Y. 2006) (Ross, J.).

"The United States, as sovereign, is immune from suit, save as it consents to be sued, and

the terms of its consent to be sued in any court define that court's jurisdiction to entertain the

suit." *United States v. Sherwood,* 312 U.S. 584, 586 (1941). The language of 42 U.S.C. § 1983

does not reach the actions of the federal government. *District of Columbia v. Carter,* 409 U.S.

418, 425 (1973), *reh'g denied,* 410 U.S. 959 (1973).  The statute was designed to protect private

citizens from discrimination by other private citizens acting in an official capacity.  The United

States has yet to waive its immunity from suit under 42 U.S.C. § 1983.  *Ricca v. United States,*

488 F. Supp. 1317, 1325 (E.D.N.Y.1980).

The undersigned notes that, were the Court to consider Plaintiff's claims against

Defendants Department of Treasury – Internal Revenue Service and U.S. Department of State as

arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388,

397 (1971), dismissal would still be warranted.  "*Bivens* authorizes suits against the responsible

federal official, not against the government itself, and *Bivens*-type actions against the United

States are . . . routinely dismissed for lack of subject matter jurisdiction."  *Keene Corp. v. United

States*, 700 F.2d 836, 845 (2d Cir. 1983).

As a result, I recommend that Plaintiff's claims against Defendants Department of

Treasury – Internal Revenue Service and U.S. Department of State be dismissed because

the United States is immune from suit.

### C.    Claim of Extrinsic Fraud

Plaintiff appears to assert a claim of "extrinsic fraud" against Defendants.  (Dkt. No. 1 at

8, 11.)  "Extrinsic fraud" is a legal concept that, in New York, allows for collateral attack on a

judgment.  *Griffith v. Bank of N.Y.*, 147 F.2d 899, 903 (2d Cir. 1945).  The "classic definition of

extrinsic fraud [is] 'by reason of something done by the successful party to a suit, there was in

fact no adversary trial or decision of the issue in the case . . . . [T]he unsuccessful party has been

prevented from exhibiting fully his case, by fraud or deception practi[c]ed on him by his

opponent."  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 561 (S.D.N.Y. 2014) (quoting

*United States v. Throckmorton*, 98 U.S. 61, 65 (1878)).

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that he has asserted any state law claim, the Court decline to exercise jurisdiction over that claim.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[10]

Here, a better pleading could not cure the deficiencies described above. As a result, I recommend that the Complaint be dismissed without leave to replead.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE but WITHOUT LEAVE TO AMEND** the Complaint (Dkt. No. 1) pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[10]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:  January 28, 2025
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[11]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.
TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 25 of 229

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

*& Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at \*4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

 **\*4**  For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 28 of 229

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 29 of 229

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 31 of 229

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

---

## Footnotes

1   Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2   The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3   As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4   The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5   For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

2024 WL 1345340
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rodney MANIGAULT, Plaintiff,
v.
Brenda SPRY, et al., Defendants.

1:23-CV-264 (LEK/CFH)
|
Signed March 28, 2024

**Attorneys and Law Firms**

Rodney Manigault, Ellenville, NY, Pro Se.

David Mark Slutsky, Levy, Ratner Law Firm, New York, NY, for Defendants Brenda Spry, Hazel Green, Maxine Hewett.

Joan M. Gilbride, Kaufman Borgeest & Ryan, LLP, New York, NY, for Defendants Edwin Rivera, Emy Valez, Paola Rosa, Melissa Monroy.

### MEMORANDUM-DECISION AND ORDER

LAWRENCE E. KAHN, United States District Judge

### I. INTRODUCTION

**\*1** On January 25, 2023, Plaintiff Rodney Manigault filed this pro se civil rights action in state court. See Dkt. No. 2 ("Complaint"). In the Complaint, Plaintiff names seventeen defendants including fellow employees of Montefiore New Rochelle Hospital and representatives of his union, 1199SEIU United Healthcare Workers East ("Union"). See id. at 2. The case was removed to federal court on February 27, 2023. See Dkt. No. 1. Following removal, two groups of defendants named in the action filed motions to dismiss. See Dkt. Nos. 16-1 ("Hospital Motion"), 18 ("Union Motion"). The Hospital Motion was filed by Emy Valez, Edwin Rivera, Paola Rosa, and Melissa Monroy (collectively, "Hospital Defendants"). The Union Motion was filed by Brenda Spry, Hazel Green, and Maxine Hewitt (collectively, "Union Defendants"). Plaintiff has not filed a response to either the Hospital Motion or the Union Motion.

For the reasons that follow, the Hospital Motion and the Union Motion are granted.

### II. BACKGROUND

The following relevant facts are set forth as alleged in the Complaint.

Plaintiff alleges that Defendants are conspiring to terminate his employment "due [to] malic[e], spitefully to bias, favoritism, [and prejudicial] actions towards" him. Compl. at 6. He states that Defendants discriminated against him and "denied [him] accommodations [and] promotions" as well as "provok[ing him] repeatedly to engage in verbal conflict on the job." Id. This was "accompanied with progressive punishment," including "false written warnings and write-ups." Id. When Plaintiff filed reports and grievances, Defendants refused to acknowledge or correct any of the reported issues. See id.

Plaintiff asserts that the Union Defendants engaged in a breach of contract by "refusing to provide protection to its union member as they are supposed to do as per the union contract" and that their refusal did "cause harm, injury, pain, [and losses]." Id. at 1.

Plaintiff alleges that the Hospital Defendants showed "bias and prejudice by violating their contract to claimant/plaintiff by denial of accommodations, ill treatment by means of falsifying reports, and statements attacking claimant due to claimant's religion as a Muslim, claimant's hairstyle of dreadlocks, [and] claimant's head [wrap and turban]." Id. He also states he was denied breaks for prayers. See id.; see also id. at 7 ("[Plaintiff] was harassed due to being Muslim, was not accommodated for breaks, prayer or injuries."). Plaintiff notes the open use of racial slurs in the workplace and states that management did nothing to punish those who used them or to prevent their use in the future. See id. at 6.

Plaintiff similarly alleges multiple interferences with the terms of his employment, including "denial of days off, denial of breaks ... denial of [his] rights as a senior employee, tampering with [his] seniority and social security time ... [and] unlawful demotion of title and status." Id. at 1.

Plaintiff also alleges numerous torts occurred during his employment. He says that he was subject to "threats of physical bodily harm, threats of gun violence toward [him], [and] workplace violence." Id. Plaintiff includes allegations related to violent attacks involving other employees, including use of a kitchen knife during an intense argument that was "reported but covered up by management." Id. at 6.

**\*2** He also states that his medical information and the medical information of his family was revealed in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). See id. at 1. Specifically, hospital employee Alicia Monteque ("Monteque") "call[ed] out the private medical information of [Plaintiff]'s family medical history in an angry rant while on duty out loud, then aggressively began to attack [Plaintiff] verbally, placing [him] in imminent danger by confronting [him], threatening [him], [and] attempting to physically assault [him]." Id. at 6. When Plaintiff complained to management, "nothing was done to cure the matter." Id.

Plaintiff alleges that these actions violated "hate crime laws, New York State workplace violence laws, Federal labor laws, Human Rights laws/rules/regulations, and contract law." Id. Specifically, Defendants and others not named in the Complaint violated "the following laws, codes, ordinances, [statutes], regulations, policies, [and] contracts." Id. at 7. [1] As a result of these violations, Plaintiff says he "has been under a very large amount of stress and aggravation avoiding these malicious attempts of conflict." Compl. at 6.

To support his claims, Plaintiff attached multiple documents that the Court will construe as part of the Complaint. These documents include memos written by Plaintiff describing meetings with supervisors and union representatives, id. at 15, 18, 24, 31–32; records of written and verbal warnings, id. at 16, 19, 27; records of coaching received by Plaintiff, id. at 17; letters and petitions written regarding allegedly discriminatory actions in the workplace, id. at 21–22, 23, 25–26; a description of Plaintiff's employment position, id. at 30; and a record of Plaintiff's employment generated by the Social Security Administration, id. at 33–40.

On January 25, 2023, Plaintiff filed his Complaint in Supreme Court of the State of New York, Ulster County. See id. at 1. The case was removed to federal court on February 27, 2023. See Dkt. No. 1. After filing multiple extensions for time to respond, the Union Defendants and the Hospital Defendants each filed a motion to dismiss for failure to state a claim: both motions were filed on April 4, 2023. Hosp. Mot.; Union Mot. Plaintiff did not file a response to either Motion but has instead filed a document titled "Writ of Discovery," which restated many of the allegations included in the Complaint and included a fee schedule for his appearances in court. Dkt. No. 26 ("Writ"). [2]

## III. STANDARDS OF REVIEW

**\*3** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. In considering whether a plaintiff has alleged enough in their complaint, a court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)." "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal citations omitted).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

Where plaintiffs represent themselves pro se, courts construe their pleadings liberally—"particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). This is because a pro se litigant's complaint, "however inartfully pleaded," should not be scrutinized to the same degree as a formal pleading drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a pro se complaint must still "state a plausible claim for relief." Meadows v. U.S., Inc., 963 F.3d 240, 243 (2d Cir. 2020).

Generally, a notice of dismissal by court order operates as an adjudication on the merits. See Fed. R. Civ. P. 41(b). Even so, a court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Ryle v. Rehrig Pac. Co., No. 19-CV-1478, 2020 WL 6196144, at *5 (N.D.N.Y. Oct. 22, 2020) (citing Byerly v. Ithaca Coll., 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003)).

## IV. DISCUSSION

In deference to Plaintiff's pro se status and in the interest of complete review, the Court will address all claims conceivably raised by the Complaint, including claims implied by the allegations and claims that could be raised under the list of statutes provided by Plaintiff. [3] For the reasons that follow, all of Plaintiff's claims will be dismissed. However, some will be dismissed with prejudice and some will be dismissed without prejudice and with leave to amend.

### A. Claims Dismissed with Prejudice

#### 1. Claims Without a Private Cause of Action

**\*4**  Defendants argue that Plaintiff lacks a private right of action to pursue claims under many of the statutes cited. See Hosp. Mot. at 7; Union Mot. at 17–18. The Court agrees. See Trombetta v. Novocin, No. 18-CV-993, 2024 WL 689144, at *6 (S.D.N.Y. Feb. 20, 2024) (finding no private right of action under 18 U.S.C. § 1028); Futia v. Roberts, No. 23-CV-1774, 2023 WL 8237246, at *6 (S.D.N.Y. Nov. 28, 2023) (finding no private right of action under 18 U.S.C. §§ 241, 242, 1001, or 1341); Hart v. Janicki, No. 23-CV-832, 2023 WL 5630411, at *3 (W.D. Wa. Aug. 31, 2023) (finding no private right of action under 18 U.S.C. § 47); Johnson v. Capital One Bank N.A., No. 22-CV-363, 2022 WL 1091226, at *1 (D.D.C. Apr. 12, 2022) (finding no basis for inferring a civil cause of action for 42 U.S.C. § 1307), rev'd in part on other grounds, No. 22-CV-7042, 2023 WL 2733486 (D.C. Cir. Mar. 31, 2023); Miller v. Austin, No. 20-CV-1958, 2021 WL 1226770, at *4 (S.D.N.Y. Mar. 31, 2021) (finding no private right of action under 28 U.S.C. § 1746); Oslzly v. Mendlewicz, No. 15-CV-5681, 2015 WL 7575902, at *3 (E.D.N.Y. Nov. 25, 2015) ("However, there is no private right of action under HIPAA." (citing Ames v. Group Health Inc., 553 F. Supp.

2d 187, 192 (E.D.N.Y. 2008))); Zahl v. Kosovsky, No. 08-CV-8308, 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) (finding no private right of action under 42 U.S.C. § 408).

As a private individual, Plaintiff cannot maintain a suit under these statutes regardless of any possible amendment. Accordingly, these claims are dismissed with prejudice.

#### 2. Claims Requiring State Action

Defendants also argue that several of the cited statutes only apply to governmental entities and thus cannot support claims against private individuals in civil cases. See Union Mot. at 15–17. Defendants are correct. See Crawford v. Washington, 541 U.S. 36, 42 (2004) (noting that the Sixth Amendment right to confront one's accusers applies only to criminal prosecutions); Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (finding that a Fifth Amendment due process claim cannot lie against a private actor unless the allegedly unconstitutional conduct is "fairly attributable to the State"); E.E.O.C. v. Am. Fed. State, Cnty., and Mun. Emps., AFL-CIO, 937 F. Supp. 166, 169 (N.D.N.Y. 1996) ("Similarly, Kelly does not state a claim under RFRA, as any government action alleged herein does not infringe plaintiff's religious freedoms. It is solely the actions of the unions, acting privately, which encroach upon Kelly's beliefs. This is not the type of governmental burdening of religious exercise sought to be eliminated by RFRA."); Pitt v. Matola, 890 F. Supp. 89, 91–92 (N.D.N.Y. 1995) ("Compensation under [FECA] is a federal employee's exclusive remedy against the government for injuries arising out of the course of federal employment" and does not apply to non-governmental employees).

Additionally, multiple statutes by their text apply only to specific government officials. See 5 U.S.C. § 3331 (requiring certain federal officials to swear an oath of allegiance to the Constitution of the United States); 28 U.S.C. § 534 (directing the Attorney General to maintain national crime information databases and related records). Since Plaintiff has not named any of these specific individuals or entities as defendants or alleged that any of the existing named defendants are public officials, he has failed to state a claim under any of these statutes.

To the extent Plaintiff's allegation that he is "being charged under color of law," Compl. at 8, should be construed as a claim under 42 U.S.C. § 1983, those claims are similarly dismissed because of Plaintiff's failure to allege any state

action. See West v. Atkins, 487 U.S. 42, 48–49 (1988) (finding that a person must be acting under color of state law to be liable under Section 1983 and that a person acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed in the authority of state law"). Accordingly, to the extent that Plaintiff intends to allege any claims pursuant to Section 1983, those claims are also dismissed.

**\*5** Plaintiff has not alleged that any of the defendants are governmental officials acting under color of state law or that he is being prosecuted in a criminal action by Defendants. Accordingly, Plaintiff's claims under these statutes are dismissed with prejudice.

### 3. Duty of Fair Representation

Plaintiff also appears to bring claims for breach of duty of fair representation against the Union Defendants for refusing to provide protection and failing to file a grievance on his behalf in 2021. See Compl. at 1, 2, 19. Those claims are dismissed with prejudice for failure to name the proper defendant.

To state a claim for breach of a union's duty of fair representation, "a plaintiff must plead that (1) the union's conduct was 'arbitrary, discriminatory, or in bad faith' and (2) there was 'a causal connection' between the union's wrongful conduct and the member's injuries." Watkins v. First Student, Inc., No. 17-CV-1519, 2018 WL 1135480, at *13 (S.D.N.Y. Feb. 28, 2018) (citing Perkins v. 199 SEIU United Healthcare Workers East, 73 F. Supp. 3d 278, 283–84 (S.D.N.Y. 2014)). There is no breach of this duty "where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153–54 (2d Cir. 1994). Individual union members are not subject to liability in suits for breach of the duty of fair representation. See Cunningham v. Figurilli, No. 12-CV-598, 2013 WL 592673, at *4 (N.D.N.Y. Feb. 14, 2013) (citing Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999)). Claims alleging a union failed to abide by their duty of fair representation are subject to a six-month statute of limitations. See Perkins, 73 F. Supp. 3d at 285 (citing White v. White Rose Food, 128 F.3d 110, 114 (2d Cir. 1997)).

Plaintiff does not name his union as a defendant in this action; instead, he names multiple individual representatives of the union. Since these individuals are shielded from liability, these claims are dismissed. Insofar as Plaintiff wishes to pursue these claims against his union, he may choose to amend his Complaint to seek relief from union itself and not from the individual Union Defendants. However, Plaintiff is warned that, in order to comply with the six-month statute of limitations, any amended claims must relate to events that occurred no more than six months prior to the filing of this case.

### 4. Title VII

While Plaintiff does not explicitly name Title VII in his complaint, his allegations of discrimination on the basis of race and religion, and related retaliation, are best assessed as violations of Title VII. See Hosp. Mot. at 11–20 (construing Plaintiff's claims as brought under Title VII).

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e–2000e-17. To state a claim for discrimination on the basis of race, national origin, or religion, a plaintiff must allege that (1) they are a member of a protected class; (2) they were qualified for their position or performing their job in a satisfactory manner; (3) they suffered an adverse employment action; and (4) the adverse employment action took place in such a way as to give rise to an inference of discrimination. See Vega v. Hempstead Union Free School Dist., 801 F.3d 72, 83 (2d Cir. 2015) (detailing the test for a discrimination claim). To state a claim for retaliation under Title VII, a plaintiff must demonstrate (1) that they were engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. See Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012) (detailing the test for a retaliation claim). Individuals are not subject to liability under Title VII; rather, Title VII claims must be brought against the employer. See Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000) ("The district court also properly dismissed the Title VII claims against [individual defendants], because individuals are not subject to liability under Title VII."). A plaintiff has up to 180 days after the alleged incident to file a charge with the Equal Employment Opportunity Commission ("EEOC"), 42 U.S.C. § 2000e-5(e)(1), and 90 days to file a

civil action after a Notice of Right to Sue has been issued by the EEOC. Id. at § 2000e-5(f)(1).

**\*6** As a preliminary matter, Plaintiff does not name his employer, Montefiore New Rochelle Hospital, in the Complaint as a defendant. Since claims under Title VII cannot lie against individual defendants, those claims are dismissed with prejudice. While Plaintiff may replead his allegations for discrimination and retaliation if he chooses to add his employer as a defendant, he is advised of the pleading requirements for a claim under Title VII listed above and the applicable statute of limitations.

### 5. Statutes Not Addressing Employment

Additionally, Plaintiff includes several statutes that are facially inapplicable to the facts plead. Accordingly, all claims brought under these statutes will be dismissed for failure to state a claim.

In his Complaint, Plaintiff names the 1968 Civil Rights Act Sec. 201, 25 U.S.C. §§ 1301–1305. Compl. at 8. However, since that statute governs crimes committed on Indian Reserves, and Plaintiff does not allege crimes that occurred on native land, claims under this statute are dismissed. Similarly, Plaintiff names the Fair Housing Act, 42 U.S.C. § 3617. See Compl. at 8. However, none of the employment issues raised in the Complaint are related to discrimination in housing. Accordingly, Plaintiff's claims under this statute are dismissed. Plaintiff also names the Stop Terrorist and Military Hoaxes Act, which criminalizes the provision of false or misleading information under circumstances that constitute numerous predicate criminal acts. 18 U.S.C. § 1038. Leaving aside the open question of whether Plaintiff could bring a private claim under this statute, Plaintiff includes no allegations related to the types of weapons contemplated by the statute—much less to the provision of information of false information relating to these weapons. See Iannacone v. Corporation, No. 22-CV-695, 2022 WL 17820184, at \*2 (N.D.N.Y. Jul. 29, 2022) (finding that, while Section 1038 does appear to provide for a similar right of action in some limited circumstances, "the Complaint is devoid of any factual allegations that would support a claim under the statute"). As such, any claims predicated on this statute are dismissed.

While claims are normally dismissed with leave to amend, given the fact that Plaintiff would be unable to amend his

complaint to state claims under these statutes, these claims are dismissed with prejudice.

### 6. Hospital Policy

Plaintiff also sues pursuant to his employer's non-discrimination and anti-harassment policy. See Compl. at 7; see also Montefiore Hospital Policy Number VI-6 ("Policy"), at 1–7 (discussing Montefiore Medical Center's internal support for the creation of "an environment free from discrimination, unlawful harassment (including sexual harassment), and other harassing behavior"). While some failures to abide by employer policy are actionable in federal court, see, e.g., Langenkamp v. Olson, 628 F. App'x 50, 53 (2d Cir. 2015) (evaluating breach-of-contract claim that flowed from an employer's failure to comport with termination policies in the employer handbook because "she alleges much more than the 'mere existence of a written policy' "), this Court has found no instance of a case in which a plaintiff was able to sue their employer for failure to follow employer policies absent external statutes or tort claims. Since Plaintiff has not alleged the Policy constituted a contract between Plaintiff and any of the named defendants, any claim for breach of contract flowing from the hospital policy is dismissed.

**\*7** Such a claim could be construed as a breach of contract claim under a theory of promissory estoppel for failure to investigate Plaintiff's complaints regarding alleged discrimination on the basis of race and religion. "In New York, promissory estoppel has three elements: 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance.' " Cyberchron Corp. v. Calldata Systems Development, Inc., 47 F.3d 39, 44 (2d Cir. 1995). Plaintiff has not alleged any of these three elements in his Complaint, and there is nothing in the policy to suggest any "clear and unambiguous promise" made to Plaintiff. See Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233, 254 (D. Conn. 2008) ("The policy at issue in this case is at the most a statement of intention or an articulation of company goals and objectives, and cannot give rise to liability under a theory of promissory estoppel." (cleaned up)) (collecting cases). Since no intuitive reading of the underlying policy includes any promise broken by Defendants, Plaintiff has not stated a claim for promissory estoppel.

## B. Claims Dismissed without Prejudice

### 1. Disability

Plaintiff lists multiple statutes related to disability. None of them support a cognizable claim here. Plaintiff cites to the Americans with Disabilities Act, 28 C.F.R. § 36.302(c), but doesn't allege that he has any disability or condition that would be protected under the ADA. See Compl. at 8. He similarly does not allege that he has applied for supplemental security benefits or otherwise sought government benefits, so any claims brought under 42 U.S.C. § 1383 are also dismissed for failure to state a claim. See Oslzly, 2015 WL 7575902, at *3 (dismissing claim filed under 42 U.S.C. § 1383(c) because plaintiff made no mention of the award of benefits). For these reasons, Plaintiff's claims under these statutes are dismissed.

### 2. ERISA Claims

Plaintiff also brings a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. See Compl. at 7. Specifically, Plaintiff states that ERISA "is being violated by falsely denying claimant did not [begin] employment at said time (1988) claimant did [prove] his employment did actually start in 1988, attempting to intentionally delete ten years of claimant's employment history by stating claimant began employment in 1998." Id.

ERISA sets minimum standards for voluntarily established retirement and health plans in the private sector and creates fiduciary responsibilities for plans and plan administrators as to participants and beneficiaries of those plans. When filing a civil enforcement action, participants or beneficiaries commonly sue to obtain benefits due under an ERISA plan, see 29 U.S.C. § 1132 (a)(1)(B), enjoin a practice that violates ERISA or obtain other appropriate equitable relief to address these violations, see id. at § 1132(a)(3), or receive requested documents related to the plan, see id. at § 1132(c)(1)(b). Participants or beneficiaries may also sue plans or plan administrators for breach of fiduciary duties. See Harrison v. Metropolitan Life Ins. Co., 417 F. Supp. 2d 424, 432 (S.D.N.Y. 2006) ("ERISA provides a civil enforcement remedy for the conduct upon which [plaintiff] bases her ... breach of fiduciary duty claims." (citing Aetna Health Inc. v. Davila, 542 U.S. 200, 214–15 (2004))).

It is not precisely clear which section of ERISA applies to Plaintiff's claims. He alleges that his employment history was incorrectly documented, though he does not say by whom or to what effect. See Compl. at 7. He does not state that he is not receiving benefits he is entitled to, that he has not received a particular requested document, or that a fiduciary duty has been breached. Indeed, it is not even clear from the pleadings whether Plaintiff is a participant in a pension plan covered by ERISA or that one of the named defendants is a plan administrator liable for violations under ERISA. See Thomas v. Cigna Group Ins., No. 09-CV-5029, 2013 WL 12084484, at *13 (E.D.N.Y. Jan. 10, 2013) (discussing appropriate defendants for ERISA actions). Given these deficiencies, Plaintiff's claims under ERISA are dismissed for failure to state a claim under which relief can be granted.

### 3. The Fair Labor Standards Act

**\*8** Plaintiff also includes the FLSA, 29 U.S.C. §§ 201–19, in his Complaint. See Compl. at 7. The FLSA establishes requirements for minimum wage, overtime pay, recordkeeping, and other employment standards. See 29 U.S.C. §§ 206, 207, 211. The FLSA also makes it unlawful to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." Dunn v. Sederakis, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015); see also Greathouse v. JHS Sec. Inc., 784 F.3d 105, 111–17 (2d Cir. 2015) (describing standards for retaliation claims brought under FLSA).

Plaintiff does not allege any claims related to his hourly wages or paid overtime, nor does he allege he was retaliated against for filing a complaint regarding wages or overtime. To the extent he alleges claims flowing from a breach of his contract or collective bargaining agreement, those claims are not cognizable under the FLSA. See Rogers v. City of Troy, N.Y., 148 F.3d 52, 57 (2d Cir. 1998) ("Parties may, of course, contract for additional rights above those guaranteed by the statute. But the existence of the FLSA does not convert every suit involving the breach of an employment contract into a federal case."); Momin v. Quantierra Advisors LLC, No. 21-CV-612, 2022 WL 2002282, at *2 (S.D.N.Y. Jun. 3, 2022) (finding that employees cannot use the FLSA to pursue breach of contract claims) (collecting cases). Accordingly, Plaintiff's claims under the FLSA are dismissed.

### C. Supplemental Jurisdiction

Plaintiff also brings several claims under state law. However, as discussed above, all of Plaintiff's federal claims have been dismissed either with or without prejudice. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

While federal courts normally lack subject matter jurisdiction over state law claims, district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988) (noting "that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").

Given the sparse nature of the Complaint, it is not entirely clear to what extent the Court would have supplemental jurisdiction at all: of the thirty-five statutes named, only some address overlapping issues of the law—much less overlapping alleged facts. Additionally, the early stage of litigation weighs in favor of declining to exercise supplemental jurisdiction. See Schiebel v. Schoharie Central School, —— F. Supp. 3d ——, 2023 WL 4305215, at *7 (N.D.N.Y. Jun. 30, 2023) (Kahn, J.) ("Courts in this Circuit have noted that when a case is early in the early phases of litigation and has yet to enter discovery, the aforementioned balancing factors weigh heavily against exercising supplemental jurisdiction.") (collecting cases). This case has not proceeded beyond a motion to dismiss. Further, there is nothing to suggest that litigation in front of this Court would be a more appropriate use of judicial time and resources or that parties would face unfairness in front of the state court: indeed, Plaintiff's original preference was to pursue this claim in state court.

**\*9** Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. These claims are those brought under New York Penal Law §§ 240.20, 240.30, 485.00, 485.05; New York Executive Law §§

290, 292, and 296; N.Y. Gen. Mun. Law § 99-x [4]; Hate Crime Local Law 46; and the state laws governing breach of contract and the torts of fraud, assault, [5] and intentional infliction of emotional distress. The Court may revisit these state law claims and choose to exercise supplemental jurisdiction if Plaintiff files an amended complaint alleging a viable claim under federal law and includes related state law claims, or if parties are able to establish the existence of complete diversity for the purposes of diversity jurisdiction. If Plaintiff does not file an amended complaint correcting the pleading deficiencies related to his federal claims within the time specified by this Memorandum-Decision and Order or if parties do not establish the existence of diversity jurisdiction, the remainder of this case will be remanded to state court for further proceedings. See Cohill, 484 U.S. at 357 ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

### D. Additional Defendants

While the Hospital Motion and Union Motion address the claims brought against seven of the defendants, the remaining ten defendants have not entered an appearance or responded to the action.

The Union Motion was brought on behalf of Brenda Spry, Hazel Green, and Maxine Hewitt, but Plaintiff also named five other union members and/or representatives in his Complaint. Those defendants are Brandon Stolz, Amede Melice, Everton Forbes, Ana Smith Davis, and Enver Kotenovic. See Union Mot. at 7 n.1. Defendants Spry, Green, and Hewitt aver that those five defendants have not yet been served with the Complaint. See id. Similarly, while the Hospital Motion was brought on behalf of Melissa Monroy, Edwin Rivera, Paola Rosa, and Emy Valez, Plaintiff names fellow hospital employee Monteque in the Complaint. See Compl. at 1. It is unclear how Sandra B. Port, Amely Janet, Joseph Ricci, and Jasmine Wilson are affiliated with the allegations described in the Complaint.

Service of process in this District is governed by Federal Rule of Civil Procedure 4 and Local Rule 4.1. Under Rule 4, a plaintiff must demonstrate proof of service to the court by providing the server's affidavit. Fed. R. Civ. P. 4(l)(1). If a defendant is not served within sixty days of the filing of the complaint, the court must dismiss the action without prejudice against that defendant or order that service be made within

a specified time; the court may do so "on motion or on its own after notice to the plaintiff." Fed. R. Civ. P. 4(m); L.R. 4.1(B). In removed cases "in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court." 28 U.S.C. § 1448. "Rule 4(m)'s [time] period for service begins to run on the date of removal." Lynch v. County of Herkimer, No. 20-CV-63, 2020 WL 13915508, at *3 (N.D.N.Y. Mar. 27, 2020) (citing G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999)). A motion to dismiss for insufficient service of process must be asserted by motion before pleading. See Fed. R. Civ. P. 12 (finding procedural defenses are waived if omitted from a pleading or pre-answer motion).

 **\*10**  Plaintiff has not provided the affidavit required to demonstrate he had served all Defendants. Plaintiff is directed to provide an affidavit demonstrating that Defendants Brendan Stolz, Amede Melice, Everton Forbes, Ana Smith Davis, Enver Kotenovic, Monteque, Sandra B. Port, Amely Janet, Joseph Rice, and Jasmine Wilson were served with the Complaint. [6] If Plaintiff cannot do so, Plaintiff's claims against these defendants will be dismissed. However, he may bring these defendants into the lawsuit in conformity with Rule 4 if he files an amended complaint. Accordingly, the Court extends the deadline for service of a summons and complaint to sixty days after the filing of an amended complaint.

## V. CONCLUSION
Accordingly, it is hereby:

**ORDERED**, that Monroy, Rivera, Rosa, and Valez's Motion to Dismiss, Dkt. No. 16, is **GRANTED**; and it is further

**ORDERED**, that federal claims against Monroy, Rivera, Rosa, and Valez discussed in Section IV.A are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Green, Hewett, and Spry's Motion to Dismiss, Dkt. No. 17, is **GRANTED**; and it is further

**ORDERED**, that the federal claims against Green, Hewett, and Spry discussed in Section IV.A are **DISMISSED with prejudice**; and it is further

**ORDERED**, that federal claims against Janet, Stolz, Port, Melice, Forbes, Smith Davis, Wilson, Rice, and Kotenovic are **DISMISSED without prejudice** for failure to prove service; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, he must file an amended complaint within sixty (60) days from the filing date of this Memorandum-Decision and Order. Plaintiff is advised that an amended complaint will supersede the current Complaint and thus must be a complete document that does not incorporate the current Complaint by reference; and it is further

**ORDERED**, that Plaintiff must provide proof that service was made on Defendants Stolz, Melice, Forbes, Smith Davis, Kotenovic, Monteque, Port, Janet, Ricci, and Wilson. If he cannot do so, claims against these Defendants will be dismissed. Plaintiff may have an extension of the time period in which to effect service if he files an amended complaint and must serve these Defendants within sixty (60) days of the filing of his amended complaint; and it is further

**ORDERED**, that if Plaintiff does not timely file an amended complaint, Plaintiff's state law claims will be dismissed for lack of subject matter jurisdiction without further order of the Court and the remainder of this action will be remanded to the Supreme Court of the State of New York, Ulster County, for further proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

## All Citations

Slip Copy, 2024 WL 1345340

**Footnotes**

1    Plaintiff then lists the following statutes and regulations in his Complaint: U.S. Const. amend. V; U.S. Const. amend. VI; 5 U.S.C. § 3331; Federal Employee Compensation Act, 5 U.S.C. §§ 8101–8152; 18 U.S.C. § 47; 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 1001; 18 U.S.C. § 1028; 18 U.S.C. § 1038; 18 U.S.C. § 1341; 28 U.S.C. § 534; 1968 Civil Rights Act, 25 U.S.C. §§ 1301–1304; 28 U.S.C. § 1746; Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219; Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461; 42 U.S.C. § 408; 42 U.S.C. § 1307(a); 42 U.S.C. § 1383a; 42 U.S.C. § 1983; Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–2000bb-4; Fair Housing Act, 42 U.S.C. § 3617; 25 C.F.R. § 11.406; 28 C.F.R. § 36.302(c); New York Executive Laws §§ 290, 292, and 296; New York Penal Laws §§ 240.20, 240.30, 485.00, 485.05; Hate Crime Local Law 46; Senate Bill S4615A (enacted as N.Y. Gen. Mun. Law § 99-x); and state laws regarding contracts, fraud, and intentional infliction of emotional distress. Plaintiff also includes Montefiore Hospital Policy Number VI-6 in his list. Additionally, Plaintiff lists several case citations and references to rules of evidence but, since these citations do not refer to a particular legal right Plaintiff alleges is being infringed by Defendants, the Court declines to discuss them.

2    Plaintiff also appears to allege improper service of the Motions to Dismiss in the Writ. See Writ at 16–21. To the extent this document constitutes an answer to the Hospital and Union Motions by arguing that the documents were improperly served, Plaintiff is directed to review the affidavits of service filed for each Motion to Dismiss. See Dkt. No. 19 (providing an affidavit in support of service of the Union Motion); No. 20 (providing an affidavit in support of service of the Hospital Motion). Under Federal Rule of Civil Procedure 5(b)(2)(C), service may be completed by mailing documents to a "person's last known address." Plaintiff includes envelopes addressed to 22 Maple Avenue in Ellenville, New York. See Writ at 16–21. Given that this is the address Plaintiff has on file with the Clerk of the Court, the Court is unable to say that Plaintiff was improperly served with these documents.

3    Plaintiff appears to bring claims related to the legal theories of Fruit of the Poisonous Tree and Equitable Estoppel. See Compl. at 10. "Fruit of the Poisonous Tree" is not a cognizable cause of action and is instead a doctrine regarding evidence brought forth in criminal trials. See Utah v. Strieff, 579 U.S. 232, 237 (2016) (discussing the evidentiary exclusionary rule). Similarly, equitable estoppel is not a cause of action but rather an "extraordinary remedy" invoked to prevent an individual from invoking a right against another party when the right arises out of that party's misleading actions. See Endemann v. Liberty Ins. Corp., 602 F. Supp. 3d 322, 328 (N.D.N.Y. 2022). Therefore, neither doctrine is applicable to the civil complaint currently pending before the Court.

4    In his Complaint, Plaintiff cites to the unenacted text of this law, Senate Bill S4615A.

5    In his Complaint, Plaintiff alleges "threats of physical bodily harm, threats of gun violence towards claimant, [and] workplace violence." Compl. at 1, see id. at 6 ("Alicia M. Monteque ... then aggressively began to attack claimant verbally, placing claimant in imminent danger by confronting claimant, threatening claimant, attempting to physically assault claimant."). The Court construes this pleading as an allegation of the common law tort of assault.

6    Since Defendants Valez, Rivera, Rosa, Monroy, Spry, Green, and Hewitt have not contested service in their motions to dismiss, they have waived the defense of insufficient process of service under Rule 12(b)(5).

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML   Document 7   Filed 01/28/25   Page 42 of 229

Martin Piotr Nowak® v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2023)

2023 WL 5952055
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

"MARTIN PIOTR NOWAK®", Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., also known as
JPMorgan Chase & Co., also known as Chase, Defendant.

23-cv-5783 (BMC)(SJB)
|
Signed August 9, 2023

**Attorneys and Law Firms**

Martin Nowak, Long Beach, NY, Pro Se.

## ORDER TO SHOW CAUSE

COGAN, Senior District Judge,

**\*1** On July 6, 2023, plaintiff, who identifies himself as "MARTIN PIOTR NOWAK®," "Nowak, Martin-piotr," and "Nowak, Martin,"[1] filed this fee-paid *pro se* civil action in the United States District Court for the Southern District of New York. (ECF No. 1 at 2, 4.)[2] The action was transferred to this Court on July 31, 2023. Plaintiff is directed to Show Cause why the action should not be dismissed for lack of jurisdiction.

## BACKGROUND

The submission is not captioned as a complaint, but as a "Special Deposit" and "Bill of Claim in Equity" and purports to be addressed to the "Chancery Court." (ECF No. 1 at 1.) Since these phrases have no meaning in federal District Court, where the case was filed, the action will be treated as a complaint for a civil action. That said, it is difficult to discern the nature of the action or the relief sought. The submission contains multiple phrases such as "res judicata" and "stare decisis" that have legal meaning but not in the context in which they appear in this action. (*Id.* at 7.) The action purports to establish "True Bills" without reference to any known legal entity with the capacity to endorse a true bill of indictment. (*Id.* at 7.) It also mentions alleged

criminal acts, such as "securities fraud," without reference to any prosecuting authority. (*Id.* at 7.)

Setting aside this irrelevant language, it appears that the submission is asserting a claim related to "an unlawful foreclosure lawsuit" filed in the Nassau County Supreme Court on February 20, 2019, under Index Number 0602421/2019, against "MARTIN PIOTR NOWAK®," regarding a property located at 113 New York Avenue in Long Beach, New York. (*Id.* at 9.) Plaintiff claims that documents were removed from the state court file, leading to a summary judgment/ default judgment entered May 6, 2022. (*Id.* at 17.) He does not provide any evidence for this claim, although he states that documentation "will be furnished upon request for private viewing." (*Id.*) Plaintiff asserts that "the unlawful foreclosure lawsuit caused Claimants a great deal of physical, mental, emotional and financial distress." (*Id.* at 7, 9.) He suggests additional state law claims sounding in fraud and contracts and "various Uniform Commercial Codes." (*Id.* at 12-13.)

**\*2** The submission purports to bring claims pursuant to multiple provisions of the United States Criminal Code (18 U.S.C. §§ 241, 242, 472, 474, 912, 1505, 2073); the Fair Debt Collection Practices Act (15 U.S.C. §§ 1692f, 1692i); the Civil Rights Act (42 U.S.C. § 1983); a provision defining "gold clauses" in contracts (31 U.S.C. § 5118); a provision restricting federal employees' ability to strike (5 U.S.C. § 7311); and Executive Order 10450, which, in 1953, restricted certain individuals from working for the federal government. (*Id.* at 12.)

The submission seeks the following relief: "judicial review of Claimants' Administrative Remedy," which it claims is a "sum certain of $3,490,687,291.34"; unspecified "damages in equity"; discharge of the loan amount; and conveyance of legal title. (*Id.* at 25-26.)

Plaintiff attaches 157 pages of exhibits including "Affidavits," "Notices," and multiple documents labeled "TRUE BILL – (Invoice)" (*Id.* at 30-95; ECF No. 1-2 at 1-91.) One of these latter purports to name "Obligee: Nowak, Martin" and "Obligor: JPMorgan Chase Bank, N.A." and includes "Billing Details" such as $100,000,000.00 for "Fraudulent Foreclosure placed against Obligee" and $163,909.00 for "Value of what Obligee mistakenley [*sic*] sent to CHASE as 'payment' on Account Number: 1745030371." (ECF No. 1-2 at 6-7.) Another "Invoice" sets out a schedule of "Current Late Fees" accruing at a

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 43 of 229

Martin Piotr Nowak® v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2023)

rate of $1,136,414.74 per day for 30 days. (*Id.* at 42.) These "Invoices" appear to be the basis for the alleged "Administrative Remedy" that the complaint asks this Court to impose. (*Id.* at 5.) Notably missing from the exhibits are any documents from the state foreclosure action, such as a deed or mortgage contract, or any documents in support of plaintiff's claims under the federal statutes cited in the complaint.

According to documents publicly available on the website for the New York State Unified Court System, the foreclosure action in Index Number 602421/2019 remains pending in the Supreme Court of the State of New York, Nassau County. *See JPMorgan Chase Bank v. Nowak, Martin P.*, No. 602421/2019. *https://iapps.courts.state.ny.us/webcivil/FCASSearch* (last visited 8/4/23).

Plaintiff previously filed a prior action against the same defendant and involving the same mortgage loan that is now in foreclosure proceedings. *Nowak v. JP Morgan Chase Bank, N.A.*, No. 18-CV-4972 (BMC)(SJB), 2019 WL 3817395, at *1 (E.D.N.Y. Aug. 14, 2019) (dismissing plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act and state law), *aff'd sub nom. Nowak v. JPMorgan Chase & Co.*, 847 F. App'x 31 (2d Cir. 2021)

### DISCUSSION

The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do .... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).

**\*3** Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-364 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). *See* Fed. R. Civ. P. 12(h)(3). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.

This complaint does not clearly establish diversity jurisdiction or federal question jurisdiction. The diversity statute, 28 U.S.C. § 1332, provides federal jurisdiction over state law causes of action involving conflicts between citizens of different states. In this case, complete diversity of citizenship does not exist between plaintiff and defendant, as plaintiff states that he lives in New York and that defendant has its principal office in New York. A corporation is considered to be a citizen of every State in which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

"Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975). "Simply raising a federal issue in a complaint will not automatically confer federal question jurisdiction." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (the question is "whether the cause of action alleged is *so patently without merit* as to justify ... the court's dismissal for want of jurisdiction." quoting *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 70 (1978)). There is no subject matter jurisdiction if "the purported federal claim is clearly 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) (citations omitted); *see also Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 786 (2d Cir. 2019) ("[T]he Supreme Court has also instructed that federal question jurisdiction under 28 U.S.C. § 1331 is lacking where the asserted claim for relief is 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.' " quoting *Shapiro v. McManus*, 577 U.S. 39, 45

Martin Piotr Nowak® v. JPMorgan Chase Bank, N.A., Not Reported in Fed. Supp. (2023)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 44 of 229

(2015)). Plaintiff cites multiple provisions of federal law, but each of his purported federal claims falls into this category.

Plaintiff cites parts of the United States Criminal Code relating to civil rights violations (18 U.S.C. §§ 241 and 242), counterfeit securities (18 U.S.C. §§ 472 and 474), obstruction of federal agencies (18 U.S.C. § 1505), impersonation of federal employees (18 U.S.C. § 912), and restrictions on federal employees (18 U.S.C. § 2073). Even if plaintiff had alleged that defendant violated any of these laws in connection with the foreclosure proceedings, which he did not, he cannot rely on criminal statutes to bring a civil cause of action unless the statute includes an express or implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 79 (1975). Courts have found no private right of action under most of the criminal provisions he mentions. *See Williams v. Maney*, No. 17-CV-5853-GHW, 2017 WL 6729363, at *2 (S.D.N.Y. Oct. 26, 2017) (no private right of action under 18 U.S.C. § 241), *aff'd sub nom. Williams v. Bronx Cty. Child Support Customer Serv. Unit*, 741 F. App'x 854 (2d Cir. 2018); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427, 2011 WL 310320, at *1 (2d Cir. 2011) (no private right of action under § 242); *Kloth-Zanard v. Bank of Am.*, No. 15-CV-1208, 2017 WL 4429694, at *4 (D. Conn. Oct. 5, 2017) (no private right of action under 18 U.S.C. §§ 242, 471-74); *Frison v. Zebro*, 339 F.3d 994, 999 (8th Cir. 2003) ("There is nothing in the language of 18 U.S.C. § 912 to suggest that Congress intended to create a private right of action or a private remedy for a violation of its proscription against impersonating a United States officer."); *Mills v. Luplow*, No. 04-CV-005(A)(M), 2009 WL 2606240, at *7 (W.D.N.Y. Mar. 31, 2009) (no private right of action under 18 U.S.C. § 1505), *report and recommendation adopted*, 2009 WL 2591762 (W.D.N.Y. Aug. 20, 2009), *aff'd*, 391 F. App'x 948 (2d Cir. 2010).

**\*4** As to other federal statutes cited in the complaint, plaintiff has not alleged that any state actors violated his constitutional rights, so as to invoke 42 U.S.C. § 1983, or that the mortgage contract included a "gold clause" that would implicate 31 U.S.C. § 5118; nor has he identified any federal employees who would be subject to 5 U.S.C. § 7311.

He does cite provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692f and 1692i, but he has not alleged that defendant is a "debt collector" as defined in the Act who would be subject to its provisions. The FDCPA protects consumers against abusive debt collection practices by debt collectors, including the use of unfair or unconscionable means of debt collection, 15 U.S.C. § 1692f,

and specifies the appropriate venue for debt collectors to bring legal actions, 15 U.S.C. § 1692i. The FDCPA defines "debt collector" as any person who uses interstate commerce or the mails "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). It does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor," 15 U.S.C. § 1692a(6)(A), unless the creditor "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts," 15 U.S.C. § 1692a(6). The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

In this case, plaintiff names the mortgage-holder as a defendant. The mortgage-holder appears to be a "creditor," and not a "debt collector," as defined in the FDCPA. Plaintiff does not allege that any individual "use[d] "any name other than his own" or "indicate[d] that a third person is collecting or attempting to collect such debts." If defendant is a "creditor," and not a "debt collector," then the provisions of the FDCPA do not apply.

Plaintiff's complaint challenges an existing mortgage contract and pending foreclosure action, issues which cannot serve as the basis for federal subject matter jurisdiction. Plaintiff has not raised any factual allegations or legal arguments that would bring his claims under the federal question jurisdiction of this Court. Accordingly, plaintiff is directed to Show Cause in writing within 20 days from the date of this Order why the Court should not dismiss this action for lack of subject matter jurisdiction. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018) (generally, district courts should not *sua sponte* dismiss cases for lack of subject matter jurisdiction without first giving notice and an opportunity to be heard, unless it is "unmistakably clear that the court lacks jurisdiction, or that the complaint lacks merit or is otherwise defective."); *Nwoye v. Obama*, No. 22-1253, 2023 WL 382950, at *1 (2d Cir. Jan. 25, 2023) (The issuance, for example, of an order to show cause why a complaint should not be dismissed *sua sponte* for a stated reason, will typically suffice to provide notice and an opportunity to be heard.")

**\*5** If plaintiff fails to show cause within the time allowed or fails to request an extension of time to do so, this action will be subject to dismissal without further notice.

### CONCLUSION

For the reasons set forth above, plaintiff is directed to Show Cause in writing within 20 days from the date of this Order why the Court should not dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). This Order to Show Cause does not supersede the prior Order of Judge Bulsara which directed plaintiff to file proper proof of service on defendant no later than October 9, 2023, unless this Court dismisses the case prior to that date.

Although plaintiff has paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 5952055

---

### Footnotes

1     The submission also names "Continentalis Divitiae Express Trust" and refers to this entity and "Nowak, Martin as Co-Trustee," collectively, as "Claimants." (ECF No. 1 at 2.) To the extent that this entity is separate from the individual filing the action, the entity cannot appear in this action unless represented by an attorney admitted to the bar and to practice in this jurisdiction. *See, e.g.*, *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007) (explaining that 28 U.S.C. § 1654, which governs appearances in federal court, allows two types of representation: that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. "Accordingly, a layperson may not represent a separate legal entity." (citations omitted)); *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1236 (11th Cir. 2020) ("[A] nonlawyer trustee has no authority to represent a trust in court. A trustee represents the interests of others and would therefore be engaged in the unauthorized practice of law if allowed to appear *pro se* as a nonlawyer." (internal quotation marks omitted)); *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 302 (E.D.N.Y. 2009) (citing caselaw holding that a non-attorney trustee may not represent a trust *pro se*).

2     As the pages of the complaint and exhibits are not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing System.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

#### I. In Forma Pauperis

**\*1** Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only. [1]

#### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and "interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

**\*2** Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 47 of 229

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Initial Review

### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter."

Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

**\*3** The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 48 of 229

Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCaribbean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14.

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

**\*4** Dkt. No. 1 at 69. As for a second cause of action is

> employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 49 of 229

CIBC had be fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

Id. at 70. Third cause of action is listed as employment discrimination - compensation: denied increases in my salary verbally communicated to be by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to be my Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt. Id. In the prayer for relief, plaintiff requests:

(1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2)An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

Id. at 71.

**B. Analysis**

First, plaintiff's complaint fails to meet the pleading requirements of Rules 8 and 10. Her complaint does not present a short and plain statement of the claim showing that she is entitled to relief. FED. R. CIV. P. 8. Further, she does not present her claims in numbered paragraphs, limited to one "circumstance" per paragraph. FED. R. CIV. P. 10. Instead, her complaint is a lengthy, disjointed, difficult to follow narrative. Her complaint clearly "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to

assess the sufficiency of their claims." Gonzales, 167 F.R.D. at 355.

Second, plaintiff's claims, insofar as she seeks to bring them under Title VII are (1) barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII. [3] To the extent plaintiff suggests that she was discriminated against in violation of Title VII insofar as she was told that she was inadequate due to her race or denied promised promotions because of her race, dkt. no. 1 at 70, even if plaintiff could provide additional factual support and clarification for the alleged discrimination, plaintiff provides that the alleged discrimination occurred as early as 1995 until 2004, and would be beyond the statute of limitations of Title VII. Indeed, plaintiff's entire employment with defendant occurred outside of the statute of limitations as she suggests that her employment began in January 1995 and that she was terminated in March 2009. Dkt. No. 1 at 52-53. Thus, the complained-of actions occurred more than 300 days prior to when plaintiff appears to have filed a complaint with the EEOC. See Gunning v. New York State Just. Ctr. for Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) ("Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency, and, therefore, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e–5(e)(1).") (quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004)). The undersigned notes that plaintiff does not indicate when she filed a complaint with the EEOC. However, she submits the EEOC's dismissal letter, dated September 10, 2020, which states that plaintiff did not timely file a complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely filed her EEOC complaint in 2020, [4] appears to have been last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

**\*5** However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction. [5] Plaintiff makes several disjointed,

confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's

jurisdiction. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

**\*6** Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 51 of 229

the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with

prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518439

---

## Footnotes

1    Plaintiff is still financially responsible for any other fees or costs she may incur.

2    It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

3    A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving

**Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)**

Case 3:24-cv-01141-AJB-ML   Document 7   Filed 01/28/25   Page 52 of 229

rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

4      As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

5      Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

6      This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

7      If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty

Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

Case 3:24-cv-01141-AJB-ML     Document 7     Filed 01/28/25     Page 54 of 229

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

**\*2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Carribean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was

> born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carriben Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 55 of 229

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had me fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

*Id.* at 70. The third cause of action is listed as

employment discrimination - compensation: denied increases in my salary verbally communicated to me by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to me by Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

(1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2) An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

**\*3** at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in a murder scheme that is somehow related to her Easter birthday. *See* Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 56 of 229

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a leash [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff to decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describe[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

**\*4**  *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

### b. Amended Complaint

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a

thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

**\*5** The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at \*2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http:// www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at \*2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at \*2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a

viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

### IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2021 WL 3204860

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 58 of 229

---

### Footnotes

1    At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

2    Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24, 2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

3    In the Prayer for Relief, plaintiff requests the Court to grant the following relief:

   1. The plaintiff <u>do not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;

   2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.

   3. The plaintiff wants full restitution socially, physically, professionally.

   Dkt. 11, at 5 (emphasis in original).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1789593
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Alexander McFADDEN, Plaintiff,

v.

Jose D. ORTIZ, Executive Officer Chase JP
Morgan Chase & Co., and James Simon, Manager
Chase JP Morgan Chase & Co., Defendants.

No. 5:12–CV–1244 (MAD/ATB).
|
April 26, 2013.

**Attorneys and Law Firms**

Alexander McFadden, Pine City, NY, pro se.

Jose D. Ortiz, Executive Officer for Chase JP Morgan Chase & Co., Houston, TX.

James Simon, Manager for Chase JP Morgan Chase & Co., New York, NY.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 **\*1** Plaintiff *pro se* Alexander McFadden ("McFadden"), an inmate at the Southport Correctional Facility ("SCF"), filed this action pursuant to 42 U.S.C. § 1983. In his complaint, Plaintiff appears to allege that Defendants, two executives of Chase JP Morgan Chase & Co. ("Chase"), violated his constitutional rights through conduct that, in some way, involved a bank account. *See* Dkt. No. 1 at ¶ 4.

On August 7, 2012, Magistrate Judge Andrew T. Baxter issued an Order and ReportRecommendation, recommending that the Court dismiss Plaintiff's complaint in its entirety with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5. Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's August 7, 2012 Order and ReportRecommendation.

**II. BACKGROUND**

In his Order and Report–Recommendation dated August 7, 2012, Magistrate Judge Baxter recommended that Plaintiff's motion to proceed *in forma pauperis* ("IFP") should be denied by the Court and, upon review of the complaint, that this action be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9. Further, Magistrate Judge Baxter recommended that if the Court approves his report, the Court should certify that any appeal from this matter will not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See id.*

Regarding Plaintiff's complaint, Magistrate Judge Baxter's Order and ReportRecommendation recommends that because there is no indication that either Defendant acted under "color of state law," and because there are no allegations that either or both Defendants "conspired" with any state actors to bring this action under section 1983, Plaintiff's complaint should be dismissed. *See* Dkt. No. 5 at 5.

Regarding Plaintiff's claim that Defendants violated New York Penal Law by offering false documents for filing, tampering with public records, and falsifying business records, Magistrate Judge Baxter recommended that because there is no private right of action to enforce either state or federal criminal statutes, Plaintiff is barred from bringing a claim to enforce these provisions of the New York State Criminal Law. *See* Dkt. No. 5 at 6.

Accordingly, Magistrate Judge Baxter recommended this Court hold that, due to Plaintiff's failure to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, combined with the courts inability to determine what venue might be appropriate, Plaintiff's motion for IFP should be denied, and Plaintiff's complaint should be dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). *See* Dkt. No. 5 at 9.

In his "objections" to Magistrate Judge Baxter's Order and Report–Recommendation, Plaintiff simply provides the Court with language from various cases discussing various types of objections and the Court's authority to review unpreserved errors. *See* Dkt. Nos. 14, 15.

**III. DISCUSSION**

## A. Review of a magistrate judge's decision

**\*2** If a party files specific objections to a magistrate judge's report-recommendation, the district court performs a *"de novo* determination of those portions of the report of specified proposed findings or recommendations to which objections is made." 28 U.S.C. § 636(b)(1) (2006). However, if a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that were presented] to the magistrate judge," the court simply reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). At the conclusion of the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## B. *In Forma Pauperis* application

In order for a plaintiff to proceed without payment of any fees, he must first meet the financial criteria for IFP status. *See* 28 U.S.C. § 1915(a)(1). The plaintiff must submit an affidavit, including a statement of all assets, establishing his inability to pay the filing fee of $350.00. *See id.* Here, Plaintiff submitted a standard IFP application form, but answered only some of the relevant questions. Furthermore, while Plaintiff is incarcerated and has filed a motion to proceed IFP, his application states that, in the past twelve months, he has had income from "[b]usiness, profession or other self employment," and has "millions of dollars" in "cash, checking or savings accounts." *See* Dkt. No. 2 at ¶¶ 3, 4. Plaintiff, however, does not answer the question that asks him to "describe the source of money and state the amount received and what you expect you will continue to receive ." *See id.* at ¶ 3. Plaintiff answers "yes" to the questions asking whether he owns "real estate, stocks, bonds, securities, other financial instruments, automobile or any other assets." *See id.* at ¶ 5. Once again, however, Plaintiff does not complete the question by describing the property and stating its value. *See id.* Lastly, the form indicates that Plaintiff only has $9.60 in his prison account, and that during the last six months prior to this application, the average balance in his prison account was $4.03. *See* Dkt. No. 2 at 2.

If Plaintiff's claims are true and he does in fact have millions of dollars and real estate or other valuable property, then he cannot meet the financial requirements for proceeding IFP. Generally, when plaintiff has failed to properly complete the IFP request, the court will deny IFP without prejudice and allow plaintiff to resubmit the form with proper information.

However, in this case, based upon the inadequacy of Plaintiff's responses, combined with his failure to state a plausible cause of action and the fact that amendment would be futile as discussed below, even if Plaintiff met the financial requirements for IFP, the Court would still find dismissal of this action to be proper.

## C. Sufficiency of the complaint

### 1. Legal Standard

**\*3** In addition to determining whether Plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

### 2. Application

#### a. Color of state law

Plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. To state a claim under section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of her rights or privileges as secured by the Constitution of the United States. *See Annis v.*

County of Westchester, 136 F.3d 239, 245 (2d Cir.1998). Under extremely limited circumstances not alleged here, private actors, such as Defendant, may be held liable under section 1983. *See White v. Monarch Pharmaceuticals, Inc.,* No. 08–CV–0430, 2009 WL 3068217, \*1 (2d Cir. Sept. 28, 2009); *see also Rendell—Baker v. Kohn,* 457 U.S. 830, 838–42 (1982). The law does not reach private conduct, no matter how "discriminatory or wrongful." *Annis,* 136 F.3d at 245 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)).

In the present matter, Plaintiff names two executives of Chase as Defendants. Along with being very difficult to determine what these Defendants allegedly did to Plaintiff, there is no indication that either Defendant acted under color of state law. Moreover, the complaint does not allege or suggest that Defendants conspired with a state actor to violate his constitutional rights. Further, Plaintiff does not allege any conduct attributable to either Defendant sufficient to establish

their personal involvement in any alleged constitutional deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted).

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss the complaint.

### b. Criminal statutes

Plaintiff states in the "Causes of Action" section of his complaint that Defendants violated the New York Penal Law regarding falsifying business records, tampering with public records, and offering false documents for filing. *See* Dkt. No. 1 (citing N.Y. PENAL LAW §§ 175.10, 175.25, and 175.35). Even if this is true, however, there is no private right of action to enforce either state or federal criminal statutes. *See Abrahams v. Incorporated Village of Hempstead,* No. 08–CV–2584, 2009 WL 1560164, *8 (E.D.N.Y. June 2, 2009) (holding that dismissal of civil suit for perjury was proper because there is no private right of action for perjury under New York Law). Therefore, even assuming, *arguendo,* that Defendants violated some criminal statutes, Plaintiff may not bring a claim based on those statutes to enforce New York Criminal Law.

**\*4** As such, Magistrate Judge Baxter correctly recommended the Court find that Plaintiff has failed to allege a plausible cause of action.

### c. Venue

Venue in federal-question cases is generally determined by 28 U.S .C. § 1391(b) which provides that

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial district in which any defendant may be found, if

there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). In this case, one of the Defendants is listed with a Houston, Texas address, while the other Defendant is listed as having a New York City address. *See* Dkt. No. 1 at ¶¶ 3(a) and (3)(b). Thus, neither of the Defendants reside, or are located, in the Northern District of New York. Plaintiff is incarcerated at Southport Correctional Facility, located in the Western District of New York. Therefore, since both Plaintiff and one of the Defendants are New York residents, this case could clearly not be brought as a diversity action. Moreover, under Plaintiff's section 1983 claim, venue is not proper in the Northern District of New York. All Defendants do not reside in the same state, neither Defendant is located in this district, and the complaint does not allege any conduct that occurred in the Northern District of New York.

Under 28 U.S.C. § 1406, a district court faced with a case brought "laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has suggested that "a district court should not dismiss for improper venue on its own motion except in extraordinary circumstances." *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369 (2d Cir.1966).

In the present matter, the Court finds and agrees with Judge Baxter's Order and ReportRecommendation that this case presents precisely the extraordinary circumstances making it proper for the Court to dismiss for improper venue *sua sponte.*

### d. Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

**\*5** Here, the Court agrees with Magistrate Judge Baxter that any attempt by Plaintiff to amend his complaint would be futile. As discussed, although Plaintiff alleges "due process violations," section 1983 does not permit such actions to be brought against private individuals absent some involvement by the state. Moreover, Plaintiff does not have the right to enforce New York State criminal statutes.

Based on the foregoing, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should dismiss Plaintiff's complaint with prejudice.

### IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report–Recommendation, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Baxter's August 7, 2012 Order and Report–Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further **ORDERS** that Plaintiff's application to proceed *in forma pauperis* is **DENIED;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii); and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1789593

---

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 63 of 229

Foskey v. Corporate State of New York, Not Reported in Fed. Supp. (2022)

2022 WL 3228271
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Edward FOSKEY, Plaintiff,

v.

The CORPORATE STATE OF NEW YORK, Kathy
Hochul, as an individual and as Governor of the
Corporate State of New York; County of Nassau,
Bruce Blakeman, as an individual and as Nassau
County Executive Director; Maureen O'Connell, as
an individual and as Nassau County Clerk; Nassau
County Traffic & Parking Violations Agency, Paul L.
Meli, as an individual and as Nassau County Traffic
& Parking Violations Agency Executive Director,
Nassau County Red Light Division, Defendants.

22-CV-2546(GRB)(ARL)
|
Signed August 10, 2022

**Attorneys and Law Firms**

Edward Foskey, Merrick, NY, Pro Se.

**ORDER**

GARY R. BROWN, United States District Judge:

 **\*1** Before the Court is the renewed application to proceed
*in forma pauperis* filed by *pro se* plaintiff Edward Foskey
("Plaintiff") in support of his complaint against the Corporate
State of New York ("NY State"), Governor Kathy Hochul
("Gov. Hochul"), the County of Nassau ("Nassau County"),
Nassau County Executive Bruce Blakeman ("Blakeman"),
Nassau County Clerk Maureen O'Connell ("O'Connell"),
the Nassau County Traffic & Parking Violations Agency
("NCTPVA") and its Executive Director, Paul L. Meli ("Meli"
and collectively, "Defendants"). *See* Docket Entry "DE" 1, 6.

Upon review, the Court finds that Plaintiff is qualified by his
financial status to commence this action without prepayment
of the filing fee. Accordingly, Plaintiff's renewed application
to proceed IFP (DE 6) is granted. However, for the reasons
that follow, Plaintiff's claims brought pursuant to 18 U.S.C.
§§ 241, 242, and 1341 are dismissed pursuant to 28 U.S.C.
§ 1915 (e)(2)(B). Plaintiff's remaining claims against are

dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)
(2)(B).

**BACKGROUND**

**1. Summary of the Complaint**
*Pro se* Plaintiff commenced this action by filing a complaint
against the Defendants seeking to challenge his receipt of
red light camera tickets on June 3, 2020 and July 7, 2020
within Nassau County. *See* Compl., DE 1 *generally*. Plaintiff
alleges that the purpose of the tickets is "to extort $174.00
and other fees from plaintiff to generate revenue for their
corrupt, unethical, and unconstitutional business." *Id.* at 2, ¶
2. According to the complaint, Plaintiff received "se[ve]ral
notices in the mail from Nassau County, NY Red Light
Camera Division[,] to appear at [the] Nassau County Traffic
& Parking Violations Agency, and when the plaintiff did not
show up for the extortion attempt, the defendant's [sic] started
harassing and threatening the plaintiff through the United
States Postal Service." *Id.* at 3, ¶ 5. Plaintiff complains that
the notices "threaten[ed] to suspend the plaintiff['s] driving
privileges, seize[ ] his assets, garnish his wages, levy his
bank account, and immobilize[ ] his automobile. *Id.* Further,
Plaintiff alleges that "[t]he defendants conspired to oppress,
threaten, and intimidate the plaintiff." *Id.* at 4, ¶ 7(A).

As a result, Plaintiff purports to allege claims against all of the
Defendants [1] pursuant to 18 U.S.C. §§ 241, 242, 1341, 1918,
1961, and 42 U.S.C. § 1983. *Id.* ¶¶ 4, 7-9, 25. Plaintiff also
alleges that the Defendants have violated New York Penal
Law § 195.00. *Id.* ¶ 22. Plaintiff seeks to recover a damages
award "in the sum of $1,000,000.00 for official misconduct,
violation of oath of public office, infringing on the plaintiff
freedom of movement, racketeering, extortion, harassment,
malicious conduct, misrepresentation, abuse of authority,
Constitutional Protected Rights violation, defamation of
character, diminished quality of life violation, conspiracy,
fraud, punitive damages for their outrageous cruel conduct,
mental anguish, such as anxiety, insomnia, depression,
nervousness, fearfulness, and for sch other relief as this Court
may deem proper." *Id.* ¶ 27.

**LEGAL STANDARDS**

 **\*2** The Second Circuit has established a two-step procedure
wherein the district court first considers whether plaintiff
qualifies for *in forma pauperis* status, and then considers the

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 64 of 229

Foskey v. Corporate State of New York, Not Reported in Fed. Supp. (2022)

merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### 1. *In Forma Pauperis*

Upon review of the renewed IFP application (DE 6), the Court finds that plaintiff is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the application to proceed IFP is granted.

### 2. Sufficiency of the Pleadings

As Judge Bianco summarized,

A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them " 'to raise the strongest arguments that [they] suggest [ ].' " *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, ––– U.S. ––––, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).

Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011).

While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

It appears that Plaintiff seeks to invoke this Court federal question subject matter jurisdiction by claiming the Defendants have violated various federal statutes. The Court addresses these claims below.

### I. There is No Private Right of Action Under the Criminal Statutes: 18 U.S.C. §§ 241, 242, 1341, and 1918 [2]

**\*3** Insofar as Plaintiff seeks to invoke this Court's federal question subject matter jurisdiction by relying upon Sections 241, 242, 1341, and 1918 of Title 18 of the United States Code, such reliance is misplaced. "As a general matter ... crimes are prosecuted by the government, not by private parties." *Hill v. Didio*, 191 F. App'x 13, 15 (2d Cir. 2006) (citing *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)). Thus, private citizens, such as Plaintiff, lack standing to bring criminal charges or to otherwise initiate federal criminal proceedings. *See*, *e.g.*, *El Bey v. Dogdig*, No. 22-CV-0091 (LTS), 2022 WL 784035, at *2 (S.D.N.Y. Mar. 15, 2022), *motion for relief from judgment denied*, No. 1:22-CV-0091 (LTS), 2022 WL 2015524 (S.D.N.Y. June 2, 2022), and *motion for relief from judgment denied*, No. 1:22-CV-0091 (LTS), 2022 WL 2442433 (S.D.N.Y. July 1, 2022) ("Plaintiff cannot initiate the arrest and prosecution of an individual or other entity in this court because 'the decision to prosecute is solely within the discretion of the prosecutor.' ") (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981)).

Indeed, none of these criminal statutes provide a private cause of action. *See*, *e.g.*, *Walker v. Wuchte*, No. 22-CV-1532(HG) (AYS), 2022 WL 2161180, at *2 (E.D.N.Y. June 15, 2022) (dismissing *pro se* plaintiff's claims brought pursuant to 18

Foskey v. Corporate State of New York, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 65 of 229

U.S.C. §§ 241-242 as frivolous because there is no private cause of action) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *also citing Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) ("[C]laims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242 ... are not cognizable, as federal criminal statutes do not provide private causes of action."); *Lodrini v. Sebelius*, No. 14-CV-3137, 2014 WL 2446073, at *4 (E.D.N.Y. May 29, 2014) (same); *Buczek v. Bruce*, No. 09-CV-1129S, 2011 WL 1899769, at *5 (W.D.N.Y. May 19, 2011) (dismissing, *inter alia*, plaintiff's claims pursuant to 18 U.S.C. § 1918) (citing *Prof'l Air Traffic Controllers Org. (PATCO) v. U.S. Dept. of Treasury*, 529 F. Supp. 614, 616 (D.C. Minn. 1982)) (plaintiff has no standing to enforce criminal penalties under 18 U.S.C. § 1918); *Morgan*, 2022 WL 1571147, at *2 ("There is no private right of action [ ] under this federal criminal statute, 18 U.S.C. § 1341") (citing *Off. Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989) (noting that plaintiff "alleged the claim 'ar[ose] under the provisions of,' *inter alia*, the Mail Fraud Act, 18 U.S.C. §[ ] 1341 [ ], although the act do[es] not provide a private right of action"); *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713 (2d Cir. 2019) ("[T]here is no private cause of action under the federal mail fraud statutes.")). Accordingly, Plaintiff's claims brought pursuant to 18 U.S.C. §§ 241, 242, 1918, and 1341, as well as New York Penal Law § 195.00 are not plausible, are frivolous, and are thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## II. Eleventh Amendment Immunity

It is well-established that:

> [A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

**\*4** *Murphy v. Spaulding*, No. 20-CV-9013 (KMK), 2022 WL 294552, at *4 (S.D.N.Y. Feb. 1, 2022); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). "This prohibition

extends to the [official capacity] claims against the [ ] [Governor], as bringing a suit against a state employee in her official capacity 'effectively render[s] [it] a suit against the State' itself." *Hall v. Salaway*, No. 20-CV-4651(GRB)(AKT), 2021 WL 826169, at *5 (E.D.N.Y. Mar. 3, 2021) (quoting *KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013)) (add'l citation omitted). Given that New York state has not waived its Eleventh Amendment immunity, plaintiff's Section 1983 claims against NY State and Gov. Hochul in her official capacity are not plausible and are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B).

## III. Lack of Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (internal quotations marks omitted). "[B]ald assertions and conclusions of law" are insufficient to establish personal involvement. *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). Moreover, an individual will not be held liable by virtue of his or her supervisory position alone. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Rather, as the Second Circuit Court of Appeals recently made clear, "there is no special rule for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order).

Here, it is apparent that Plaintiff seeks to impose liability upon Gov. Hochul, Blakeman, O'Connell, and Meli solely because of the supervisory positions they hold. Indeed, Plaintiff alleges that "[a]s Governor of the Corporate State of New York, Kathy Hochul is responsible (liable) for their subdivision, Municipality, Nassau County and their criminal activities." Compl., DE 1 at 7, ¶ 23. Further, Plaintiff alleges that Blakeman, "[a]s Executive Director of Nassau County ... is responsible for overseeing and managing Nassau County day to day affairs.... [and that the NCTPVA is run by Paul L. Meli." *Id.* at ¶ 23(A). Plaintiff also alleges that O'Connell "is custodian of Nassau County funds and financial record keeping...." Apart from these allegations, there are no factual allegations of conduct or inaction attributable to any of these Defendants. Accordingly, because Plaintiff has not alleged their personal involvement, his Section 1983 claims against

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 66 of 229

Foskey v. Corporate State of New York, Not Reported in Fed. Supp. (2022)

Gov. Hochul, Blakeman, Meli and O'Connell are not plausible and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## IV. Lack of a Constitutional Deprivation

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

**\*5** 42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id.*

Here, Plaintiff's Section 1983 claim is premised on his claimed deprivation of "due process of law under the Fifth Amendment." Compl., DE 1 at 3, ¶ 6. Given Plaintiff's *pro se* status, the Court liberally construes such claim as properly brought pursuant to the Fourteenth Amendment. *See, e.g., Jackson v. Wylie,* No. 22-CV-0139(MAD)(CFH), 2022 WL 2595318, at \*2 (N.D.N.Y. July 8, 2022) ("As the Fifth Amendment provides due process protections against the actions of the federal government and its employees, claims against state employees and agencies do not give rise to a Fifth Amendment violation.") (citing U.S. Const. amend. V); *see also Dusenbery v. United States,* 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *Poe v. Ullman,* 367 U.S. 497, 540 (1961) (explaining that prohibitions "against

the deprivation of life, liberty or property without due process of law" set forth in Fourteenth Amendment are applicable to state government and same prohibitions in Fifth Amendment are applicable to "the Federal Government"); *Marvin v. Peldunas,* No. 21-CV-1824. 2022 WL 2125851, at \*1 (2d Cir. June 14, 2022) ("The Fifth Amendment's Due Process Clause states that no person shall "be deprived of life, liberty, or property, without due process of law," and the Fourteenth Amendment's Due Process Clause mirrors this language. U.S. Const. amends. V, XIV § 1.").

To plausibly state a claim under Section 1983 for denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky,* 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460 (1989)). Procedural due process generally requires, at a minimum, that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003). Here, as Plaintiff acknowledges, he "received several notices in the mail from Nassau County, NY Red Light Camera Division to appear at [the] Nassau County Traffic & Parking Violations Agency" and that "Plaintiff did not show up." Compl., DE 1 at 3, ¶ 5. Indeed, Plaintiff has annexed to his complaint copies of the notice he received apprising him of the hearing date, including the consequence of nonappearance. *See* Compl., DE 1, at Ex. A. Further, Plaintiff received a copy of the "Hearing Notice of Determination", which he apparently intentionally ignored, and then a "Delinquent Notice of Liability" followed. *Id.* Plaintiff then received a "Final Notice – Unpaid Notice of Liability" which he also ignored. *Id.* As is readily apparent, Plaintiff was afforded multiple opportunities to appear and elected to forego his opportunities to be heard after receiving notice. Thus, Plaintiff has not plausibly alleged a procedural due process claim and it is thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). [3]

**\*6** "To bring a substantive due process claim, a plaintiff must plead (1) the deprivation of a constitutional right, and (2) state action that 'was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Carter v. Campanelli,* No. 22-CV-2702(AMD)(LB), 2022 WL 1667022, at \*2 (E.D.N.Y. May 25, 2022) (quoting *Hurd v. Fredenburgh,* 984 F.3d 1075, 1087 (2d Cir. 2021) (*add'l* citation omitted)). Here, Plaintiff's conclusory allegations do not satisfy either prong. *See* Compl. DE 1, *in toto.* Even

affording the *pro se* complaint a liberal construction, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), there are simply no facts from which the Court could reasonably find Plaintiff has been deprived of any constitutional right nor that any alleged state action shocks the contemporary conscience. Thus, Plaintiff has not plausibly alleged a substantive due process claim either. In the absence of any constitutional deprivation, Plaintiff's Section 1983 claim fails as a matter of law and is thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). [4]

### V. **Plaintiff Fails to State a Claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO")**

The federal RICO statute provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962" of the RICO Act. 18 U.S.C. § 1964(c). To state a plausible RICO claim, a plaintiff must allege:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.

*Williams v. Affinion Grp.*, LLC, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. § 1962(a)-(c). Because " 'the core of a RICO civil conspiracy is an agreement to commit predicate [RICO] acts,' such a complaint, 'at the very least, must allege specifically such an agreement.' " *Wolhendler v. Goldberg*, No. 19-CV-0457, 2020 WL 5658790, *2 (E.D.N.Y. Sept. 23, 2020) (quoting *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014)). Thus, "a RICO conspiracy claim will be dismissed where the plaintiff alleges no facts to show specifically that the defendants had any meeting of the minds in the

alleged violations." *Id.* (internal quotation marks and citation omitted). "Conclusory allegations that the defendants 'agreed to commit' the violations are insufficient." *Id.* (quoting *F.D. Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2002)).

Under no possible interpretation of the facts has Plaintiff plausibly alleged any predicate acts, much less a pattern of RICO activity, nor does he sufficiently allege the existence of a RICO enterprise that affects interstate or foreign commerce. *See* Compl., DE 1 *in toto*. Further, wholly absent are any factual allegations from which the Court could reasonably construe an agreement among the Defendants to commit RICO violations. Rather, Plaintiff alleges, in conclusory fashion, that the Defendants all conspired against him. *See* Compl., DE 1 at 4, ¶¶ 7(A), 24-25. Accordingly, Plaintiff's RICO claim is not plausible and is thus dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

### CONCLUSION

Based on the foregoing, Plaintiff's renewed application to proceed IFP is granted. However, the complaint is dismissed in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B). More specifically, Plaintiff's claims brought pursuant to 18 U.S.C. §§ 241, 242, and 1341 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's remaining claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). The Clerk of the Court is respectfully requested to enter judgment accordingly and to close this case.

**\*7** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3228271

---

**Footnotes**

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 68 of 229

Foskey v. Corporate State of New York, Not Reported in Fed. Supp. (2022)

1    Notably, apart from the caption and the identification of parties sections of the complaint, the only reference to any particular defendant is set forth in paragraph 23(A)-(B) wherein Plaintiff alleges that Gov. Hochul, Blakeman, Meli, and O'Connell hold supervisory positions within New York State and Nassau County, respectively, and, as such are aware of and responsible for the alleged unlawful practices. *See* Compl. DE 1 *in toto* and at 7, ¶ 23.

2    Similarly, to the extent that Plaintiff seeks to recover damages for "official misconduct" pursuant to N.Y. Penal Law § 195 (Compl. DE 1 at ¶ 22), "[a]s a private citizen [ ]he lacks standing to bring criminal charges under New York Penal law § 195.00 or any other criminal statute in federal court." *Beckman v. Aetna Health Ins.*, No. 20-CV-3635(RRM)(AKT), 2021 WL 101112, at *2 (E.D.N.Y. Jan. 11, 2021).

3    Moreover, deprivation of property by a state actor will not support a due process claim redressable under § 1983 if "adequate state post-deprivation remedies are available." *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (dismissing deprivation of property claim under § 1983 because other state remedies were available)).

4    As such, any Section 1983 claim against Nassau County is likewise dismissed. *Marvin v. Peldunas*, No. 21-CV-1824, 2022 WL 2125851, at *2 (2d Cir. June 14, 2022) ("[T]here is no municipal liability where, as here, there is no underlying violation.") (citing *Matican v. City of New York*, 524 F.3d 151, 154 (2d. Cir. 2008)).

---

**End of Document**                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 5183205

Only the Westlaw citation is currently available.

United States District Court, S.D. Ohio, Western Division.

Kattie SHERROD ESTATE,

Leyah Yisrael, Trustee, [1] Plaintiff,

v.

Kathleen MADDEN, et al., Defendants.

Case No. 1:24-cv-651

|

Signed December 20, 2024

**Attorneys and Law Firms**

Leyah Yisrael, Cincinnati, OH, Pro Se.

## REPORT AND RECOMMENDATION

Karen L. Litkovitz, United States Magistrate Judge

**\*1**  Plaintiff, a resident of Cincinnati, Ohio, has filed a pro se civil rights complaint under 42 U.S.C. § 1983 against the following defendants: Kathleen C. Madden d/ b/a Ohio Department of Administrative Services; Judge Patrick Dinkelacker, Hamilton County Common Pleas Court; Hamilton County Prosecutor's Office, Andrew Hasenberg, County Attorney; Hyde Park Police Station - District 2, Officer Jeffrey Ertel; Hamilton County Public Defender's Office, Angela Glaser, Attorney; Hamilton County Justice Center, Charmaine McGuffey; Hamilton County Clerk of Court, Pavan Parikh; Hamilton County Recorder's Office, Scott Crowley, County Recorder's Clerk; Hamilton County Probation Department, Ella Silverman, Officer; Perrin March and Diana T. March, Previous Owners of 2672 Grandin Place; Quincy Chloe LLC, Current owner of 2672 Grandin Place; and Binnix Bail Bondsman Office. (Doc. 1-1). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is now before the Court for a *sua sponte* review of the complaint to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

## Screening of Complaint

### A. Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915 (e)(2)(B)(ii). A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e) (2)(B)(ii)).

**\*2**  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s] devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

**B. Plaintiff's Complaint**

Plaintiff alleges numerous violations of her constitutional rights stemming from her arrest and prosecution in *State of Ohio v. Kattie L. Sherrod, aka Leyah Kayel Yisrael*, Nos. 24CRA1818, B2400576 (Hamilton County, Ohio Court of Common Pleas). On February 13, 2024, plaintiff was indicted on one count each of burglary, breaking and entering, attempted theft, forgery, and tampering with records. Plaintiff pled guilty to breaking and entering and to tampering with records on October 23, 2024. On November 20, 2024, plaintiff was sentenced to an aggregate term of 36 months imprisonment in the Ohio Department of Corrections. *See State of Ohio v. Kattie L. Sherrod, aka Leyah Kayel Yisrael*, No. 24CRA1818 (Hamilton County, Ohio Court of Common Pleas) (available by name or case number search at https://www.courtclerk.org/records-search (last accessed Dec. 20, 2024)). *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)) (courts may take judicial notice of court records available online to the public).

Plaintiff filed an original complaint (Doc. 1-2) and a "corrected" complaint (Doc. 1-4) in this federal court on November 13, 2024, one week prior to her state court sentencing. The Court construes the "corrected" complaint as the operative complaint in this matter.

Plaintiff's complaint alleges that Judge Dinkelacker imposed a $100,000 straight bond "without valid procedural justification, resulting in 55 days of incarceration and 88 days of electronic monitoring"; Sheriff Charmaine McGuffey "perpetuated wrongful imprisonment by enforcing

an unreasonably high bond"; Officer Jeffrey Ertel "filed charges" against plaintiff without probable cause leading to her detention; Hamilton County Probation Officer Ella Silverman "imposed unnecessary electronic monitoring" causing plaintiff headaches and numbness; Hamilton County Prosecutor Andrew Hasenberg "filed unsupported charges of breaking and entering, forgery, and tampering with records"; Hamilton County Recorder Scott Crowley "refused to process critical documents for the Estate, including the land patent and quit claim deed"; Public Defender Angela Glaser "coerced Leyah Yisrael into a plea deal under threat of immediate jail time"; and Perrin and Diana March and Quincy Chloe LLC "filed speculative charges to prevent the Estate from securing property rights." (Doc. 1-4 at PAGEID 133-137). As relief, plaintiff seeks monetary and injunctive relief.

**C. Resolution**

It appears the bulk of plaintiff's complaint concerns alleged misconduct occurring during the state criminal proceedings that resulted in plaintiff's conviction and incarceration. For the reasons that follow, the complaint must be dismissed for failure to state a claim for relief or because the defendants are immune from suit.

**\*3** Plaintiff's claims challenging the validity of her conviction and sentence in the Hamilton County Court of Common Pleas should be dismissed. These include plaintiff's claims against defendants Ertel, Hasenberg, and Glaser. To the extent plaintiff seeks relief in the form of an immediate or speedier release from imprisonment, her sole federal remedy is a petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 *after* she has exhausted her state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Hadley v. Werner*, 753 F.2d 514 (6th Cir. 1985).

Furthermore, to the extent that plaintiff seeks money damages on the basis of an allegedly unconstitutional conviction or sentence, her claims are barred from review by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *See also Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005); *Schilling v. White*, 58 F.3d 1081, 1085-86 (6th Cir. 1995); *cf. Edwards v. Balisok*, 520 U.S. 641, 643 (1997). In *Heck*, the Supreme Court held that a civil action under § 1983 cannot proceed if the action serves to undermine a criminal conviction not reversed on appeal or vacated by expungement or by writ of habeas corpus. *Heck*, 512 U.S. at 486-87. By challenging the validity of the charges and voluntariness of her guilty plea, plaintiff seeks to call those convictions into question. Because plaintiff does not allege that her convictions have

been reversed on appeal or vacated by expungement or by writ of habeas corpus, plaintiff's claims challenging the convictions are barred by *Heck*.

Judge Dinkelacker is immune from suit in both his official and individual capacity. A claim against Judge Dinkelacker in his official capacity as a judge of the Hamilton County Court of Common Pleas is the same as a claim against the State of Ohio. *See Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997) (concluding that an Ohio common pleas court was an arm of the state and a claim against a judge of that court was a claim against the state); *Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 331 (6th Cir. 2022) (identifying many decisions that agree that "the courts in a State's third branch of government count as arms of the State"). "Because official capacity suits against state officials are suits against their employer—the state—[the state's sovereign] immunity also extends to such officers in their official capacities." *Williams v. Parikh*, 708 F. Supp. 3d 1345, 1355 (S.D. Ohio 2023) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984) and *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

"There are three exceptions to a State's sovereign immunity" under the Eleventh Amendment: when Congress has abrogated it, when the State has consented to suit, or when the *Ex Parte Young* exception applies. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000) and *Ex parte Young*, 209 U.S. 123 (1908)). The first two exceptions do not apply here, as "Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983." *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020). The third exception (the *Ex Parte Young* exception) which allows some state officials to be sued in their official capacity for purely prospective injunctive relief, also does not apply. "That is because the *Ex parte Young* exception expressly prohibits injunctions directed toward state *judicial* officers regarding their adjudication of the cases and controversies put before them." *Williams*, 708 F. Supp. 3d at 1355 (citing *Ex Parte Young*, 209 U.S. at 163 (explaining that "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our government")) (emphasis in original). As no exception applies, all claims against Judge Dinkelacker in his official capacity are barred by the State of Ohio's sovereign immunity under the Eleventh Amendment and should be dismissed.

**\*4** The claims against Judge Dinkelacker in his individual capacity should also be dismissed. Section 1983 itself "bars injunctive relief against 'a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable.' " *Wright v. Finley*, No. 1:19-cv-819, 2021 WL 680243, \*4 (S.D. Ohio Feb. 22, 2021) (McFarland, J.) (quoting 42 U.S.C. § 1983). "Thus, the [§ 1983] statute generally prohibits suits for injunctive relief against judicial officers but provides exceptions for violations of declaratory decrees or the unavailability of declaratory relief,"—factors that plaintiff has not alleged here and do not otherwise appear to apply. *Id.* All claims for injunctive relief under § 1983 against Judge Dinkelacker in his individual capacity should therefore be dismissed with prejudice. *See Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016) (concluding that a district court "properly dismissed plaintiffs' claim [against a judicial officer] seeking injunctive relief, because the plain language of § 1983 allows suits for injunctions only after a litigant has sought a declaratory judgment").

Finally, the complaint should be dismissed against defendant Judge Dinkelacker in his individual capacity because judges are afforded absolute immunity from damages for acts they commit while functioning within their judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Pierson v. Ray*, 386 U.S. 547 (1967); *Barrett v. Harrington*, 130 F.3d 246, 255 (6th Cir. 1997). Judges retain absolute immunity from liability even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). *See also Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001); *King v. Love*, 766 F.2d 962 (6th Cir. 1985). Plaintiff's complaint alleges no facts to plausibly suggest that defendant Dinkelacker presided over a matter in which he lacked subject matter jurisdiction, and setting bond conditions is a function normally carried out by a judge. *See Wright v. Finley*, No. 1:19-cv-819, 2021 WL 680243, at \*3 (S.D. Ohio Feb. 22, 2021). Accordingly, the complaint against defendant Dinkelacker should be dismissed.

Sheriff McGuffey is likewise entitled to quasi-judicial immunity for enforcing Judge Dinkelacker's bond order by detaining plaintiff until she posted bond. "It is well established that judges and other court officers enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). "Quasi-judicial immunity

extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Quasi-judicial immunity does not depend on the actor who performed the function, but rather on the nature of the function being performed. *Id. See also Forrester v. White*, 484 U.S. 219, 229 (1988). Enforcing or executing court orders are intrinsically associated with judicial proceedings and qualify for quasi-judicial immunity. *Bush*, 38 F.3d at 847 (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986) (sheriff who enforced court order entitled to quasi-judicial immunity)); *Troyer v. Hershberger*, No. 5:11cv2536, 2012 WL 488251, at *7 (N.D. Ohio Feb. 14, 2012) (sheriff executing court-ordered sheriff's sale and court-ordered eviction entitled to quasi-judicial immunity). Therefore, defendant McGuffey is entitled to quasi-judicial immunity for enforcing a court order.

In addition, Hamilton County Probation Officer Ella Silverman is entitled to quasi-judicial immunity for enforcing Judge Dinkelacker's bond order to include electronic monitoring. "A probation officer is entitled to absolute quasi-judicial immunity from suit on claims that arise out of [her] activities to ensure that the plaintiff complies with the terms of court supervision." *Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) (citing *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (per curiam); *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012); *Loggins v. Franklin County*, 218 F. App'x 466, 476 (6th Cir. 2007)). To the extent plaintiff alleges the imposition of electronic monitoring "disregarded medical advice" and caused her headaches and numbness, plaintiff has failed to allege any facts whatsoever giving rise to a plausible inference that defendant Silverman "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.' " *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)). In the absence of any such allegations, plaintiff's claims against defendant Silverman should be dismissed. [2]

**\*5** Plaintiff also alleges that defendant Officer Ertel filed charges against her without probable cause. Plaintiff's guilty plea estops plaintiff's Fourth Amendment claim against defendant Ertel. *See Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007) ("Plaintiffs are estopped by their pleas in state court from now challenging the reasonableness

of their arrest in the instant § 1983 action."); *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (No contest pleas, finding of guilt, and imposition of fines "estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause."). *See also Zar v. Payne*, 760 F. Supp. 2d 779, 784 (S.D. Ohio 2011) ("The Sixth Circuit has ruled that pleas of guilty or no contest in a state court preclude a person from later bringing a § 1983 action alleging unlawful arrest in violation of the Fourth Amendment.") (citing *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988)). Therefore, the complaint against defendant Ertel should be dismissed.

Plaintiff's claim that prosecutor Hasenberg "filed unsupported charges of breaking and entering, forgery, and tampering with records" (Doc. 1-2 at PAGEID 7) should also be dismissed. Prosecutors are "absolutely immune from liability" for actions that are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (citation and quotation marks omitted); *see also Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity"). "The analytical key to prosecutorial immunity is whether the actions in question are those of an advocate." *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 514 (6th Cir. 2019) (cleaned up). As plaintiff's claims against Hasenberg concern his role in filing criminal charges against her, Hasenberg is entitled to absolute immunity.

Plaintiff alleges defendant Crowley of the County Recorder's Office "refused to process critical documents for the Estate, including the land patent and quit claim deed, obstructing the Estate's right to secure its property. This misrepresentation of legal responsibilities caused financial harm and emotional distress from property instability." (Doc. 1-2 at PAGEID 8). [3] Plaintiff has failed to allege any facts showing a deprivation of constitutional or statutory rights to state a claim under § 1983. *See Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007). *See also Bey v. Sessler*, No. 23-3421, 2024 WL 2078564, at *3 (6th Cir. Feb. 29, 2024). Plaintiff also alleges defendant Crawley's actions amount to a state court claim of fraud. This federal Court has no diversity jurisdiction over plaintiff's state law fraud claim as plaintiff and defendant Crawley are both Ohio citizens. As there is no complete diversity of citizenship under 28 U.S.C. § 1332(a), the Court has no jurisdiction over this claim.

**\*6** Plaintiff's complaint also fails to state a claim for relief against her former defense attorney, defendant Glaser. In order to maintain an action under 42 U.S.C. § 1983, plaintiff must allege that the person sued acted under color of state law and that this conduct deprived plaintiff of some right secured by the Constitution or laws of the United States. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)). As a lawyer representing a client, defendant Glaser was not a state actor within the meaning of § 1983. *See Polk County v. Dodson*, 454 U.S. 312 (1981) (holding that public defender does not act under color of state law for purposes of § 1983); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir.2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); *McCord v. Bailey*, 636 F.2d 606, 613 (D.C.Cir.1979) (applying *Polk County* to retained criminal lawyers). Therefore, plaintiff's complaint fails to state a claim for relief under section 1983 against defendant Glaser.

Any official capacity claims brought against defendants Hasenberg, Glaser, McGuffey, Crowley, and Silverman must also be dismissed. An official capacity suit is generally "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against a defendant in his official capacity under § 1983 is equivalent to a suit against the local government entity. *Powers v. County of Lorain*, 259 F. App'x 818, 822, n.2 (6th Cir. 2008). Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Hafer*, 502 U.S. at 25 (citing *Graham*, 473 U.S. at 166) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

Plaintiff has not stated a viable claim against Hamilton County. In order to state a cognizable claim against the county defendant, plaintiff must "identify" the county custom or policy that allegedly resulted in a violation of her federal rights, "connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004); *see also Aladimi v. Hamilton Cnty. Justice Ctr.*, No. 1:09cv398, 2012 WL 292587, at \*7 (S.D. Ohio Feb. 1, 2012) (Bowman, M.J.) (Report & Recommendation), *adopted*, 2012 WL 529585

(S.D. Ohio Feb. 17, 2012) (Barrett, J.). No such allegations are contained in plaintiff's complaint. *Cf. Aladimi, supra*, 2012 WL 292587, at \*7 (quoting *Monell*, 436 U.S. at 690); citing *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 344 (6th Cir. 2007) (dismissing complaint against Hamilton County in the absence of any allegation indicating that that the plaintiff's constitutional rights were violated pursuant to a "policy statement, ordinance, regulation or decision officially adopted and promulgated" by the county).

Plaintiff also alleges that defendants Perrin and Diana March and Quincy Chloe, LLC "filed speculative charges to prevent the Estate from securing property rights." (Doc. 1-4 at PAGEID 137). It appears from the state court criminal complaint attached to plaintiff's federal complaint that the March defendants were the homeowners who reported a possible breaking and entering to the police and defendant Quincy Chloe LLC is the current property owner. These defendants are not state actors under Section 1983. "Reporting a crime to the police does not expose a private party to liability under § 1983." *Downing v. Life Time Fitness*, 483 F. App'x 12, 20 (6th Cir. 2012), *as amended*, (May 18, 2012) (citation omitted). "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions 'under color of law.' " *Moldovan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). Therefore, the complaint against defendants Perrin and Diana March and Quincy Chloe LLC should be dismissed.

**\*7** Finally, the complaint against the remaining named defendants should be dismissed. A plaintiff, even one proceeding pro se, must plead sufficient facts to show how *each defendant* allegedly violated plaintiff's rights. *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at \*6 (E.D. Mich. Oct. 5, 2020) (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrs. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004). Plaintiff fails to include any allegations about Kathleen C. Madden d/b/a Ohio Department of Administrative Services; Hamilton County Clerk of Court, Pavan Parikh; and Binnix Bail Bondsman Office in the complaint. Therefore, the complaint against these defendants fails to state a claim for relief.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis*

in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

**All Citations**

Slip Copy, 2024 WL 5183205

---

## Footnotes

1    Although plaintiff identifies herself as both an "estate" and "trustee," it is apparent from the complaint and attachments thereto that plaintiff is an individual who has been charged and convicted of a felony in *State of Ohio v. Kattie L. Sherrod, aka Leyah Kayel Yisrael*, No. 24CRA1818 in the Hamilton County, Ohio Court of Common Pleas.

2    State court records show that Judge Dinkelacker removed the requirement for electronic monitoring on September 19, 2024. *See State of Ohio v. Kattie L. Sherrod, aka Leyah Kayel Yisrael*, No. 24CRA1818 (Hamilton County, Ohio Court of Common Pleas) (available by name or case number search at https://www.courtclerk.org/records-search (last accessed Dec. 20, 2024)).

3    State court records show that at her arraignment, plaintiff was ordered to "stay away from the Recorder's Office—may file at Recorder's Office with leave of Court." (Entry of 3/1/2024). On June 20, 2024, Judge Dinkelacker ordered plaintiff to not to have any contact with individuals concerning any contact with the Hamilton County Recorder's office" and "to not file any documents with the Hamilton County Recorder's Office without leave of court." (Entry of 6/20/2024). *See State of Ohio v. Kattie L. Sherrod, aka Leyah Kayel Yisrael*, No. 24CRA1818 (Hamilton County, Ohio Court of Common Pleas) (available by name or case number search at https://www.courtclerk.org/records-search (last accessed Dec. 20, 2024)). To the extent defendant Crowley was enforcing these state court orders, he is entitled to quasi-judicial immunity for the reasons discussed above.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by Gerken v. Gordon, 2nd Cir., December 27, 2024

2024 WL 5001402
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daniel-Lee GERKEN, Plaintiff,

v.

Thomas GORDON, et al., Defendants.

1:24-CV-435 (MAD/CFH)
|
Signed December 6, 2024

**Attorneys and Law Firms**

DANIEL-LEE GERKEN, West Sand Lake, New York,
Plaintiff pro se.

### ORDER

Mae A. D'Agostino, United States District Judge:

#### I. INTRODUCTION

 *1 On March 28, 2024, Plaintiff Daniel-Lee Gerken
commenced this action, *pro se*, against Defendants Child
Support Magistrate Thomas Gordon, Clerk of the Rensselaer
County Family Court Erin Scott, Rensselaer County,
Jaqueline Devorak, the mother of Plaintiff's child, Attorney
for the Child Nancy Harding, and New York State Child
Support Processing Center. *See* Dkt. No. 1. Plaintiff alleges
that, pursuant to 42 U.S.C. § 1983, Defendants are conspiring
against him to violate his constitutional rights by defrauding
him and forcing him to pay child support. *See id.* Plaintiff
also submitted an application to proceed *in forma pauperis*
("IFP"). *See* Dkt. No. 2.

On October 29, 2024, Magistrate Judge Christian F. Hummel
issued a Report-Recommendation and Order granting
Plaintiff's IFP motion. *See* Dkt. No. 5. Magistrate Judge
Hummel also recommended dismissing Plaintiff's complaint
without prejudice and without leave to amend. *See id.* On
November 8, 2024, Plaintiff filed objections to the Report-
Recommendation and Order. *See* Dkt. Nos. 6, 7.

"Generally, when a *specific* objection is made to a portion
of a magistrate judge's report-recommendation, the Court
subjects that portion of the report-recommendation to a *de
novo* review." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677,
683 (N.D.N.Y. 2015) (citing FED. R. CIV. P. 72(b)(2); 28
U.S.C. § 636(b)(1)(C)). "To be 'specific,' the objection must,
with particularity, 'identify [1] the portions of the proposed
findings, recommendations, or report to which it has an
objection and [2] the basis for the objection.' " *Id.* (quoting
N.D.N.Y. L.R. 72.1(c)) (footnote omitted). "When only a
*general* objection is made to a portion of a magistrate judge's
report-recommendation, the Court subjects that portion of
the report-recommendation to only a *clear error* review."
*Id.* at 684 (citations omitted). "Similarly, when an objection
merely reiterates the same arguments made by the objecting
party in its original papers submitted to the magistrate judge,
the Court subjects that portion of the report-recommendation
challenged by those arguments to only a *clear error* review."
*Id.* (footnote omitted). After the appropriate review, "the
court may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge."
28 U.S.C. § 636(b)(1).

As Plaintiff is proceeding *pro se*, the Court must review
his complaint under a more lenient standard. *See Govan
v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003).
The Court must "make reasonable allowances to protect *pro
se* litigants from inadvertent forfeiture of important rights
because of their lack of legal training." *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983). Thus, "a document filed *pro se* is
'to be liberally construed,' and 'a *pro se* complaint, however
inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers.' " *Erickson v.
Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*,
429 U.S. 97, 106 (1976)). "Although the court has the duty
to show liberality towards pro se litigants, ... there is a
responsibility on the court to determine that a claim has some
arguable basis in law before permitting a plaintiff to proceed
with an action in forma pauperis." *Moreman v. Douglas*,
848 F. Supp. 332, 333-34 (N.D.N.Y. 1994) (internal citations
omitted).

#### II. DISCUSSION

**A. *Rooker-Feldman* Doctrine and Abstention Doctrines**
 *2 Magistrate Judge Hummel first discussed the application
of the *Rooker-Feldman* doctrine, *Younger* abstention, and
domestic relations abstention to subject matter jurisdiction.

*See* Dkt. No. 5 at 8-14. Magistrate Judge Hummel first noted that Plaintiff appears to be challenging a Rensselaer County Family Court child support order, which cannot be challenged in this Court pursuant to the *Rooker-Feldman* doctrine. *See id.* at 9. He next explained that if any state family court proceedings are still ongoing, *Younger* abstention would require the Court to decline to exercise subject matter jurisdiction. *See id.* at 9-10. Finally, Magistrate Judge Hummel commented that "courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child support proceedings." *Id.* at 12 (quotation omitted).

In his objections, Plaintiff contends that Article 6, Section 2 of the United States Constitution overrules the *Rooker-Feldman* doctrine. *See* Dkt. No. 6 at 7. Plaintiff does not address *Younger* or domestic relations abstention.

The Court finds no clear error in Magistrate Judge Hummel's discussion and application of the aforementioned doctrines. First, "[t]he Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court.' " *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *Id.* at 67-68 (quotation omitted).

Next, *Younger* demands that

> federal courts [ ] decline to exercise jurisdiction in three [ ] exceptional categories of cases: "First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain civil enforcement proceedings warrant[ ] abstention. Finally, federal courts [must] refrain[ ] from interfering with pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Trump v. Vance*, 941 F.3d 631, 637 (2d Cir. 2019), *aff'd and remanded*, 591 U.S. 786 (2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)). "*Younger* abstention is [ ] an 'exception to th[e] general rule' that 'a federal court's obligation to hear and decide a case is virtually unflagging,' ...

and the doctrine is also subject to exceptions of its own in cases of bad faith, harassment, or other 'extraordinary circumstances.' " *Id.* (quotations omitted). "[T]he *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." *Rivers v. McLeod*, 252 F.3d 99, 101-02 (2d Cir. 2001).

The Second Circuit, in *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), explained that "[a]lthough matrimonial actions may ordinarily be instituted in federal court on diversity grounds, the Supreme Court in *Barber v. Barber*, 62 U.S. [582, 584] (1859), went so far as to disclaim all federal subject matter jurisdiction for some classes of matrimonial actions." *Id.* This is known as the domestic relations exception to federal jurisdiction, *i.e.*, federal courts should not exercise jurisdiction over matrimonial actions brought under diversity grounds. "[H]owever, the scope of this matrimonial exception to federal jurisdiction is 'rather narrowly confined,' ... only 'where a federal court is asked to grant a divorce or annulment, *determine support payments*, or award custody of a child' does it generally decline jurisdiction pursuant to the matrimonial exception." *Id.* (quotations omitted) (emphasis added); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019) ("Although the domestic relations '*exception*' to subject matter jurisdiction ... does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does"). The abstention doctrine has been utilized across the country by federal courts removing themselves from considering a state court domestic relations matter. *See Deem*, 941 F.3d at 623 (collecting cases) (citing, *inter alia*, *DeMauro v. DeMauro*, 115 F.3d 94, 99 (1st Cir. 1997) ("[A]bstention by use of a stay may be permissible where a RICO action is directed against concealment or transfer of property that is the very subject of a pending divorce proceeding")).

**\*3** Here, *Younger* prevents this Court from interfering in ongoing family court matters to the extent that Plaintiff asks this Court to order the Rensselaer County Family Court and New York State Child Support Processing Center to take certain actions. *See* Dkt. No. 1 at 5; *see also Skillings v. City of New York*, No. 21-CV-3034, 2023 WL 8531493, *5 (E.D.N.Y. Jan. 19, 2023); *Dudley v. Hochul*, No. 5:24-CV-0048, 2024 WL 1906594, *5 (N.D.N.Y. May 1, 2024). Additionally, as to Plaintiff's request for monetary damages, "the domestic relations *exception* clearly does not apply to this case because it is 'before this Court on federal question jurisdiction, not diversity.' " *Deem*, 941 F.3d at 623 (quoting *Williams v. Lambert*, 46 F.3d 1275 (2d Cir.

1995)) (emphasis added). However, *abstention* is appropriate because Plaintiffs' complaint concerns family court disputes over child support payments. *See Cora v. Wright*, No. 1:24-CV-0263, 2024 WL 450247, *4 (S.D.N.Y. Feb. 5, 2024).

The Court, therefore, adopts this portion of the Order and Report-Recommendation. [1]

## B. Sovereign Immunity

Plaintiff seeks to sue the New York State Child Support Processing Center. *See* Dkt. No. 1. Magistrate Judge Hummel concluded that Plaintiff cannot sue the entity because it is protected by sovereign immunity as an arm of New York State. *See* Dkt. No. 5 at 14-17. Plaintiff argues in his objections that sovereign immunity does not apply because the Child Support Processing Center, along with the other Defendants, are attempting to cover up constitutional violations. *See* Dkt. No. 6 at 8.

Plaintiff has not presented any legal authority that contradicts Magistrate Judge Hummel's accurate analysis and conclusion concerning the application of sovereign immunity to the New York State Child Support Processing Center. "[T]he Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.' " *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). "[T]he United States Supreme Court has held that the States, and their agencies, are not 'persons' within the meaning of Section 1983." *Aron v. Becker*, 48 F. Supp. 3d 347, 366 (N.D.N.Y. 2014) (quoting *Will v. Michigan Dep't. of the State Police*, 491 U.S. 58, 71 (1989)).

Because New York has not waived its sovereign immunity, Magistrate Judge Hummel correctly concluded that Plaintiff's complaint against the New York State Child Support Processing Center, a state entity, is barred by the Eleventh Amendment. *See Grigoli v. 42 U.S.C. § 654(3) Child Support Enf't Div.*, No. 18-CV-3672, 2018 WL 2084172, *5 (S.D.N.Y. May 1, 2018); *Skalaban v. Dep't of Child. & Fams.*, 314 F. Supp. 2d 101, 106 (D. Conn. 2004). The Court adopts this portion of Magistrate Judge Hummel's Report-Recommendation and Order.

## C. Absolute Judicial Immunity

As to Plaintiff naming Support Magistrate Thomas Gordon as a Defendant, Magistrate Judge Hummel concluded that the claims are barred by judicial immunity and sovereign immunity. *See* Dkt. No. 5 at 17-22. Plaintiff argues in his objections that Defendant Gordon "loses [his] judicial immunity" because he has committed treason. Dkt. No. 6 at 9. As to sovereign immunity, Plaintiff contends that the acts underlying his complaint "are an attempt to cover for government officials acting outside their scope of authority" such that sovereign immunity does not apply. *Id.* at 7.

**\*4**  The Court agrees with Magistrate Judge Hummel that judicial and sovereign immunity bar Plaintiff's complaint against Defendant Gordon in his capacity as a Support Magistrate. "Absolute immunity for judges is 'firmly established' for acts 'committed within their judicial jurisdiction.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)). "Absolute immunity for a judge performing his or her judicial functions is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009)). "Entitlement to absolute immunity does not depend on the individual's title or on the office itself ...." *Id.* at 124 (citations omitted). "Judicial acts principally involve adjudication of particularized, existing issues." *Id.* "Judicial immunity is overcome in only two circumstances: (1) 'a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity'; and (2) 'a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.' " *McCluskey v. Roberts*, No. 20-4018, 2022 WL 2046079, *5 (2d Cir. June 7, 2022) (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)).

Plaintiff's allegations against Defendant Gordon stem entirely from adjudication of Plaintiff's child support case. *See* Dkt. No. 1 at 1-2; Dkt. No. 1-3 at 5. Although Plaintiff disagrees with the Defendant Gordon's decisions, the actions are entirely within the scope of the Support Magistrate's jurisdiction. Plaintiff has not presented more than conclusory allegations to establish that Defendant Gordon was acting absent all jurisdiction. Defendant Gordon is, therefore, entitled to absolute immunity. *See, e.g., King v. New York*

*State*, No. 23-CV-3421, 2023 WL 5625440, *4 (E.D.N.Y. Aug. 31, 2023); *Wilkins v. Soares*, No. 8:20-CV-00116, 2020 WL 5238598, *4 (N.D.N.Y. May 27, 2020); *Viola v. Bryant*, No. 3:17-CV-00853, 2017 WL 2676407, *4 (D. Conn. June 21, 2017); *Topolski v. Wrobleski*, No. 5:13-CV-0872, 2014 WL 2215761, *5 (N.D.N.Y. May 29, 2014).

Likewise, sovereign immunity protects Defendant Gordon from suit brought against him in his official capacity. The Second Circuit has recently reaffirmed the application of Eleventh Amendment sovereign immunity to New York State judges. *See Bythewood v. New York*, No. 22-CV-2542, 2023 WL 6152796, *1 (2d Cir. Sept. 21, 2023) ("We agree with the district court that [the] claims against the State of New York and the Judicial Defendants are barred by Eleventh Amendment sovereign immunity").

Therefore, the Court adopts this portion of the Report-Recommendation and Order.

### D. Quasi-Judicial Immunity

Magistrate Judge Hummel next reviewed the application of quasi-judicial immunity to Plaintiff's claims brought against Erin Scott, the Chief Clerk of the Rensselaer Family Court. *See* Dkt. No. 5 at 22. The Court finds no clear error in Magistrate Judge Hummel's conclusion that Defendant Scott is entitled to quasi-judicial immunity because the allegations against him relate solely to his function as an officer of the Rensselaer Family Court. *See id.* at 24; *see also Jackson v. Pfau*, 523 Fed. Appx. 736, 737-38 (2d Cir. 2013) (affirming dismissal of Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding that the "defendants were entitled to judicial immunity[ ] because [the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process"); *Gollomp*, 568 F.3d at 365; *Fishman v. Off. of Ct. Admin. New York State Cts.*, No. 18-CV-282, 2020 WL 1082560, *6 (S.D.N.Y. Mar. 5, 2020), *aff'd*, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021).

**\*5** Additionally, Defendant Nancy Harding, as the attorney for Plaintiff's child is entitled to quasi-judicial immunity. "A private actor may be afforded the absolute immunity ordinarily accorded judges acting within the scope of their jurisdictions if his role is 'functionally comparable' to that of a judge, ... or if the private actor's acts are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (quoting *Butz v. Economou*,

438 U.S. 478, 513, (1978); citing *Scotto v. Almenas*, 143 F.3d 105, 111012 (2d Cir. 1998); *Dorman v. Higgins*, 821 F.2d 133, 136-38 (2d Cir. 1987)) (additional quotation marks omitted). The Second Circuit has affirmed application of quasi-judicial immunity to a "law guardian and her director." *Yapi v. Kondratyeva*, 340 Fed. Appx. 683, 685 (2d Cir. 2009). This is because law guardians or attorneys for children serve "serve[ ] as an 'arm of the court,' or act[ ] as an 'integral part[ ] of the judicial process.' " *Holland v. Morgenstern*, 12-CV-4870, 2013 WL 2237550, *4 (E.D.N.Y. May 20, 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)). Because Defendant Harding was appointed by the court and performed court-related functions, she is also afforded quasi-judicial immunity. *See Cherner v. Westchester Jewish Cmty. Servs., Inc.*, No. 20-CV-8331, 2022 WL 596074, *4 (S.D.N.Y. Feb. 28, 2022), *aff'd*, No. 22-642, 2022 WL 17817882 (2d Cir. Dec. 20, 2022); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 WL 3733935, *7 (S.D.N.Y. Sept. 23, 2010), *aff'd*, 446 Fed. Appx. 330 (2d Cir. 2011); *Thomas v. Martin-Gibbons*, No. 19-CV-7695, 2020 WL 5026884, *7 (S.D.N.Y. Aug. 25, 2020). If Defendant Harding is not entitled to quasi-judicial immunity, then as explained in the Report-Recommendation and Order and below, she would not be considered a state actor and cannot be sued under § 1983.

### E. State Action

As to Ms. Harding and Jaquelin Devorak, the mother of Plaintiff's child, Magistrate Judge Hummel determined that they could not be held liable under § 1983 because they are not state actors. *See* Dkt. No. 5 at 25-28. In his objections, Plaintiff argues that he has sufficiently alleged state action because Defendant Devorak "used the coercive power of the state to effectively put Plaintiff in peonage in order to unjustly enrich herself in this case." Dkt. No. 6 at 9. He also contends that Defendant Harding has used "the state to compel and coerce Plaintiff into a Title VI-D consent contract with the private corporation known of State of New York Child Support." *Id.* at 10. Plaintiff's objections are conclusory and the Court adopts this portion of Magistrate Judge Hummel's Report-Recommendation and Order.

" 'Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action.' " *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). " 'A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to

show state action.' " *Id.* (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003)). " '[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." ' " *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)) (additional quotation omitted).

" 'To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.' " *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.' " *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Id.*

**\*6** As to Defendant Devorak, it is well-settled that " '[t]he fact that a private entity uses the state courts does not transform the private party into a state actor.' " *Rice v. City of New York*, 275 F. Supp. 3d 395, 403-04 (E.D.N.Y. 2017) (quoting *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 516 (S.D.N.Y. 2016)); *see also Malave-Sykes v. Endicott Police Dep't*, No. 3:23-CV-1215, 2023 WL 6847684, \*5 (N.D.N.Y. Oct. 17, 2023) (quotation omitted) ("[P]roviding false information to the police does not make a private individual a state actor and liable under § 1983' "); *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 Fed. Appx. 500 (2d Cir. 2012) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent"); *Milan v. Wertheimer*, 808 F.3d 961, 962-64 (2d Cir. 2015) (affirming dismissal of claims against children's grandmother for initiating protective services investigations because grandmother was not a state actor). Therefore, her use of the judicial system to obtain child support payments does not make her a state actor.

Assuming Defendant Harding is not entitled to quasi-judicial immunity for the sake of this analysis, she would not be considered a state actor insofar as the Second Circuit has explicitly held "that law guardians who act as 'attorney[s] for the child' are not state actors for the purposes of suits filed pursuant to § 1983." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015); *see also Dickerson v. Siegal*, No. 23-CV-3859, 2023 WL 6158833, \*4 (E.D.N.Y. Sept. 21, 2023).

Based on the foregoing, the Court finds no clear error in this portion of Magistrate Judge Hummel's Report-Recommendation and Order and adopts it, accordingly.

**F. Municipal Liability**

Magistrate Judge Hummel next recommended that Plaintiff's claims against Rensselaer County be dismissed because Plaintiff did not sufficiently allege any underlying constitutional violations, nor did he establish any policy or custom which caused a constitutional violation. *See* Dkt. No. 5 at 28-32. Plaintiff argues that child support is a Rensselaer County official policy which is being used to deprive Plaintiff of his rights. *See* Dkt. No. 6 at 10-11.

Magistrate Judge Hummel thoroughly set forth the legal background underlying municipal liability, which Plaintiff does not challenge. *See* Dkt. No. 5 at 28-32; *see also* Dkt. No. 6. As to the application of the legal framework, the Court agrees with Magistrate Judge Hummel that Plaintiff has not alleged a surviving underlying constitutional claim nor a county policy or custom.

The argument that child support is a municipal policy has been rejected by numerous courts. *See Sorenson v. Suffolk Cnty. Child Support Enf't Bureau*, No. 07-CV-03755, 2009 WL 580426, \*4 (E.D.N.Y Mar. 5, 2009); *Parent*, 786 F. Supp. 2d at 536; *Cannon v. NYS Comm'r of Soc. Servs.*, No. 19-CV-6493, 2019 WL 3743975, \*5 (S.D.N.Y. Aug. 7, 2019); *Bowen v. Gordon*, No. 1:24-CV-114, 2024 WL 2053155, \*3 (N.D.N.Y. Feb. 20, 2024); *Grigoli*, 2018 WL 2084172, at \*5. Thus, the Court agrees with Magistrate Judge Hummel and dismisses the complaint as against Rensselaer County.

**G. Conspiracy**

As to Plaintiff's conspiracy claim, Magistrate Judge Hummel also correctly concluded that Plaintiff failed to state a claim. *See* Dkt. No. 5 at 33-34. Magistrate Judge Hummel explained the requirements for stating a conspiracy claim and noted the high burden that pleading such a claim demands. *See id.* The Court finds no clear error in the conclusion that Plaintiff's complaint is too conclusory to support a conspiracy claim

particularly where he has failed to allege any underlying constitutional violation. This is because the only named Defendants are immune from suit or are not liable under § 1983. Accordingly, the Court dismisses Plaintiff's conspiracy claim. *See Cruz v. New York*, No. 5:17-CV-00510, 2017 WL 6021838, *20 (N.D.N.Y. Oct. 27, 2017); *Fariello v. Rodriguez*, 148 F.R.D. 670, 685 (E.D.N.Y. 1993), *aff'd*, 22 F.3d 1090 (2d Cir. 1994); *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208 (E.D.N.Y. 2010).

### H. Leave to Amend

**\*7** Magistrate Judge Hummel recommended denying Plaintiff leave to amend his complaint because a better pleading cannot cure the deficiencies as outlined in the Report-Recommendation and Order. *See* Dkt. No. 5 at 35.

" 'Sua sponte dismissal of *pro se* [ ] petitions which contain non-frivolous claims without requiring service upon respondents or granting leave to amend is disfavored by' " the Second Circuit. *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 27 (2d Cir. 2023) (quoting *Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)). "In the § 1983 context, such dismissals are 'inappropriate' – regardless of the merits – if the complaint alleges that '(1) the defendant was a state actor ... when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.' " *Id.* (quoting *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015)). However, courts often dismiss claims barred by immunity without leave to amend because better pleading cannot cure the deficiency, *i.e.*, amending a complaint does not eliminate a party's immunity. *See Clay v. Bishop*, No. 1:22-CV-0983, 2023 WL 3352903, *7 (N.D.N.Y. Feb. 7, 2023) (collecting cases); *Woods v. Vermont*, No. 2:22-CV-00008, 2023 WL 2624352, *2 (D. Vt. Mar. 24, 2023); *Burdick v. Town of Schroeppel*, No. 5:16-CV-01393, 2017 WL 5509355, *9 (N.D.N.Y. Jan. 31, 2017), *aff'd*, 717 Fed. Appx. 92, 93 (2d Cir. 2018). Likewise, a better pleading would not alter the Court's decision as to application of the *Rooker-Feldman, Younger*, and domestic relations doctrines because Plaintiff cannot amend his complaint to eliminate the fact that all of his claims stem from past or present state family court matters. *See Sochia v. Herkimer Cnty Child Protective Servs.*, No. 6:24-CV-1068, 2024 WL 4802839, *11 (N.D.N.Y. Nov. 15, 2024); *Dean v. Doberman*, No. 21-CV-8320, 2023 WL 2480012, *10 (S.D.N.Y. Mar. 13, 2023).

Therefore, the Court agrees with Magistrate Judge Hummel and denies Plaintiff leave to amend his complaint. [2]

### III. CONCLUSION

After carefully the Plaintiff's submissions, Magistrate Judge Hummel's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 5) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order upon Plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 5001402

---

### Footnotes

1     Plaintiff references Article 6, section 2 of the United States Constitution which affirms that the Constitution is the supreme Law of the Land and Plaintiff contends that the Constitution makes New York's common law child support scheme unconstitutional. *See* Dkt. No. 6 at 7. The Court will not address the substance of Plaintiff's claims and arguments concerning the validity of the state court child support orders for the reasons set forth in this decision.

2    Plaintiff provides the Court with a memorandum from the U.S. Department of Justice. *See* Dkt. No. 7. Nothing in the memorandum alters the Court's conclusions as set forth in this decision.

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 82 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

2018 WL 2084172
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Joseph GRIGOLI, Plaintiff,

v.

42 U.S.C. § 654(3) CHILD SUPPORT ENFORCEMENT
DIVISION; Columbia County, Defendants.

18-CV-3672 (NSR)
|
Signed 05/01/2018

**Attorneys and Law Firms**

Joseph Grigoli, Monroe, NY, pro se.

ORDER OF DISMISSAL

NELSON S. ROMÁN, United States District Judge

**\*1** Plaintiff brings this *pro se* action, for which the filing
fee has been paid, alleging that Defendants violated his
constitutional rights. For the reasons stated below, the Court
dismisses the complaint with leave to replead within thirty
days of the date of this order.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even
when the plaintiff has paid the filing fee, if it determines
that the action is frivolous. *Fitzgerald v. First E. Seventh
Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per
curiam) (citing *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995)
(*per curiam* ) (holding that Court of Appeals has inherent
authority to dismiss frivolous appeal) ), or that the Court
lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon
Oil Co.*, 526 U.S. 574, 583 (1999). The Court is obliged,
however, to construe *pro se* pleadings liberally, *Harris v.
Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to
raise the "strongest [claims] that they *suggest*," *Triestman v.
Fed. Bureau of Prisons*, 470 U.S. 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original).

Although *pro se* litigants enjoy the Court's "special
solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)

(per curiam), their pleadings must comply with Rule 8 of the
Federal Rules of Civil Procedure, which requires a complaint
to make a short and plain statement showing that the pleader
is entitled to relief, A complaint states a claim for relief if
the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79
(2009) (citing *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 555
(2007) ). To review a complaint for plausibility, the Court
accepts all well-pleaded factual allegations as true and draws
all reasonable inferences in the pleader's favor. *Id.* (citing
*Twombly*, 550 U.S. at 555). But the Court need not accept
"[t]hreadbare recitals of the elements of a cause of action,"
which are essentially legal conclusions. *Id. at 678* (citing
*Twombly*, 550 U.S. at 555). As set forth in *Iqbal*:

> [T]he pleading standard Rule
> 8 announces does not require
> detailed factual allegations, but
> it demands more than an
> unadorned, the-defendant-unlawfully-
> harmed-me accusation. A pleading
> that offers labels and conclusions or a
> formulaic recitation of the elements of
> a cause of action will not do. Nor does
> a complaint suffice if it tenders naked
> assertions devoid of further factual
> enhancement.

*Id.* (internal citations, quotation marks, and alteration
omitted). After separating legal conclusions from well-
pleaded factual allegations, the court must determine whether
those facts make it plausible—not merely possible—that the
pleader is entitled to relief. *Id.*

Plaintiff's complaint does not make a short and plain statement
showing that he is entitled to relief District courts generally
grant a *pro se* plaintiff an opportunity to amend a complaint
to cure its defects, but leave to amend is not required where
it would be futile. See *Hill v. Curcione*, 657 F.3d 116, 123-24
(2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.
1988). The Court dismisses Plaintiff's complaint on immunity
grounds and as frivolous and for failure to state a claim, *see*
28 U.S.C. § 1915(e)(2)(B)(i)-(iii), but, in an abundance of
caution, grants him leave to replead his claims.

**BACKGROUND**

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 83 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

**\*2** Plaintiff's complaint is not the model of clarity, but it appears that Plaintiff brings this action in an attempt to challenge a child support order. Plaintiff brings this action against "42 U.S.C. § 654(3) Child Support Enforcement Division" and Columbia County, alleging that this action "is a 'lawsuit' based on concrete facts that 2 Persons under color of 42 U.S.C. Public Health and Welfare deprived Grigoli of his inherent and indefeasible rights, privileges, and immunities secured by the Constitution and Laws, and his life liberty and property without due process of law." (Compl. at 1.) Plaintiff seeks to have this Court

> "set right this undesirable and unfair situation, the current CSED IV-D Collections Case # 12318, and 62876 shall terminate effective immediately, and Grigoli shall no longer [be] required to pay the 42 U.S.C. § 654(3), or the 45 CFR § 302.34 and he shall be let alone from their intrusion into his private and professional life and his inherent and indefeasible rights, privileges, and immunities shall be restored, and he shall care for his seed in private as he created them."

(*Id.* at 19-10.)

## DISCUSSION

### A. **Subject Matter Jurisdiction**

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a "federal question" is presented or when plaintiff and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. " '[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.' " *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Consfr. Co., Inc. v. Hons. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983) ); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative....").

### 1. Federal Question Jurisdiction

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain,* 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assnr., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) ). Mere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

Plaintiff's complaint appears to assert a claim that, by ordering him to pay child support, Defendants have violated his constitutional rights. The Court construes Plaintiff's allegations as asserting a procedural due process claim. "The Due Process Clause only protects "against deprivations without due process of law." *Rivera Powell v. N.Y. City Board of Elections,* 470 F.3d 458, 464 (2d Cir 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) ). "The fundamental requisite of due process of law is the opportunity to be heard ... at a meaningful time and in a meaningful manner." *Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) (citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera Powell,* 470 F.3d at 466 (citing *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976) ).

**\*3** Generally, some kind of pre-deprivation process must be provided before liberty or property rights are infringed upon. *See Model v. Va. Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 299 (1981); *DiBlasio v. Novella,* 344 F.3d 292, 302 (2d Cir. 2003). Where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate postdeprivation remedy. *See Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate postdeprivation remedy); *Rivera-Powell,* 470 F.3d at 465 (holding that "[w]hen the state conduct in question is

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 84 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy.").

Moreover, the state must simply make an adequate procedural remedy available to the plaintiff; the plaintiff need not have availed himself of that remedy. *See, e.g., McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 38-39 & n.21 (1990) ("The availability of a pre-deprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and [litigants] cannot complain if they fail to avail themselves of this procedure.").

Because Plaintiff does not allege that the available pre- and post-deprivation remedies were, or are, in any way inadequate, his due-process claim fails and must therefore be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## 2. Diversity Jurisdiction

In his complaint, Plaintiff fails to allege facts demonstrating that the Court has diversity jurisdiction over this action. To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that he and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of \$75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). Plaintiff, a citizen of New York, brings this action against Defendants, located in New York, seeking reversal of a child support order. Because Plaintiff and Defendants are located in the same state, the Court lacks diversity jurisdiction over his claims. [1]

## 3. *Rooker-Feldman* Doctrine

Federal courts lack subject matter jurisdiction to review cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine—named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state-court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

**\*4** Here, Plaintiff could be understood as complaining that the child support order violates his rights. If so, then Plaintiff's claim is for an injury "caused by the state-court judgment." *Exxon*, 544 U.S. at 284. Plaintiff cannot ask this Court to review and reject the child support order. The *Rooker-Feldman* doctrine bars this Court from hearing such a challenge to the child support order. *See Remy v. New York State Dep't of Tax. and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013) ("*Rooker-Feldman* doctrine barred father's § 1983 action challenging state court's child support orders and state agencies' enforcement efforts arising from those orders....")

## 4. Pending State-Court Proceedings

To the extent that Plaintiff seeks to have this Court intervene in any pending state-court proceedings, the Court must dismiss those claims. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Heicklen v. Morgenthau*, 378 Fed.Appx. 1, 2 (2d Cir. 2010) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) ). This doctrine has been extended to civil actions. *See Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006); *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) ("*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

*Younger* abstention seeks to avoid federal court interference with ongoing state criminal prosecutions, state-initiated civil enforcement proceedings, and state civil proceedings that involve the ability of state courts to perform their judicial functions. *Jones v. Cnty. of Westchester*, 678 Fed.Appx. 48, 49-50 (2d Cir. 2017) (summary order). Abstention is appropriate in only three categories of state court proceedings: (1) state criminal prosecutions; (2)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 85 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs,* 134 S. Ct. 584, 588 (2013).

If a "federal lawsuit implicates the way that New York courts manage their own ... proceedings—a subject in which "the states have an especially strong interest"—a State's interest is most likely implicated, warranting abstention under *Younger. Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.,* 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 516 (2d Cir. 1973) ). When any of these types of proceedings are pending in state court, the *Younger* doctrine bars federal courts from ordering injunctive relief that interferes with the state court proceedings. "State proceedings are pending for *Younger* purposes until all appellate court remedies have been exhausted." *People United for Children, Inc. v. City of New York,* 108 F. Supp. 2d 275, 290 n.6 (S.D.N.Y. 2000).

Plaintiff's request that this Court intervene in his child support collections case by refunding his money implicates how the state court manages its proceedings. *Younger* abstention therefore applies, and this Court does not have jurisdiction over this action. *Falco,* 805 F.3d at 428.

**B. Proper Parties**

In addition to the aforementioned deficiencies, Plaintiff also fails to name proper Defendants.

**1. Eleventh Amendment**

 **\*5** Plaintiff's claims against the Child Support Enforcement Division must be dismissed. As an "arm of the state," Plaintiff's claims against this Defendant are barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spilzer,* 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.*; *see also Cincotta v. N.Y.C. Human Res. Admin.,* No. 00-CV-9064 (JGK), 2001 WL 897176, at \*9 (S.D.N.Y.

Aug. 9, 2001) (holding that the OTDA is an "arm of the state" for Eleventh Amendment purposes). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 40 (2d Cir. 1977).

Plaintiff's claims against the Child Support Enforcement Division therefore barred by the Eleventh Amendment and must be dismissed with prejudice on immunity grounds and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ).

**2. Municipal Liability**

Plaintiff's claims against Columbia County are not barred by the Eleventh Amendment. *See Johnson v. State of New York, Monroe Cnty. Child Support Enforcement Unit,* 21 Fed.Appx. 41, 43 (2d Cir. 2001) (citing *Mancuso v. N.Y.S. Thruway Auth.,* 86 F.3d 289, 292, 296 (2d Cir. 1996) (holding local government entities, including counties, are not protected from suit by the Eleventh Amendment) ).

To sustain an action under 42 U.S.C. § 1983 against Columbia County and its agents, however, Plaintiff must show that he was deprived of a constitutional right by a municipal policy or custom. *Id.* When a plaintiff sues a municipality under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation,") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978) ); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan*

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 86 of 229

*Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Here, Plaintiff has failed to allege the facts necessary to assert a municipal liability claim against Columbia County and its agents.

### C. Leave to Replead

The Court grants Plaintiff leave to replead claims that he may be attempting to assert under § 1983. If Plaintiff seeks relief under § 1983, he must sufficiently detail his claims in accordance with the standards above. Plaintiff must name as the defendants in the caption,[2] and in the statement of claim, those individuals who were allegedly involved in the deprivation of his federal rights. And Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant he names. If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[3] The naming of John Doe defendants, however, does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" defendants and amending his complaint to include the identity of any "John Doe" defendants before the statute of limitations period expires. Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

**\*6** Should Plaintiff replead his claims in an amended complaint, he must, to the greatest extent possible:

a) give the names and titles of all relevant persons;

b) describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c) give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d) give the location where each relevant event occurred;

e) describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f) state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

### CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. The Clerk of Court is further instructed to hold this matter open on the docket until a civil judgment is entered.

The Court dismisses with prejudice all claims against the Child Support Enforcement Division on immunity grounds and as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i), (iii). The Court also dismisses with prejudice Plaintiff's due process claims for failure to state a claim, 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to replead, within 30 days, claims that he may be attempting to assert under § 1983 against Columbia County and its agents.

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within thirty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 18-CV-3672 (NSR). An Amended Complaint form is attached to this order. If Plaintiff fails to submit an amended complaint within the time allowed, and does not show good cause to excuse such failure, the Court will enter a civil judgment consistent with this order and direct the Clerk of Court to terminate this matter.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 87 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____        _____ CV _____
Write the full name of each plaintiff.   (Include case number if one has been assigned)

-against-                            **AMENDED**

_____        **COMPLAINT**

_____        Do you want a jury trial?
_____        ☐ Yes   ☐ No

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore not contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include only: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 3/10/17

---

**I. BASIS FOR JURISDICTION**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of
cases can be heard in federal court: cases involving a federal question and cases involving
diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United
States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332,
a case in which a citizen of one State sues a citizen of another State or nation, and the amount
in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may
be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   Federal Question

☐   Diversity of Citizenship

**A. If you checked Federal Question**

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

**B. If you checked Diversity of Citizenship**

**1. Citizenship of the parties**

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                        (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing
information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                    (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

**II. PARTIES**

**A. Plaintiff Information**

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

| First Name | Middle Initial | Last Name | |
|---|---|---|---|

| Street Address | | | |
|---|---|---|---|

| County, City | | State | Zip Code |
|---|---|---|---|

| Telephone Number | | Email Address (if available) | |
|---|---|---|---|

Page 3

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 88 of 229

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

**B. Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name      Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City      State      Zip Code

Defendant 2:

First Name      Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City      State      Zip Code

Defendant 3:

First Name      Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City      State      Zip Code

Page 4

Defendant 4:

First Name      Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City      State      Zip Code

**III. STATEMENT OF CLAIM**

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

Page 5

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

Page 6

**V. PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated      Plaintiff's Signature

First Name      Middle Initial      Last Name

Street Address

County, City      State      Zip Code

Telephone Number      Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Division, Not Reported in Fed....

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 89 of 229

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2084172

---

## Footnotes

1    The United States Supreme Court reaffirmed in *Ankenbrandt v. Richards,* 504 U.S. 689 (1992), the continued
     validity of the domestic relations exception that divests federal courts of jurisdiction "to issue divorce, alimony
     and child custody decrees." *Id.* at 703-04. Where the allegations in the complaint do not request the Court
     to issue a divorce, alimony, or child custody decree, however, "the suit is appropriate for the exercise of
     § 1332 jurisdiction given the existence of diverse citizenship ... and the pleading of the relevant amount in
     controversy." *Id.* at 706-707.

2    The caption is located on the front page of the complaint. Each individual defendant must be named in the
     caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the
     caption. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list"
     on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed
     in Plaintiff's statement of claim.

3    For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2010,
     at Sullivan Correctional Facility, during the 7-3 p.m. shift."

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Beaton v. Metropolitan Transportation Authority
New York City Transit, S.D.N.Y., June 15, 2016

2012 WL 2357720
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Vas Dev ANAND, Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE, Anthony Vano, in his official
capacity and individually, Thomas Varghese, in his
official capacity and individually, Gregory Wiley, in
his official capacity and individually, Nonie Manion
(a.k.a. Honora Manion), in her official capacity
and individually, Joseph Macchio, in his official
capacity and individually, Annmarie Dwyer, in her
official capacity and individually, Dennis Gillooly,
in his official capacity and individually, Defendants.

No. 10–CV–5142 (SJF)(WDW).
|
June 18, 2012.

**Attorneys and Law Firms**

Vas Anand, Bayside, NY, pro se.

Ralph Pernick, New York State Attorney General, Mineola,
NY, for Defendants.

**Opinion**

FEUERSTEIN, District Judge.

**\*1** On November 5, 2010, *pro se* plaintiff Vas Anand
("plaintiff") commenced this action against defendant New
York State Department of Taxation and Finance, alleging,
*inter alia,* employment discrimination in violation of various
federal statutes. [Docket Entry No. 1]. On May 2, 2011,
after the Department had served its motion to dismiss,
plaintiff filed an amended complaint, which added defendants
Anthony Vano, Thomas Varghese, Gregory Wiley, Nonie
Manion (a.k.a. Honora Manion), Joseph Macchio, Annmarie
Dwyer, and Dennis Gillooly, in their official and individual
capacities (collectively, the "individual defendants").

Before the Court is defendants' motion to dismiss the
amended complaint pursuant to Federal Rule of Civil
Procedure 12(b) or, in the alternative, for a more definite
statement pursuant to Rule 12(e). For the reasons that follow,
defendants' motion is granted in part and denied in part.

I. Introduction

A. Factual Background [1]
Plaintiff identifies himself as a "disabled east Indian male"
who has been employed by the New York State Department
of Taxation and Finance (the "Department") since 1997.
Amended Complaint ("Am.Compl.") [Docket Entry No.
9] at ¶ 7. Before taking a position with the Department,
plaintiff worked as a controller in various companies both in
India and the United States. *See id.* at ¶ 8. The individual
defendants are alleged to be current and former employees
of the Department. At all times relevant to this action, Vano,
Varghese, Macchio, Gillooly, and Wiley were employed as
tax auditors or audit administrators, Dwyer was employed as
"Program Manager," and Manion was employed as Director
of Audits. *Id.* at ¶¶ 10–16.

Though unclear, plaintiff appears to challenge: (1) the
Department's failure to promote plaintiff; and (2) various
allegedly retaliatory actions allegedly taken against plaintiff
after he filed a discrimination complaint and provided
testimony at an administrative proceeding on behalf of
another employee.

Plaintiff alleges that, in May 2007, he learned of a Department
initiative to promote tax auditors. *Id.* at ¶ 24. According to the
amended complaint, Manion, the Director of Audits, "stated
that the promotions for tax auditors were meant to go to
'younger' employees." *Id.* at ¶ 25. Plaintiff applied, and was
interviewed, for a promotion from the position of "Sales Tax
Auditor 1" to "Sales Tax Auditor 2." *Id.* at ¶ 26. Although
he was not awarded the promotion, plaintiff was informed by
defendants Vano and Dwyer that he would "get another shot
in about 9 months." *Id.* at ¶ 27. Plaintiff was subsequently
informed by an unidentified individual that he would not be
promoted because his experience auditing "cash" businesses
was not highly valued by the Department. *Id.* at ¶ 34. At or
around this time, plaintiff was seventy-three (73) years old.
*Id.* at ¶ 33. Both individuals who received the promotions
were under the age of forty (40). *Id.* Plaintiff alleges that these
individuals "had the least service with the Department and
also brought in the least tax revenue ... for the Department."
*Id.* at ¶ 38.

Case 3:24-cv-01141-AJB-ML Document 7 Filed 01/28/25 Page 91 of 229

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

**\*2** In October and November 2007, plaintiff was given several performance evaluations that he claims contained "deliberate inaccurate statements" and comments designed "to paint [him] as a mediocre employee." *Id.* at ¶¶ 28–29. Plaintiff stresses his record of achievements at the Department and the assistance he provided to less experienced employees. *See, e.g., id.* at ¶¶ 29, 32, 36, 37, 39, 40, 43, 44.

On or about January 10, 2008, plaintiff filed a charge of discrimination with the New York State Division of Human Rights and U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of his race, color, sex, national origin, age, and disability. [Docket Entry No. 16–2]. In brief, the charge alleged that plaintiff was denied the promotion for which he applied, even though he had a record of performing his job independently and his performance reviews had been "satisfactory." Plaintiff alleged that the employees who had been selected for promotion were younger and less experienced than he was. *Id.*

The circumstances surrounding the next series of incidents are not entirely clear. Plaintiff alleges that, in early 2009, received a subpoena to testify on behalf another Department employee in a proceeding before the New York State Industrial Board of Appeals, that he was "discouraged" from testifying by "Tax Department management" and that "[d]efendants made several strong-arm attempts to interfere with Plaintiff's testimony," that he did testify, but was placed on unpaid administrative leave "immediately" after doing so, and that the Department filed "fake charges of harassment" against him as "punish[ment] ... for speaking out and refusing to be discriminated against." Am. Compl. at ¶¶ 45, 55, 56, 58.

According to documents filed by the defendants, plaintiff was suspended on or about August 17, 2009, due to allegations that he had acted inappropriately toward several of his female colleagues, including that he had made unwanted physical contact with them. [Docket Entry No. 16–5]. [2] In a determination dated October 24, 2010, an arbitrator found plaintiff guilty of the majority of the charges, but determined that plaintiff should be returned to his position after satisfying certain preconditions. *Id.* Plaintiff claims that defendants "harass[ed]" him once he returned to work by instructing him to take vacation and by informing him that "mistakes were made in his vacation day calculations." Am. Compl. at ¶ 51. He also claims that he was reassigned from the Department's Nassau County District Office to the Queens District Office for the purpose of "embarrass[ing]" him. *Id.* at ¶ 49.

The EEOC issued a "right to sue" letter on August 5, 2010. [Docket Entry No. 9].

### B. The Instant Action

Plaintiff commenced this action on November 5, 2010. On May 2, 2011, after defendants had served a motion to dismiss, plaintiff filed an amended complaint. Defendants once again moved to dismiss. [3]

**\*3** The amended complaint asserts the following twelve (12) causes of action: (1) national origin discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) national origin and disability discrimination in violation New York Executive Law §§ 296(1)(a) and 296(6) ( "New York Human Rights Law"); (3) retaliation in violation of Title VII; (4) retaliation in violation of New York Human Rights Law § 296(7); (5) denial of equal protection under the Fourteenth Amendment of the United States Constitution; (6) denial of equal protection under the New York State Constitution; (7) retaliation for engaging in protected speech, in violation of the First Amendment of the United States Constitution and Article 1, Section 8 of the New York State Constitution; (8) denial of due process under the Fourteenth Amendment of the United States Constitution; (9) "waste [of] state resources including ... state work time and salaries of Public Officers"; (10) conspiracy to interfere with plaintiff's civil rights, in violation of 42 U.S.C. § 1985; (11) disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA"); (12) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). Am. Compl. at ¶¶ 69–120. [4]

## II. Discussion

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 92 of 229

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

factual enhancement.' " *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557).

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.,* 631 F.3d 57, 63 (2d Cir.2011); *see also Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Matson,* 631 F.3d at 63 (internal quotation marks and citation omitted).

B. Analysis

1. Claims Against the New York State Department of Taxation and Finance

**\*4** "The Eleventh Amendment states that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' " *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) (quoting U.S. Const. amend. XI). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity, and it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without the sovereign's consent" *Id.* (internal quotation marks, citations, and bracketing omitted). "Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens, as well as state court actions against state governments." *Id.* (internal citations omitted). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity...." *Id.* (citing *Lapides v. Bd. of Regents,* 535 U.S. 613, 618–19, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)). "This

bar exists where the relief sought is legal or equitable." *Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990) (quoting *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986)).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods,* 466 F.3d at 236 (citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). "The Department of Taxation is a state agency entitled to Eleventh Amendment immunity." *Miller v. State of New York Div. of Tax Appeals,* 480 F.Supp.2d 574, 581 (E.D.N.Y.2007) (citing cases); *see also Fetcho v. New York State Dept. of Taxation and Finance,* No. 10–CV–3881, 2012 WL 294396, at \*3 (E.D.N.Y. Jan.27, 2012); *Smith v. New York State Dept. of Taxation and Finance,* No. 01–CV–1776, 2002 WL 1150013, at \*3 (E.D.N.Y. May 17, 2002). Accordingly, the majority of plaintiff's claims against the Department are barred by the principle of sovereign immunity. *See, e.g., Sank v. City University of New York,* No. 10 Civ. 4975, 2011 WL 5120668, at \*6 (S.D.N.Y. Oct.28, 2011) ("The State of New York has not waived its immunity with respect to Section 1983 claims ... and Congress did not intend to abrogate the States' sovereign immunity with respect to such claims."); *Keitt v. New York City,* No. 09 Civ. 8508, 2011 WL 4526147, at \*3 (S.D.N.Y. Sept.29, 2011) (plaintiff's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the 11th Amendment"); *Clark v. Dominique,* 798 F.Supp.2d 390, 405 (N.D.N.Y.2011) (claims under the New York State Constitution "subject to dismissal under New York State's sovereign immunity"); *Lambert v. New York State Office of Mental Health,* No. 97–CV–1347, 2000 WL 574193, at \*7 (E.D.N.Y. Apr. 24, 2000) ("As district courts in this circuit have uniformly found, the New York Human Rights Law includes no waiver of the state's immunity to suit in federal court.").

**\*5** In opposition to defendants' motion, plaintiff has submitted a bill passed by the New York State Assembly in May 2011, which would waive the state's immunity with respect to claims under, *inter alia,* the ADA and ADEA. [Docket Entry No. 14]. Plaintiff does not, however, support his claim that this bill was actually enacted into law, and there is no evidence that the state has waived its immunity or consented to being sued under the ADA or ADEA. *See Skalafuris v. City of New York,* 444 Fed. Appx. 466, 468 (2d Cir.2011) ( "[T]he States' sovereign immunity in the area of age discrimination remains intact."). [5] Accordingly, the Court

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

lacks jurisdiction over these claims against the Department. Plaintiff's Section 1983, Section 1985, ADA, ADEA, and state claims are all dismissed as they relate to that agency.

Title VII, however, abrogates the states' Eleventh Amendment immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976); *see also Davis v. State Univ. of New York,* 802 F.2d 638, 640 n. 1 (2d Cir.1986) ("[A] state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity."); *Trivedi v. New York State Unified Court Sys. Office of Court Admin.,* 818 F.Supp.2d 712, 722 (S.D.N.Y.2011) ("Congress has abrogated sovereign immunity with respect to race discrimination claims under Title VII."); *Lambert v. New York State Office of Mental Health,* No. 97–CV–1347, 2000 WL 574193, at *8 (E.D.N.Y. Apr. 24, 2000). Therefore, plaintiff's Title VII claims against the Department are not barred by sovereign immunity.

Nevertheless, the amended complaint fails to state a Title VII claim against the Department. Title VII makes it unlawful to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Although plaintiff identifies his national origin as "east Indian," there are no allegations to support his claim that he suffered discrimination on this basis. [6] Dismissal of this claim is therefore appropriate.

Insofar as plaintiff alleges that his office was a "hostile work environment" in violation of Title VII, this claim must also be dismissed. "Title VII is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir.2003) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [national origin]." *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir.2007) (internal quotation marks and citations omitted). "The Supreme Court has held that a work environment's hostility should be assessed based on the 'totality of the circumstances.'" *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Again, plaintiff has alleged no facts whatsoever to suggest discrimination on the basis of his national origin, much less an environment made "hostile or abusive" by such discrimination. For this reason, as well, Count One must be dismissed for failure to state a claim. However, as set forth below, plaintiff is granted leave to amend his complaint and replead his first cause of action.

**\*6** In Count Three, plaintiff alleges that defendants retaliated against him for "asserting his rights under the anti-discrimination laws...." Am. Compl. at ¶ 80. "To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1)[he] participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [sic] her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane,* 508 F.3d at 115 (citing *Feingold v. New York,* 366 F.3d 138, 156 (2d Cir.2004)). Plaintiff does allege that he engaged in certain protected activity (*e.g.,* filing an EEOC charge and testifying before the New York Industrial Board of Appeals), and appears to allege employment actions that were to his disadvantage (*e.g.,* his placement on administrative leave and reassignment to another office), but has not sufficiently pleaded facts tending to show a causal connection between the two. Although he alleges he was placed on leave "immediately" after testifying, Am. Compl. at ¶ 58, he has provided no dates of these events, and the Court cannot determine whether there was a genuine temporal proximity between them.

Furthermore, since the Court cannot discern the exact basis of the Title VII retaliation claim, it is unclear whether this claim has been properly exhausted. "A Title VII claimant may file suit in federal court only if she has filed a timely complaint with EEOC and obtained a right-to-sue letter." *Cornwell v. Robinson,* 23 F.3d 694, 706 (2d Cir.1994). It appears that plaintiff failed to raise the retaliation claim in his EEOC complaint. However, "[i]n an action in which these procedural requirements have been satisfied, the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing, even if that claim was not expressly addressed by EEOC." *Id.* "[W]hen an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing.... The retaliation claim may thus

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 94 of 229

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC." *Owens v. New York City Housing Auth.,* 934 F.2d 405, 410–411 (2d Cir.1991). Thus, if the retaliation claim arises solely from plaintiff's filing of the EEOC charge, it is more likely to be "reasonably related" to that charge. If it arises from some other protected activity, however, it is not clear whether plaintiff may pursue this claim. For these reasons, Count Three is also dismissed without prejudice and with leave to replead.

"As a general rule, when a complaint is dismissed for failure to state a claim—and particularly when the pleading is authored by an untutored *pro se* litigant—the court should authorize repleading if there is reason to believe that the plaintiff may be able to articulate a viable set of allegations." *Santos v. General Elec. Co.,* No. 10 Civ. 6948, 2011 WL 5563544, at *12 (S.D.N.Y. Sept. 28, 2011) (citing cases). As it is unclear whether plaintiff may be able to articulate a viable set of allegations, Counts One and Three, insofar as they relate to the Department, are dismissed without prejudice. Plaintiff is granted leave to file an amended complaint as further set forth below.

### 2. Claims Against the Individual Defendants in their Official Capacities

**\*7** In the amended complaint, plaintiff names the individual defendants in both their official and individual capacities. "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Svcs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respect other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985)). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original).

"To the extent that a state official is sued for damages in his official capacity ... the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993). Thus, insofar as plaintiff's claims against the Department are barred by the Eleventh Amendment, these claims are barred as they relate to the individual defendants in their official capacities. Moreover, the remaining Title VII claims against the individual defendants in their official capacities are dismissed because they are duplicative of the Title VII claims asserted against the Department directly. *See Emmons v. City Univ. of New York,* 715 F.Supp.2d 394, 410–11 (E.D.N.Y.2010) (dismissing "redundant" Title VII claims).

### 3. Claims Against the Individual Defendants in their Individual Capacities

In contrast to official-capacity suits, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. The claims against the individual defendants in their individual capacities are not barred by the Eleventh Amendment. *See Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir.1999) (citing *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988)). Nevertheless, these claims must be dismissed for a variety of other reasons.

### a. Claims One (Title VII), Three (Title VII), Eleven (ADA), and Twelve (ADEA)

Title VII, the ADA, and the ADEA do not provide for individual liability. *See, e.g., Lore v. City of Syracuse,* 670 F.3d 127, 169 (2d Cir.2012) ("Title VII does not impose liability on individuals...."); *Doe v. Major Model Mgmt. Inc.,* No. 11 Civ. 6182,2012 WL 763556, at *7 (S.D.N.Y. Mar. 9, 2012) ("The ADA applies to employers: it does not confer individual liability."); *Guerra v. Jones,* 421 Fed. Appx. 15, 17 (2d Cir.2011) ("[N]either [Title VII nor the ADEA] subjects individuals, even those with supervisory liability over the plaintiff, to personal liability."). Accordingly, Counts One, Three, Eleven, and Twelve are dismissed as they relate to the individual defendants in their individual capacities.

### b. Claims Five (Equal Protection), Seven (First Amendment), and Eight (Due Process)

**\*8** Plaintiff also asserts several claims pursuant to 42 U.S.C. § 1983. "Section 1983 ... allows an action at law against a 'person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' " *Patterson v. County of Oneida, New York,* 375 F.3d 206, 225 (2d Cir.2004) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of substantive rights ... [i]t merely provides a method for vindicating federal rights elsewhere conferred...." *Id.* (internal quotation marks and citation omitted).

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 95 of 229

In Count Five, plaintiff claims that he was deprived of "his rights to equal employment opportunities and equal protection of the law under the Fourteenth Amendment of the United States Constitution." Am. Compl. at ¶ 88. "To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against [him] on the basis of [his] membership in a protected class." *Rodriguez v. City of New York,* 644 F.Supp.2d 168, 199 (E.D.N.Y.2008) (citing cases). "[M]ere employment by the state does not mean that the employee's every act can properly be characterized as state action." *Patterson,* 375 F.3d at 230 (citing cases).

"[A]lthough ... Title VII claims are not cognizable against individuals, individuals may be held liable under [Section] 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment...." *Patterson,* 375 F.3d at 226. However, it is well settled that, in order to state a claim against a defendant in his or her individual capacity, a plaintiff must allege that individual defendant's personal involvement in the alleged discrimination. *See generally Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir.2004). As plaintiff has not clearly alleged the personal involvement of the individual defendants in the alleged discrimination, Count Five is dismissed without prejudice and with leave to replead. [7]

In Count Seven, plaintiff alleges that defendants "retaliated against [him] ... for engaging in protected speech on a matter of public concern." Am. Compl. at ¶ 102. "A public employee's right to freedom of speech is not absolute." *Berkheim v. Litt,* 79 F.3d 318, 324 (2d Cir.1996). "However, when a public employee speaks as a citizen on a matter of public concern, that speech is entitled to First Amendment protection." *Id.* "The problem is to balance the employee's free speech rights with the interests of the public employer." *Cioffi v. Averill Park Central School Dist. Bd. of Educ.,* 444 F.3d 158, 162 (2d Cir.2006) (citing *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

"A public employee who makes a First Amendment claim of employment retaliation under § 1983 must show that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action." *Id.* (citing *Morris v. Lindau,* 196 F.3d 102, 110

(2d Cir.1999)). Also, again, "a plaintiff must establish an individual defendant's personal involvement in the claimed violation to find him liable in his individual capacity under § 1983." *Alvarado v. Metropolitan Transp. Auth.,* No. 07 Civ. 3561, 2012 WL 1132143, at *17 (S.D.N.Y. Mar. 30, 2012) (citing *Back v. Hastines on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir.2004)); *see also Abascal v. Jarkos,* 357 Fed. Appx. 388, 391 (2d Cir.2009) (First Amendment retaliation claim properly dismissed when plaintiff failed to plead facts showing defendant's personal involvement).

**\*9** Although the amended complaint contains conclusory allegations addressing the elements of a First Amendment retaliation claim, it does not state a claim that is "plausible on its face." *See Iqbal,* 556 U.S. 662 at 678, 129 S.Ct. at 1949, 173 L.Ed.2d 868. The amended complaint does not adequately describe the speech at issue, the subsequent adverse employment decision, or the individuals involved in that decision. Count Seven is therefore dismissed without prejudice and with leave to replead as it relates to the individual defendants in their individual capacities.

In Count Eight, plaintiff claims that defendants "deprived [him] of protected liberty interests in violation of the Due Process clause of the Fourteenth Amendment." Am. Compl. at ¶ 107. In analyzing a procedural due process claim, the Court "proceeds in two steps." *Narumanchi v. Board of Trustees of the Connecticut State University,* 850 F.2d 70, 72 (2d Cir.1988). "The threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Id.* (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "*If* a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case...." *Id.* (citing *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)) (emphasis in original).

It is clear from the pleadings that plaintiff cannot state a viable due process claim. Insofar as plaintiff claims the Department's failure to promote him violated his right to due process, it is apparent that "there was not concrete expectation or 'mutually explicit understanding' that he would get the promotion." *De La Cruz v. Guilliani,* No. 00 Civ. 7102, 2002 WL 32830453, at *13 (S.D.N.Y. Aug.26, 2002) (quoting *Perry v. Sindermann,* 408 U.S. 593, 601, 603 (1972)). To the extent this claim arises from plaintiff's assignment to particular job duties,

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 96 of 229

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

defendants are correct that he has not alleged a protected property interest in such duties. Moreover, the documents submitted by defendants appear to clearly undermine any claim that he was deprived of due process when placed on administrative leave. Thus, Count Eight is dismissed with prejudice.

d. Claim Ten (Conspiracy to Deprive Plaintiff of his Civil Rights)

"Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution." *Pabon v. New York City Transit Auth.,* 703 F.Supp.2d 188, 202 (E.D.N.Y.2010) (citing cases). In order to state a claim under the statute, plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class or persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir.1999). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (internal quotation marks and citation omitted).

**\*10** This claim is dismissed because plaintiff has failed to adequately allege any of the elements of a Section 1985 claim. However, plaintiff may replead this cause of action in his second amended complaint. [8]

e. Claims Two (New York Human Rights Law), Four (New York Human Rights Law), Nine (Waste)

Plaintiff's second cause of action alleges discriminatory treatment on the basis of national origin and disability, in violation of New York Executive Law § 296(1)(a), as well as "aid[ing], abet[ting], incit[ing], compel[ling] or coerc[ing] a discriminatory act," in violation of New York Human Rights Law § 296(6). Amend. Compl. at ¶¶ 74–76.

The claim under Section 296(1) is dismissed without prejudice because plaintiff has not alleged facts sufficient to determine which, if any, of the individual defendants qualify as an "employer" under the statute. *See Townsend v. Benjamin Enters., Inc.,* 679 F.3d 41, 57 (2d Cir.2012) ("Under [Section 296(1) ], an individual is properly subject to liability for discrimination when that individual qualifies as an 'employer.' "). "An individual qualifies as an 'employer'

when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.' " *Id.* (quoting *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11, 12 (1984) (per curiam)).

The claim under Section 296(6) is also dismissed without prejudice because the amended complaint does not clearly allege which, if any, of the individual defendants aided, abetted, incited, compelled or coerced a discriminatory act. The Second Circuit has held that Section 296(6) "allow[s] a co-worker who 'actually participates in the conduct giving rise to a discrimination claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold,* 366 F.3d at 158 (quoting *Tomka v. Seller Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995)). Defendants urge the Court to follow the decisions of several state courts by ignoring this rule, arguing that defendants should not be held liable for aiding and abetting their own conduct. Def. Br. at 21–22. Although the *Tomka* decision is "not without controversy, ... until the Second Circuit revisits the issue, *Tomka* is the law in this circuit." *Maher v. Alliance Mortg. Banking Corp.,* 650 F.Supp.2d 249, 262 (E.D.N.Y.2009) (quoting *Tully–Boone v. North Shore–Long Island Jewish Hosp. Sys.,* 588 F.Supp.2d 419, 427 (E.D.N.Y.2008)). Therefore, the Court finds that the individual defendants may be liable in their individual capacities under an aiding and abetting theory. The allegations in the amended complaint, however, fail to set forth the basis for plaintiff's Section 296(6) claim against each individual defendant. Accordingly, this claim is also dismissed without prejudice, and plaintiff is granted leave to replead.

**\*11** Count Four alleges that "defendants retaliated against Plaintiff for asserting his rights under the anti-discrimination laws with respect to terms, conditions and privileges of employment in violation of the New York State Human Rights Law," in violation of New York Executive Law § 296(7). Am. Compl. at ¶¶ 83–84. "[C]laims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n. 10 (2d Cir.2011) (citation omitted). Unlike in the Title VII context, however, "an individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim." *Id.* (internal quotation marks and citation omitted); *see also Hozer v. Pratt Indus. (USA), Inc.,* No. 10–cv– 03874, 2012 WL 2049498, at *1 n. 1 (E.D.N.Y. June 6,

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 97 of 229

Anand v. New York State Dept. of Taxation and Finance, Not Reported in F.Supp.2d...

2012) ("Unlike Title VII, an individual defendant may be held liable for retaliation under the [New York Human Rights Law] ... if he actually participates in the conduct giving rise to the plaintiff's retaliation claim."). As discussed above, however, the amended complaint omits fundamental information concerning the nature of plaintiff's retaliation claim. Accordingly, this claim is also dismissed without prejudice and with leave to replead.

Finally, plaintiff's ninth cause of action, alleging "waste," is dismissed with prejudice because the "tort of waste ... requires an injury to real property." *Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 763 (2d Cir.1990). There is absolutely no indication from the amended complaint that plaintiff suffered an injury to real property; at most, he claims that defendants prevented him from being promoted to a more senior position.

III. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for a more definite statement is granted to the extent that plaintiff is directed to file a second amended complaint correcting the pleading deficiencies identified herein.

As set forth *supra,* all claims in the amended complaint are dismissed with prejudice with the exception of the following: (1) Claims One and Three, as they relate to the Department; (2) Claims Two, Four, Five, Six, Seven, and Ten, as they relate to the individual defendants in their individual capacities.

Plaintiff is granted leave to file a second amended complaint with respect to the remaining claims **no later than July 20, 2012 at five o'clock in the afternoon (5:00 p.m.).** The second amended complaint must contain significantly more factual detail concerning each of the remaining claims, including the actual or approximate dates of all events at issue, and shall include the specific allegations underlying plaintiff's claims against *each individual defendant.*

If plaintiff chooses to file a second amended complaint, it shall be labeled "Second Amended Complaint" and shall be served upon defendants in accordance with the Federal Rules of Civil Procedure. If plaintiff fails to file a second amended complaint in a timely manner, this case will be closed.

**\*12 SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2357720

---

## Footnotes

1    For the purposes of this motion, the allegations in the amended complaint are taken as true. *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009).

2    On a motion to dismiss, the Court may consider documents outside the pleadings when they are deemed to be "integral" to the complaint. *See Subaru Distribs. Corp v. Subaru of Am., Inc.,* 425 F.3d 119, 122 (2d Cir.2005). The Court finds that the arbitrator's decision is "integral" to the complaint because it elucidates the nature of the allegations and disciplinary proceedings against plaintiff.

3    The Court notes that plaintiff's sur-reply [Docket Entry No. 19] is impermissible, and will not be considered in connection with this motion. *See* Court's Individual Rule 4(F).

4    Defendant does not specifically mention the ADEA, but the Court interprets his age discrimination claim to be brought pursuant to that statute. *See generally Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (court must construe *pro se* plaintiff's pleadings liberally, and interpret them to raise the strongest arguments they suggest).

5    Moreover, plaintiff has not alleged that he suffers from a "disability," which is fundamental to any claim of discrimination under the ADA. *See generally Pinto v. Massapequa Public Schools,* 820 F.Supp.2d 404, 408

(E.D.N.Y.2011) ("While almost any impairment may, of course, in some way affect a major life activity, the ADA clearly does not consider every impaired person to be disabled.")

6    Plaintiff does allege that the Director of Audits stated that promotions were intended for "younger" employees. Am. Compl. at ¶ 25. However, "the plain language of Title VII does not prohibit discrimination on the basis of age, nor does it prohibit retaliation based on a previous age discrimination complaint." *Triola v. ASRC Mgmt. Svcs. (ASRC MS),* No. 10–CV–560, 2011 WL 6181731, at *4 (E.D.N.Y. Dec.12, 2011).

7    Count Six alleges that defendants have "deprived Plaintiff of his rights to equal employment opportunities and equal protection of the law under the Constitution of the State of New York." Am. Compl. at ¶ 93. As the state equal protection claim is "analyzed under the same standard" as plaintiff's Section 1983 equal protection claim, Count Six is, for the same reasons, dismissed without prejudice and with leave to replead. *See Havut v. State University of New York,* 352 F.3d 733, 754–55 (2d Cir.2003).

8    Defendants argue that this claim is barred by the intracorporate conspiracy doctrine. Def. Br. at 8. "Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." *Quinn v. Nassau County Police Dept.,* 53 F.Supp.2d 347, 359 (E.D.N.Y.1999) (citation omitted). However, "[a]n exception to the ... doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Id.* (quoting *Bond v. Board of Education of the City of New York,* No. 97 CV 1337, 1999 WL 151702, at *1 (E.D.N.Y. Mar.17, 1999)). On the basis of the current pleadings, the Court cannot determine whether the intracorporate conspiracy doctrine would bar plaintiff's claim.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 9485714
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Darius BURRIS, Plaintiff,

v.

NASSAU COUNTY DISTRICT ATTORNEY,
Nassau County Police, Queens County District
Attorney, New York City Police, Hempstead
Police Department, Detective Dezelic, Detective
Guballi, Lieutenant Boden, A.D.A. John/Jane Doe,
Detective Tzimoratas, Detective Puleo, Sergeant
Reilly, Detective J. Doe, P.O. Murphy, P.O. J. Doe,
Sergeant J. Doe, Lieutenant J. Doe, Defendants.

CV 14-5540 (JFB) (GRB)
|
Signed 01/12/2017

**Attorneys and Law Firms**

Darius Burris, Beacon, NY, pro se.

James R. Scott, Liora M. Ben-Sorek, Nassau County
Attorney's Office, Pablo A. Fernandez, County Attorney's
Office, Mineola, NY, Erica Michelle Haber, Richard
Bahrenburg, Joseph Rizza, New York City Law Department,
New York, NY, Debra Ann Urbano-DiSalvo, Village
of Hempstead Attorney's Office, Hempstead, NY, for
Defendants.

## <u>REPORT AND RECOMMENDATION</u>

GARY R. BROWN, United States Magistrate Judge

**\*1** Incarcerated plaintiff Darius Burris ("plaintiff" or
"Burris") brings this action *pro se,* pursuant to 42
U.S.C. § 1983 ("Section 1983"), against defendants Nassau
District Attorney, Nassau County Police, Queens County
District Attorney, New York City Police, Hempstead
Police Department, Detective Dezelic, Detective Guballi,
Lieutenant Boden, Detective Tzimoratas, Detective Puleo,
Sergeant Reilly, three unidentified police officers in the
Hempstead Police Department,[1] one unidentified police
officer in the New York City Police Department, and an
unidentified assistant district attorney in the Queen's County
District Attorney's Office (collectively "defendants") seeking

damages for the alleged violations of his constitutional and
civil rights by defendants in connection with arrests that
occurred on December 27, 2013 and April 25, 2014. Presently
before the Court on referral from District Judge Joseph F.
Bianco are the motions to dismiss the Complaint pursuant
to Federal Rule of Civil Procedure ("Rule") 12(b)(6) filed
by: (1) defendants Nassau District Attorney, Nassau County
Police, Detective Dezelic, Detective Guballi and Lieutenant
Boden (collectively the "Nassau County Defendants"), DE
61; (2) defendants Hempstead Police Department, Police
Officer Murphy, Police Officer W. Van Wyen, and Police
Officer Matthew A. Flannery (collectively the "Hempstead
Village Defendants"), DE 65; and (3) defendants New
York City Police and the Queens County District Attorney
(collectively the "New York City Defendants"), DE 70.

For the reasons set forth herein, the undersigned respectfully
recommends that (1) the Nassau County Defendants' motion
be granted in part and denied in part; (2) the Hempstead
Village Defendants' motion be granted; and (3) the New York
City Defendants' motion be granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are taken from plaintiff's Complaint and
matters of which judicial notice may be taken.[2] *See Halebian
v. Berv,* 644 F.3d 122, 131 & n.7 (2d Cir. 2011). The facts
are construed in the light most favorable to plaintiff, the non-
moving party and are assumed to be true for purposes of this
motion.

**\*2** The events giving rise to this action stem from plaintiff's
arrests on December 27, 2013 and April 25, 2014. *See
generally* Compl. On December 27, 2013, the Village of
Hempstead Police Officers arrested plaintiff in Hempstead,
New York at the request of the Queens County and/or
New York City Police Departments (collectively the "New
York City Police") in connection with outstanding criminal
charges.[3] *Id.* at Pt. IV. Soon thereafter, Burris was transferred
to the custody of the New York City Police Department. *Id.*
Following his arrest, the City Police Department vouchered
property, which plaintiff claims was seized from another
individual but attributed to him, including, *inter alia,* stolen
credit cards. *Id.*; *see* Pls.' Opp. to Defs.' Motions to Dismiss,
DE 87 at 6, 9.

In satisfaction of the criminal charges against him from
the December 27, 2013 arrest, plaintiff pleaded guilty

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 100 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

to a misdemeanor of Criminal Contempt in the Second Degree and was sentenced to six months' imprisonment. *See* Bahrenburg Decl., Ex. B, DE 71-1. The Queens County Police Department declined to prosecute Burris for possession of the alleged stolen property, *viz.* the credit cards. Compl., Pt. IV. Plaintiff was released from the New York City Department of Corrections on April 25, 2014. *Id.*

Immediately upon his release from custody, on April 25, 2014, Burris was arrested by Nassau County detectives for a series of crimes related to the stolen property that was seized and vouchered by the New York City Police during plaintiff's prior arrest on December 27, 2013. *Id.* Plaintiff claims that during the April 25, 2014 arrest, New York City police officers, with the assistance of several Nassau County detectives and Detective Dezelic, restrained his hands behind his back with handcuffs, and simultaneously lifted his arms above his head. *Id.* at Pt. IV.A. Plaintiff complained to Nassau County police officers that he was in excessive pain and requested medical treatment. *Id.* After booking and fingerprinting plaintiff, the Nassau County police officers brought him to Nassau County Medical Center for treatment. *Id.* Burris had to return to Nassau County Medical Center a second time and "a back brace was lost." *Id.*

Plaintiff maintains he was never formally charged with possession of stolen property. *Id.* at Pt. IV. According to Burris, as of May 1, 2014, members of the Nassau County District Attorney's Office fraudulently "signed legal document[s] with [the] Supreme Court of Nassau County" resulting in an indictment by a Grand Jury for possession of stolen property. *Id.* Following a jury trial, Burris was found guilty of two separate felonies and was sentenced to a period of incarceration of two to four years on each crime with the sentences to be served consecutively. *See* Bahrenburg Decl., Ex. C, DE 71-1.

## PROCEDURAL HISTORY

Plaintiff commenced this action against defendants by filing a Complaint on September 17, 2014, alleging principally that (i) the actions by the defendants deprived him of his constitutional rights; (ii) defendants entered into a conspiracy to deprive him of his rights; (iii) his arrests were unlawful; (iv) he was maliciously prosecuted due to his pending civil lawsuits against the County in federal and state courts; and (v) he is being illegally held in the Nassau County Correction Center and should be released from custody. Complaint

("Compl."), DE 1. Burris filed a motion to proceed *in forma pauperis* that same day. DE 2. On October 2, 2014, the district court granted plaintiff's motion to proceed *in forma pauperis* and directed the Clerk of the Court to forward copies of plaintiff's summonses and complaint to the United States Marshal Service for the Eastern District of New York for service upon defendants. DE 6.

**\*3** On December 1, 2014, the Nassau County Defendants filed a motion to stay plaintiff's Section 1983 action because the underlying criminal matter was proceeding against Burris in state court. DE 11. On December 5, 2014, the New York City Defendants joined in the Nassau County Defendants' application to stay this action. DE 13. By letter dated December 17, 2014, the district court granted the motions to stay pending resolution of plaintiff's parallel criminal case in state court. DE 20. By letter dated November 21, 2015, plaintiff informed the Court that there had been a guilty verdict in his underlying criminal matter. DE 37; *see* Bahrenburg Decl., Ex. C, DE 71-1. Defendants advised the Court that plaintiff was scheduled to be sentenced on March 31, 2016 and requested that the stay in the civil action continue until after plaintiff had been sentenced on his underlying conviction. DE 42-44. The Court continued the stay pending plaintiff's sentencing, which occurred on March 31, 2016. See Electronic Order dated March 31, 2016.

Defendants now move to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6). DE 61, 65, 70. Plaintiff opposes the motions. DE 87. The district court referred the motions to the undersigned for a Report and Recommendation on October 6, 2016. DE 81.

## DISCUSSION

### A. Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, a complaint must supply "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ); *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt LLC,* 595 F.3d 86, 91 (2d Cir. 2010). A claim is plausible when the plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. In applying this standard, the court must accept as true all well-

pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party, *see Warren v. Colvin,* 744 F.3d 841, 843 (2d Cir. 2014); *see also Ruston v. Town Bd. for Skaneateles,* 610 F.3d 55, 59 (2d Cir. 2010) ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"), but should not credit "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements," *Iqbal,* 556 U.S. at 678. Ultimately, the plaintiff's allegations of fact "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 545.

In adjudicating a motion to dismiss, the Court must limit itself to the facts stated in the complaint, "documents attached to the complaint as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken" or a document upon which the complaint solely relies and which is integral to the complaint. *Colson v. Haber,* No. 13-CV-5394 (JG) (CLP), 2016 WL 236220, at *2 (E.D.N.Y. Jan. 20, 2016) (internal quotation marks and citations omitted); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (same). Moreover, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York,* No. 11-CV-329 (KAM), 2014 WL 4804869, at *1 (E.D.N.Y. Sept. 25, 2014) (internal quotation marks and citations omitted). Indeed, judicial notice may be taken of public records, including "arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition." *Harris v. Nassau County,* No. 13-CV-4728 (NGG) (ST), 2016 WL 3023265, at *3 (E.D.N.Y. May 23, 2016) (collecting cases); *see Johnson v. Pugh,* No. 11-CV-385 (RRM) (MDG), 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (observing that in Section 1983 actions a court may take judicial notice of a plaintiff's guilty plea, conviction and sentencing in the underlying action). In doing so however, the Court is mindful that "the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hogan v. Fischer,* 738 F.3d 509, 514 (2d Cir. 2013) (internal quotation marks and citation omitted).

**\*4** Where a party is proceeding *pro se,* the court is obliged to construe his pleadings "liberally with special solicitude and interpret[ ] [the complaint] to raise the strongest claims that it suggests." *Id.* at 515; *see Warner,* 744 F.3d at 843; *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir. 2007)

(same). Indeed, this is especially true where, as here, a *pro se* plaintiff avers that defendants have violated his civil rights. *See MacEntee v. IBM,* 471 Fed.Appx. 49, 50 (2d Cir. 2013). Nevertheless, a litigant's *pro se* status does not relieve him of the requirement that his complaint "state a plausible claim for relief." *Hogan,* 738 F.3d at 515; *see Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010).

### B. Proper Defendants

As a threshold matter, plaintiff attempts to advance claims under Section 1983 against the Hempstead Village Police Department, the New York City Police Department, Nassau County Police Department, the Queens District Attorney and Nassau County District Attorney. Plaintiff's attempts, however, fail because as discussed below, the police departments are non-suable entities and official capacity suits seeking damages against district attorneys in New York are barred by the Eleventh Amendment.

With respect to plaintiff's claims against defendants Hempstead Village Police Department, the New York City Police Department, Nassau County Police Department, under New York law, "departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot be sued." *Harris,* 2016 WL 3023265, at *12 ("holding that because the Nassau County Police Department is an administrative arm of the municipality of Nassau County, any claims against it must be dismissed"); *Pooler v. Hempstead Police Dep't,* 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012) (dismissing claims against Hempstead Police Department and holding that the Hempstead Police Department is an "administrative arm" of the Village of Hempstead); *Davis v. Lynbrook Police Dep't,* 224 F. Supp. 2d 463, 471 (E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New York,* 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New York City Police Department which cannot be sued independently because it is an agency of the City of New York"). Inasmuch as defendants Hempstead Village Police Department, the New York City Police, and Nassau County Police do not have a legal identity separate and apart from a municipality and thus cannot sue or be sued, plaintiff cannot maintain an action against them. Accordingly, the undersigned recommends that defendants' motions to dismiss the claims against defendants Hempstead Village Police Department, the New York City Police, and Nassau County Police be granted.

The law is also clear that plaintiff cannot assert claims against the Queens District Attorney or the Nassau County District Attorney in their official capacities because any such suit is barred by the Eleventh Amendment. As the Second Circuit has explained, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir. 1993) (internal quotation marks and citations omitted); *see Feerick v. Sudolnik,* 816 F. Supp. 879, 887 (S.D.N.Y.) ("When the [district attorney's office] makes [prosecution-related] decisions, it is acting in a quasi-judicial capacity and thus is representing the state, not the county. Thus, the 11th Amendment protects the [district attorney's office] from Section 1983 liability while it acts as a state representative"), *aff'd* 2 F.3d 403 (2d Cir. 1993); *see also Schiff v. Suffolk County Police Dep't,* No. 12-CV-1410 (JFB) (AKT), 2015 WL 1774704, at *6 (E.D.N.Y. Apr. 20, 2015) (when making a decision to prosecute, "a district attorney's office acts as a quasi-judicial state actor ... and is therefore immune from Section 1983 liability under the Eleventh Amendment"). Therefore, "a district attorney faced with a suit for damages stemming from acts taken in his official capacity ... is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ferguson v. Mastro,* No. 12 Civ. 4028 (BMC) (LB), 2012 WL 3637462, at *3 (E.D.N.Y. Aug. 22, 2012) (internal quotation marks and citations omitted); *see Barreto v. County of Suffolk,* 455 Fed.Appx. 74, 76 (2d Cir. 2012) (holding the Suffolk County District Attorney's Office is "not an entity capable of being sued") (citation omitted); *see also Conte v. County of Nassau,* No. 06-CV-4746 (JFB) (ETB), 2008 WL 905879, at *1 n.2 (E.D.N.Y. Mar. 31, 2008) (dismissing claims against the Nassau County District Attorney's Office because the entity lacks the capacity to be sued); *Brown v. City of New York,* 2013 WL 3245214, at *11 (E.D.N.Y. June 26, 2013) (dismissing official capacity Section 1983 claims against the Queens District Attorney as barred under the Eleventh Amendment); *Eisenberg v. District Attorney of the County of Kings,* 847 F. Supp. 1029, 1035 (E.D.N.Y. 1994) (dismissing official capacity Section 1983 claim against the King District Attorney on Eleventh Amendment grounds).

**\*5** To the extent that plaintiff seeks to bring suit against the Queens District Attorney or the Nassau County District Attorney in their individual capacities, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted); *see, e.g., Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"). Here, plaintiff's complaint is entirely devoid of sufficient facts showing either the Queens District Attorney or the Nassau County District Attorney's personal involvement in the criminal prosecution of Burris.

In short, since plaintiff cannot sue the defendants Queens District Attorney or the Nassau County District Attorney in their official capacities, and fails to plausibly plead facts in his complaint necessary to state a claim against them in their personal capacities, plaintiff's Section 1983 claims against them fail. Accordingly, the undersigned recommends that defendants Queens District Attorney or the Nassau County District Attorney's motions to dismiss the claims against them be granted.

## C. Section 1983

As noted above, plaintiff asserts claims pursuant to Section 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983; *see Filarsky v. Delia,* 132 S. Ct. 1657, 1661 (2012) ("Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights under color of state law"). To prevail on a claim under Section 1983, plaintiff must allege that the challenged conduct (1) was "committed by a person acting under state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks and citation omitted). To be clear, Section 1983 does not itself create substantive rights; rather the statute itself affords only "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004). Thus, the Court must first identify "the specific constitutional right allegedly infringed." *Pabon v. Wright,* 459 F.3d 241, 253 (2d Cir. 2006) (quoting *Albright v. Oliver,* 510 U.S. 266, 271 (1989) ).

Liberally construing the complaint, plaintiff appears to assert claims under Section 1983 for false arrest, unlawful search, malicious prosecution, deprivation of his right to a fair trial, conspiracy, retaliation, violations of his constitutional rights

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 103 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

to due process and equal protection based on discrimination, and excessive force. However, where plaintiff has been convicted for a crime underlying an arrest, claims for false arrest, unlawful search and seizure incident to that arrest, malicious prosecution, deprivation of the right to a fair trial, and related conspiracy and retaliation claims cannot be sustained and are subject to dismissal. The undersigned will address each of the claims as it relates to the various defendants.

### (1) False Arrest

A Section 1983 claim for false arrest rests on an individual's Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, and is substantially the same as a claim for false arrest under New York law. *See Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *see also Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are "substantially the same" as claims for false arrest or malicious prosecution under state law") (citation omitted). To state a claim for false arrest, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Liranzo v. United States,* 690 F.3d 78, 95 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Broughton v. State,* 37 N.Y.2d 451, 456 (1975) ).

 **\*6** The existence of probable cause to arrest, however, renders the confinement privileged and "is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks and citation omitted); *see Drummond v. Castro,* 522 F. Supp.2d 667, 676 (S.D.N.Y. 2007) ("Regardless of whether the first three prongs are satisfied, the claim for false arrest will fail where defendants establish probable cause existed, as the existence of probable cause is a complete defense to an action for false arrest"). That is to say, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995). A conviction of the plaintiff following an arrest is conclusive evidence of the existence of probable cause for the arrest," *Cameron v. Fogarty,* 806 F.2d 380, 387 (2d Cir. 1986)

(citations omitted); *see Gordon v. City of New York,* No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at \*4 (E.D.N.Y. Mar. 29, 2012) (observing "it has been repeatedly held in this circuit that in an action for false arrest, the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested, because the conviction is treated as conclusive evidence of probable cause to arrest") (internal quotation marks and citations omitted); *see also Weyant,* 101 F.3d at 852 (holding that a conviction that is not reversed on appeal is conclusive evidence that arrest was supported by the requisite probable cause). Notably, for this bar to apply the plaintiff need not be convicted for every crime for which he was arrested—"the existence of a valid conviction for any of the crimes underlying the arrest will foreclose a later false arrest claim." *Gordon,* 2012 WL 1068023, at \*4 (citations omitted); *see Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006) ("a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest").

Likewise, a plaintiff's plea of guilty establishes probable cause and bars a claim for false arrest. *See Roundtree v. City of New York,* 778 F. Supp. 614, 619 (E.D.N.Y. Nov. 20, 1991) (conviction at trial or by plea "conclusively established the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means") (internal quotation marks and citations omitted). Finally, a false arrest claim is barred "even where the civil rights plaintiff pleaded guilty to a lesser charge pursuant to a plea agreement that dismissed the charges for which plaintiff was arrested." *Wang v. Vahldieck,* No. 09-CV-3783 (ARR) (VVP), 2012 WL 119591, at \*4 (E.D.N.Y. Jan. 9, 2012); *see Hope v. City of New York,* No. CV-08-5022 (BMC), 2010 WL 331678, at \*2 (E.D.N.Y. Jan. 22, 2010) ("A valid prosecution resulting in conviction is conclusive evidence that probable cause existed for an arrest, even if the conviction is the result of a guilty plea to a lesser charge than that for which plaintiff was arrested").

With respect to plaintiff's false arrest claim based on his arrest on December 27, 2013, Burris pleaded guilty to a misdemeanor of Criminal Contempt in the Second Degree in satisfaction of all the criminal charges for which he was arrested. *See* Bahrenburg Decl., Ex. B, DE 71-1. In his opposition papers, plaintiff does not dispute or challenge the voluntariness or validity of his plea. As such, plaintiff's false arrest claims against the Hempstead Village Defendants and the New York City Defendants fail because his guilty

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 104 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

plea establishes the necessary probable cause for his arrest. Accordingly, the undersigned recommends the Hempstead Village Defendants and the New York City Defendants' motions to dismiss plaintiff's false arrest claims stemming from the December 27, 2013 arrest be granted.

With regard to plaintiff's false arrest claims based on his arrest on April 25, 2014, defendants have furnished the Court with a copy of a Certificate of Disposition from the County Court of Nassau County pertaining to the criminal proceeding against Burris. *See* Bahrenburg Decl., Ex. C, DE 71-1. The Certificate of Disposition establishes that on November 17, 2015, plaintiff was convicted of the crimes for which he was arrested, including petit larceny, identity theft and criminal possession of stolen property. *Id.* Plaintiff was subsequently sentenced as a second felony offender on March 31, 2016. *Id.* As a result of his convictions, plaintiff has been (and remains) incarcerated, and plaintiff has failed to establish or allege that his conviction has been invalidated in any manner. *See Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir. 1995) ("in order to recover damages for an unconstitutional conviction or imprisonment, a § 1983 plaintiff must demonstrate that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus") (internal quotation marks and citation omitted). Thus, plaintiff's false arrest claims against the Nassau County Defendants fail because Burris's conviction is considered conclusive evidence of probable cause for the underlying arrest on April 25, 2014. Accordingly, the undersigned recommends that the Nassau County Defendants' motion to dismiss plaintiff's false arrest claims stemming from the April 25, 2014 arrest be granted.

### (2) Unlawful Search and Seizure

**\*7** To the extent that plaintiff claims that the defendants conducted an unlawful search of his person incident to his arrests in violation of the Fourth Amendment, his claim is unavailing. Plaintiff's plea of guilty in satisfaction of the criminal charges for which he was arrested on December 27, 2013 and his conviction on the criminal charges stemming from his April 25, 2014 arrest establish not only existence of "probable cause for the arrest but also the lawfulness of it." *Hope,* 2010 WL 331678, at *3. Thus, "insofar as the constitutionality of a search incident to an arrest derives from the validity of the arrest itself ... a guilty plea provides a

defense to any Section 1983 claim brought for the search of an arrested person that is conducted as an incident to that arrest." *Roundtree,* 778 F. Supp. at 620; *see, e.g., Hope,* 2010 WL 331678, at *3 ("[s]ince plaintiff's claim for false arrest is dismissed on account of his guilty plea, it follows that his claim for an illegal search of his car under the Fourth Amendment must be dismissed for the same reason").

Here, plaintiff's convictions on January 23, 2014 and November 18, 2015 in connection with his arrests on December 27, 2013 and April 25, 2014, respectively, establish the lawfulness of both the arrests and the searches incident to the arrests. *See Roundtree,* 778 F. Supp. at 620 (holding that plaintiff's "guilty plea provides a complete defense to the claim that the searches incident to arrest were unconstitutional —just as his guilty plea provides a complete defense to the claim that the arrest itself was unconstitutional"). Accordingly, the undersigned recommends that, to the extent that plaintiff alleges an unlawful search and seizure claim against the defendants in connection with the arrests on December 27, 2013 and April 25, 2014, that defendants' motions to dismiss his claim for an unlawful search be granted.

### (3) Malicious Prosecution, Deprivation of the Right to a Fair Trial, Conspiracy, and Retaliation

As pleaded, plaintiff's Section 1983 claims implicating the invalidity of his convictions, *viz.* malicious prosecution, deprivation of the right to a fair trial, conspiracy and retaliation are barred because his criminal proceedings have not been terminated in his favor. *See Heck v. Humphrey,* 512 U.S. 477, 484-87 (1994); *see also Barnes v. City of New York,* No. 13-CV-7283 (GBD) (JLC), 2015 WL 4076007, at *16 (S.D.N.Y. July 2, 2015) ("Where the plaintiff's underlying conviction has not been so invalidated, courts routinely dismiss Section 1983 claims for, *inter alia,* malicious prosecution, conspiracy and deprivation of the right to a fair trial pursuant to *Heck*"); *McClinton v. Henderson,* No. 13-CV-3335 (JFB) (GRB), 2014 WL 2048389, at *5 (E.D.N.Y. May 19, 2014); *Cruz v. Reilly,* No. 08-cv-1245 (JFB)(AKT), 2009 WL 2567990, at *3 (E.D.N.Y. Aug. 18, 2009) ("pursuant to *Heck,* courts routinely dismiss claims of, *inter alia,* malicious prosecution, conspiracy, and deprivation of the right to a fair trial brought under Section 1983 when such claims bear on the validity of an underlying conviction") (collecting cases); *Duamutef v. Morris,* 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing, *inter alia,* Section 1983

Case 3:24-cv-01141-AJB-ML     Document 7     Filed 01/28/25     Page 105 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

claims of malicious prosecution, retaliation and conspiracy under *Heck* where plaintiff's underlying conviction had not been overturned).

In *Heck,* the Court "confronted the question of whether, given the overlap between § 1983 and the federal habeas corpus statute, a prisoner seeking civil damages may proceed with a § 1983 claim where success on the claim necessarily would implicate the unconstitutionality of the prisoner's conviction or sentence." *Amaker v. Weiner,* 179 F.3d 48, 51 (2d Cir. 1999). The Supreme Court made clear that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction ... has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless that plaintiff can demonstrate that the conviction or sentence has already been invalidated.

**\*8** *Heck,* 512 U.S. at 486-87 (footnote omitted); *see Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation [of the underlying conviction] )—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration") (emphasis in original); *see also Henry v. Purvis,*

111 Fed.Appx. 622, 623-24 (2d Cir. 2004); *Amaker,* 179 F.3d at 51-52.

As discussed *infra,* because plaintiff has not pleaded facts plausibly suggesting that his conviction has been invalidated, his Section 1983 claims of malicious prosecution, conspiracy, deprivation of the right to a fair trial, and retaliation necessarily fail. That being said, however, disposition of the claims on the grounds that they are barred by *Heck,* "warrants only dismissal without prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by executive order, declared invalid by a state tribunal authorize to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Amaker,* 179 F.3d at 52 (internal quotation marks and citation omitted).

### a) Malicious Prosecution

Plaintiff's claims of malicious prosecution against the Nassau County Defendants clearly call into question the validity of his conviction. To sustain a claim for malicious prosecution under Section 1983, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; (4) actual malice as a motivation for defendant's actions", *Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citation omitted), and (5) that his Fourth Amendment rights were violated after legal proceedings were initiated, *id.* (citations omitted); *see Ferguson v. Mastro,* No. 12 Civ. 4028 (BMC) (LB), 2012 WL 3637462, at \*2 (E.D.N.Y. Aug. 22, 2012) ("[a] plaintiff who claims that a government official deprived him of his liberty by maliciously initiating criminal proceedings against him without probable cause invokes the protection of the Fourth Amendment"). Because a favorable termination is a prima facie element of a malicious prosecution claim, Burris must establish the invalidity of his state court convictions to bring a cognizable Section 1983 malicious prosecution claim. *See Hygh v. Jacobs,* 961 F.2d 359, 367 (2d Cir. 1992) ("A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law").

Burris was convicted of petit larceny, possession of stolen property and identity theft. Plaintiff's conviction, however, has not been reversed or otherwise invalidated. The gravamen

of plaintiff's malicious prosecution claims is that the criminal indictment was "false" and the Nassau County District Attorney initiated a baseless and malicious prosecution against him in retaliation for his pending lawsuits against Nassau County in state and federal courts, including presenting false evidence to a grand jury, to wit, the stolen credit cards attributed to him, which resulted in his wrongful conviction. [4] Thus, plaintiff's claims for damages bear a direct relationship to his conviction and would render invalid his state court conviction. Inasmuch as Burris's conviction has not been invalidated in any away, and the essence of his claims against the defendants lies "within the core of habeas corpus," *Preiser,* 411 U.S. at 487, his Section 1983 malicious prosecution claims are not cognizable. *See Hygh,* 961 F.2d at 367 (holding that in a Section 1983 action, a plaintiff asserting the constitutional tort of malicious prosecution "must establish termination of the prosecution in his favor"); *see, e.g., Morse v. Spitzer,* No. 07-CV-4793 (CBA) (RML), 2012 WL 3202963, at *2 (E.D.N.Y. Aug. 3, 2012) (dismissing Section 1983 claim for malicious prosecution because of the valid underlying criminal conviction); *Cruz,* 2009 WL 2567990, at *3 (holding that "[b]ecause an element of a claim for malicious prosecution is the termination of the proceeding in plaintiff's favor, plaintiff's Section 1983 claim for malicious prosecution is necessarily barred because the subject prosecution was not terminated in a manner favorable to him"); *Corley v. Vance,* No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *4 (S.D.N.Y. June 22, 2015) (concluding plaintiff's malicious prosecution claim barred where there had not been a favorable termination). Accordingly, the undersigned recommends that the Nassau County Defendants' motion to dismiss plaintiff's claims for malicious prosecution be granted.

**b) Denial of Constitutional Right to a Fair Trial**

**\*9** Plaintiff's claim that he was denied the right to a fair trial based upon the allegation that defendants fabricated evidence to support his indictment likewise implicates the invalidity of his state court conviction. In the case where a police officer falsifies information "likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's right to a fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997) (collecting cases). However, a Section 1983 claim for the denial of the

due process right to a fair trial is, in essence, a claim for "damages attributable to an unconstitutional conviction," and is precluded until there is a favorable termination of the conviction. *Heck,* 512 U.S. at 489-90; *see Bowers v. Kelly,* No. 13 Civ. 6265 (LGS), 2015 WL 2061582, at *4 (S.D.N.Y. May 4, 2015) ("Claims alleging the denial of the right to a fair trial —through fabrication of evidence, for example—likewise imply the validity of any underlying criminal convictions and are precluded by *Heck*"). To prevail on a Section 1983 claim for a constitutional violation of the right to a fair trial, plaintiff must demonstrate that "(1) an investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York,* 486 Fed.Appx. 149, 152 (2d Cir. 2012) (citations omitted); *see Shabazz v. Kailer,* No. 15-CV-2798 (JGK), 2016 WL 4258134, at *5-6 (E.D.N.Y. Aug. 12, 2016). While "[p]robable cause is not a defense," the plaintiff must nonetheless "show causation—i.e., that the alleged fabrication of evidence led to a deprivation of his liberty." *Jovanovic,* 486 Fed.Appx. at 152 (citations omitted).

In his opposition papers, plaintiff alleges that: (i) the New York City Police manufactured false evidence against him, *viz.* the stolen credit cards, (ii) the stolen property was thereafter transferred to the Nassau County Police, (iii) who in turn forwarded the fabricated evidence to prosecutors to procure an indictment against Burris, (iv) ultimately resulting in a deprivation of his liberty. Pl.'s Opp. to Defs.' Motions to Dismiss, DE 87 at 5-11, 15. According to plaintiff, the fabricated evidence was used to frame him with a crime because he has pending lawsuits against the Nassau County in federal and state courts. In addition, plaintiff asserts that he had an unfair trial because the police used an illegal tracking device on his cell phone to get evidence to arrest him and he was deprived of his right to effective assistance of counsel during his trial. *Id.* at 7, 15. Clearly, the gist of plaintiff's claims challenges his conviction—he was denied a fair trial and thereby was convicted based on false evidence and ineffective assistance of counsel. Hence, because plaintiff's Section 1983 claims implicate the validity of his conviction, the claim falls squarely within the ambit of *Heck* and is barred. *See Bowers,* 2015 WL 2061582, at *4 ("Claims alleging denial of the right to a fair trial—through fabrication of evidence, for example—likewise imply the validity of any underlying criminal convictions and are precluded by *Heck*"); *Jasper v. Fourth Court of Appeals,* No. 08-CV-7472 (LAP), 2009 WL 1383529, at *1 (S.D.N.Y. May 8, 2009) (dismissing claim of violation of due process right to a fair

trial as precluded by plaintiff's valid conviction); *Cruz,* 2009 WL 2567990, at *3 (noting that "the Supreme Court in *Heck* applied the favorable termination doctrine required to prevail in a lawsuit for malicious prosecution to all § 1983 damages actions that would implicate the legality of the challenged conviction, if successful); *Perez v. Cuomo,* No. 09 Civ. 1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction.... Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants").

Accordingly, since plaintiff's conviction remains valid, the undersigned recommends that Nassau County Defendants' motion to dismiss plaintiff's claim that he was denied his due process right to a fair trial claim be granted.

### c) Conspiracy

**\*10** Plaintiff's claim of the existence of a conspiracy among the various defendants to frame him for possession of stolen property is likewise precluded on *Heck* grounds because success on the claim would implicate the unconstitutionality of his conviction. Notably, the Second Circuit has held that claims of conspiracy to violate civil rights are held to a heightened pleading standard. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir. 1981) ("Our Court has recognized that certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that ... detailed fact pleading is required to withstand a motion to dismiss. A claim of conspiracy to violate civil rights is a clear example").

To state a claim of conspiracy under Section 1983, plaintiff must plead facts giving rise to an inference of "(1) an agreement between a state actor and a private party [or at least two state actors]; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau,* 292 F.3d 307, 325-26 (2d Cir. 2002). Because a Section 1983 conspiracy claim rests "on the alleged illegality of the entire investigation and prosecution of this case," and would "necessarily impugn the validity" of a conviction, such claim is barred by *Heck. Zarro v. Spitzer,* 274 Fed.Appx. 31, 34 (2d Cir. 2008); *see Amaker,* 179 F.3d at 51-52 (holding that *Heck* applies to Section 1983

conspiracy). Furthermore, to the extent plaintiff's Complaint may be construed to allege a conspiracy claim under 42 U.S.C. §§ 1985 and/or 1986, the Second Circuit had made clear that "*Heck* ... applies not only to plaintiff's § 1983 claim but also to his ...§§ 1985(3) and 1986 claims" because the existence of a conspiracy would necessarily imply the invalidity of plaintiff's conviction. *Amaker,* 179 F.3d at 52.

Here, the crux of plaintiff's conspiracy claims is that the various defendants conspired and abused the legal process to violate his constitutional rights by fabricating evidence and utilizing an unlawful electronic tracking device on plaintiff's cell phone in an effort to convict him of possession of stolen property. Because granting Burris relief on his conspiracy claim would impugn the validity of this state court conviction, plaintiff's conspiracy claims are barred by *Heck. See id.*; *see also Bowers,* 2015 WL 2061582, at *4 (observing that the Second Circuit has held that "*Heck* bars claims asserting the existence of a conspiracy by the prosecution and/or law enforcement that led to a plaintiff's conviction" because they would call into question the validity of his conviction); *Parker v. Robenski,* No. 6:13-CV-668, 2015 WL 4041734, at *3 (N.D.N.Y. July 1, 2015) (dismissing Section 1983 conspiracy claim as *Heck*-barred); *Cruz,* 2009 WL 2567990, at *3 (dismissing plaintiff's Section 1983 conspiracy claims, *inter alia* "under the rule announced in *Heck* even if they were brought pursuant to 42 U.S.C. §§ 1985 and/or 1986"). Accordingly, given plaintiff's conviction remains valid, the undersigned recommends that defendants' motions to dismiss plaintiff's conspiracy claims be granted.

### d) First Amendment Retaliation

Liberally construing the Complaint, plaintiff further claims that Nassau County Defendants subjected him to retaliatory arrest, imprisonment and criminal prosecution for having exercised his First Amendment rights. Specifically, Burris maintains that defendants arrested and prosecuted him with false evidence, resulting in the deprivation of plaintiff's liberty, in order to retaliate against him for filing civil lawsuits against them. This claim also fails under the rule announced in *Heck* as it bears on the validity of plaintiff's underlying conviction and sentence.

**\*11** In order to establish a First Amendment retaliation claim, plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated by or substantially caused by his exercise

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 108 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir. 2001). However, a First Amendment retaliation claim cannot be sustained "when the criminal prosecution was supported by probable cause." *Duamutef v. Morris,* 956 F. Supp. 1112, 1116 (S.D.N.Y. 1997); *see Mozzochi v. Borden,* 959 F.2d 1174, 1179-80 (2d Cir. 1992) ("An individual does not have the right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government"); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (2d Cir. 1995) (affirming dismissal of a claim of First Amendment retaliation and explaining that where an officer had probable cause, "we will not examine the officer's underlying motive in arresting and charging the plaintiff").

Here, plaintiff's First Amendment retaliation claims necessarily depend upon demonstrating an absence of probable cause to support the charges against him. Because such a claim goes to the heart of the constitutionality of his criminal conviction and therefore would necessarily call into question the validity of plaintiff's conviction, his claim is not cognizable under Section 1983. *See Heck,* 512 U.S, at 484; *see also Duamutef,* 956 F. Supp. at 1116 ("The rule announced in *Heck* is designed to avoid just such parallel litigation over the issues of probable cause and guilt") (internal quotation marks and citations omitted). Accordingly, given that plaintiff cannot advance his retaliation claims until and unless his conviction is invalidated, the undersigned recommends that Nassau County Defendants' motion to dismiss plaintiff's First Amendment retaliation claims be granted.

#### (4) Equal Protection and Selective Enforcement

Burris asserts in conclusory fashion that defendants deprived him of the equal protection of the law. Liberally construing the complaint, plaintiff appears to base his equal protection claim on the alleged discriminatory decision by the Nassau County Defendants to prosecute him because he had filed civil lawsuits against Nassau County in state and federal courts.

Although "the decision whether to prosecute may not be based on an unjustifiable standard, such as race, religion, or other arbitrary classification," *United States v. Armstrong,* 517 U.S. 456, 464 (1996) (internal quotation marks and citation omitted); *see also United States v. Alameh,* 341 F.3d 167, 173 (2d Cir. 2003) (accord), an equal protection claim based on the selective enforcement of the law requires a plaintiff to "demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection under the law," *Armstrong,* 517 U.S. at 464-65. In so doing, the plaintiff must show that the "prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose," *viz.* that others similarly situated of a different classification could have been prosecuted but were not. *Id.* at 465; *see Alameh,* 341 F.3d at 173. Thus plaintiff must demonstrate that: (1) he was treated differently from other similarly-situated individuals, and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person," *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also LaTrieste Restaurant v. Vill. of Port Chester,* 188 F.3d 65, 69 (2d Cir. 1999). "[M]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LaTrieste Restaurant,* 188 F.3d at 70. Moreover, "[a]bsent a showing that [defendants] knew of other violations [of the law], but declined to prosecute them, [plaintiff] would ordinarily be unable to show that [he] was treated selectively." *Id.*

**\*12** Likewise, to show a violation of the Equal Protection Clause, "[p]roof that discriminatory intent was a motivating factor is required." *Okin v. Village of Cornwall-on-Hudson Police Dep't.,* 577 F.3d 415, 438 (2d Cir. 2009); *see Barone v. United States,* No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at \*23 (S.D.N.Y. Sept. 10, 2014) (to set forth a violation of the Equal Protection Clause, a plaintiff must allege "purposeful discrimination directed at an identifiable or suspect class," or that as a "class of one," he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment") (internal quotation marks and citations omitted).

Here, Burris has not asserted any factual allegations in his Complaint from which it may plausibly be inferred that defendants' criminal prosecution of plaintiff was based upon an impermissible consideration or that plaintiff was treated differently than similarly situated individuals due to a discriminatory motive. To the contrary, plaintiff offers nothing but a conclusory statement that the Nassau County Defendants deprived him of "the equal protection of the

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 109 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

law, and should be exempt from malicious prosecution and free from discrimination under the color of law for filing of civil complaints against Nassau County." Compl., Pt. IV. Without more, plaintiff's allegations are insufficient to plead an equal protection or a selective enforcement claim under Section 1983. *See Harris v. Nassau County,* No. 13-CV-4728 (NGG) (ST), 2016 WL 3023265, at \*5 (E.D.N.Y. May 23, 2016) ("conclusory allegations of disparate treatment, or [p]laintiff's personal opinion that such treatment was motivated by discriminatory intent, are insufficient to state an equal protection claim"); *Barone,* 2014 WL 4467780, at \*23 (dismissing equal protection claim where beyond "stating the words equal protection," the complaint did not allege facts to suggest that plaintiff had been "treated differently from any other person due to an impermissible motive on the part of the defendants"); *Whaley v. Lopez,* No. 12-CV-2889 (SJF)(ARL), 2012 WL 3137900, at \*10 (E.D.N.Y. July 30, 2012) (dismissing selective enforcement and equal protection claims where plaintiffs' conclusory assertion was "merely a formulaic recitation of the elements of a cause of action"). Accordingly, the undersigned recommends that Nassau County Defendants' motion to dismiss plaintiff's equal protection and selective enforcement claims be granted.

### (5) Due Process

Plaintiff alleges that defendants deprived him of due process of the law. Because it is not clear whether Burris claims the violation of his substantive due process rights or procedural due process rights, or both, the undersigned will address both given his *pro se* status.

First, with regard to substantive due process rights, the Second Circuit has made clear that "[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under the explicit provision and not the more generalized notion of substantive due process." *Kia P. v. McIntyre,* 235 F.3d 749, 757-58 (2d Cir. 2000); *see Velez v. Levy,* 401 F.3d 75, 94 (2d Cir. 2005) ("where a specific constitutional provision prohibits government action, plaintiff seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process"). Inasmuch as plaintiff's constitutional claims are covered by the First, Fourth, Fifth, Sixth and Fourteenth Amendments, he cannot bring an additional substantive due process claim under the Fourteenth Amendment. *See, e.g., Velez,* 401 F.3d at 94 (holding that "plaintiff's substantive due

process claim is either subsumed in her more particularized allegations" raising First Amendment and Equal Protection Clause claims, "or must fail"); *Dava v. City of New York,* No. 1:15-cv-08575 (ALC), 2016 WL 4532203, at \*6 (S.D.N.Y. Aug. 29, 2016) (dismissing substantive due process claim where plaintiff's constitutional claims were covered by the First, Fourth, Sixth, Thirteenth and Fourteenth Amendments); *Holland v. City of New York,* No. 14 Civ. 5517 (AT), 2016 WL 3636249, at \*11 (S.D.N.Y. June 24, 2016) (dismissing substantive due process claim because plaintiff's constitutional claims were "covered under either First, Fourth or Eighth Amendment standards"). Accordingly, to the extent plaintiff seeks to bring a substantive due process claim against defendants, the undersigned recommends that defendants' motion to dismiss the claim be granted.

**\*13** On the other hand, a "procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't,* 692 F.3d 202, 218 (2d Cir. 2012); *see Walker v. Fischer,* 523 Fed.Appx. 43, 44 (2d Cir. 2013) (to state a violation of procedural due process, "plaintiff must establish that (1) he possessed a liberty interest and (2) defendants deprived him of that interest without sufficient process"). Although plaintiff does not identify in his Complaint the liberty interest at issue or the process which was insufficient, he does appear to suggest in his opposition papers that he was deprived of due process because the indictment was defective and deprived him of his right to notice of the charges to bar double jeopardy. Pl.'s Opp. to Defs. Motions to Dismiss, DE 87 at 16. In addition, plaintiff states he was deprived of his fundamental right to a fair trial in violation of his due process. *Id.*

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be informed of the nature and cause of the accusation." U.S. Const. amend. VI. "An indictment is sufficient when it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *DeVonish v. Keane,* 19 F.3d 107, 108 (2d Cir. 1994) (per curiam) (internal quotation marks and citation omitted). As discussed *supra,* plaintiff's Section 1983 claims bearing on the validity of his convictions are precluded under *Heck* until his conviction has been reversed or otherwise invalidated. Because the basis of plaintiff's due process claims against defendants challenge the sufficiency of the indictment and his trial and therefore

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 110 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

lie within the core of habeas corpus, *see Rodriguez v. Smith,* No. 10-CV-8306 (KMK) (LMS), 2015 WL 6509153, at *7 (S.D.N.Y. Oct. 28, 2015) (observing that challenges to the sufficiency of a state indictment are "reviewable by a habeas court if the indictment fails to satisfy the basic due process requirements: notice of time, place, and essential elements of the crime"); *Voymas v. Unger,* No. 10-CV-6045 (MAT), 2011 WL 2670023, at *4 (W.D.N.Y. July 7, 2011) ("[c]hallenges to state indictments will merit habeas corpus relief only in exceptional cases where the indictment fails to satisfy the basic due process requirements: notice of the time, place, and essential elements of the crime"), his procedural due process claims are barred until there is a favorable termination of his conviction.

Accordingly, given plaintiff's conviction remains valid, the undersigned recommends that the defendants' motions to dismiss plaintiff's procedural due process claims be granted.

### (6) Excessive Force

Plaintiff alleges that New York City Defendants and Nassau County Defendants used excessive force against him during his arrest on April 25, 2014 in violation of his Fourth Amendment rights.

The Fourth Amendment prohibits police offers from using "excessive force in making an arrest, and whether the force used is excessive is to be analyzed under the Amendment's reasonableness standard." *Brown v. City of New York,* 798 F.3d 94, 100 (2d Cir. 2015) (internal quotation marks and citation omitted). To determine whether a police officer's use of force is reasonable, the court considers the "totality of the circumstances faced by the officer," *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995), and applies an objective test, assessing the use of force "from the perspective of a reasonable officer on the scene," without regard to the underlying intent or motivation, *Graham v. Connor,* 490 U.S. 386, 396-97 (1989). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks and citations omitted). In so doing, courts consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer and others, and (3) whether the suspect was actively resisting

arrest or attempting to evade arrest by flight." *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir. 2010). Here, plaintiff brings a claim of excessive force based on the officers' use of handcuffs during his arrest.

**\*14** District courts in the Second Circuit "apply a separate standard to claims for excessive force in the use of handcuffs." *Hanniford v. City of New York,* No. 12 CV 0040 (PKC) (SMG), 2015 WL 588766, at *2 (E.D.N.Y. Feb. 11, 2015). The standard employed seeks to "balance the right to use some degree of coercion, including the use of tight handcuffs to prevent the arrestee's hands from slipping out, with the use of overly tight handcuffing that could constitute excessive force." *Christian v. Kelly,* No. 14-CV-07416 (PKC) (SMG), 2016 WL 3162056, at *2 (E.D.N.Y. June 3, 2016) (internal quotation marks and citations omitted). To determine the reasonableness of the handcuffing of an arrestee, "the handcuffing must be viewed in light of the minimal amount of force necessary to maintain custody of [the arrestee]." *Graham v. City of New York,* 928 F. Supp. 2d 610, 618 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). Among the factors the court considers in evaluating whether handcuffing constitutes excessive force is whether: "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Dunkelberger v. Dunkelberger,* No. 14-cv-3877 (KMK), 2015 WL 5730605, at *14 (S.D.N.Y. Sept. 30, 2015) (internal quotation marks and citations omitted).

In addition, there is a "consensus among courts in [the Second Circuit] that tight handcuffing does not constitute excessive force unless is causes some injury beyond temporary discomfort." *Harris v. Nassau County,* No. 13-CV-4728 (NGG) (ST), 2016 WL 3023265, at *10 (E.D.N.Y. May 24, 2016); *see Usavage v. Port Auth. of N.Y. & N.J.,* 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (accord). "These injuries need not be severe or permanent, but must be more than merely *de minimus.*" *Selvaggio v. Patterson,* 93 F. Supp. 3d 54, 74 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see Robison v. Via,* 821 F.2d 913, 924 (2d Cir. 1987) ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe"). A defendant is subject to liability "as long as the force used exceeded the force needed for the factual circumstances, and the fact that [p]laintiff may not have sustained serious long lasting harm is not dispositive." *Graham,* 928 F. Supp. 2d at 618; *see Hayes v. N.Y.C. Police Dep't,* 212 Fed.Appx. 60, 62 (2d Cir. 2007) ("we have

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 111 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

permitted claims to survive summary judgment where the only injury alleged is bruising"); *Lemmo v. City of New York,* No. 08-CV-2641 (RJD), 2011 WL 4592785, at *8 (E.D.N.Y. Sept. 30, 2011) (noting that "a jury may consider the lack of serious injury as evidence that the implemented force was not excessive, while nevertheless concluding that intentional gratuitous uses of force that are not required to subdue an individual likely fail the *Graham* objective reasonableness test and appropriately award plaintiff nominal damages") (internal quotation marks and citations omitted); *Davenport v. County of Suffolk,* No. 99-CV-3088 (JFB), 2007 WL 608125, at *11 (E.D.N.Y. Feb. 23, 2007) (holding a police officer's use of force that causes *de minimis* injury could be excessive if "gratuitous").

In the case at bar, plaintiff alleges that immediately upon his release from the New York City Department of Corrections on April 25, 2014, he was arrested by Nassau County detectives with respect to crimes related to stolen property. Burris also asserts that during the arrest, he suffered "excessive pain" when New York City police officers, with the assistance of several Nassau County detectives and Detective Dezelic, subjected him to excessive force by restraining his hands with handcuffs behind his back and simultaneously lifting his arms above his head. Burris states he complained to defendants that he was in "excessive pain," requested medical treatment, was taken to Nassau County Medical Center and later had to return a second time for treatment, and "a back brace was lost." Nothing in these allegations suggests that plaintiff posed an immediate threat to the safety of any of the officers or others or that Burris was trying to resist arrest when New York City police assisted Nassau County police with the arrest on charges of possession of stolen property.

**\*15** Moreover, liberally construing plaintiff's allegations, an inference can be made that the force used in handcuffing Burris exceeded the amount necessary to maintain custody of him in that it resulted in injuries requiring two trips to the hospital for medical treatment. Finally, even though plaintiff's allegation concerning the "back brace" lacks specific detail, the reasonable implication of this allegation, read liberally, is that plaintiff received medical treatment for injuries arising from the arrest which included multiple medical visits and the use of durable medical equipment. Thus the allegations of the Complaint appear to indicate that Burris suffered pain beyond "temporal discomfort." Although a close question, viewing these allegations in the light most favorable to the plaintiff, the undersigned concludes that plaintiff has alleged enough facts and circumstances in the Complaint

to state a plausible excessive force claim against the New York City Defendants and the Nassau County Defendants. Accordingly, the undersigned recommends that the New York City Defendants and the Nassau County Defendants' motions of to dismiss the excessive force claim be denied.

### (7) Municipal Liability

Although Burris does not specifically name the Village of Hempstead, Nassau County, Queens County or New York City as defendants, he has named the individual defendants in their official capacities. Plaintiff is therefore deemed to have named the municipalities as defendants because "[t]he real party in interest in an official-capacity suit is the government entity and not the named official." *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *see DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998).

A municipal defendant "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir. 2012). Rather, a municipal entity may only be held liable under *Section 1983* "if the deprivation of the plaintiff's rights under federal law [was] caused by a governmental custom, policy, or usage of the municipality." *Jones,* 691 F.3d at 80; *see Pipitone v. City of New York,* 57 F. Supp. 3d 173, 194 (E.D.N.Y. 2014) ("[m]unicipalities can only be held liable under § 1983 when they are a 'moving force' behind the constitutional deprivation"); *Hunter v. City of N.Y.,* 35 F. Supp. 3d 310, 322 (E.D.N.Y. 2014) ("[i]n order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff must show the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right"). The official policy or custom need not be explicit and may be inferred from: "(1) a formal policy officially endorsed by a municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware; or (4) failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Dava,* 2016 WL 4532203, at *9 (internal quotation marks and citation omitted). In short, the plaintiff must demonstrate that

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 112 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

an identified municipal policy or practice was "the moving force of the constitutional violation." *Monell,* 436 U.S. at 694.

In the instant matter, plaintiff's claims for municipal liability against the Village of Hempstead are unavailing because Burris has failed to establish the violation of any protected constitutional rights by any of the Village of Hempstead Defendants. Hence, because there are no underlying constitutional violations against the Village of Hempstead, plaintiff's claims against it must ultimately fail. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *see Costello v. City of Burlington,* 632 F.3d 41, 49 (2d Cir. 2011) (to prevail on a *Monell* claim, plaintiff must show that there was a constitutional violation and that a specific policy or custom of the municipality caused the violation); *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) (observing that there must be an underlying constitutional violation to support a claim under *Monell* ); *see also Fiedler v. Incandela,* No. 14-CV-2572 (SJF) (AYS), 2016 WL 7406442, at *13 (E.D.N.Y. Dec. 6, 2016) (dismissing plaintiff's claim against Suffolk County for municipal liability pursuant to Section 1983 because the individual Suffolk Defendants did not violate plaintiff's constitutional rights). Moreover, plaintiff has not pled that the alleged constitutional violations of which he suffered, *viz.* excessive force by the New York City Defendants and the Nassau County Defendants, were the result of a policy or practice of either municipality. *See, e.g., Joyner-El v Giammarella,* No. 09 CIV. 2731(NRB), 2010 WL 1685957, at *7-8 (S.D.N.Y. Apr. 15, 2010) (dismissing any Monell claim because the plaintiff had "pointed to no policy or custom on the part of New York City that might plausibly have caused any of his alleged constitutional injuries"); *Overhoff v. Ginsburg Dev., L.L.C.,* 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing Section 1983 complaint against municipality due to plaintiff's failure to "allege that her constitutional rights were violated pursuant to any municipal policy or custom").

**\*16** Accordingly, the undersigned recommends that defendants' motions to dismiss plaintiff's claims for municipal liability be granted.

### D. State Law Claims

To the extent that plaintiff seeks to assert state tort law claims against defendants, these claims fail because Burris did not comply with New York's notice of claim requirement.

Under New York law, an action against a municipality or municipal actor is commenced by filing a notice of claim upon the defendant. N.Y. Gen. Mun. Law § 50-e. The notice of claim must provide, *inter alia*, the nature of the claim and must be filed within ninety days of when the claim arises. *Id.* Pursuant to the statute, a plaintiff is required to plead in the complaint that: (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim. N.Y. Gen. Mun. Law § 50-i; *see Joyner-El,* 2010 WL 1685957, at *7-8 (holding that under Section 50-i(b), "a plaintiff must plead that a notice of claim has been served, allow thirty days to elapse after the notice is filed before filing a complaint, and show that in that time period the defendant has either neglected or refused to satisfy the claim"). Notice of claim requirements "are construed strictly by New York state courts." *American Tel. &Tel. v. N.Y.C. Dep't of Human Res.,* 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (internal citations omitted).

This condition precedent to the commencement of a suit also applies to state law claims set forth in actions brought in federal court, *see Felder v. Casey,* 487 U.S. 131, 151 (1988); *Hardy v. N.Y.C. Health & Hosps. Corp.,* 164 F.3d 789, 794 (2d Cir. 1999); *see also Caputo v Copiague Union Free School District,* No. 15-5292 (DRH), 2016 WL 6581865, at *6 (E.D.N.Y. Nov. 4, 2016) ("[t]he notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action") (internal quotation marks and citations omitted), and applies with equal force to actions commenced by a *pro se* plaintiff, *Joyner-El,* 2010 WL 1685957, at *7-8. Plaintiff bears the burden "to demonstrate compliance with the notice of claim requirement." *Horvath v. Daniel,* 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citation omitted). The failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action. *See Brown v. Metro. Transp. Auth.,* 717 F. Supp. 257, 259 (S.D.N.Y. 1989) ("a notice of claim ... is a mandatory condition precedent to the bringing a tort claim against a public corporation, or any of its officers, appointees, or employees"); *see also Hardy,* 164 F.3d at 794 (holding that because notice of claim requirements are construed strictly, the "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action"); *Naples v. Stefanelli,* 972 F. Supp. 2d 373, 390 (E.D.N.Y. 2013) ("[t]o survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed") (citations omitted). In sum, under New York law, if the statutory requirement has not been satisfied (and the defendant has

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 113 of 229

Burris v. Nassau County District Attorney, Not Reported in Fed. Supp. (2017)

not waived its right to a notice of claim), no damages are available.

**\*17** Because plaintiff has failed to allege that he filed a notice of claim or took other steps necessary to preserve his state tort law claims, his state law claims fail to state a cause of action. *See Dingle v. City of N.Y.,* 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010) ("Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim"). Accordingly, the undersigned recommends that defendants' motions to dismiss plaintiff's state law claims be granted.

### E. Leave to Amend

In view of plaintiff's *pro se* status, the undersigned considers whether Burris should be afforded an opportunity to replead his claims. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). "A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013); *see Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010) (same); *see also Tract v. Freshwater,* 623 F.3d 90, 101 (2d Cir. 2010) ("the solicitude afforded to pro se litigants ... embraces relaxation of the limitations on the amendment of pleadings"). Thus, the Court ought not dismiss a complaint for failure to state a claim unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999) (per curiam). This is particularly true, where, as here, a *pro se* prisoner pursues a civil rights complaint. *See Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them"); *see also Bobal v. Rensselaer Polytechnic Institute,* 916 F.2d 759, 763 (2d Cir. 1990) (holding the district court erred by refusing to afford plaintiff an opportunity to replead and stating "we have previously explained that a *pro se* plaintiff who brings a civil rights action should be freely afforded an opportunity to amend his complaint, even if he makes the request after

the court has entered judgment dismissing [her] original complaint") (internal quotation marks and citations omitted).

Accordingly, in an abundance of caution, the undersigned respectfully recommends that plaintiff be granted leave to amend his complaint within thirty (30) days of the district court's decision to provide whatever additional facts that may exist to support his claims consistent with this Report and Recommendation. Nevertheless, for the reasons described above, plaintiff may not reassert his claims for false arrest, unlawful search and seizure incident to arrest, malicious prosecution, deprivation of the right to a fair trial, and related conspiracy and retaliation claims unless the underlying conviction has been vacated or otherwise invalidated.

### CONCLUSION

Based on the foregoing, the Court respectfully recommends that (1) the Nassau County Defendants' motion be granted in part and denied in part; (2) the Hempstead Village Defendants' motion be granted; and (3) the New York City Defendants' motion be granted in part and denied in part. In addition, the Court respectfully recommends that plaintiff be given leave to file an amended complaint to address the deficiencies in the Complaint identified herein.

### OBJECTIONS

**\*18** A copy of this Report and Recommendation is being electronically served on counsel for the defendants. Further, the Court is directing defendants to serve a copy of this Report and Recommendation by overnight mail and first-class mail to plaintiff at his last known address and to file proof of service on ECF. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals.** *See Thomas v. Arn,* 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *see also Caidor v. Onondaga Cnty.,* 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a

magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9485714

---

## Footnotes

1      The Hempstead Police Department identified two of the police officers as Police Officer W. Van Wyen and Police Officer Matthew A. Flannery. *See* DE 65.

2      As discussed *infra*, judicial notice may be taken of the state court documentation submitted by defendants. *See, e.g., Nicaisse v. Mel S. Harris & Assocs., LLC,* No. 14-CV-1569 (ADS) (AYS), 2015 WL 5561296, at *4 (E.D.N.Y. Sept. 19, 2015) (taking judicial notice of the public records of the New York State Unified Court System available on its website); *Cruz v. Reilly,* No. 08-CV-1245 (JFB)(AKT), 2009 WL 2567990, at *1 and n.1 (E.D.N.Y. Aug. 18, 2009) (same). In addition, judicial notice may be taken of public records, including "arrest reports, criminal complaints, indictments, and criminal disposition data." *Wims v. New York City Police Dep't,* No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011).

3      Burris was arrested for the felony of Criminal Contempt in the First Degree for violating an order of protection and the misdemeanors of Aggravated Harassment (two counts), Stalking in the Third Degree and Criminal Mischief. *See* Bahrenburg Decl., Ex. B, DE 71-1.

4      The existence of a grand jury indictment creates a presumption of probable cause, which can be rebutted with evidence that "the indictment was procured by fraud, perjury, the suppression of evidence[,] or other police conduct undertaken in bad faith." *Savino v. City of New York,* 331 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks and citations omitted). The Complaint does not allege any facts to support an inference that the indictment returned against plaintiff was procured by bad faith, perjury or fraud. Burris only alleges in conclusory fashion that the defendants falsified evidence against him to procure his indictment due to his pending civil lawsuits against the County in federal and state courts. A plaintiff, however, "must present more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith to rebut the presumption." *Peterson v. Regina,* 935 F. Supp. 2d 628, 642 (S.D.N.Y. 2013)(internal quotation marks and citations omitted); *see Hadid v. City of New York,* No. 15-CV-19 (WFK) (RER), 2015 WL 7734098, at *8 (E.D.N.Y. Nov. 30, 2015) (dismissing malicious prosecution claim where the only facts plaintiff alleged were that the indictment was procured against him "for the malicious purpose of retaliation against [him] for the purpose of discrediting [him]") (internal quotation marks omitted).

---

**End of Document**                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 115 of 229

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

2016 WL 3023265
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Dennis HARRIS, Plaintiff,

v.

NASSAU COUNTY, Police Officer Velte, Detective
Rispoli, Nassau County Police, and Others, Defendants.

13-CV-4728 (NGG)(ST)
|
Signed May 23, 2016
|
Filed 05/24/2016

**Attorneys and Law Firms**

Dennis Harris, Far Rockaway, NY, pro se.

Pablo A. Fernandez, Sara Kaye Schwartz, Thomas Lai,
Mineola, NY, for Defendants.

**MEMORANDUM & ORDER**

NICHOLAS G. GARAUFIS, United States District Judge

 *1 Plaintiff Dennis Harris brings this pro se action against
Defendants Nassau County, Police Officer Velte, Detective
Rispoli,[1] and the Nassau County Police[2] (collectively,
"Defendants"), pursuant to 42 U.S.C. § 1983. (Am. Compl.
(Dkt. 7).) Plaintiff alleges claims of false arrest, malicious
prosecution, violation of due process, denial of access to the
courts, deliberate indifference to medical needs, excessive
force, and municipal liability. (Id.) Before the court is
Defendants' Motion to Dismiss (Defs.' Mot. to Dismiss (Dkt.
30)), and Plaintiff's Opposition and Motion to Amend the
Amended Complaint (Pl.'s Mem. in Opp'n. and Req. to File
Second Am. Compl. ("Pl.'s Opp'n and Mot. to Amend") (Dkt.
28)). For the reasons set forth below, Plaintiff's Motion to
Amend is DENIED, and Defendants' Motion to Dismiss is
GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

**A. Factual Background**

The following facts are taken from Plaintiff's Amended
Complaint and matters of which judicial notice may be taken.
See Halebian v. Berv, 644 F.3d 122, 131 & n.7 (2d Cir.

2011) (holding that on a motion to dismiss for failure to
state a claim, courts may rely on documents incorporated by
reference in the complaint, as well as "documents either in
plaintiff's possession or of which plaintiff had knowledge and
relied on in bringing suit" (citing Chambers v. Time Warner,
Inc., 282 F.3d 147, 153 (2d Cir. 2002))).

On June 16, 2013, Nassau County police officers arrested
Plaintiff on petty larceny charges. (Am. Compl. ¶ 1.) Officer
Velte searched Plaintiff's car and charged Plaintiff with
numerous forgery offenses based on the items found in
the car. (Id. ¶ 3.) The Nassau County Police Department
(the "NCPD") impounded Plaintiff's car but never "issued
[Plaintiff] any voucher, inventory receipt or evidence notice
for the vehicle or the items allegedly contained therein." (Id.)

As Plaintiff was being driven back to the police station,
he complained to Officer Velte that his handcuffs were too
tight. (Id. ¶ 2.) Plaintiff claims that Officer Velte ignored
his complaints and that he later was told by medical staff
that he suffered from "handcuff syndrome." (Id.) Plaintiff
also alleges that during his interrogation, Detective Rispoli
told him that he did not believe Plaintiff was involved in
any forgery crime but that he was going to charge Plaintiff
anyway and the charges eventually would be dismissed. (Id.
¶ 4.) In addition to the forgery charges, Plaintiff ultimately
was charged with violating an order of protection from Kings
County. (Id.)

Plaintiff then was arraigned at the county district court, where
he was held on $80,000 bail. (Id. ¶ 5.) Plaintiff was appointed
counsel and placed in a "72 hour confinement" for about 10
days.[3] (Id. ¶ 6.) Plaintiff maintains that during this time, he
was denied access to the law library or legal materials and did
not receive medical treatment for his withdrawal from opiate
use. (Id.)

 *2 On June 21, 2013, Plaintiff met with his assigned counsel,
Toni Marie Angeli, who informed Plaintiff that his case was
being presented to the grand jury that same day. (Id.) On June
26, 2013, the Nassau County Grand Jury issued an indictment
against Plaintiff. (Id. ¶ 7.) Plaintiff was arraigned on the
Indictment on July 9, 2013. (Id.) At Plaintiff's arraignment,
Ms. Angeli petitioned for his release because Nassau County
had not filed the Indictment pursuant to New York Criminal
Procedure Law ("NYCPL") § 180.80. (Id.) Plaintiff's Petition
for Release was denied, but his bail was reduced to $25,000.
(Id. ¶ 8.)

Plaintiff's counsel told him that Nassau County "does not issue receipts or vouchers for seized property," and that Plaintiff would not be able to retrieve his car until the criminal case was over. (Id. ¶ 9.) However, Plaintiff claims that Defendants disposed of his vehicle prior to the conclusion of the criminal proceedings without notifying Plaintiff, his counsel, or the District Attorney's Office. (Pl.'s Opp'n and Mot. to Amend. ¶ 4.)

### B. Procedural Background

Plaintiff filed his Complaint on August 14, 2013. (Compl. (Dkt. 1).) On September 13, 2013, the court dismissed with prejudice Plaintiff's claims against Nassau County District Attorney Kathleen Rice and Nassau County Assistant District Attorney Michelle Haddad, and denied Plaintiff's request for injunctive relief. (See Sept. 13, 2013, Mem. & Order (Dkt. 6).) The court directed Plaintiff to file an amended complaint by October 18, 2013, naming the individuals personally responsible for the alleged denial of his constitutional rights. (Id.) On October 3, 2013, Plaintiff filed the Amended Complaint as directed. (Am. Compl.) Plaintiff seeks relief in the form of: (1) $25,000 against Officer Velte and $25,000 against Detective Rispoli; (2) $250,000 against Nassau County; and (3) the immediate release of his property, plus costs and any other just relief. (Id.)

On November 22, 2013, Defendants filed a motion to stay Plaintiff's § 1983 action because the underlying criminal matter was pending before state court. (Defs.' Mot. to Stay (Dkt. 10).) On January 2, 2014, Plaintiff filed a response in opposition to Defendants' Motion to Stay. (Pl.'s Resp. in Opp'n (Dkt. 13).) On July 8, 2014, the court granted Defendants' Motion to Stay pending resolution of Plaintiff's criminal proceedings and dismissed, sua sponte, Plaintiff's claim challenging the legality of his confinement. (See July 8, 2014, Mem. & Order (Dkt. 17).) On May 15, 2015, Defendants filed a letter indicating that Plaintiff had pleaded guilty in the underlying criminal proceeding to attempted possession of a forged instrument, in satisfaction of all charges. (See Defs.' May 15, 2015, Ltr. (Dkt. 18).) Defendants' letter further stated that on April 27, 2015, Plaintiff was sentenced to one and a half to three years of imprisonment in connection with his plea. (Id.) Accordingly, on June 5, 2015, the court lifted the stay on this action. (See June 5, 2015, Order (Dkt. 20).)

On August 3, 2015, Defendants filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss.) On September 2, 2015, Plaintiff filed his

Opposition and Motion to Amend. (Pl.'s Opp'n and Mot. to Amend.) Plaintiff seeks to further amend the Amended Complaint to add claims that: (1) he was wrongfully held beyond the statutorily imposed maximum time of 144 hours under NYCPL § 180.80, and (2) he was denied admission to the judicial diversion program pursuant to NYCPL § 216.05 based on an arbitrary decision by Nassau County Judge Frank Gulotta, Jr. (Id. ¶¶ 5-6.) On October 16, 2015, Defendants filed a memorandum in further support of their Motion to Dismiss. (Defs.' Mem. of Law in Further Supp. of Mot. to Dismiss (Dkt. 32).) [4]

## II. STANDARD OF REVIEW

### A. Motion to Amend

**\*3** Federal Rule of Civil Procedure 15(a)(2) provides that unless a party may amend his pleading as of right pursuant to Rule 15(a)(1), [5] a party "may amend its pleading only with the opposing party's written consent or the court's leave," and the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny leave to amend or to serve a supplemental pleading only upon "undue delay, bad faith or dilatory motive on the part of the [moving party],... undue prejudice to the [nonmoving party,] ... [or] futility." Foman v. Davis, 371 U.S. 178, 182 (1962). An amendment is futile "when the proposed new pleading fails to state a claim on which relief can be granted.... The adequacy of a proposed amended complaint to state a claim is to be judged by the same standards as those governing the adequacy of a filed pleading." Anderson News. L.L.C. v. Am. Media. Inc., 680 F.3d 162, 185 (2d Cir. 2012).

### B. Motion to Dismiss

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court accepts as true all allegations of fact and draws all reasonable inferences from these allegations in favor of the plaintiff. ATSI Comm'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). In reviewing a complaint submitted pro se, the court reads the plaintiff's submissions liberally and interprets them as raising the strongest arguments they suggest. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 117 of 229

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

Nevertheless, even a pro se complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555).

A court considering a motion to dismiss under Rule 12(b) (6) generally may not consult evidence outside the pleadings. Robinson v. Gov't of Malay., 269 F.3d 133, 140 n.6 (2d Cir. 2001). However, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Vasquez v. City of New York, No. 99-CV-4606 (DC), 2000 WL 869492, at *2 n.1 (S.D.N.Y. June 29, 2000) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998)). Matters of public record of which the court may take judicial notice include arraignments, arrest reports, criminal complaints and indictments, and certificates of disposition. Garcia-Garcia v. City of New York, No. 12-CV-1302 (CM), 2013 WL 3832730, at 1 n.1 (S.D.N.Y. July 22, 2013); Wingate v. Deas, No. 11-CV-1000 (ARR), 2012 WL 1134893, at *1 n.1 (E.D.N.Y. Apr. 2, 2012); see also Parker v. City of New York, No. 09-CV-910 (JG), 2010 WL 1693007, at *3 n.2 (E.D.N.Y. Apr. 28, 2010) (noting that courts routinely take judicial notice of documents filed in other courts).

 *4  Accordingly, here the court may take judicial notice of the Certificate of Disposition attached as Exhibit C to Defendants' Memorandum of Law, because it is a matter of public record. See Johnson v. Pugh, No. 11-CV-385 (RRM) (MDG), 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) (noting that a court in a § 1983 action may take judicial notice of a plaintiff's guilty plea, conviction, and sentencing in the underlying criminal case).

## III. DISCUSSION

### A. Proposed Claims for Amendment

The amendment sought by Plaintiff raises largely the same arguments already alleged in the Amended Complaint, with the exception of two additional claims. Specifically, Plaintiff alleges that he was denied his right to release, in violation of NYCPL § 180.80 (Pl.'s Opp'n and Mot. to Amend ¶ 5), and that he arbitrarily was denied the right to enter a judicial diversion program, in violation of NYCPL § 216.05 and the Equal Protection Clause of the Fourteenth Amendment (id. ¶ 1). For the reasons stated below, the court denies Plaintiff's Motion to Amend.

1. Right to Release under NYCPL § 180.80

Plaintiff alleges that Defendants have instituted a "felony exam" policy whereby felony charges are reviewed by the court rather than a grand jury and that—since the felony exam was scheduled by Plaintiff's assigned counsel past the statutory deadline—Plaintiff was denied his right to release under NYCPL § 180.80. (Id.)

NYCPL § 180.80 provides in relevant part:

> Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless: 1. The failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent[.]

N.Y. Crim. Proc. Law § 180.80(1).

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 118 of 229

By its terms, § 180.80 creates a waivable right for a detainee to be released from detention if neither a court nor a grand jury has made a determination that reasonable cause exists to believe that the detainee has committed a felony. However, § 180.80 does not apply if an indictment was voted, a prosecutor's information was filed, a felony hearing was held, the detainee consents to his detention, or the court is otherwise satisfied that the prosecution has shown good cause why such order of release should not be issued. People v. Winslow, 530 N.Y.S.2d 749, 752 (Sup. Ct. 1988).

Plaintiff concedes that his assigned counsel and the Assistant District Attorney agreed upon a felony exam date after the time limits imposed by § 180.80. (Id.) Since demanding a felony exam after the § 180.80 time period is deemed as waiving a detainee's statutory right under § 180.80, Plaintiff has no claim under this provision. See People v. Romero, 655 N.Y.S.2d 806, 807 (Sup. Ct. 1997) (finding that counsel's offer to demand a felony exam at a future date after the § 180.80 deadline has the effect of waiving the detainee's release rights under that provision). Therefore, it would be futile for Plaintiff to amend his Amended Complaint to add this claim.

### 2. Denial of Entry into Judicial Diversion Program

**\*5** Plaintiff alleges that despite meeting the statutory requirement and being recommended by the court's evaluator, Nassau County Judge Gulotta arbitrarily denied Plaintiff admission to a judicial diversion program for substance abuse treatment. (PL's Opp'n and Mot. to Amend ¶ 6.) Plaintiff further maintains that his equal protection rights were violated because "he has personally witnessed the disproportionate granting of white defendants to judicial diversion by defendant throughout the course of his detention." (Id.) Plaintiff therefore alleges that Defendants' administration of the program is "biased against non-whites like Plaintiff." (Id.)

Judicial diversion programs in New York are governed by NYCPL § 216.05, which provides in relevant part:

> When an authorized court determines, pursuant to paragraph (b) of subdivision three of this section, that an eligible defendant should be offered alcohol or substance abuse treatment, or when the parties and the court agree to an eligible defendant's participation in alcohol or substance abuse treatment, an eligible defendant may be allowed to participate in the judicial diversion program offered by this article. Prior to the court's issuing an order granting judicial diversion, the eligible defendant shall be required to enter a plea of guilty to the charge or charges[.]

N.Y. Crim. Proc. Law § 216.05.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike. Young v. Suffolk County, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010). When challenging the selective enforcement of a law under the Equal Protection Clause, a plaintiff must prove that: (1) compared with other similarly situated individuals, he was treated differently; and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal citation omitted).

To be "similarly situated," the individual with whom a plaintiff attempts to compare himself "must be similarly situated in all material respects." Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). To set forth factual allegations sufficient to state an equal protection claim, the plaintiff also cannot rely on conclusory allegations devoid of factual support. See Schuler v. Bd. of Educ. of Cent. Islip Union Free Sch. Dist., No. 96-CV-4702 (JG), 2000 WL 134346, at *7 (E.D.N.Y. Feb. 1, 2000) (dismissing conclusory equal protection claim in pro se case).

Plaintiff's equal protection claim fails for two reasons. First, to succeed on his equal protection claim, Plaintiff must show that the white applicants who were accepted into the judicial diversion program had similar backgrounds and were in similar circumstances as he was. See Shumway, 118 F.3d at 64. Here, Plaintiff has not offered any facts suggesting that he and the admitted applicants were similarly situated in all material respects. Therefore, he fails to state an equal protection claim. See Guan N. v. N.Y.C. Dep't of Educ., No. 11-CV-4299 (AJN), 2013 WL 67604, at *17 (S.D.N.Y. Jan.

Case 3:24-cv-01141-AJB-ML   Document 7   Filed 01/28/25   Page 119 of 229

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

7, 2013) (holding that the court need not accept conclusory statements that plaintiff was treated differently than similarly situated individuals when the complaint neither identified these individuals nor contained facts indicating that they were in fact similarly situated); Parkash v. Town of Southeast, No. 10-CV-8098 (VB), 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011) (dismissing a selective enforcement equal protection claim where the complaint referenced "unspecified similarly situated persons without accompanying examples").

*6 Second, Plaintiff fails to set forth sufficient factual allegations that acceptance into the program was based on impermissible considerations. Plaintiff offers nothing but a conclusory statement that he personally witnessed more white defendants being granted admission to the judicial diversion program and that, therefore, Judge Gulotta's decision not to admit Plaintiff to the program was discriminatory. (Pl.'s Opp'n and Mot. to Amend ¶ 6.) However, conclusory allegations of disparate treatment, or Plaintiff's personal opinion that such treatment was motivated by discriminatory intent, are insufficient to state an equal protection claim. See e.g., Gordon v. City of New York, No. 10-CV-5148 (CBA) (LB), 2012 WL 1068023, at *9 (E.D.N.Y. Mar. 29, 2012) (dismissing plaintiff's equal protection claim because plaintiff's allegation that he was conspired against solely because he was "of a minority race" was wholly conclusory and unsupported); Okoh v. Sullivan, No. 10-CV-2547 (SAS), 2011 WL 672420, at *6 (S.D.N.Y. Feb. 24, 2011) (holding that plaintiff's conclusory allegation that he was adversely treated on account of his African-American race or Nigerian descent, relative to non-African-American student, without more, was insufficient to raise a reasonable inference that there was an equal protection violation), aff'd, 441 Fed.Appx. 813 (2d Cir. 2011) (summary order). Even under a liberal construction, such conclusory allegations fail to state an equal protection claim. See Schuler, 2000 WL 134346, at *7 (dismissing equal protection claim contained in pro se complaint because plaintiff relied entirely on conclusory allegations).

Finally, the court notes that New York courts are afforded great deference in making judicial diversion determinations. People v. Williams, 963 N.Y.S.2d 899 (App. Div. 2013). Even if Plaintiff had met the criteria set forth in NYCPL § 216.05, the state court still would have had discretion to deny him entry into the program. See People v. Hombach, 919 N.Y.S.2d 791 (Co. Ct. 2011) (holding that a defendant has no inherent right to be granted judicial diversion and that the discretion of the court permits denial of diversion even without objection by the district attorney). Therefore, the court finds that it

would be futile for Plaintiff to amend the Amended Complaint to add this claim.

Because both of Plaintiff's proposed additional claims are futile, the court denies Plaintiff's Motion to Amend.

### B. False Arrest and Malicious Prosecution

In support of his false arrest and malicious prosecution claims, Plaintiff alleges that during an interrogation following his arrest, Detective Rispoli stated that while he "did not believe [P]laintiff was involved in any crime relating to the forged instruments," he was going to "charge [Plaintiff] anyway and the charges would eventually be dismissed." (Am. Compl. ¶ 4.) In addition, Plaintiff alleges that Detective Rispoli "did not properly investigate charges nor convey the alleged evidence truthfully." (Id. ¶ 15.)

A § 1983 claim for false arrest—resting on the Fourth Amendment right of an individual to be free from unreasonable seizures—is substantially the same as a claim for false arrest under New York law. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). A plaintiff bringing a false arrest claim in New York must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). To state a claim for malicious prosecution, a plaintiff is required to establish "(1) the initiation or continuation of a criminal proceeding; (2) termination of the criminal proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

Where an underlying alleged false arrest or malicious prosecution has led to a conviction—including one entered following a guilty plea—and that conviction remains unchallenged, Fourth Amendment claims are barred. See Younger v. City of New York, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution are barred by convictions entered on guilty pleas); Flemming v. City of New York, No. 02-CV-4113 (PKC), 2006 WL 1006263, at *3 (S.D.N.Y. Apr. 18, 2006) (holding that defendant's guilty plea barred him from raising false arrest and malicious prosecution claims because the conviction was not otherwise declared invalid).

**\*7** As Plaintiff's Certificate of Disposition shows, he eventually pleaded guilty to attempted possession of a forged instrument, in satisfaction of all charges. (Defs.' Mot. to Dismiss, Ex. C.) Because Plaintiff pleaded guilty to the underlying charges, his § 1983 claims for false arrest and malicious prosecution both fail. See Rivera v. City of Yonkers, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) ("Because Plaintiff pled guilty to one of the crimes for which he was arrested ... Defendants have a complete defense to Plaintiff's claim for false arrest. In addition, as this guilty plea represents a termination of the case that was not in favor of the accused, Plaintiff cannot maintain his claim for malicious prosecution."); Timmins v. Toto, 91 Fed.Appx. 165, 166 (2d Cir. 2004) (summary order) ("[I]n actions asserting false arrest, false imprisonment, or malicious prosecution,... the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." (citing Cameron v. Fogarty, 806 F.2d 380, 3987 (2d Cir. 1986))).

### C. Violation of Due Process

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights by failing to notify him of the necessary procedures to recover the car that was seized from him in connection with his June 16, 2013, arrest. (Am. Compl. ¶¶ 3, 8.) Specifically, Plaintiff maintains that his counsel told him that Nassau County "does not issue receipts or vouchers for seized property and that Plaintiff would not be able to retrieve his car until the criminal case is over. (Id. ¶ 9.) However, Plaintiff was "not issued any voucher, inventory receipt or evidence notice for the vehicle or the items allegedly contained therein" after his car was seized. (Id.) Plaintiff claims that Defendants ultimately disposed of his vehicle prior to the conclusion of the criminal proceedings without notifying Plaintiff, his counsel, or the District Attorney's Office. (Pl.'s Opp'n and Mot. to Amend ¶ 4.)

The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived "of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' " Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) (quoting Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976)). One of the primary purposes of the notice requirement is to ensure that the opportunity for a hearing is meaningful. See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("Th[e] right to be heard has

little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest.").

"In evaluating what process satisfies the Due Process Clause, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006) (internal citations and quotation marks omitted). When the deprivation is "random and unauthorized," pre-deprivation procedures are simply impracticable because the state cannot know when such deprivation will occur. Hudson v Palmer, 468 U.S. 517, 533 (1984). In such cases, an adequate post-deprivation remedy is a defense to a § 1983 due process claim. Id. In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing, so "the availability of post-deprivation procedures will not, ipso facto, satisfy due process." Rivera-Powell, 470 F.3d at 465 (internal quotation marks and citation omitted).

**\*8** The Second Circuit has made clear that a plaintiff may proceed in a § 1983 action alleging a violation of due process rights for failure to provide adequate notice of the procedure by which he could recover seized property. See Butler v. Castro, 896 F.2d 698, 704 (2d Cir. 1990). In McClendon v. Rosetti, the Second Circuit held that New York City's Administrative Code § 435-4.0 was unconstitutional as applied to persons with claims concerning non-contraband items not needed as evidence, because the statute's notice requirements were deficient and it unconstitutionally placed certain burdens of proof on defendants seeking return of their property. 460 F.2d 111, 116 (2d Cir. 1972). Following McClendon, Judge Morris Lasker of the Southern District of New York set forth procedures for the City governing the recovery of seized property in an unpublished order issued on July 15, 1974 ("the Lasker Order"). The Second Circuit summarized the Lasker Order in Butler:

> Under Judge Lasker's order, a voucher must be given to an arrestee for non-contraband property seized. The voucher must also give notice of the procedures to be followed to recover such property. A claimant must make a demand upon the property clerk for

his property or money within 90 days of the earlier of (i) the termination of the criminal proceeding, or (ii) the issuance by the District Attorney of a release indicating that the property or money is not needed as evidence. The City must, within ten days of a timely demand, either return the item or items in question or initiate judicial action to authorize their continued detention. In the absence of a timely demand, the property clerk may dispose of the property.

896 F.2d at 702-03.

Accepting Plaintiff's factual allegations as true, the court finds that he has stated a claim that he did not receive adequate notice of his rights and was not given an adequate opportunity to be heard about the seizure of his vehicle. It is true that Plaintiff received a copy of the NCPD's Impound Worksheet/ Invoice, [6] but the worksheet appears to be deficient While the worksheet contains descriptive information about Plaintiff's vehicle, it does not contain any instructions as to how Plaintiff might retrieve his vehicle. It may be the case that instructions can be found on the backside of the worksheet, but neither party has included the backside in their submissions. Without such instructions, Plaintiff would not have received notice of the necessary procedures to recover his property. Although Plaintiff's counsel told him that he would not be able to retrieve his car until the criminal case was over, there is no indication that any procedure was in place to notify Plaintiff as to how he might make a motion or request a hearing to ensure the recovery of his vehicle once the case had concluded. (See Am. Compl. ¶ 9.) Therefore, the court finds that Plaintiff has adequately stated a claim that Defendants violated his due process rights by seizing his vehicle without notice, and this claim survives Defendants' Motion to Dismiss.

### D. Access to the Courts

Plaintiff alleges that he was denied his constitutional right of access to the courts while he was confined, because he remained in the so-called 72-hour lock up for about ten days without access to the law library or legal materials. (Id. ¶ 6.)

The Constitution guarantees confined individuals meaningful access to courts, which—in the case of pro se litigants—

includes access to a facility's law library or an alternative source of legal information. See Bounds v. Smith, 430 U.S. 817, 830 (1977) (holding that making law library facilities available to incarcerated individuals is one constitutionally acceptable method of providing meaningful access to the courts but that providing some degree of professional or quasi-professional legal assistance to individuals would also be appropriate). However, access to legal assistance need not be unfettered, and facilities "may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." Melendez v. Haase, No. 04-CV-73 (PKC), 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15, 2010) (internal quotation marks and citation omitted). Furthermore, "[b]ecause law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' prisoners must demonstrate 'actual injury' in order to have standing." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001) (quoting Lewis v. Casey, 518 U.S. 343, 351 (1996)).

**\*9** Plaintiff's claim that he was denied access to the courts fails for two reasons. First, in light of the fact that Plaintiff was only confined for roughly 10 days, any abridgment of his constitutional right during that time was de minimis and insufficient to sustain a cause of action. See Walker v. Mahoney, 915 F. Supp. 548, 555 (E.D.N.Y. 1996) (holding that the abridgement of the inmate's substantive due process right of access to courts resulting from his segregated confinement for a period of 23 days was de minimis); Jones v. Smith, 784 F.2d 149, 152 (2d Cir. 1986) (affirming dismissal of right-of-access claim in light of 30-day period of solitary confinement, which the court regarded as de minimis).

Second, Plaintiff alleges only that he was denied access to the law library or legal materials, but he does not claim to have suffered any actual injury because of that denial. (Am. Compl. ¶ 6.) Plaintiff does not allege any facts which suggest that his legal claims somehow were prejudiced due to limited access to the law library or legal materials. Without any allegation of injury or harm, the restrictions alleged in the Amended Complaint do not rise to the level of unconstitutional obstruction of access to courts. See Johnson v. Nassau County, No. 13-CV-6510 (JS) (WDW), 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that plaintiff "failed to state a plausible claim for relief" regarding access to the prison law library because he "made no allegations regarding an actual injury he suffered due to

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 122 of 229

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

the allegedly inadequate law library or insufficient access to the law library"); Simmons v. Adamy, 987 F. Supp. 2d 302, 308 (W.D.N.Y. 2013) (dismissing plaintiff's claim regarding denial of access to the prison law library due to simultaneous scheduling with religious services, because "plaintiff offers no evidence that he was harmed by the lack of more frequent law library access"). Therefore, the court finds that Plaintiff has failed to plead facts sufficient to state a claim for a violation of due process based on denial of access to the courts, and this claim is dismissed.

### E. Deliberate Indifference to Medical Needs

Plaintiff alleges that he did not get "medical treatment for his withdrawal from opiate use" while he was incarcerated and that this purportedly inadequate medical care constitutes a violation of the Eighth Amendment. (Am. Compl. ¶ 6.)

In order to establish an Eighth Amendment claim arising out of the provision of inadequate medical care, a prisoner must show "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The standard of deliberate indifference includes both an objective and subjective component. First, "the deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.' " Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, with regard to the subjective component, defendants "must have acted with deliberate indifference in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.' " Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

To satisfy the subjective component, a plaintiff must do more than simply plead that medical or prison personnel acted negligently. See Estelle, 429 U.S. at 105-06 (holding that "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference"). Rather, a plaintiff must allege that the defendant acted with a state of mind akin to criminal recklessness. Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). Thus, to substantiate a claim of deliberate indifference to medical needs, a plaintiff must establish two elements: (1) that he or she suffered from a "serious medical condition," and (2) that this condition was met with "deliberate indifference." Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).

**\*10** Although drug or alcohol withdrawal does not necessarily constitute an objectively serious medical

condition, courts in this circuit have found that medical conditions resulting from such withdrawals satisfy the objective prong. See Iacovangelo v. Corr. Med. Care. Inc., 624 Fed.Appx. 10, 12 (2d Cir. 2015) (finding plaintiff's need for medically supervised drug detoxification and fact that she was vomiting in her toilet sufficient to plead an objectively serious medical condition); Caiozzo, 581 F.3d at 69 (finding "there is no dispute that [plaintiff] had a serious medical condition" where he suffered from alcohol withdrawal).

However, even assuming that Plaintiff could satisfy the objective component, his claim for deliberate indifference fails because he has not plead facts sufficient to satisfy the subjective component. Plaintiff states only that he "did [not] get medical treatment for his withdrawal from opiate use. (Am. Compl. ¶ 5.) Nowhere does he allege that Defendants subjectively knew about and disregarded his purportedly serious medical condition.[7] See Shepherd v. Powers, No. 11-CV-6860 (LTS)(RLE), 2012 WL 4477241, at \*6 (S.D.N.Y. Sept. 27, 2012) (finding that even if plaintiff's allegation that he suffered "severe pain in his back, fingers and genitals" was sufficient to meet the objective component, his Eighth Amendment claim failed because he did not plead facts sufficient to allege defendants' subjective deliberate indifference). Accordingly, the court finds that Plaintiff has failed to state a claim for deliberate indifference, and this claim is dismissed.

### F. Excessive Force

Plaintiff brings a claim of excessive force based on the use of handcuffs during his arrest. (Am. Compl. ¶ 2.) Specifically, Plaintiff alleges that while being driven in the back of the police car, he complained to Officer Velte about the "pain to his wrists from the tightening handcuffs." (Am. Compl. ¶ 2.) After seeking treatment for the pain sustained from the handcuffs, Plaintiff was told by medical staff that he suffered from "handcuff syndrome." (Id.)

The Fourth Amendment prohibits police officers from using an unreasonable degree of force in carrying out an arrest. Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010). To determine whether an officer's use of handcuffs constitutes excessive force, the court must consider whether "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." Esmont v. City of New York, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005).

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 123 of 229

Harris v. Nassau County, Not Reported in Fed. Supp. (2016)

Arrests frequently involve the application of handcuffs, which, in order to be effective, must be "tight enough to prevent an arrestee's hands from slipping out." Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007). There is a "consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468-69 (S.D.N.Y. 2008). While "overly tight handcuffing can constitute excessive force," the lack of a continuing injury beyond temporary discomfort "is fatal to [an] excessive force claim." Id. at 468.

 **\*11** In the Second Circuit, plaintiffs face a high threshold for excessive force claims based on tight handcuffs. See e.g., Boley v. Durets, No. 12-CV-4090 (ARR) (JO), 2013 WL 6562445, at \*8 (E.D.N.Y. Dec. 10, 2013) (finding claim that tight handcuffs caused "extreme anguish and pain" did not allege lasting physical injury sufficient to support a claim of excessive force); Alford v. City of New York, No. 11-CV-0622 (ERK) (MDG), 2012 WL 3764429, at \*4 (E.D.N.Y. Aug. 29, 2012) (holding that plaintiff's claim of tight handcuffs that left a red line on his wrists for a week was not sufficient to survive a motion to dismiss his excessive force claim); Wilder v. Village of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (holding that handcuffing that caused inflammation for a period of 24 hours did not rise to the level of excessive force).

While Plaintiff alleges that he suffered from handcuff syndrome, he does not claim to have suffered any lasting physical injuries beyond temporary discomfort during his arrest. (Am. Compl. ¶ 2.) Nor does he explain what handcuff syndrome is or what specific injuries he suffered as a result. (Id.) As such, Plaintiff's allegation is insufficient to plead a claim of excessive force. See Corsini v. Bloomberg, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) (finding arrestee's claim that he suffered a "physical injury" from tight handcuffs, without further specifying the injury, to be insufficient to state an excessive force claim) aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast, 613 Fed.Appx. 1 (2d Cir. 2015) (summary order); Boley, 2013 WL 6562445, at \*8. Accordingly, the court finds that Plaintiff has failed to plead facts sufficient to state a claim for excessive force, and this claim is dismissed.

### G. Plaintiff's Monell Claim against Nassau County

Plaintiff asserts multiple claims which may be interpreted as attempting to hold Nassau County liable for the alleged

constitutional violations of Defendants Velte and Rispoli. Plaintiff maintains that Nassau County has (1) a "custom and practice of searching and seizing vehicles ... in violation of [P]laintiff's federally protected rights"; (2) a "custom of cruelty to arrestees, like [P]laintiff"; and (3) a "custom of overcharging criminal defendants, like [P]laintiff, based on impermissible standards (race, class[, and] gender)." (Am. Compl. ¶¶ 11, 13, 14.)

To assert a § 1983 claim against a municipality, a plaintiff must satisfy the requirements of Monell v. N.Y.C. Dept. of Soc. Servs., 436 U.S. 658 (1978). Under Monell and its progeny, a municipality generally only may be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. At the pleading stage, "the mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal citation and quotation marks omitted).

Plaintiff's Monell pleadings are insufficient to survive a motion to dismiss. Indeed, Plaintiff's claims are supported by nothing more than conclusory, boilerplate statements. Plaintiff has not specifically identified an official policy or explained how that policy caused him to suffer the denial of a constitutional right. See Smith v. City of New York, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003) (holding that a conclusory, boilerplate assertion of a municipal policy or custom was insufficient to survive motion to dismiss); Econ. Opportunity Comm'n of Nassau Cty. v. County of Nassau, Inc., 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) (dismissing municipal liability claim where plaintiffs "[did] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries"). Accordingly, the court finds that Plaintiff has failed to plead facts sufficient to state claims for municipal liability under Monell, and these claims are dismissed.

### H. Plaintiff's Claims against Nassau County Police Department

 **\*12** Plaintiff's Amended Complaint names the Nassau County Police as a defendant, and the court interprets this to be an attempt to sue the NCPD as a whole. (See Am. Compl.) However, any such attempt fails because the NCPD is a non-suable entity.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 124 of 229

**Harris v. Nassau County, Not Reported in Fed. Supp. (2016)**

Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore cannot sue or be sued. See, e.g., Baker v. Willett, 42 F. Supp. 2d 192, 197 (N.D.N.Y. 1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity."); Fanelli v. Town of Harrison, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (dismissing claims against a local police department on the same ground). Because the NCPD is an administrative arm of the municipality of Nassau County, any claims against it must be dismissed. See e.g., Daly v. Ragona, No. 11-CV-3836 (JFB)(WDW), 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013) (dismissing claim against NCPD because NCPD is an administrative arm of a municipality);

Rose v. County of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (same).

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Plaintiff's Motion to file a Second Amended Complaint and GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Plaintiff's due process claim may proceed. All other claims by Plaintiff are DISMISSED.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3023265

---

## Footnotes

1    The first names of Defendants Velte and Rispoli are not included in the Complaint or the parties' subsequent briefing.

2    The court interprets the Amended Complaint as attempting to name the Nassau County Police Department as a Defendant.

3    Neither party has explained what "72 hour confinement" means, or how this term can be reconciled with the fact that Plaintiff was confined for 10 days.

4    On January 7, 2016, Plaintiff filed a motion to stay the proceedings, on the ground that he had been incarcerated on a parole violation. (Jan. 4, 2016, Mot. (Dkt. 34).) On March 22, 2016, Plaintiff filed a motion to withdraw his Motion to Stay (Mot to Withdraw Mot. (Dkt. 35)), which the court granted (Apr. 14, 3016, Order (Dkt. 36)).

5    Plaintiff cannot amend the Amended Complaint as of right because more than 21 days have passed between the time that Defendants filed their Motion to Dismiss and Plaintiff filed his Motion to Amend. See Fed. R. Civ. P. 15(a)(1).

6    Plaintiff attached the worksheet to his Motion to Withdraw. (Mot. to Withdraw Mot. at 2.) The worksheet is also attached to Defendants' Motion to Dismiss as Ex. G. (Defs.' Mot. to Dismiss, Ex. G.)

7    Defendants argue that Plaintiff did in fact receive treatment for his opiate withdrawal, and they attach documentation to that effect from the Armor Correctional Health Services. (Defs.' Mot. to Dismiss, Ex. F.) However, the court will not consider this document at this stage of the proceedings. See Robinson, 269 F.3d at 140 n.6 (holding that a court considering a motion to dismiss under Rule 12(h)(6) generally may not consult evidence outside the pleadings).

---

**End of Document**                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 125 of 229

2019 WL 5002215
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886 (TJM/ATB)
|
Signed 08/15/2019

**Attorneys and Law Firms**

LAYTONIA FLAGG, Plaintiff pro se

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 *1  The Clerk has sent me an amended [1] civil rights complaint filed by pro se plaintiff Laytonia Flagg. (Dkt. No. 3). Plaintiff Flagg has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 4).

**I. IFP Application**
A review of plaintiff's IFP application shows that she declares she is unable to pay the filing fee. (Dkt. No. 4). The court finds that plaintiff meets the financial criteria for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. Neitzke, 490 U.S. at 327; Harkins v. Eldridge, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Bell Atl. Corp., 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II. Complaint**
Plaintiff states that she is the mother of Mario Leslie, who at the time of the incidents described in the complaint, was on parole. (Amended Complaint ("AC") at 1). [2] On August 8, 2016, defendant New York State Parole Officer ("PO") Mark Saben went to Mr. Leslie's home at 514 Marcellus Street in Syracuse, New York, to conduct a "standard home visit." [3] (Id.) Mr. Leslie lived at the Marcellus Street address with his girlfriend, Tamacha Rodriguez. (Id.) Plaintiff claims that Ms. Rodriguez answered the door for PO Saben, and that Mr. Leslie was "summoned" from his bedroom to speak with defendant Saben. (Id.) After some discussion, PO Saben was walking toward the front door, when he spotted some glassine packets "known to contain heroin." (Id.) Upon discovering the glassine packets, defendant Saben informed Mr. Leslie that he was going to conduct a search of the entire residence according to the conditions of his parole release. (Id.)

 *2  Plaintiff states that, as a result of the subsequent search, the officer discovered a safe, containing a loaded firearm and $31,925 in United States currency. Defendant Saben also discovered a key chain on which were a set

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 126 of 229

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

of keys that were identified as keys to plaintiff's residence. Plaintiff claims that "[a]t this point Sr. P.O. Rigby called the Syracuse Police Department."[4] (AC at 2). Plaintiff claims that defendant Rigby spoke to Sergeant A. Llukaci, a detective with the Syracuse Police Department, and Sergeant Llukaci told defendants Detectives William Summers and D.P. Proud to go to the Marcellus Street address. Plaintiff states that upon his arrival, defendant Proud stated that he spoke to Ms. Rodriguez, who told defendant Proud that Mr. Leslie kept his money at his mother's apartment "although there is no affidavit on file to attest to that assertion by the [sic] Det. Proud."

Defendant Summers obtained a warrant for the search of plaintiff's home at 112 Fordham Rd. in Syracuse, New York. (AC Ex. CM/ECF p.16-17). Plaintiff claims that she was not home when the "Syracuse Police" and defendant Saben arrived at her home to execute the search warrant.[5] (AC at 2). The officers entered with the key that was found at Mr. Leslie's Marcellus Street home.[6] (*Id.*) Plaintiff arrived shortly thereafter, but was denied entrance to her home while the search was being executed. (*Id.*) Plaintiff states that the officers searched plaintiff's apartment and recovered $40,000.00 in cash from a safe that was located in plaintiff's bedroom closet. Plaintiff alleges that the officers confiscated the money.

Plaintiff claims that the officers did not have probable cause to obtain the warrant to search her home because there was no proof that Ms. Rodriguez ever made the statement that Mr. Leslie kept his money at his mother's house, and thus, the warrant was obtained improperly. Plaintiff claims that her Fourth Amendment rights were violated as the result of the search of her apartment. Plaintiff then claims that after the seizure of her $40,000.00, she informed defendant Assistant District Attorney ("ADA") Sean Chase that the money did not belong to Mr. Leslie, and that the money was plaintiff's savings which she would be using to purchase a new home. (AC at 5). Plaintiff claims that ADA Chase told her that his "office would return the illegally seized money." (*Id.*)

Plaintiff states that, shortly after the incident, she also filed a "complaint" form to complain about the police "conduct in Plaintiff's home," and to request the "immediate return of the Plaintiff's money." (*Id.*) Plaintiff states that the District Attorney's Office responded to the "property release" request only after plaintiff obtained the intervention of "a 3rd party (Feldman, Kramer & Monaco, P.C.)" (*Id.*) Plaintiff claims that

the property release form showed that the plaintiff's "legally possessed currency was improperly forfeited along with the monies ($31,925.00) seized at 514 Marcellus St." (AC at 6).

Plaintiff claims that ADA Chase told plaintiff on three separate occasions that her money was going to be returned, but that this was a "stalling tactic" by the District Attorney's Office. ADA Chase told plaintiff that he was waiting to hear from Mr. Leslie's attorney "in hopes of persuading [Mr. Leslie] to sign a forfeiture document that later became clear to the Plaintiff that the forfeiture included what was seized at both residences...." (AC at 6). The forfeiture document states that Mr. Leslie stipulated to the forfeiture of $67,269.00, and that he was not aware of any other person who claimed to be the owner of the property.[7] (AC at 6). Plaintiff alleges that the $40,000.00 was not Mr. Leslie's to forfeit. Plaintiff also alleges that the amount on the stipulation of forfeiture that Mr. Leslie signed does not account for the entire amount seized, even though plaintiff was not given any of her money back. Plaintiff claims that the actual amount seized, including her $40,000.00 was $71,925.00, and that there is $4,656.00 missing from the total. (*Id.*) Plaintiff also claims that the individuals who seized her money did not have the "warrant in hand" and never gave her a receipt for the money that they took. (AC at 7). Plaintiff states that the money taken from her home was not specifically mentioned in any of the paperwork that was subsequently provided to plaintiff as the result of her inquiries. (AC at 8).

**\*3** Plaintiff states that she spoke to then-Chief of the Syracuse Police, Frank Fowler, who told plaintiff that her concerns would be "thoroughly investigated," but then did not provide plaintiff a report of the investigation and told plaintiff to file a Freedom of Information request if she wished to see the report. (*Id.*) Plaintiff has attached correspondence that she received from former Chief Fowler, stating that the report had been forwarded to him and that plaintiff could "be assured that [Fowler would] take the proper administrative action in this case." (AC Ex. CM/ECF p.19).

Although the AC contains a "Second Cause of Action," plaintiff essentially repeats that her Fourth Amendment rights were violated by the defendants' actions in conjunction with the search of her home and the seizure of her money. (AC at 8-9). Plaintiff states that she has not been afforded any documentation that would establish probable cause to search her home. (AC at 9). Plaintiff states that there is no connection between her and Mr. Leslie's "illegal activities," and there was nothing "illegal" found in plaintiff's apartment. (*Id.*) In

applying a very liberal reading of the AC, [8] the court could interpret plaintiff's second cause of action as a Fourteenth Amendment Due Process claim, asserting that the defendants deprived her of her money without due process of law when they did not return the money after she made various inquiries and did not allow her to challenge the ownership of the money after her son signed the waiver and stipulation.

As stated above, the plaintiff has attached various documents as exhibits to the AC, including (1) the search warrant issued by City Court Judge Kate Rosenthal for plaintiff's apartment at 112 Fordham Rd. (AC Ex. CM/ECF pp.16-17); (2) Plaintiff's Civilian Complaint Report (AC Ex. CM/ECF p.18); a letter to plaintiff from former Chief Fowler (AC Ex. CM/ECF p.19); a letter to plaintiff from David L. Chaplin, II, Esq. on behalf of the Citizen Review Board dated December 2, 2016 (AC Ex. CM/ECF p. 20); a letter to plaintiff from Kimberly M. Osbeck, a paralegal for the Onondaga County District Attorney's Office, dated March 6, 2018 (AC Ex. CM/ECF p. 21); a letter to plaintiff from the Public Integrity Bureau of the New York State Attorney General's Office (AC Ex. CM/ECF p. 22); an "Application for Release of Property," signed by plaintiff on November 2, 2017, together with the unsigned refusal to release the property because the "money [was] forfeited during [a] criminal prosecution." (AC Ex. CM/ECF pp.23-24); the "Waiver and Stipulation," signed by Mr. Leslie on February 28, 2017, relinquishing any rights to the seized money (AC Ex. CM/ECF pp.25-26); "CNYLEADS Narrative Supplement[s]" numbers 1-3, including an "offense page" and a "property supplement," detailing all the property taken from the Marcellus St. address. (AC Ex. CM/ECF pp.27-32).

Plaintiff seeks the return of the $40,000.00 that she claims was taken from her in August of 2016, compensatory damages for the "Syracuse Police Department trashing Plaintiff's two bedrooms at 112 Fordham Rd.," damages for "five hours" worth of lost income [9] on the day of the search, unspecified lost income for the day that she had to appear in court, [10] and "punitive" damages for emotional pain and suffering, including the damages for the delay in purchasing her dream home. (*Id.*)

### III. Eleventh Amendment/New York State Division of Parole

#### A. Legal Standards

**\*4** The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

#### B. Application

In this case, in addition to the individual parole officers who were allegedly responsible for obtaining the warrant to search her apartment, plaintiff has named the "N.Y.S. Division of Parole." (AC at 1). The Eleventh Amendment prevents plaintiff from suing the N.Y.S. Division of Parole. Thus, to the extent that plaintiff seeks to sue the agency separately from the individual officers, the AC may be dismissed with prejudice, but as further discussed below, plaintiff may sue Mark Saben, one of the individuals who allegedly participated in obtaining the warrant for her home. [11]

### IV. Syracuse Police Department/Municipal Liability

#### A. Legal Standards

Under New York law, departments, like the Syracuse Police Department that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality, and may not sue or be sued. *Hayes v. County of Sullivan*, Nos. 07-CV-667; 09-CV-2071, 2012 WL 1129373, at *24 (S.D.N.Y. March 30, 2012) (citing inter alia *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)).

#### B. Application

To the extent that plaintiff is suing the Syracuse Police Department as an entity separate from the individual police officers who were allegedly involved in obtaining the warrant for her apartment, plaintiff may not do so. Unlike the State of New York itself, against which a suit for damages would be barred by the Eleventh Amendment, the City of Syracuse could be named instead of the Syracuse Police Department. However, the municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 128 of 229

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).

 **\*5** As it is written, the AC makes no claims that would allow the plaintiff to name the City of Syracuse as a defendant in this action. Plaintiff essentially complains of a single incident, during which the officers did not act properly in obtaining a warrant for her home and did not act properly in executing the warrant in her case. There is no indication that plaintiff can assert a policy or custom which would support municipal liability based on these facts. While plaintiff may not sue the Syracuse Police Department in any event, and while the court will not sua sponte replace the Syracuse Police Department with the City of Syracuse, the court does not rule out that, upon proper pleading, plaintiff could amend her AC to assert such a claim against the City of Syracuse.

However, plaintiff is warned that any such facts must plausibly suggest her claim, and that simply making a conclusory allegation of a "policy or custom" is insufficient to assert municipal liability. *Sulaymu Bey v. City of New York*, No. 17-CV-3563. 2019 WL 1434597, at \*10 (E.D.N.Y. Mar. 29, 2019); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing inter alia *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). A single incident, particularly if it involved individuals below the policy-making, level is insufficient to state a *Monell* claim. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). As discussed below, plaintiff may proceed against the individual officers who she claims violated her constitutional rights: Detective Summers, D.P. Proud; and Richard Curran.

## V. Prosecutorial Immunity/Personal Involvement

### A. Legal Standards

#### 1. Prosecutorial Immunity

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County*

*of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

#### 2. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* See also *Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

 **\*6** Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. See *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 129 of 229

*Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

**B. Application**

Plaintiff has named the Onondaga County District Attorney, William J. Fitzpatrick, together with one of his Assistant District Attorneys, Sean Chase. (AC ¶ 3(c)). Plaintiff claims that she spoke to ADA Chase "right after the seizure," she explained to him that the money did not belong to her son, the money was hers, and she "produced tax returns" for the last five consecutive years in an effort to show that she "legally possessed the money." (AC at 5). She claims that "[k]nowing this," ADA Chase told plaintiff that his office would return the illegally seized money. (*Id.*) Plaintiff claims that notwithstanding ADA Chase's statement, he did not return the money, and allegedly "stalled" plaintiff until her son signed the waiver of forfeiture document, which included the total amount of money that was seized from both residences. (AC at 6). The initiation of civil asset forfeiture proceedings is a prosecutorial function that has been afforded absolute immunity. *See Byrne v. City of New York*, 736 Fed. App'x 263, 266 (2d Cir. 2018) (Second Circuit precedent affords absolute immunity to government attorneys who initiate civil suits) (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 66 (2d Cir. 1992); *Mangiafico v. Blumenthal*, 471 F.3d 391, 395 (2d Cir. 2006)).

ADA Chase was allegedly handling the forfeiture proceeding, and even though he did not have to initiate court proceedings because Mr. Leslie signed the stipulation and waiver, the document stated that "I have concluded that the District Attorney would likely establish that the above-mentioned property is subject to forfeiture pursuant to Article 13-A [of the NY Civil Practice Law and Rules] and the District Attorney would likely prevail in such a forfeiture action." [12] (AC Ex. CM/ECF p.25). This document took the place of an in-court forfeiture proceeding, which would have been held pursuant to N.Y. Civ. Prac. L. & R. § 1311 (Forfeiture Actions). Thus, ADA Chase is entitled to absolute immunity with respect to his conduct relative to the forfeiture of the

money seized, even if plaintiff claimed that some of the money belonged to her. [13] This is true whether ADA Chase's conduct was proper or improper, and whether or not he was mistaken in obtaining Mr. Leslie's waiver and stipulation of forfeiture. Thus, to the extent that plaintiff raises due process violations with respect to her interest in the funds, they must be dismissed as against ADA Chase.

**\*7** Plaintiff has not asserted any facts against defendant Fitzpatrick. [14] He does not appear to have been involved in any way in obtaining the search warrant for plaintiff's apartment, in executing the search warrant for plaintiff's apartment, or in the forfeiture proceedings with respect to the money seized. Thus, any claims against him individually would fail for lack of personal involvement. If he had been personally involved in the forfeiture, he, like ADA Chase, would be entitled to absolute prosecutorial immunity. [15] Thus, plaintiff's amended complaint may be dismissed with prejudice as against defendants ADA Chase and DA Fitzpatrick.

**VI. Search and Seizure**

**A. Legal Standards**

"It is well-settled that in cases raising claims under the Fourth Amendment of unauthorized execution of a search warrant '[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to disclose, to the issuing Magistrate.'" *Arroyo v. City of Buffalo*, No. 15-CV-753, 2018 WL 4376798, at *3 (W.D.N.Y. Sept. 13, 2018) (quoting *Velardi v. Walsh*, 40 F.3d 569, 575 n. 2 (2d Cir. 1994) (internal quotation marks omitted)). A warrant is not invalid for section 1983 purposes if it is " 'based on seemingly reliable information which is later found to be erroneous.'" *Id.* (quoting *Lewis v. City of Mt. Vernon, N.Y.*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997)).

**B. Application**

Although the court has concerns about the merits of this action, at this stage of the proceedings, the court finds that any Fourth Amendment claims that plaintiff may have against defendants Saben, Summers, Proud, and Curran may survive initial review. [16] Plaintiff seems to claim that the warrant for her home was based on false information given the court, which plaintiff claims was the only basis for the warrant. While it may be that a close review of the documents provided with the amended complaint, together with any other evidence

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 130 of 229

or argument by defendants in a properly supported dispositive motion, may show otherwise, the court is not currently in a position to make factual or other determinations regarding the validity of the warrant or any other claims that plaintiff may have regarding the search of her home.

**\*8** The court also notes that because of the waiver and stipulation, signed by Mr. Leslie, there was no formal forfeiture proceeding in New York State Court as provided in N.Y. Civ. Prac. L. & R. § 1311. Thus, it is unclear how the plaintiff could have challenged the forfeiture. [17] The court also makes no findings regarding the validity of any defenses that the defendants may assert regarding the incident in question.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 4) is **GRANTED**, and it is

**RECOMMENDED**, that the amended complaint (Dkt. No. 3) be **DISMISSED IN ITS ENTIRETY** as against defendants **N.Y.S. DIVISION OF PAROLE; SYRACUSE POLICE DEPARTMENT; WILLIAM J. FITZPATRICK; AND SEAN CHASE**, and it is

**RECOMMENDED**, that to the extent that the AC may be read as naming **SGT. LLUKACI or PO RIGBY**, the AC may be dismissed **WITHOUT PREJUDICE** for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this Recommendation, the case be returned to me for further proceedings, including an order serving the remaining defendants: **SABEN, SUMMERS, PROUD, and CURRAN**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)* (citing *Small v. Sec. of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989)*); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2019 WL 5002215

---

### Footnotes

1    When plaintiff filed her original complaint, the case was administratively closed due to plaintiff's failure to comply with the filing fee requirement. (Dkt. No. 2). Prior to re-filing her motion to proceed IFP, (Dkt. No. 4), plaintiff also filed an amended complaint, which the court will review as the operative pleading. The case was re-opened on August 1, 2019. (Dkt. No. 6).

2    Plaintiff numbered the pages of the "Fact" section of the amended complaint at the bottom of the page. The court will cite to the page numbers contained on the actual document. Plaintiff has attached a series of documents as exhibits to the amended complaint which she did not number. The court will cite to the plaintiff's exhibits ("AC Ex.") with the page number as assigned by the court's electronic filing system ("CM/ECF").

3    Plaintiff was not present for any of the incidents that she describes in her complaint until she arrived at her house during the subsequent search of her property. Plaintiff appears to be taking her recitation of the background facts from the police reports and other documents that she has attached to her amended complaint. (AC Ex. CM/ECF pp. 16-32). The court is stating the facts as plaintiff has described them in the amended complaint.

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 131 of 229

4     This is the first time that another parole officer was mentioned in plaintiff's statement of facts. The court will assume that defendant Rigby was at the residence from the beginning, but it is not completely clear from the papers.

5     Plaintiff does not allege that PO Rigby participated in the search of her apartment.

6     Plaintiff states that the officers were in possession of the door key "prior to their actual possession of the warrant for 112 Fordham Rd." (AC at 2).

7     Plaintiff has attached a copy of Mr. Leslie's "Waiver and Stipulation." (AC Ex. CM/ECF p.25-26). Plaintiff claims that this document was obtained after she asked for the return of the money several times from the District Attorney's Office, the Citizen Review Board, and the Syracuse Police Department. (AC at 7). When she failed to get a "truthful" response, she contacted Feldman, Kramer & Monaco, P.C. (*Id.*) The document was sent to the attorneys' office after the firm wrote a letter of inquiry. (*Id.*)

8     Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

9     Plaintiff states that she works from home, and could not work for the time that the officers were searching her apartment. (AC at 10).

10     Apparently, on the day that the officers searched plaintiff's apartment, they found a "weed roach" and gave plaintiff an appearance ticket, which was later dismissed after plaintiff appeared in court. (AC at 10). Plaintiff seeks lost income for the time that it took to appear in court. (*Id.*)

11     It is unclear whether plaintiff meant to name PO Rigby as a defendant herein. He is mentioned briefly in the body of the complaint and was apparently present during the Marcellus St. search, but is not listed in the caption of the complaint, and plaintiff submitted no proposed summons for PO Rigby. In addition, it does not appear from the facts as stated by plaintiff that PO Rigby was involved in obtaining the search warrant for plaintiff's apartment, nor is it even apparent that he was present during the search of plaintiff's apartment. Thus, plaintiff does not state any claims against PO Rigby, and to the extent that she meant to name him as a defendant, the AC should be dismissed as against him.

12     Article 13-a is entitled "Proceeds of a Crime -Forfeiture." N.Y. Civ. Prac. L. & R. Art. 13-a

13     Although not relevant to the court's decision because it is based on absolute immunity of the prosecutor, regardless of whether Mr. Leslie's assertions in the document were correct, the court notes that plaintiff's statement herein is contrary to her son's ***sworn*** assertion in the document. Plaintiff states that ADA Chase told plaintiff that they were waiting to hear from Mr. Leslie's attorney regarding whether he was going to sign the forfeiture document. (AC at 6). Plaintiff claims that her son signed the document "under duress." Plaintiff cannot assert any claims regarding her son, and in any event, her son was, by her own statement, represented by counsel during the matter.

14     Plaintiff requests only damages, including a return of the $40,000.00 as relief in this action. She does not seem to be asking for any form of injunctive relief. Even though plaintiff asks for a "return" of money, the Eleventh Amendment does not "recognize a distinction 'between monetary damages and money in which plaintiff has a property interest.' " *Local 851 of Internat'l Broth. of Teamsters v. Thyssen Haniel Logistics, Inc.*, 90 F. Supp. 2d 237, 249-50 (E.D.N.Y. 2000) (quoting *Yorktown Medical Lab., Inc. v. Perales*, 949 F.2d 84, 87-88 (2d Cir. 1991)). The District Attorney could have been the proper party in a declaratory judgment under

**Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)**

Case 3:24-cv-01141-AJB-ML     Document 7     Filed 01/28/25     Page 132 of 229

New York State law under N.Y. Civ. Prac. L & R. 1327 (Proceedings to Determine Adverse Claims), which plaintiff could have filed within six months of the stipulation, signed by Mr. Leslie.

15    To the extent that the complaint could be interpreted as suing either ADA Chase or DA Fitzpatrick in their "official capacities," the Eleventh Amendment would bar any such suit. *See Blessinger v. City of New York, No. 17-CV-108, 2017 WL 3841873, at *1-2 (S.D.N.Y. Sept. 1, 2017)* (prosecutors are entitled to Eleventh Amendment immunity when they are acting in their prosecutorial capacity because they are acting as state officials rather than city or county employees) (citing *Peterson v. Tomaselli, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007)* and *Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)* (when prosecuting a criminal matter, a district attorney in New York State represents the State not the County)).

16    Although plaintiff has included a proposed summons for Sgt. Llukaci, this individual is not listed in the caption of the AC, nor is he included in the section of the form-AC which lists the individual Syracuse Police Officers. (AC ¶ 3(c)) for whom she has included identification numbers. In any event, plaintiff's only allegations against Sgt. Llukaci are that he sent defendants Proud and Summers to Mr. Leslie's Marcellus St. home after the parole officers found contraband therein. Plaintiff does not allege that he was personally involved in any of the conduct that she claims violated her constitutional rights. He was not at either residence and was not involved in obtaining the allegedly invalid warrant. Thus, to the extent that plaintiff is trying to sue Sgt. Llukaci, the AC may be dismissed as against this defendant.

17    The court does note that section 1311(7) provides that an innocent owner may challenge the forfeiture and regain the forfeited property if the owner never received notice of the forfeiture. In addition, section 1327 provides for an "interested person" to bring a proceeding to determine adverse claims, even after the forfeiture action was settled by stipulation. *See Tupi Cambios, S.A. v. Morganthau*, 48 A.D.2d 278 (1st Dep't 2008). In *Tupi Cambios*, the District Attorney was the proper "defendant" in New York State Court.

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                        8

Flagg v. NYS Division of Parole, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 133 of 229

2019 WL 4963112
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Laytonia FLAGG, Plaintiff,

v.

NYS DIVISION OF PAROLE; Mark Saben,
Parole Officer; Syracuse Police Dept.; Detective
William Summers, ID#409; D.P. Proud, ID#
0140; Richard Curran, ID# 0066; William
J. Fitzpatrick, Onondaga County, District
Attorney; and Sean Chase, D.A., Defendants.

5:19-CV-886
|
Signed 10/08/2019

**Attorneys and Law Firms**

Laytonia Flagg, Syracuse, NY, pro se.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1**  This pro se action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Andrew T. Baxter, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his Order and Report-Recommendation dated August 15, 2019 (Dkt. No. 7), Magistrate Judge Baxter grants Plaintiff's application to proceed in forma pauperis, and examines the sufficiency of the allegations set forth in the Amended Complaint ("AC") in light of 28 U.S.C. § 1915. He recommends that the AC (Dkt. No. 3) be dismissed in its entirety as against defendants N.Y.S. Division of Parole, Syracuse Police Department, William J. Fitzpatrick, and Sean Chase; that to the extent that the AC may be read as naming Sgt. Llukaci or PO Rigby, the AC be dismissed without prejudice for failure to state a claim; and that if the Court adopts these recommendations that the case be returned to him for further proceedings, including an order serving the remaining defendants Saben, Summers, Proud, and Curran. No objections to the Report-Recommendation have been filed, and the time to do so has expired.

**II. DISCUSSION**

After examining the record, this Court has determined that the Order and Report-Recommendation is not subject to attack for plain error or manifest injustice.

**III. CONCLUSION**

Accordingly, the Court **ACCEPTS and ADOPTS** the recommendations in the Order and Report-Recommendation (Dkt. No. 7) for the reasons stated therein. Therefore, it is hereby

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 3) is **DISMISSED IN ITS ENTIRETY** as against defendants N.Y.S. DIVISION OF PAROLE, SYRACUSE POLICE DEPARTMENT, WILLIAM J. FITZPATRICK, and SEAN CHASE, and it is further

**ORDERED** that to the extent the Amended Complaint may be read as naming SGT. LLUKACI or PO RIGBY, it is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, and it is further

**ORDERED** that the case be returned to Magistrate Judge Baxter for further proceedings, including an order serving the remaining defendants: SABEN, SUMMERS, PROUD, and CURRAN.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4963112

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 4311039
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jameel DAVIS, Plaintiff,
v.
WESTCHESTER COUNTY FAMILY COURT;
Magistrate Rosa Cabanillas, in her official capacity;
Magistrate Rosa Cabanillas, in her individual
capacity; Westchester County, Defendants.

No. 16-CV-9487 (KMK)
|
Signed 09/26/2017

**Attorneys and Law Firms**

Jameel Davis, New York, NY, Pro Se.

Michael A. Berg, Esq., Office of the Attorney General,
New York State, New York, NY, Counsel for Defendants
Westchester County Family Court and Magistrate Rosa
Cabanillas.

Sean T. Carey, Esq., Westchester County Attorney's Office,
White Plains, NY, Counsel for Defendant Westchester
County.

OPINION & ORDER

KENNETH M. KARAS, UNITED STATES DISTRICT
JUDGE

**\*1** Plaintiff Jameel Davis, proceeding pro se, brought this
Action against Defendants Westchester County Family Court,
Magistrate Rosa Cabanillas (together, "State Defendants"),
and Westchester County, challenging a judgment against him
in state court ordering him to pay certain amounts of allegedly
past-due child support payments. (See Compl. (Dkt. No. 1).)
Before the Court are Defendants' Motions to Dismiss pursuant
to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).
(See Dkt. Nos. 24, 53.) For the reasons to follow, the Motions
are granted.

I. Background

A. Factual Background

The following facts are taken from the Complaint and are
assumed true for purposes of the Motions.

On September 12, 2011, Plaintiff was deceived into signing an
Acknowledgement of Paternity at Phelps Memorial Hospital
in Sleepy Hollow, New York. (See Compl. ¶ 25.) Plaintiff
believed that he was signing the birth certificate of a baby boy
born to a woman with whom he had had a relationship, (see
id. ¶ 26), but he learned several years later that the document
was in fact an Acknowledgement of Paternity, (see id. ¶
27). Plaintiff later also learned that the Acknowledgement
of Paternity designated him as a non-custodial parent and
obliged him to make payments and endure "regular billings,
delinquency notices, liens on property, seizure and sale of
property, garnishment of wages, federal imprisonment, [and]
fines." (Id. ¶ 29.) In Plaintiff's view, the Acknowledgement
of Paternity is "an adhesion document that violates the fabric
and fiber of the United States Constitution, New York Bill of
Rights, and freedom and liberty." (Id. ¶ 30.) Plaintiff denies
that he is a non-custodial parent or any other title that would
oblige him to make child support payments. (See id. ¶ 33.)

On October 3, 2013, Plaintiff attended an expedited
proceeding in Westchester County Family Court before
Magistrate Christine Patneaude Krahulik. (See id. ¶ 34.) [1]
As a result of that hearing, Plaintiff entered into a voluntary
stipulation requiring him to pay child support, plus 60 percent
of unreimbursed healthcare and childcare expenses. (See
Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss
("Berg Decl.") Ex. B (Dkt. No. 25); see also Compl. ¶ 40.)
Plaintiff alleges that he "did not understand the nature of the
proceeding," (Compl. ¶ 37), and that Magistrate Krahulik was
"attempting to coerce [him] into entering a contract," (id. ¶
36). There is no indication or allegation that Magistrate Rosa
Cabanillas Thompson, a Defendant named in this lawsuit,
presided over or was otherwise involved in the October 3
proceeding. [2]

**\*2** On April 19, 2016, Plaintiff attended an "expedited
administrative hearing" in Westchester County Family Court
presided over by Magistrate Thompson. (See id. ¶¶ 90–91.) At
the hearing, Plaintiff was arrested by a court officer after being
told by the officer multiple times to "shut up" and to not "say
one more word," (id. ¶ 92), despite the fact that "Plaintiff was
not offensive, aggressive[,] or unlawful in anyway [sic]," (id.
¶ 93). Plaintiff was charged with contempt of court, and
the charge was subsequently dismissed after "five special
appearance hearings." (Id. ¶¶ 94, 96.)

On June 16, 2016, at another proceeding in Westchester County Family Court, Magistrate Thompson entered a money judgment against Plaintiff in the amount of $5,848 in past due child support payments, as well as $25 in costs. (*See* Berg Decl. Ex. C; *see also* Compl. ¶ 112.) The money judgment resulted in the filing of a lien against Plaintiff in the Westchester County Clerk's Office. (*See* Compl. ¶ 122.) On October 19, 2016, Plaintiff filed what he calls a "certified demand for proof of jurisdiction," but has never received any such proof. (*See id.*)

Throughout the Complaint, Plaintiff refers to the "title IV-D" or the "IV-D" program. (*See, e.g.*, Compl. ¶¶ 74, 85.) To the best of the Court's and Defendants' understanding, Plaintiff is referencing Title IV-D of the Social Security Act, which authorizes federal appropriations "for the purpose of enforcing the support obligations owed by noncustodial parents to their children." 42 U.S.C. § 651. In New York, the Department of Social Services is "designated as the single state agency to supervise the administration of the state's child support program," N.Y. Soc. Serv. Law § 111-a(1), and is authorized "to distribute to local districts the full amount of federal incentive payments received under title IV-D of the federal social security act," *id.* § 111-f.

Plaintiff seeks damages for what he alleges were various violations of his constitutional rights. Specifically, Plaintiff brings the following claims: (1) 42 U.S.C. § 1983 claim for violation of his constitutional rights; (2) 42 U.S.C. § 1985 claim for conspiracy to violate his constitutional rights; (3) 42 U.S.C. § 1986 claim for neglect or failure to prevent violation of his constitutional rights; (4) undue influence; (5) civil conspiracy; (6) abuse of process; (7) breach of fiduciary duty; (8) constructive fraud; (9) fraud in the inducement; (10) duress; (11) infliction of emotional distress; and (12) "Promissory Note—House Joint Resolution 192-Promissory Note Dishonor." (*See* Compl. ¶¶ 123–64.) Under each of the first 11 counts, Plaintiff provides only the following details:

> Defendants violated [P]laintiff's rights under the 1st, 4th, 5th, 6th, 7th, 9th, 10th, 13th, and 14th Amendments of the U.S. Constitution, paragraphs 1, 3, 4 and 5 of the New York Bill of Rights and due process of law.

> The intent of all defendants committing these torts are [sic] the federal incentive program illustrated in 42 U.S.C. § 658(a)—Incentive Payments to States, 5 CFR § 304.21 Federal Financial Participation, and 45 CFR § 302.34 Cooperative Arrangements with courts and law enforcement.

(*See, e.g.*, Compl. ¶¶ 124–25.)

### B. Procedural History

Plaintiff filed his Complaint on December 8, 2016 in Manhattan, naming as Defendants Westchester County Family Court, Westchester County Child Support Enforcement, and Magistrate Rosa Cabanillas. (*See* Dkt. No. 1.) The Action was thereafter transferred to the White Plains Division of the Southern District of New York. (*See* Dkt. No. 2.) On January 10, 2017, State Defendants filed a letter seeking leave to file a Motion To Dismiss. (*See* Dkt. No. 13.) During this time, Plaintiff filed a number of requests for miscellaneous relief. (*See, e.g.*, Dkt. Nos. 9, 12, 14–16, 21.) On January 12, 2017, the Court entered a briefing schedule for State Defendants' Motion. (*See* Dkt. No. 18.) On February 6, 2017, the Court issued an Order denying Plaintiff's various requests for relief and directing the Clerk of Court to substitute Westchester County in place of Westchester County Child Support Enforcement. (*See* Dkt. No. 22.)

**\*3** On February 8, 2017, State Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 24–26.) Plaintiff filed his opposition on February 24, 2017, (*see* Dkt. No. 33), and State Defendants replied on March 2, 2017, (*see* Dkt. No. 37). Plaintiff continued to file miscellaneous motions, (*see* Dkt. Nos. 28, 31, 34–36, 40), which were again denied, (*see* Dkt. No. 43). On June 2, 2017, service of the summons and Complaint was effected on Westchester County. (*See* Dkt. No. 50.) Westchester County filed a letter shortly thereafter asking for leave to file its own Motion To Dismiss. (*See* Dkt. No. 48.) The Court granted that application and set a briefing schedule. (*See* Dkt. No. 49.)

On June 29, 2017, Westchester County filed its Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 53–56.) Plaintiff opposed the Motion on July 12, 2017, (*see* Dkt. No. 58), and Westchester County filed its reply papers on July 21, 2017, (*see* Dkt. No. 59).

## II. Discussion

### A. Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Gonzalez v. Option One Mortg. Corp.*, No. 12-

CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 Fed.Appx. 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, ... the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

## 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006)

(citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

## 2. Rule 12(b)(6)

**\*4** When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, the "purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 137 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

merits." *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks omitted). To decide the motion, the Court "may consider facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell,* 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

## B. Analysis

Defendants argue primarily that the Court lacks jurisdiction to adjudicate Plaintiff's claim and invoke a number of doctrines in support of that argument. (*See* Mem. of Law in Supp. of State Defs.' Mot. To Dismiss ("State Defs.' Mem.") 6–12 (Dkt. No. 26); Mem. of Law in Supp. of County Def.'s Mot. To Dismiss ("County Def.'s Mem.") 10–12 (Dkt. No. 55).) Because subject matter jurisdiction is, "conventionally and properly, the first question a court is called on to consider," *Can v. United States,* 14 F.3d 160, 162 n.1 (2d Cir. 1994), the Court will first examine these arguments.

### 1. Eleventh Amendment

State Defendants argue first that Westchester County Family Court is entirely immune from suit and Magistrate Thompson is immune from suit in her official capacity pursuant to the Eleventh Amendment. (*See* State Defs.' Mem. 6.) In opposition, Plaintiff cites two Supreme Court cases for the proposition that a state acting as a private entity should be regarded as an individual separate from government, and also contends that sovereign immunity "can only protect when public officers are doing their duty and upholding the Constitution." (Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s State Opp'n") ¶¶ 2–4 (Dkt. No. 33).)

**\*5** "[A]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *Harrison v. New York,* 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also* U.S. Const. amend. XI.[3] "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted). Thus, under the doctrine of sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal court, absent that state's consent or an express statutory waiver of immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999); *see also McGinty v. New York,* 251 F.3d 84, 91 (2d Cir. 2001) ("[T]here are two recognized exceptions to the [Eleventh Amendment] bar: when Congress authorizes a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued.").

"Although the [Eleventh] Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens." *Woods,* 466 F.3d at 236; *see also Hans v. Louisiana,* 134 U.S. 1, 16 (1890) (holding that sovereign immunity extends beyond the text of the Eleventh Amendment such that a state cannot be sued by one of its own citizens without consent); *McGinty,* 251 F.3d at 91 ("[S]overeign immunity extends beyond the literal text of the Eleventh Amendment to bar a citizen from suing his own state under federal question jurisdiction...."). Furthermore, the Eleventh Amendment "bars suits that seek either money damages or injunctive relief." *McGinty,* 251 F.3d at 91 (citations omitted); *see also Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it ..., a State cannot be sued directly in its own name regardless of the relief sought."); *Cory v. White,* 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction...."); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The party seeking immunity bears the burden of demonstrating that it is an arm of the state. *See Gorton*

Case 3:24-cv-01141-AJB-ML Document 7 Filed 01/28/25 Page 138 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

v. Gettel, 554 F.3d 60, 62 (2d Cir. 2009) ("The burden is on the party seeking immunity to demonstrate that it is an arm of the state."); see also Woods, 466 F.3d at 237 (holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity") (internal quotation marks and citation omitted).

Courts have routinely held that New York has not waived, and Congress has not abrogated, sovereign immunity with respect to claims for constitutional violations under § 1983. See, e.g., Harrison, 95 F. Supp. 3d at 314 ("It is well established that New York State has not waived its sovereign immunity from [§] 1983 claims. Moreover, Congress did not abrogate that immunity when it enacted [§] 1983." (citations and internal quotation marks omitted)); Marino v. City Univ. of N.Y., 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014) ("It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity."); Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to [§] 1983 actions nor has its sovereign immunity been abrogated.").

*6 With respect to Westchester County Family Court, the Second Circuit has squarely held that "the New York State Unified Court System is unquestionably an arm of the State," and therefore "a lawsuit against the Unified Court System is in essence one for the recovery of money from the state, so that the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit." Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (alteration and internal quotation marks omitted). For that reason, "any claims against the Family Court, a court that is part of the New York State Unified Court System, must be dismissed because it is entitled to sovereign immunity as guaranteed by the Eleventh Amendment." Dyer v. Family Court, No. 16-CV-6876, 2016 WL 7494864, at *2 (E.D.N.Y. Dec. 28, 2016); see also Jainity v. Sarway, No. 13-CV-89, 2013 WL 816216, at *2 (E.D.N.Y. Mar. 5, 2013) (granting the Family Court of Kings County immunity because it "is an arm of the State of New York and hence immune from suit for damages in federal court under the 11th Amendment"); McKnight v. Middleton, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) ("The County of Kings Family Court is a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity from suit in federal court.").

Plaintiff argues that "[c]hild [s]upport is not a part of the family court system," and cites 45 C.F.R. § 304.21, a federal regulation relating to federal reimbursement of certain costs arising from the execution of federal–state cooperation agreements. (Pl.'s State Opp'n ¶ 9.) Plaintiff reasons that because a judge presiding over a child support proceeding may be indirectly entitled to reimbursement via § 304.21, the proceeding must not be "judicial" in nature. (See id. ¶ 11.) This specious argument is wrong on two levels. First, the question is not whether Westchester County Family Court complies with the demands of due process as Plaintiff sees them, but rather whether Westchester County Family Court is a creature of New York State by virtue of its place in the New York State Unified Court System. The answer to this question, as the above cases demonstrate, is plainly yes. Second, Plaintiff has, in any event, misread the regulation. Section 304.21(b) provides that federal financial participation (reimbursement) "is not available in: ... (2) Costs of compensation (salary and fringe benefits) of judges." 45 C.F.R. § 304.21(b) (emphasis added). To the extent any impropriety could be inferred from federal reimbursement of state judicial salaries, the regulation has preempted such an attack. In any event, nothing about this regulatory scheme punctures the Eleventh Amendment's application here.

Regarding Plaintiff's claims against Magistrate Thompson in her official capacity, the Second Circuit has held that "[t]o the extent that a state official is sued for damages in [her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, suits against state officials in their official capacity seeking damages are routinely dismissed on immunity grounds. See, e.g., Nguyen v. Milliken, 104 F. Supp. 3d 224, 229 (E.D.N.Y. 2015) ("To the extent [the plaintiff] brings claims for damages against [the defendants] in their official capacities as representatives of [state colleges], such claims are barred by the Eleventh Amendment."); Harrison, 95 F. Supp. 3d at 316 ("Sovereign immunity also bars [the] [p]laintiff's Bivens claims to the extent they have been brought against [the defendant] in his official capacity."); Zherka v. Ryan, 52 F. Supp. 3d 571, 578 (S.D.N.Y. 2014) ("[The] [d]efendants are correct in arguing that they are immune from suit in their official capacities.").

Plaintiff does request, in his Complaint, some unspecified "injunctive relief," (Compl. at 22), which could conceivably invoke the doctrine of Ex Parte Young, 209 U.S. 123 (1908). That doctrine permits a plaintiff to "sue a state

official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted). But as State Defendants point out, (*see* State Defs.' Mem. 9), "conclusory requests for 'injunctive relief' " are not sufficient to trigger the *Young* doctrine, *Falcon v. City Univ. of N.Y.*, No. 15-CV-3421, 2016 WL 3920223, at *8 (E.D.N.Y. July 15, 2016); *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010) (dismissing claims against state officials where the "complaint itself [was] far less clear in its request for equitable relief," and "[o]n the face of the complaint, the *Young* exception [was] not supportable"); *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-CV-275, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (holding that the *Young* doctrine did not apply where the plaintiff "alleged no ongoing violation" and offered only "conclusory language requesting unspecified injunctive relief"). Plaintiff makes no effort to rebut this contention in his opposition, (*see* Pl.'s State Opp'n), and the Court otherwise agrees with State Defendants that the *Young* doctrine is not implicated here. Accordingly, absent an exception, Plaintiff's claims against Magistrate Thompson in her official capacity are barred by sovereign immunity.

**\*7** Plaintiff does not resist the basic framework of sovereign immunity, instead offering two arguments for its inapplicability here. First, he contends that "[w]hen money is exchanged[,] [g]overnments descend to private person or corporation," thereby, in his view, divesting them of the protections of sovereign immunity. (Pl.'s State Opp'n ¶ 2.) But the cases cited by Plaintiff in support are inapposite. In *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), the immunity of a state or its entities was not in dispute. Instead, the issue was whether the "rights and duties of the United States on commercial paper which it issues" were governed by federal law or local law. *Id.* at 366. Nowhere did the Supreme Court discuss the availability of sovereign immunity. In *Bank of United States v. Planters' Bank of Georgia*, 22 U.S. 904 (1824), the Court did discuss the Eleventh Amendment, but only insofar as it held that the fact that a state holds shares in a corporation does not entitle the corporation itself to sovereign immunity. *See id.* at 907. Neither of these cases even remotely addresses the application of sovereign immunity in situations where, as here, the state entities are undoubtedly acting in their capacity as arms of the state.

Plaintiff argues also that "[s]overeign [i]mmunity can only protect when public officers are doing their duty and upholding the Constitution." (Pl.'s State Opp'n ¶ 4.) This assertion is entirely without any legal support and, if true, would eviscerate centuries-old precedent holding that states are immune from suit regardless of the basis for the suit. There are only two exceptions to sovereign immunity, and neither of them involves situations where the plaintiff alleges the state entities violated the Constitution. *See McGinty*, 251 F.3d at 91. There is no authority supporting the proposition that sovereign immunity extends only to violations of state law or federal statutes—while Plaintiff is correct that the Constitution is the supreme law of the land, that does not lead to the inexorable conclusion that his claims here may be vindicated in federal court. After all, Eleventh Amendment Immunity itself is a constitutional command.

Accordingly, Westchester County Family Court is completely immune from suit here, and Magistrate Thompson is immune insofar as the Complaint alleges claims against her in her official capacity.

### 2. *Rooker-Feldman* Doctrine

All Defendants argue that all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (*See* State Defs.' Mem. 9–10; County Def.'s Mem. 10–11.) Plaintiff contends only that *Rooker-Feldman* is not implicated because the state judgments were procured through fraud. (*See* Pl.'s State Opp'n ¶ 22.)

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and applies only to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined the *Rooker-Feldman* doctrine and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment";

(3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third requirements as 'substantive.' " *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

**\*8** Plaintiff does not dispute any of the elements of the *Rooker-Feldman* doctrine, and a review of the Complaint and state court records make clear that this case satisfies each element. First, Plaintiff was, by his own admission, the loser in state court, as Magistrate Thompson entered a money judgment against him. (*See* Berg Decl. Ex. C.) The fourth element is also met, as the judgment was entered on April 19, 2016, (*see id.*), and this Action commenced on December 8, 2016, (*see* Dkt. No. 1).

While the satisfaction of the second and third elements is, perhaps, less intuitive, even a cursory review of the Complaint and existing case law confirms that Plaintiff's Action satisfies each of these elements: "Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears." *Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at *7 (E.D.N.Y. June 8, 2015) (alterations and internal quotation marks omitted); *see also Remy v. NYS Dep't of Taxation & Fin.*, No. 09-CV-4444, 2010 WL 3926919, at *3 (E.D.N.Y. Sept. 29, 2010) (holding that where a plaintiff sought compensatory damages under § 1983 for purported constitutional violations in connection with a child support proceeding, "the *Rooker-Feldman* doctrine bar[red] consideration of [the] [p]laintiff's claims"), *aff'd*, 507 Fed.Appx. 16 (2d Cir. 2013); *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355–56 (E.D.N.Y. Jan. 24, 2004) (holding that the plaintiff's "allegations that [the hearing examiner] denied her due process and equal protection" in setting a child support amount were "inextricably intertwined with the state court's determinations" and were therefore barred by *Rooker-Feldman*). Here, Plaintiff makes clear throughout this Complaint that his alleged damages arise from the constitutional violations he claims were inflicted on him by way of the Westchester County Family Court proceedings and the resulting judgment against him. (*See* Compl. ¶¶ 1, 10–11,

105–07, 109–22.) Plaintiff is seeking damages arising directly out of the state court proceedings and judgment rendered against him, and his claims therefore fall within *Rooker-Feldman*.

The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him, as many of the cases cited above (and others) have arisen in identical contexts. *See, e.g., Remy*, 2010 WL 3926919, at *3 (dismissing claims that "the state court decision[ ] upholding the [child support] judgment violated [the plaintiff's] constitutional rights" and that the "state court judgment was issued without jurisdiction," holding that allowing such claims to go forward "would obliterate the *Rooker-Feldman* doctrine"); *Cogswell*, 304 F. Supp. 2d at 355–56 (applying *Rooker-Feldman* where "[t]he plaintiff's principal complaint [was] that she was denied due process because she was not given a hearing to determine the amount of child support that was owed and that she was not given notice that her vehicle would be seized due to her failure to pay child support"). Nor does it aid Plaintiff that he claims he has paid his child support obligations, (*see* Pl's State Opp'n ¶¶ 15–21), as this precise claim has been dismissed on *Rooker-Feldman* grounds, *see Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (applying *Rooker-Feldman* where the plaintiff asked the court to review a family court decision "setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears"), *aff'd*, 645 Fed.Appx. 103 (2d Cir. 2016).

**\*9** Finally, with respect to Plaintiff's claim that *Rooker-Feldman* does not apply where the state court judgment was allegedly procured by fraud, (*see* Pl.'s State Opp'n ¶ 22), Defendants are correct that no such defense is available. In support, Plaintiff cites only out-of-circuit authority from the 1960s, (*see id.*), thus overlooking the fact that the Second Circuit has "never recognized a blanket fraud exception to *Rooker-Feldman*," *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (internal quotation marks omitted). Federal district courts in the Second Circuit have consistently enforced this rule. *See, e.g., Brady v. Goldman*, No. 16-CV-2287, 2017 WL 111749, at *3 (S.D.N.Y. Jan. 11, 2017) ("[The] [p]laintiff's attempts to bypass the *Rooker-Feldman* doctrine ... ignore clear and controlling law in th[e] [Second] Circuit, which does not recognize a fraud exception to the *Rooker-Feldman* doctrine...."); *Gurdon v. Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) ("[T]here is not a fraud exception to the *Rooker-Feldman*

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 141 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

doctrine."), *adopted by* 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 369 (S.D.N.Y. 2015) ("Courts in th[e] [Southern] District consistently have held that there is no fraudulent procurement exception to the *Rooker-Feldman* doctrine."). Plaintiff has not pointed to a single case in the Second Circuit where the court exercised jurisdiction in these circumstances, and while Plaintiff may believe the law should be otherwise, this Court is bound by the Second Circuit's decisions. Accordingly, *Rooker-Feldman* bars all of Plaintiff's claims, and this Court lacks jurisdiction.

### 3. Domestic Relations Exception

Finally, Defendants argue that even if the above analysis is incorrect, the domestic relation exception provides another jurisdictional bar. (*See* State Defs.' Mem. 11–12; County Def.'s Mem. 11–12.) Plaintiff did not respond to this argument. (*See* Pl.'s State Opp'n; Pl.'s Opp'n to Def.'s Mot. To Dismiss (Dkt. No. 58).)

"[T]he domestic relations exception ... divests the federal courts of power to issue divorce, alimony, and child custody degrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Since the Supreme Court announced this rule, "[t]he exception has consistently been applied to child support judgments as well." *Csikota v. Tolkachev*, No. 08-CV-5283, 2010 WL 370284, at *3 (E.D.N.Y. Jan. 29, 2010); *see also Southerland v. Banks*, No. 15-CV-6088, 2015 WL 9581818, at *2 (E.D.N.Y. Dec. 30, 2015) ("Without determining the merits of [the] plaintiff's claims, the court cannot review his child support obligations as this is a matter of state domestic relations law."); *Joseph v. Stewart*, No. 13-CV-1678, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) ("[The] [p]laintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). And, as with the other jurisdictional bars, the fact that Plaintiff is challenging the constitutionality of his child support obligations is of no help, as the domestic relations exception applies regardless of the theory of liability. *See, e.g.*, *Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 812491, at *4 (E.D.N.Y. Jan. 28, 2013) ("[The plaintiff] invokes constitutional and other rights, but the substance of his claims about the impact on him of child support orders concerns state law domestic relations matters, matters that are better adjudicated in state court...."), *adopted by* 2013 WL 816284 (E.D.N.Y. Mar. 1, 2013); *Sullivan v. Xu*, No. 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug.

13, 2010) ("Although [the] plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters. Therefore, this action is dismissed ....").

In the absence of any authority cited by Plaintiff in opposition, and in light of the case law above, the Court holds that the domestic relations exception precludes any adjudication of the claims presented by Plaintiff here, as they all involve monetary damages arising out of the judgment entered against him for delinquent child support payments.

### C. Additional Claims
**\*10**  Although not pressed by Plaintiff in his opposition papers, the Court notes that the Complaint alleges that Plaintiff was falsely arrested on April 19, 2016, assaulted for exercising his First Amendment rights, and charged with false criminal charges. (*See* Compl. ¶¶ 91–97.) Plaintiff has not, however, named as a defendant the officer who allegedly assaulted and arrested him, or the officer responsible for filing the allegedly false charges. Plaintiff's claims plainly cannot proceed without such defendants being named, as there are no allegations that Defendants played any role in that conduct. Accordingly, the dismissal of the claims asserted herein is without prejudice to Plaintiff's ability to file a new complaint, if he wants to present these claims.

### D. State Law Claims
Having dismissed all of Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over any of Defendant's claims that may be construed as state law claims. (*See id.* ¶¶ 132–164.) Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial ... the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotation marks omitted). "District courts weigh several factors in determining whether

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 142 of 229

to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.' " *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.' " *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Because the Court has dismissed all federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims.

### III. Conclusion

For the foregoing reasons, Defendants' Motions are granted. The Court lacks jurisdiction to adjudicate any of Plaintiff's claims. This dismissal is without prejudice because Plaintiff has not yet amended his Complaint. This dismissal is also without prejudice as to Plaintiff's ability to file a complaint for false arrest, excessive force, and malicious prosecution against the officer or officers responsible for that alleged conduct.

The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 24, 53).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4311039

---

### Footnotes

1    Although Plaintiff alleges that the proceeding took place on October 13, 2013, (*see* Compl. ¶ 34), the stipulation to which Plaintiff refers was issued on October 3, 2013, (*see* Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss Ex. B (Dkt. No. 25)). Because a court "may ... take judicial notice of the orders of another court," *Harasz v. Katz*, 239 F. Supp. 3d 461, 474 (D. Conn. 2017), the Court will adopt the date in the stipulation.

2    Although Plaintiff sued "Magistrate Rosa Cabanillas," (*see* Compl.), Defendants have advised that her full name and title is, in fact, Magistrate Rosa Cabanillas Thompson, (*see* Mem. of Law in Supp. of State Defs.' Mot. to Dismiss 1 (Dkt. No. 26)).

3    "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

---

**End of Document**                                         © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Ganiyu v. Lopez, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 143 of 229

2020 WL 1467356
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Bashiru GANIYU, Plaintiff,

v.

Anthony LOPEZ; Letitia James, Attorney General
NYC; Scott M. Lekan Commissioner (OSC); Mark
J.F. Schroeder, Commissioner DMV; NYC Dept
Social Service; Child Support Division, Defendants.

1:19-CV-11605 (LLS)
|
Signed 03/25/2020

**Attorneys and Law Firms**

Bashiru Ganiyu, Bronx, NY, pro se.

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, who appears *pro se,* brings this action asserting claims under 42 U.S.C. § 1983. He sues (1) Anthony Lopez, a Support Magistrate of the New York Family Court, Bronx County, (2) Letitia James, the Attorney General of the State of New York, (3) Scott M. Lekan, the Commissioner of the Office of Child Support Enforcement, which is an office within the Administration for Children & Families of the United States Department of Health & Human Services ("HHS"), (4) Mark J.F. Schroeder, the Commissioner of the New York State Department of Motor Vehicles ("DMV"), (5) the New York City Department of Social Services, and (6) the "Child Support Division," which the Court understands to be the New York City Human Resources Administration's Office of Child Support Services.

The Court construes Plaintiff's claims against Lekan, a federal official, as brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Plaintiff has paid the fees to bring this action. For the reasons set forth below, the Court dismisses this action, but grants Plaintiff leave to replead.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the relevant fees, if it determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583 (1999). Courts can also dismiss a complaint, or portion thereof, for failure to state a claim on which relief may be granted after giving the plaintiff notice and an opportunity to be heard. *Wachtler v. Cnty. of Herkimer,* 35 F.3d 77, 82 (2d Cir. 1994). The Court is obliged, however to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest,*" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly,* 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

**\*2** Plaintiff asks this Court for the following relief: "to give Justice Judgment for this debt is due, and to dismiss my case and reinstate my licences [sic]." (ECF 2, at 5.)

Plaintiff's complaint is not clear. Plaintiff seems to allege that the New York Family Court, Bronx County, has determined that he owes child support. He also seems to allege that as a result of his failure to pay child support, his income has been garnished or his property has been seized, and that the DMV has suspended his driver's license.

Plaintiff alleges that "an imminent money judgment for all[e]ged child support[ ] statu[t]es that deprive right[s] guaranteed by Bill of Rights are illegal under color of law and protected by the 14th Amendment." (*Id.* at 8.) He states that the Secretary of HHS "bears the burden of proof of introducing ev[i]dence ... proving a debt is owed before the court can attach ... claims ... upon [him] and begin seizing property by the issuing [of an] income withholding order." (*Id.* at 9.) He further demands "evidence showing an agreement for child support before ... attaching the following titles to [him]: 'obligor, non-custodial parent[,] debtor, payor, ... person liable to pay." (*Id.*) Specifically, Plaintiff asks for "evidence of [his] wet-ink signature" that he has "agree[d] for a loan for ... child support and a system for payment or re-payment of a loan or grant paid to the state for child support." (*Id.* at 10.)

## DISCUSSION

### A. This Court cannot set aside or modify a state-court order concerning child support

Plaintiff brings his complaint using a form for a civil-rights complaint. He checks the box on the form that indicates that the basis for the Court's jurisdiction to consider this action is 42 U.S.C. § 1983. (ECF 2, at 3.) Plaintiff's claims therefore arise under the Court's federal-question jurisdiction.

The Court construes Plaintiff's complaint as asking this Court to (1) nullify a determination of the New York Family Court, Bronx County, with regard to Plaintiff's obligation to pay child support, (2) enjoin the defendants from garnishing Plaintiff's income or seizing his property to pay his child-support arrears, and (3) order the defendants to reinstate his driver's license, which had been suspended as a penalty for those arrears. Under the *Rooker-Feldman* doctrine, however, this Court lacks subject-matter jurisdiction to consider any of Plaintiff's claims challenging the validity or enforcement of the Family Court's order. In the alternative, under the domestic-relations abstention doctrine, the Court must abstain from exercising its federal-question jurisdiction over these claims.

### 1. The *Rooker-Feldman* doctrine

Federal district courts lack authority to review state-court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments....").

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F. 3d 77, 88 (2d Cir. 2005). Federal review of claims are barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district-court review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the district-court proceedings commenced. *Id.* at 85 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

**\*3** A plaintiff's challenge in a federal district court to "the validity or enforcement of [a] child support order itself" is barred by the *Rooker-Feldman* doctrine. *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013). Thus, a plaintiff's request that this Court review and overturn a decision by a New York Family Court concerning the amount of child support that he or she owes is barred by that doctrine. *See, e.g., Simmons v. NYS Dep't of Soc. Servs.*, No. 19-CV-3633, 2019 WL 5810307, at \*3-4 (S.D.N.Y. Nov. 5, 2019); *Grigoli v. 42 U.S.C. § 654(3) Child Support Enforcement Div.*, No. 18-CV-3672, 2018 WL 2084172, at \*3-4 (S.D.N.Y. May 1, 2018); *Davis v. Westchester Cnty. Family Court*, No. 16-CV-9487, 2017 WL 4311039, at \*8 (S.D.N.Y. Sept. 26, 2017) (" 'Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears.... The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him, as many of the cases cited ... (and others) have arisen in identical contexts.") (collecting cases, citations omitted).

The *Rooker-Feldman* doctrine also bars claims arising out of a third party's actions when those actions "are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88 (holding that "[w]here a state-court judgment causes the challenged

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 145 of 229

Ganiyu v. Lopez, Not Reported in Fed. Supp. (2020)

third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that" the *Rooker-Feldman* doctrine bars). Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license. *See Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *1, 3-4 (E.D.N.Y. Nov. 5, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) (summary order); *Leftridge v. Support Enforcement Servs.*, No. 3:12-CV-150, 2013 WL 1947174, at *2 (D. Conn. May 3, 2013), *appeal dismissed*, No. 13-1809 (2d Cir. June 20, 2013); *Remy v. NYS Dep't of Taxation & Fin.*, No. 09-CV-4444, 2010 WL 3925184, at *8 (E.D.N.Y. Aug. 18, 2010), *report & recommendation adopted*, 2010 WL 3926919 (E.D.N.Y. Sept. 29, 2010), *aff'd*, 507 F. App'x 16 (2d Cir. 2013) (summary order); *see also Adams v. Vt. Office of Child Support*, 717 F. App'x 33, 34 (2d Cir. 2017) (summary order) (action seeking "an injunction relieving [the plaintiff] of the obligation to pay child support, preventing the garnishment of her future wages, and requiring the return of the monies already collected from her, as well as an award of damages for injuries caused by the child support obligation" should have been dismissed because of the *Rooker-Feldman* doctrine); *Fernandez*, 645 F. App'x at 105 ("The seizure of [the plaintiff's] cars is an injury 'produced by' or caused by the state-court judgment setting [child-support] arrears.").

Plaintiff's complaint, while not clear, seems to challenge an order by the New York Family Court, Bronx County, issued before Plaintiff filed this action, in which the Family Court determined that he owes child support. By asking this Court "to give Justice Judgment for this debt is due, and to dismiss my case and reinstate my licences [sic]" (ECF 2, at 5), Plaintiff appears to challenge the validity of that order and its enforcement by garnishment, seizure, or the suspension of his driver's license. Thus, Plaintiff's claims for relief are barred by the *Rooker-Feldman* doctrine, and the Court dismisses them for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291 (the *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction").

## 2. The domestic-relations abstention doctrine

**\*4** In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14

(2d Cir. 1990). For example, a federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child...." *Id.* (internal quotation marks and citation omitted).

Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject-matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992).

On October 30, 2019, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019), *pet. for cert. filed*, No. 19-1111 (Mar. 6, 2020). Thus, "[a]lthough the domestic relations '*exception*' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrant* ... does not apply in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does." *Id.* (emphasis in original). Federal district courts must therefore *abstain* from exercising their federal-question jurisdiction over claims involving domestic-relations issues and dismiss those types of claims for *lack of jurisdiction* when they are asserted under diversity jurisdiction. *See id.* at 621-24.

Plaintiff asserts claims under the Court's federal-question jurisdiction and asks this Court to overturn or "dismiss" the determination of the New York Family Court, Bronx County, that he owes child-support. (ECF 2, at 5.) He asserts that his income is being garnished or his property is being seized due to his child-support debt. He also seeks the reinstatement of his driver's license, which has been apparently suspended due to his child-support debt. His claims therefore involve domestic-relations issues. Thus, unless he shows that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over his claims arising from the Family Court's order and its enforcement. *Am. Airlines*, 905 F.2d at 14; *Simmons*, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally

Ganiyu v. Lopez, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 146 of 229

abstains from hearing"); *Myers v. Sara Lee Corp.*, No. 08-CV-1421, 2009 WL 10706711, at \*10 (E.D.N.Y. Apr. 13, 2009) ("As in *American Lines*, the income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court. Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here for the same reasons it was required as to the non-final judgment amounts in *American Airlines*.").

### a. Child-support collection

**\*5** In New York State, a child-support debtor is entitled to the postjudgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52" and "CPLR"). For example, when a local government's support collection unit ("SCU") issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. *See* N.Y.C.P.L.R. § 5241(a)(8), (e). The appropriate agency rules on the objection and "notif[ies] the debtor of its determination within forty-five days" of service of the execution. N.Y.C.P.L.R. § 5241(e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (3d Dep't 2012) (noting that an applicant for relief should commence an Article 78 proceeding after exhausting his administrative remedies before an SCU); *see Smith v. N.Y. Child Support Process Ctr.*, No. 19-CV-9266, 2019 WL 6312178, at \*3 (S.D.N.Y. Nov. 25, 2019), *appeal pending*, No. 20-26 (2d Cir.).

### b. Driver's license suspension

New York State law also has an established procedure for notifying a child-support debtor before the DMV suspends his or her driver's license because of child-support debt, and providing him or her with an opportunity to be heard. When child-support arrears total four months or more of support payments, the SCU "shall notify the support obligor in writing that his or her continued failure to pay the support

arrears shall result in notification to the [DMV] to suspend the support obligor's driving privileges...." N.Y. Soc. Serv. Law § 111-b(12)(b)(1). "A support obligor who has received such a notice may avoid the suspension" by (1) making full payment of all past due support; (2) making satisfactory payment arrangements for current and past due support, or (3) documenting that he is receiving public assistance or supplemental security income, or that his income falls below the self-support reserve. N.Y. Soc. Serv. Law § 111-b(12)(e). "Before the DMV is notified, the obligor may challenge the impending suspension directly with the [SCU], and, if he disagrees with its final determination, he may then seek redress in Family Court." *Collins v. Saratoga Cnty. Support Collection Unit*, No. 1:12-CV-0494, 2012 WL 2571288, at \*6 (N.D.N.Y. July 3, 2012) (citing N.Y. Soc. Serv. Law § 111-b(12)(b)(2), (d)) (footnote omitted), *aff'd*, 528 F. App'x 15 (2d Cir. 2013) (summary order).

If an obligor whose driving privileges were suspended did not actually receive the required notice, he or she "may at any time request a review" from the SCU. N.Y. Soc. Serv. Law § 111-b(12)(f). If the SCU determines that the obligor either "has not accumulated" four months of support arrears, or that he or she meets any of the requirements in N.Y. Soc. Serv. Law § 111-b(12)(e) for avoiding suspension (such as making a payment arrangement or demonstrating income below certain levels), then the SCU must notify the DMV that the suspension of driving privileges must be terminated. *Id.*; *see* N.Y. Soc. Serv. Law § 111-b(12)(d)(1). If the child-support obligor is unsuccessful in that administrative challenge, he or she may seek state-court judicial review under Article 78. *See* N.Y. Veh. & Traf. Law § 510(4-e)(4); *Collins*, 2012 WL 2571288, at \*6-7 (discussing administrative and judicial review available to a child-support obligor under New York State law after the DMV is notified by an SCU of the suspension a child-support obligor's driver's license).

### c. No obstacles

Plaintiff alleges no facts suggesting that there are any obstacles preventing him from receiving a full and fair determination regarding the amount of child support he owes, the garnishment of his income or the seizure of his property to pay child-support arrears, or the suspension of his driver's license as a penalty for child-support arrears. Accordingly, under the domestic-relations abstention doctrine, the Court

Ganiyu v. Lopez, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 147 of 229

alternatively abstains from exercising its federal-question jurisdiction over Plaintiff's claims arising from those events.

## B. *Bivens* claims

**\*6** The Court must dismiss Plaintiff's *Bivens* claims against Lekan. To assert *Bivens* claims against an individual federal officer, the plaintiff must allege facts showing the federal officer's personal involvement in the alleged violations of the plaintiff's federal constitutional rights. *See, e.g., Thomas v. Ashcroft*, 470 F.3d 491, 496-97 (2d Cir. 2006). And the only relief available under *Bivens* is monetary damages. *See Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). Because Plaintiff alleges no facts showing Lekan's personal involvement, and only seeks injunctive relief, the Court dismisses Plaintiff's *Bivens* claims against Lekan for failure to state a claim on which relief may be granted.

## CONCLUSION

This order is to be mailed in chambers.

The Court dismisses this action.

The Court dismisses Plaintiff's claims challenging the validity or enforcement of a state-court order that determined that Plaintiff owes child support. The Court does so because it either lacks subject-matter jurisdiction under the *Rooker Feldman* doctrine or, alternatively, because it abstains from exercising its federal-question jurisdiction under the domestic-relations abstention doctrine.

The Court dismisses the remainder of Plaintiff's claims for failure to state a claim on which relief may be granted. Because the Court dismisses some of Plaintiff's claims for that reason, the Court grants Plaintiff leave to replead those claims in an amended complaint to be filed within 30 days of the date of this order. *See Wachtler*, 35 F.3d at 82. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter a judgment dismissing this action for the reasons specified in this order.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1467356

---

**End of Document**                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 148 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

2017 WL 4311039
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jameel DAVIS, Plaintiff,

v.

WESTCHESTER COUNTY FAMILY COURT;
Magistrate Rosa Cabanillas, in her official capacity;
Magistrate Rosa Cabanillas, in her individual
capacity; Westchester County, Defendants.

No. 16-CV-9487 (KMK)
|
Signed 09/26/2017

**Attorneys and Law Firms**

Jameel Davis, New York, NY, Pro Se.

Michael A. Berg, Esq., Office of the Attorney General,
New York State, New York, NY, Counsel for Defendants
Westchester County Family Court and Magistrate Rosa
Cabanillas.

Sean T. Carey, Esq., Westchester County Attorney's Office,
White Plains, NY, Counsel for Defendant Westchester
County.

OPINION & ORDER

KENNETH M. KARAS, UNITED STATES DISTRICT
JUDGE

**\*1** Plaintiff Jameel Davis, proceeding pro se, brought this
Action against Defendants Westchester County Family Court,
Magistrate Rosa Cabanillas (together, "State Defendants"),
and Westchester County, challenging a judgment against him
in state court ordering him to pay certain amounts of allegedly
past-due child support payments. (*See* Compl. (Dkt. No. 1).)
Before the Court are Defendants' Motions to Dismiss pursuant
to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).
(*See* Dkt. Nos. 24, 53.) For the reasons to follow, the Motions
are granted.

I. Background

A. Factual Background

The following facts are taken from the Complaint and are
assumed true for purposes of the Motions.

On September 12, 2011, Plaintiff was deceived into signing an
Acknowledgement of Paternity at Phelps Memorial Hospital
in Sleepy Hollow, New York. (*See* Compl. ¶ 25.) Plaintiff
believed that he was signing the birth certificate of a baby boy
born to a woman with whom he had had a relationship, (*see
id.* ¶ 26), but he learned several years later that the document
was in fact an Acknowledgement of Paternity, (*see id.* ¶
27). Plaintiff later also learned that the Acknowledgement
of Paternity designated him as a non-custodial parent and
obliged him to make payments and endure "regular billings,
delinquency notices, liens on property, seizure and sale of
property, garnishment of wages, federal imprisonment, [and]
fines." (*Id.* ¶ 29.) In Plaintiff's view, the Acknowledgement
of Paternity is "an adhesion document that violates the fabric
and fiber of the United States Constitution, New York Bill of
Rights, and freedom and liberty." (*Id.* ¶ 30.) Plaintiff denies
that he is a non-custodial parent or any other title that would
oblige him to make child support payments. (*See id.* ¶ 33.)

On October 3, 2013, Plaintiff attended an expedited
proceeding in Westchester County Family Court before
Magistrate Christine Patneaude Krahulik. (*See id.* ¶ 34.) [1]
As a result of that hearing, Plaintiff entered into a voluntary
stipulation requiring him to pay child support, plus 60 percent
of unreimbursed healthcare and childcare expenses. (*See*
Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss
("Berg Decl.") Ex. B (Dkt. No. 25); *see also* Compl. ¶ 40.)
Plaintiff alleges that he "did not understand the nature of the
proceeding," (Compl. ¶ 37), and that Magistrate Krahulik was
"attempting to coerce [him] into entering a contract," (*id.* ¶
36). There is no indication or allegation that Magistrate Rosa
Cabanillas Thompson, a Defendant named in this lawsuit,
presided over or was otherwise involved in the October 3
proceeding. [2]

**\*2** On April 19, 2016, Plaintiff attended an "expedited
administrative hearing" in Westchester County Family Court
presided over by Magistrate Thompson. (*See id.* ¶¶ 90–91.) At
the hearing, Plaintiff was arrested by a court officer after being
told by the officer multiple times to "shut up" and to not "say
one more word," (*id.* ¶ 92), despite the fact that "Plaintiff was
not offensive, aggressive[,] or unlawful in anyway [sic]," (*id.*
¶ 93). Plaintiff was charged with contempt of court, and
the charge was subsequently dismissed after "five special
appearance hearings." (*Id.* ¶¶ 94, 96.)

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 149 of 229

On June 16, 2016, at another proceeding in Westchester County Family Court, Magistrate Thompson entered a money judgment against Plaintiff in the amount of $5,848 in past due child support payments, as well as $25 in costs. (*See* Berg Decl. Ex. C; *see also* Compl. ¶ 112.) The money judgment resulted in the filing of a lien against Plaintiff in the Westchester County Clerk's Office. (*See* Compl. ¶ 122.) On October 19, 2016, Plaintiff filed what he calls a "certified demand for proof of jurisdiction," but has never received any such proof. (*See id.*)

Throughout the Complaint, Plaintiff refers to the "title IV-D" or the "IV-D" program. (*See, e.g.*, Compl. ¶¶ 74, 85.) To the best of the Court's and Defendants' understanding, Plaintiff is referencing Title IV-D of the Social Security Act, which authorizes federal appropriations "for the purpose of enforcing the support obligations owed by noncustodial parents to their children." 42 U.S.C. § 651. In New York, the Department of Social Services is "designated as the single state agency to supervise the administration of the state's child support program," N.Y. Soc. Serv. Law § 111-a(1), and is authorized "to distribute to local districts the full amount of federal incentive payments received under title IV-D of the federal social security act," *id.* § 111-f.

Plaintiff seeks damages for what he alleges were various violations of his constitutional rights. Specifically, Plaintiff brings the following claims: (1) 42 U.S.C. § 1983 claim for violation of his constitutional rights; (2) 42 U.S.C. § 1985 claim for conspiracy to violate his constitutional rights; (3) 42 U.S.C. § 1986 claim for neglect or failure to prevent violation of his constitutional rights; (4) undue influence; (5) civil conspiracy; (6) abuse of process; (7) breach of fiduciary duty; (8) constructive fraud; (9) fraud in the inducement; (10) duress; (11) infliction of emotional distress; and (12) "Promissory Note—House Joint Resolution 192-Promissory Note Dishonor." (*See* Compl. ¶¶ 123–64.) Under each of the first 11 counts, Plaintiff provides only the following details:

> Defendants violated [P]laintiff's rights under the 1st, 4th, 5th, 6th, 7th, 9th, 10th, 13th, and 14th Amendments of the U.S. Constitution, paragraphs 1, 3, 4 and 5 of the New York Bill of Rights and due process of law.

> The intent of all defendants committing these torts are [sic] the federal incentive program illustrated in 42 U.S.C. § 658(a)—Incentive Payments to States, 5 CFR § 304.21 Federal Financial Participation, and 45 CFR § 302.34 Cooperative Arrangements with courts and law enforcement.

(*See, e.g.*, Compl. ¶¶ 124–25.)

### B. Procedural History

Plaintiff filed his Complaint on December 8, 2016 in Manhattan, naming as Defendants Westchester County Family Court, Westchester County Child Support Enforcement, and Magistrate Rosa Cabanillas. (*See* Dkt. No. 1.) The Action was thereafter transferred to the White Plains Division of the Southern District of New York. (*See* Dkt. No. 2.) On January 10, 2017, State Defendants filed a letter seeking leave to file a Motion To Dismiss. (*See* Dkt. No. 13.) During this time, Plaintiff filed a number of requests for miscellaneous relief. (*See, e.g.*, Dkt. Nos. 9, 12, 14–16, 21.) On January 12, 2017, the Court entered a briefing schedule for State Defendants' Motion. (*See* Dkt. No. 18.) On February 6, 2017, the Court issued an Order denying Plaintiff's various requests for relief and directing the Clerk of Court to substitute Westchester County in place of Westchester County Child Support Enforcement. (*See* Dkt. No. 22.)

**\*3** On February 8, 2017, State Defendants filed their Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 24–26.) Plaintiff filed his opposition on February 24, 2017, (*see* Dkt. No. 33), and State Defendants replied on March 2, 2017, (*see* Dkt. No. 37). Plaintiff continued to file miscellaneous motions, (*see* Dkt. Nos. 28, 31, 34–36, 40), which were again denied, (*see* Dkt. No. 43). On June 2, 2017, service of the summons and Complaint was effected on Westchester County. (*See* Dkt. No. 50.) Westchester County filed a letter shortly thereafter asking for leave to file its own Motion To Dismiss. (*See* Dkt. No. 48.) The Court granted that application and set a briefing schedule. (*See* Dkt. No. 49.)

On June 29, 2017, Westchester County filed its Motion To Dismiss and accompanying papers. (*See* Dkt. Nos. 53–56.) Plaintiff opposed the Motion on July 12, 2017, (*see* Dkt. No. 58), and Westchester County filed its reply papers on July 21, 2017, (*see* Dkt. No. 59).

## II. Discussion

### A. Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." *Gonzalez v. Option One Mortg. Corp.*, No. 12-

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 150 of 229

CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 Fed.Appx. 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b) (1) motion, ... the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also Butler v. Ross*, No. 16-CV-1282, 2016 WL 3264134, at *3 (S.D.N.Y. June 14, 2016) (same). Nevertheless, "[u]nlike Article III standing, which ordinarily should be determined before reaching the merits, statutory standing may be assumed for the purposes of deciding whether the plaintiff otherwise has a viable cause of action." *Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006)

(citation omitted). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2. Rule 12(b)(6)

**\*4** When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, the "purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 151 of 229

merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks omitted). To decide the motion, the Court "may consider facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

## B. Analysis

Defendants argue primarily that the Court lacks jurisdiction to adjudicate Plaintiff's claim and invoke a number of doctrines in support of that argument. (*See* Mem. of Law in Supp. of State Defs.' Mot. To Dismiss ("State Defs.' Mem.") 6–12 (Dkt. No. 26); Mem. of Law in Supp. of County Def.'s Mot. To Dismiss ("County Def.'s Mem.") 10–12 (Dkt. No. 55).) Because subject matter jurisdiction is, "conventionally and properly, the first question a court is called on to consider," *Can v. United States*, 14 F.3d 160, 162 n.1 (2d Cir. 1994), the Court will first examine these arguments.

## 1. Eleventh Amendment

State Defendants argue first that Westchester County Family Court is entirely immune from suit and Magistrate Thompson is immune from suit in her official capacity pursuant to the Eleventh Amendment. (*See* State Defs.' Mem. 6.) In opposition, Plaintiff cites two Supreme Court cases for the proposition that a state acting as a private entity should be regarded as an individual separate from government, and also contends that sovereign immunity "can only protect when public officers are doing their duty and upholding the

Constitution." (Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s State Opp'n") ¶¶ 2–4 (Dkt. No. 33).)

**\*5** "[A]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also* U.S. Const. amend. XI. [3] "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted). Thus, under the doctrine of sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal court, absent that state's consent or an express statutory waiver of immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("[T]here are two recognized exceptions to the [Eleventh Amendment] bar: when Congress authorizes a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued.").

"Although the [Eleventh] Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens." *Woods*, 466 F.3d at 236; *see also Hans v. Louisiana*, 134 U.S. 1, 16 (1890) (holding that sovereign immunity extends beyond the text of the Eleventh Amendment such that a state cannot be sued by one of its own citizens without consent); *McGinty*, 251 F.3d at 91 ("[S]overeign immunity extends beyond the literal text of the Eleventh Amendment to bar a citizen from suing his own state under federal question jurisdiction...."). Furthermore, the Eleventh Amendment "bars suits that seek either money damages or injunctive relief." *McGinty*, 251 F.3d at 91 (citations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it ..., a State cannot be sued directly in its own name regardless of the relief sought."); *Cory v. White*, 457 U.S. 85, 91 (1982) ("[T]he Eleventh Amendment by its terms clearly applies to a suit seeking an injunction...."); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The party seeking immunity bears the burden of demonstrating that it is an arm of the state. *See Gorton*

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 152 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

*v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) ("The burden is on the party seeking immunity to demonstrate that it is an arm of the state."); *see also Woods*, 466 F.3d at 237 (holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity") (internal quotation marks and citation omitted).

Courts have routinely held that New York has not waived, and Congress has not abrogated, sovereign immunity with respect to claims for constitutional violations under § 1983. *See, e.g.*, *Harrison*, 95 F. Supp. 3d at 314 ("It is well established that New York State has not waived its sovereign immunity from [§] 1983 claims. Moreover, Congress did not abrogate that immunity when it enacted [§] 1983." (citations and internal quotation marks omitted)); *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 335 (E.D.N.Y. 2014) ("It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity."); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("The State of New York has not waived its sovereign immunity in regard to [§] 1983 actions nor has its sovereign immunity been abrogated.").

**\*6** With respect to Westchester County Family Court, the Second Circuit has squarely held that "the New York State Unified Court System is unquestionably an arm of the State," and therefore "a lawsuit against the Unified Court System is in essence one for the recovery of money from the state, so that the state is the real substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (alteration and internal quotation marks omitted). For that reason, "any claims against the Family Court, a court that is part of the New York State Unified Court System, must be dismissed because it is entitled to sovereign immunity as guaranteed by the Eleventh Amendment." *Dyer v. Family Court*, No. 16-CV-6876, 2016 WL 7494864, at \*2 (E.D.N.Y. Dec. 28, 2016); *see also Jainity v. Sarway*, No. 13-CV-89, 2013 WL 816216, at \*2 (E.D.N.Y. Mar. 5, 2013) (granting the Family Court of Kings County immunity because it "is an arm of the State of New York and hence immune from suit for damages in federal court under the 11th Amendment"); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) ("The County of Kings Family Court is a part of the New York State Unified Court system and is, therefore, also protected by the State's sovereign immunity from suit in federal court.").

Plaintiff argues that "[c]hild [s]upport is not a part of the family court system," and cites 45 C.F.R. § 304.21, a federal regulation relating to federal reimbursement of certain costs arising from the execution of federal–state cooperation agreements. (Pl.'s State Opp'n ¶ 9.) Plaintiff reasons that because a judge presiding over a child support proceeding may be indirectly entitled to reimbursement via § 304.21, the proceeding must not be "judicial" in nature. (*See id.* ¶ 11.) This specious argument is wrong on two levels. First, the question is not whether Westchester County Family Court complies with the demands of due process as Plaintiff sees them, but rather whether Westchester County Family Court is a creature of New York State by virtue of its place in the New York State Unified Court System. The answer to this question, as the above cases demonstrate, is plainly yes. Second, Plaintiff has, in any event, misread the regulation. Section 304.21(b) provides that federal financial participation (reimbursement) "is *not* available in: ... (2) Costs of compensation (salary and fringe benefits) of judges." 45 C.F.R. § 304.21(b) (emphasis added). To the extent any impropriety could be inferred from federal reimbursement of state judicial salaries, the regulation has preempted such an attack. In any event, nothing about this regulatory scheme punctures the Eleventh Amendment's application here.

Regarding Plaintiff's claims against Magistrate Thompson in her official capacity, the Second Circuit has held that "[t]o the extent that a state official is sued for damages in [her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Accordingly, suits against state officials in their official capacity seeking damages are routinely dismissed on immunity grounds. *See, e.g.*, *Nguyen v. Milliken*, 104 F. Supp. 3d 224, 229 (E.D.N.Y. 2015) ("To the extent [the plaintiff] brings claims for damages against [the defendants] in their official capacities as representatives of [state colleges], such claims are barred by the Eleventh Amendment."); *Harrison*, 95 F. Supp. 3d at 316 ("Sovereign immunity also bars [the] [p]laintiff's *Bivens* claims to the extent they have been brought against [the defendant] in his official capacity."); *Zherka v. Ryan*, 52 F. Supp. 3d 571, 578 (S.D.N.Y. 2014) ("[The] [d]efendants are correct in arguing that they are immune from suit in their official capacities.").

Plaintiff does request, in his Complaint, some unspecified "injunctive relief," (Compl. at 22), which could conceivably invoke the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). That doctrine permits a plaintiff to "sue a state

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 153 of 229

official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted). But as State Defendants point out, (*see* State Defs.' Mem. 9), "conclusory requests for 'injunctive relief' " are not sufficient to trigger the *Young* doctrine, *Falcon v. City Univ. of N.Y.*, No. 15-CV-3421, 2016 WL 3920223, at *8 (E.D.N.Y. July 15, 2016); *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 407 (E.D.N.Y. 2010) (dismissing claims against state officials where the "complaint itself [was] far less clear in its request for equitable relief," and "[o]n the face of the complaint, the *Young* exception [was] not supportable"); *Pierre v. N.Y. State Dep't of Corr. Servs.*, No. 05-CV-275, 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (holding that the *Young* doctrine did not apply where the plaintiff "alleged no ongoing violation" and offered only "conclusory language requesting unspecified injunctive relief"). Plaintiff makes no effort to rebut this contention in his opposition, (*see* Pl.'s State Opp'n), and the Court otherwise agrees with State Defendants that the *Young* doctrine is not implicated here. Accordingly, absent an exception, Plaintiff's claims against Magistrate Thompson in her official capacity are barred by sovereign immunity.

**\*7** Plaintiff does not resist the basic framework of sovereign immunity, instead offering two arguments for its inapplicability here. First, he contends that "[w]hen money is exchanged[,] [g]overnments descend to private person or corporation," thereby, in his view, divesting them of the protections of sovereign immunity. (Pl.'s State Opp'n ¶ 2.) But the cases cited by Plaintiff in support are inapposite. In *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), the immunity of a state or its entities was not in dispute. Instead, the issue was whether the "rights and duties of the United States on commercial paper which it issues" were governed by federal law or local law. *Id.* at 366. Nowhere did the Supreme Court discuss the availability of sovereign immunity. In *Bank of United States v. Planters' Bank of Georgia*, 22 U.S. 904 (1824), the Court did discuss the Eleventh Amendment, but only insofar as it held that the fact that a state holds shares in a corporation does not entitle the corporation itself to sovereign immunity. *See id.* at 907. Neither of these cases even remotely addresses the application of sovereign immunity in situations where, as here, the state entities are undoubtedly acting in their capacity as arms of the state.

Plaintiff argues also that "[s]overeign [i]mmunity can only protect when public officers are doing their duty and upholding the Constitution." (Pl.'s State Opp'n ¶ 4.) This assertion is entirely without any legal support and, if true, would eviscerate centuries-old precedent holding that states are immune from suit regardless of the basis for the suit. There are only two exceptions to sovereign immunity, and neither of them involves situations where the plaintiff alleges the state entities violated the Constitution. *See McGinty*, 251 F.3d at 91. There is no authority supporting the proposition that sovereign immunity extends only to violations of state law or federal statutes—while Plaintiff is correct that the Constitution is the supreme law of the land, that does not lead to the inexorable conclusion that his claims here may be vindicated in federal court. After all, Eleventh Amendment Immunity itself is a constitutional command.

Accordingly, Westchester County Family Court is completely immune from suit here, and Magistrate Thompson is immune insofar as the Complaint alleges claims against her in her official capacity.

### 2. *Rooker-Feldman* Doctrine

All Defendants argue that all of Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (*See* State Defs.' Mem. 9–10; County Def.'s Mem. 10–11.) Plaintiff contends only that *Rooker-Feldman* is not implicated because the state judgments were procured through fraud. (*See* Pl.'s State Opp'n ¶ 22.)

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and applies only to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined the *Rooker-Feldman* doctrine and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment";

(3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third requirements as 'substantive.' " *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

**\*8** Plaintiff does not dispute any of the elements of the *Rooker-Feldman* doctrine, and a review of the Complaint and state court records make clear that this case satisfies each element. First, Plaintiff was, by his own admission, the loser in state court, as Magistrate Thompson entered a money judgment against him. (*See* Berg Decl. Ex. C.) The fourth element is also met, as the judgment was entered on April 19, 2016, (*see id.*), and this Action commenced on December 8, 2016, (*see* Dkt. No. 1).

While the satisfaction of the second and third elements is, perhaps, less intuitive, even a cursory review of the Complaint and existing case law confirms that Plaintiff's Action satisfies each of these elements: "Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears." *Kneitel v. Palos*, No. 15-CV-2577, 2015 WL 3607570, at *7 (E.D.N.Y. June 8, 2015) (alterations and internal quotation marks omitted); *see also Remy v. NYS Dep't of Taxation & Fin.*, No. 09-CV-4444, 2010 WL 3926919, at *3 (E.D.N.Y. Sept. 29, 2010) (holding that where a plaintiff sought compensatory damages under § 1983 for purported constitutional violations in connection with a child support proceeding, "the *Rooker-Feldman* doctrine bar[red] consideration of [the] [p]laintiff's claims"), *aff'd*, 507 Fed.Appx. 16 (2d Cir. 2013); *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355–56 (E.D.N.Y. Jan. 24, 2004) (holding that the plaintiff's "allegations that [the hearing examiner] denied her due process and equal protection" in setting a child support amount were "inextricably intertwined with the state court's determinations" and were therefore barred by *Rooker-Feldman*). Here, Plaintiff makes clear throughout this Complaint that his alleged damages arise from the constitutional violations he claims were inflicted on him by way of the Westchester County Family Court proceedings and the resulting judgment against him. (*See* Compl. ¶¶ 1, 10–11,

105–07, 109–22.) Plaintiff is seeking damages arising directly out of the state court proceedings and judgment rendered against him, and his claims therefore fall within *Rooker-Feldman*.

The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him, as many of the cases cited above (and others) have arisen in identical contexts. *See, e.g., Remy*, 2010 WL 3926919, at *3 (dismissing claims that "the state court decision[ ] upholding the [child support] judgment violated [the plaintiff's] constitutional rights" and that the "state court judgment was issued without jurisdiction," holding that allowing such claims to go forward "would obliterate the *Rooker-Feldman* doctrine"); *Cogswell*, 304 F. Supp. 2d at 355–56 (applying *Rooker-Feldman* where "[t]he plaintiff's principal complaint [was] that she was denied due process because she was not given a hearing to determine the amount of child support that was owed and that she was not given notice that her vehicle would be seized due to her failure to pay child support"). Nor does it aid Plaintiff that he claims he has paid his child support obligations, (*see* Pl's State Opp'n ¶¶ 15–21), as this precise claim has been dismissed on *Rooker-Feldman* grounds, *see Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (applying *Rooker-Feldman* where the plaintiff asked the court to review a family court decision "setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears"), *aff'd*, 645 Fed.Appx. 103 (2d Cir. 2016).

**\*9** Finally, with respect to Plaintiff's claim that *Rooker-Feldman* does not apply where the state court judgment was allegedly procured by fraud, (*see* Pl.'s State Opp'n ¶ 22), Defendants are correct that no such defense is available. In support, Plaintiff cites only out-of-circuit authority from the 1960s, (*see id.*), thus overlooking the fact that the Second Circuit has "never recognized a blanket fraud exception to *Rooker-Feldman*," *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) (internal quotation marks omitted). Federal district courts in the Second Circuit have consistently enforced this rule. *See, e.g., Brady v. Goldman*, No. 16-CV-2287, 2017 WL 111749, at *3 (S.D.N.Y. Jan. 11, 2017) ("[The] [p]laintiff's attempts to bypass the *Rooker-Feldman* doctrine ... ignore clear and controlling law in th[e] [Second] Circuit, which does not recognize a fraud exception to the *Rooker-Feldman* doctrine...."); *Gurdon v. Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016) ("[T]here is not a fraud exception to the *Rooker-Feldman*

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 155 of 229

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

doctrine."), *adopted by* 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 369 (S.D.N.Y. 2015) ("Courts in th[e] [Southern] District consistently have held that there is no fraudulent procurement exception to the *Rooker-Feldman* doctrine."). Plaintiff has not pointed to a single case in the Second Circuit where the court exercised jurisdiction in these circumstances, and while Plaintiff may believe the law should be otherwise, this Court is bound by the Second Circuit's decisions. Accordingly, *Rooker-Feldman* bars all of Plaintiff's claims, and this Court lacks jurisdiction.

### 3. Domestic Relations Exception

Finally, Defendants argue that even if the above analysis is incorrect, the domestic relation exception provides another jurisdictional bar. (*See* State Defs.' Mem. 11–12; County Def.'s Mem. 11–12.) Plaintiff did not respond to this argument. (*See* Pl.'s State Opp'n; Pl.'s Opp'n to Def.'s Mot. To Dismiss (Dkt. No. 58).)

"[T]he domestic relations exception ... divests the federal courts of power to issue divorce, alimony, and child custody degrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Since the Supreme Court announced this rule, "[t]he exception has consistently been applied to child support judgments as well." *Csikota v. Tolkachev*, No. 08-CV-5283, 2010 WL 370284, at *3 (E.D.N.Y. Jan. 29, 2010); *see also Southerland v. Banks*, No. 15-CV-6088, 2015 WL 9581818, at *2 (E.D.N.Y. Dec. 30, 2015) ("Without determining the merits of [the] plaintiff's claims, the court cannot review his child support obligations as this is a matter of state domestic relations law."); *Joseph v. Stewart*, No. 13-CV-1678, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) ("[The] [p]laintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters."). And, as with the other jurisdictional bars, the fact that Plaintiff is challenging the constitutionality of his child support obligations is of no help, as the domestic relations exception applies regardless of the theory of liability. *See, e.g.*, *Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 812491, at *4 (E.D.N.Y. Jan. 28, 2013) ("[The plaintiff] invokes constitutional and other rights, but the substance of his claims about the impact on him of child support orders concerns state law domestic relations matters, matters that are better adjudicated in state court...."), *adopted by* 2013 WL 816284 (E.D.N.Y. Mar. 1, 2013); *Sullivan v. Xu*, No. 10-CV-3626, 2010 WL 3238979, at *2 (E.D.N.Y. Aug.

13, 2010) ("Although [the] plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters. Therefore, this action is dismissed ....").

In the absence of any authority cited by Plaintiff in opposition, and in light of the case law above, the Court holds that the domestic relations exception precludes any adjudication of the claims presented by Plaintiff here, as they all involve monetary damages arising out of the judgment entered against him for delinquent child support payments.

### C. Additional Claims

**\*10** Although not pressed by Plaintiff in his opposition papers, the Court notes that the Complaint alleges that Plaintiff was falsely arrested on April 19, 2016, assaulted for exercising his First Amendment rights, and charged with false criminal charges. (*See* Compl. ¶¶ 91–97.) Plaintiff has not, however, named as a defendant the officer who allegedly assaulted and arrested him, or the officer responsible for filing the allegedly false charges. Plaintiff's claims plainly cannot proceed without such defendants being named, as there are no allegations that Defendants played any role in that conduct. Accordingly, the dismissal of the claims asserted herein is without prejudice to Plaintiff's ability to file a new complaint, if he wants to present these claims.

### D. State Law Claims

Having dismissed all of Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over any of Defendant's claims that may be construed as state law claims. (*See id.* ¶¶ 132–164.) Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Federal courts may exercise jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists." *Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) (citing *Montefiore Med. Ctr. v. Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011)). The Supreme Court has held that "if the federal claims [in an action] are dismissed before trial ... the state claims should be dismissed as well," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), but "[t]he decision whether to exercise supplemental jurisdiction is entirely within the court's discretion and is not a litigant's right," *Chenensky*, 942 F. Supp. 2d at 391 (internal quotation marks omitted). "District courts weigh several factors in determining whether

Davis v. Westchester County Family Court, Not Reported in Fed. Supp. (2017)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 156 of 229

to exercise supplemental jurisdiction, including 'the values of judicial economy, convenience, fairness and comity.' " *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these values, courts look to 'the circumstances of each particular case.' " *Id.* at 391-92 (alteration omitted) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). Because the Court has dismissed all federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over any of Plaintiff's state law claims.

### III. Conclusion

For the foregoing reasons, Defendants' Motions are granted. The Court lacks jurisdiction to adjudicate any of Plaintiff's claims. This dismissal is without prejudice because Plaintiff has not yet amended his Complaint. This dismissal is also without prejudice as to Plaintiff's ability to file a complaint for false arrest, excessive force, and malicious prosecution against the officer or officers responsible for that alleged conduct.

The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 24, 53).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4311039

---

### Footnotes

1    Although Plaintiff alleges that the proceeding took place on October 13, 2013, (*see* Compl. ¶ 34), the stipulation to which Plaintiff refers was issued on October 3, 2013, (*see* Decl. of Michael A. Berg in Supp. of Defs.' Mot. To Dismiss Ex. B (Dkt. No. 25)). Because a court "may ... take judicial notice of the orders of another court," *Harasz v. Katz*, 239 F. Supp. 3d 461, 474 (D. Conn. 2017), the Court will adopt the date in the stipulation.

2    Although Plaintiff sued "Magistrate Rosa Cabanillas," (*see* Compl.), Defendants have advised that her full name and title is, in fact, Magistrate Rosa Cabanillas Thompson, (*see* Mem. of Law in Supp. of State Defs.' Mot. to Dismiss 1 (Dkt. No. 26)).

3    "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 157 of 229

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 1923236
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Milan HALL, Plaintiff,
v.
CLINTON COUNTY, Defendant.

8:18-CV-1405 (GTS/CFH)
|
Signed 04/21/2020

**Attorneys and Law Firms**

MILAN HALL, Plaintiff, Pro Se, 36 Bell Road, Chazy, NY 12921.

OF COUNSEL: THOMAS K. MURPHY, ESQ., MURPHY BURNS LLP, Counsel for Defendant, 407 Albany Shaker Road, Loudonville, NY 12211.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Milan Hall ("Plaintiff") against Clinton County ("Defendant"), is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (Dkt. No. 13.) For the reasons set forth below, Defendant's motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Amended Complaint**

Plaintiff filed an Amended Complaint in accordance with this Court's Decision and Order of August 26, 2019. (Dkt. No. 11 [Decision and Order filed Aug. 26, 2019].) Generally, in his Amended Complaint, Plaintiff alleges that, "commencing on the 28 th day of June 2012," Defendant has violated his rights in five ways by using his marriage license as proof of paternity: (1) Defendant has stripped him of his status as a man and termed him a non-custodial parent and obligor; (2) Defendant has wrongfully denied him the right to raise his child as he pleases and to do so in privacy; (3) Defendant has damaged his reputation in his community; (4) Defendant has denied him the right to a trial by jury before ordering him to pay child support; and (5) Defendant denied him

his right to due process when it failed to disclose to him the legal consequences that would result from the signing of his marriage license. (Dkt. No. 12 [Pl.'s Am. Compl.].) Generally, based on these factual allegations, and construed with special liberality, Plaintiff's Amended Complaint claims that Defendant violated his rights to due process under the Fifth and Fourteenth Amendments, and his right to a jury trial under the Sixth and/or Seventh Amendments to the United States Constitution and 42 U.S.C. § 1983. (*Id.*)

**B. Parties' Briefing on Defendant's Motion to Dismiss**

**1. Defendant's Memorandum of Law**

Generally, in its motion to dismiss Plaintiff's Amended Complaint, Defendant makes two arguments. (Dkt. No. 13, Attach. 2 [Def.'s Mem. of Law].) First, Defendant argues that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. (*Id.* at 7-8.) More specifically, Defendant argues that Plaintiff has not pled facts plausibly suggesting the existence of any municipal custom, policy, or practice that caused his alleged constitutional deprivations, but rather has merely alleged that New York's valid paternity laws are not fair. (*Id.*) Defendant also argues that Plaintiff is essentially seeking a nullification of a New York State Family Court Order of Child Support against him, triggering the domestic relations exception to federal court jurisdiction, and thus, even if the Court were to find that Plaintiff has stated a claim, the Court would not possess subject-matter jurisdiction over any such claim. (*Id.*)

Second, Defendant argues that, based on the Amended Complaint's own factual allegations, Plaintiff's claims are untimely as a matter of law. (*Id.* at 8-9.) More specifically, Defendant argues that the statute of limitations for personal injury actions in New York is three years from when the plaintiff knew or had reason to know of the injury, and that the Amended Complaint expressly alleges that the child support proceedings were initiated on June 28, 2012; yet Plaintiff did not file this lawsuit until December 2018. (*Id.*) Defendant argues that any allegations that the injury is ongoing (because Plaintiff is under a continuous obligation to pay child support) would not render his claim timely under the continuing violation doctrine because, based on the factual allegations of the Amended Complaint, he was (or reasonably should have been) aware of that injury as early as June 28, 2012. (*Id.*)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 158 of 229

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

### 2. Plaintiff's Opposition Memorandum of Law

**\*2** Generally, in opposition to Defendant's motion, Plaintiff makes four arguments. (Dkt. No. 15, at 4-5 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that he is not alleging that Defendant failed to inform him of the responsibilities that could possibly result from children born during his marriage at the time he signed the marriage license, but that "Defendants failed to employ Due Process Safeguards to ensure that the rights of the Plaintiff were protected, and as a result the Plaintiff was defaulted into a Title IV-D case from which he now suffers the deprivation of his inherent rights"; however, he concedes that "[t]his deprivation is extrinsically linked to the Defendants failure to employ due process safeguards when presenting the Plaintiff with a marriage certificate, the legal instrument that would later be used to default the Plaintiff into a Title IV-D case." (*Id.* at 4.) Pointing to a federal statute requiring a state to have a civil process for voluntarily acknowledging paternity that includes the provision of due process and an explanation by the state of the individual's rights and responsibilities of acknowledging paternity, he appears to argue that Defendant violated his right to due process by summoning him to a "fact finding" hearing before a "Family Court Support Magistrate" because the Federal Manual of Child Support requires that such a proceeding should not have been presided over by "a judge of the court." (*Id.*)

Second, Plaintiff argues that he is not merely asking the Court to overturn the child support order as Defendant suggests, but is seeking a remedy for the violation of his constitutional rights. (*Id.* at 4-5.)

Third, Plaintiff argues that it is a crime to deprive an individual of his or her constitutional rights. (*Id.* at 5.)

Fourth, Plaintiff argues that his claims should not be found to be untimely because he promptly filed his original Complaint in 2018 as soon as he discovered that his rights had been violated. (*Id.* at 5.)

## II. GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949-52 (2009).

**\*3** Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41,

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 159 of 229

45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R.

Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [1]

### III. ANALYSIS

**\*4** After carefully considering whether Plaintiff's Amended Complaint should be dismissed, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13, Attach. 2, at 7-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that Plaintiff's claims, to the extent that they seek an invalidation of a Family Court child support order, are barred by the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, a federal court lacks subject-matter jurisdiction where the following four elements are met: (1) the plaintiff has lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Ganiyu v. Lopez*, 19-CV-11605, 2020 WL 1467356, at *2 (S.D.N.Y. Mar. 25, 2020) (citing *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 [2d Cir. 2005]). It is evident from the Amended Complaint that Plaintiff received a child support order against him, that he now complains that the proceedings that resulted in that order caused his alleged constitutional injuries, and that the child support order was rendered before he commenced this action. Additionally, although Plaintiff frames his argument in terms of constitutional violations and inadequacies in the proceedings underlying the support order, such arguments amount to little more than a request for this Court to assess whether the Family Court's reliance on the marriage license to establish paternity was correct, something which this Court is not permitted to do. *See Kramer v. Dane*, 17-CV-5253, 2018 WL 4489284, at *3 (E.D.N.Y. Sept. 19, 2018) ("[T]he fact that plaintiffs assert that their constitutional rights were violated during the state court proceedings does not except their claims from the *Rooker-Feldman* doctrine."); *Davis v. Westchester Cnty. Family Court*, 16-CV-9487, 2017 WL 4311039, at *8

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 160 of 229

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

(S.D.N.Y. Sept. 26, 2017) (finding "[t]he fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him" in precluding application of the *Rooker-Feldman* doctrine to his claims) (collecting cases). [2]

 **\*5** To the extent that Plaintiff seeks entitlement to relief beyond a nullification of the child support order that would be excepted from jurisdiction by the *Rooker-Feldman* doctrine, the Court also finds that Plaintiff's claims pursuant to 42 U.S.C. § 1983 fail under Fed. R. Civ. P. 12(b)(6) as time-barred. Plaintiff attached to the Amended Complaint a copy of the Family Court's summons to a fact-finding hearing to be held on July 30, 2012, before Support Magistrate Michael J. Howley, and a copy of the Petition for Child Support filed against Plaintiff that was the basis for that hearing. (Dkt. No. 12, Attach. 1.) The Amended Complaint alleges that it was the commencement of the proceedings against Plaintiff through this petition in June 2012 that caused the deprivation of his rights. (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].) The Supreme Court has held that, "[b]ecause § 1983 claims are best characterized as personal injury actions ... a State's personal injury statute of limitations should be applied in all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240-41 (1989). The Supreme Court found in particular that New York's general or residual statute related to personal injury actions should be applied, which sets a three-year statute of limitations. *Owens*, 488 U.S. at 249-50; *accord, Phillips v. City of New York*, 304 F. Supp. 3d 305, 311 (E.D.N.Y. 2018). Such statute of limitations begins "when a plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief," or, in other words, "when the wrongful act or omission results in damages, ... and once the plaintiff knows or has reason to know of the injury which is the basis of his action." *McDonough v. Smith*, 898 F.3d 259, 265 (2d Cir. 2018) rev'd on other grounds *McDonough v. Smith*, 139 S.Ct. 2149 (2019).

In this case, Plaintiff acknowledges in his Amended Complaint that his alleged constitutional harms occurred as a result of the child support proceedings against him in late June 2012. (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].) It is therefore reasonable to find that Plaintiff knew or should have known of the proceedings against him and the child support order at the time those events occurred in 2012. Of note, Plaintiff does not allege that he was never informed of either the proceedings against him or of the child support order itself until a later time. Nonetheless, Plaintiff did not file his initial Complaint in this action until December 3, 2018, more than six years later. (Dkt. No. 1 [Pl.'s Compl.].) Although

Plaintiff argues in his opposition memorandum of law that he "promptly filed a complaint with the Federal District Court as soon as he discovered his rights had indeed been violated," he offers no explanation in either the Amended Complaint or his opposition memorandum of law as to why he seemingly did not know of the alleged constitutional violations until 2018. (Dkt. No. 15, at 5 [Pl.'s Opp'n Mem. of Law].) Additionally, it does not matter when Plaintiff actually discovered a violation. The relevant consideration is when he knew *or had reason to know* of the alleged injury, and without any factual allegation that Plaintiff was somehow left in the dark for six years about the basis for the child support proceedings and order against him (despite the factual statement in the order that the proceeding against Plaintiff was authorized because he and the child's mother had gotten married on July 24, 2010), the Court cannot find that he has alleged facts plausibly suggesting that he did not have reason to know of the alleged injury as long ago as June of 2012. As a result, the Court finds that Plaintiff's claims are barred by the statute of limitations.

The Court also finds that tolling is not warranted under the circumstances alleged. Although the Second Circuit recognizes the continuing violation doctrine, it has qualified that the doctrine applies only to claims "composed of a series of separate acts that collectively constitute one unlawful practice," or "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). Although Plaintiff alleges that the violations of his rights "continue to this day" because he is still subject to the child support order, the fact that he continues to suffer an ongoing injury does not bring his claim under the auspices of the continuing violation doctrine. In other words, each payment Plaintiff is required to make under the child support order is not a new and separate act and injury, but merely a consequence of the initial act, namely, the proceedings and the issuance of the child support order in 2012. Plaintiff had a fully formed claim upon the occurrence of the relevant proceedings and the issuance of the child support order. The Court therefore declines to find that the continuing violation doctrine applies to Plaintiff's claims, and finds instead that there is no other apparent basis for tolling the statute of limitations. Plaintiff's claims pursuant to 42 U.S.C. § 1983 are therefore time-barred and must be dismissed.

 **\*6** In the alternative to the finding that Plaintiff's claims are time-barred and/or covered by the *Rooker-Feldman* doctrine, the Court finds that he has not alleged facts plausibly stating any claim upon which relief can be granted. As an initial

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 161 of 229

matter, Defendant is correct that Plaintiff has again failed to allege any facts plausibly suggesting a municipal custom, policy, or practice to merit holding Defendant liable for the alleged constitutional violations. The only apparent policy identified by Plaintiff is the policy of allowing use of a marriage license to create a presumption of paternity. (Dkt. No. 12, at 5 [Pl.'s Am. Compl.].) However, as Defendant argues, this "policy" is in fact a long-standing part of New York common law, not merely a practice or rule put in place by Defendant or the Clinton County Family Court. *See In re Findlay,* 253 N.Y. 1, 6-7 (N.Y. 1930) (discussing the presumption of legitimacy). Notably, Plaintiff has not alleged facts plausibly suggesting that Defendant had a policy of disallowing rebuttal of the presumption of legitimacy or any other action of that nature that would have prevented Plaintiff from providing evidence to rebut that presumption. As a result, Plaintiff has not alleged facts plausibly suggesting that the alleged constitutional violations were a result of any policy imposed by Defendant, and the Court therefore finds that Defendant cannot be held liable for the claims asserted against it.

Even if Plaintiff had alleged facts plausibly suggesting the existence of a municipal custom, policy, or practice, the Court finds that Plaintiff has not stated a claim upon which relief can be granted. Many of the claims asserted by Plaintiff (i.e., that Defendant has stripped him of his status as a man, violated his right to privacy, violated his right to raise his child as he pleases, violated his right to trial by jury, and defamed him) are either not facially viable legal claims under the circumstances or are so vaguely asserted (i.e., without sufficient supporting factual allegations) that they cannot be found to plausibly state a claim upon which relief can be granted. The Court therefore finds little need to discuss these claims in any detail, but finds that they must be dismissed.

With regard to Plaintiff's due process claim, and particularly Plaintiff's argument that Defendant's acceptance of the marriage license as proof of paternity was a violation of his right to due process, as the Court has previously found, Plaintiff has not alleged facts plausibly suggesting that he was denied the opportunity to present counter-evidence to overcome the presumption that a child born in the context of a marriage is the child of the married spouses. Rather, the summons attached to the Amended Complaint notified him of a fact-finding hearing that preceded the issuance of the child support order. Plaintiff has not alleged facts plausibly suggesting that he did not receive sufficient notice of the commencement of the proceedings before the child support

order was enacted against him (or that he even attended the hearing). Moreover, the summons specifically states that "failure to appear will result in the entry of an order on default unless service has been made by mail alone, in which event no default may be entered without proof satisfactory to the court that you have received actual notice of the commencement of this proceeding." (Dkt. No. 12, Attach. 1, at 1.) Without any factual allegation plausibly suggesting that Plaintiff (a) lacked notice of the hearing such that a default was improper, or (b) attended the hearing but was denied the opportunity to provide evidence to counter the presumption created by the marriage license, the Court cannot find that he has alleged facts plausibly suggesting that Defendant violated his due process rights in relying on the marriage license when issuing the child support order.

Plaintiff also argues that his due process rights were violated by the fact that a Support Magistrate of the Family Court granted the petition for child support because the Federal Manual of Child Support requires that "[p]roceedings conducted pursuant to either the expedited judicial or expedited administrative process must be presided over an individual who is not a judge of the court." (Dkt. No. 15, at 4 [Pl.'s Opp'n Mem. of Law].) However, even if Plaintiff has alleged facts plausibly suggesting that Defendant violated this provision of the Federal Manual of Child Support (a finding that the Court does not make), he has made no factual allegation plausibly suggesting how any such violation in turn violated his due process rights under the United States Constitution. [3]

**\*7** Having already afforded Plaintiff an opportunity to amend his Complaint, the Court finds that it need not grant Plaintiff an opportunity to amend the Amended Complaint to attempt to cure any of the above-mentioned deficiencies, In any event, it finds those deficiencies to be substantive in nature, due to the findings that the Court lacks subject-matter jurisdiction to consider any claims that fall under the *Rooker-Feldman* doctrine, and that any other potential claims are untimely (and Plaintiff has not offered any indication that he could allege facts to plausibly suggest that those claims were in fact timely).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 162 of 229

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 12) is **DISMISSED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1923236

---

## Footnotes

1    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

2    The Court notes that, although Defendant argues that subject-matter jurisdiction is lacking over Plaintiff's claims based on the domestic relations exception, the Second Circuit recently held that the domestic relations exception does not apply in federal-question cases. *Deem v. DiMell-Deem*, 941 F.3d 618, 621 (2d Cir. 2019). Although the Second Circuit also found that, notwithstanding the inapplicability of the domestic relations exception, the separate domestic relations abstention doctrine does apply to federal-question cases, the Court need not determine whether abstention would be appropriate in this case based on its finding that the *Rooker-Feldman* doctrine divests the Court of subject-matter jurisdiction over any claims that would be covered by that abstention. Finally, the Court notes that it may *sua sponte* consider the *Rooker-Feldman* doctrine (even though Defendant never invoked it) because pursuant to Fed. R. Civ. P. 12(h)(3), the Court may *sua sponte* consider whether it lacks subject-matter jurisdiction over a claim.

3    Of note, the New York Family Court Act indicates that support magistrates are in fact not "a judge of the court" as Plaintiff appears to assert. *See* N.Y. Fam. Ct. § 439(a) (indicating that, although support magistrates are appointed to have authority over certain matters related to support proceedings, their findings in many cases are limited or overseen by "a judge of the court"). Given that Plaintiff himself acknowledges that the decision-maker on the support petition was a "Family Court Support Magistrate" (an acknowledgment that is

Hall v. Clinton County, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 163 of 229

confirmed by the attachment to the Amended Complaint), the Court finds that Plaintiff has not alleged facts plausibly suggesting that the use of a support magistrate was in anyway contrary to federal law or policy.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Williams v. NYU Hospital Center Finance & Payroll Support, Not Reported in Fed....

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 164 of 229

2020 WL 1878119
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Sean L. WILLLIAMS, Plaintiff,

v.

NYU HOSPITAL CENTER FINANCE
& PAYROLL SUPPORT, Defendant.

19-CV-11612 (LLS)
|
Signed 04/14/2020

**Attorneys and Law Firms**

Sean L. Williams, New York, NY, pro se.

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

 **\*1** Plaintiff, appearing *pro se*, brings this action alleging that Defendant is violating his rights by unlawfully garnishing his wages to satisfy a child support obligation. By order dated January 10, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis* (IFP). For the reasons discussed below, the Court dismisses Plaintiff's complaint for failure to state a claim and denies Plaintiff's request for preliminary injunctive relief.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in

original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff Sean Williams, an employee of NYU Langone Hospitals, brings this civil action challenging the garnishment of his wages to satisfy his child support obligations. Plaintiff filed his complaint using a court non-prisoner complaint form for asserting civil-rights claims. He alleges that Defendant "is garnishing [his] wages without a valid Jury Trial order or proof of a loan with [his] wet-ink signature and without [his] consent." (ECF No. 2 at 4.) [1]

 **\*2** Plaintiff demands that Defendant "cease and desist from garnishing [his] wages and sending it to a thrid [sic] party without [his] consent, or a jury trial court order proving that [he is] a borrower of a loan." (*Id.* at 5.) He also seeks to have this Court "reinstate [his] wages lost as a result of NYU unlawful actions." (*Id.*)

**DISCUSSION**

Because Plaintiff filed this complaint using a court form for asserting civil-rights claims, the Court construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 165 of 229

Williams v. NYU Hospital Center Finance & Payroll Support, Not Reported in Fed....

## A. Due Process Claim

The Court construes Plaintiff's allegations that Defendant is unlawfully garnishing his wages as a claim that Defendant has violated his right to due process. The Due Process Clause only protects "against deprivations without due process of law." *Rivera–Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)). "The fundamental requisite of due process of law is the opportunity to be heard ... at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera–Powell*, 470 F.3d at 466 (citing *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976)).

Where the government deprives a plaintiff of some interest pursuant to an established procedure, due process is generally satisfied so long as some form of hearing is provided before the individual is finally deprived of the property interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). Where a person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, the Due Process Clause is satisfied if the state provides an adequate postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that a "random and unauthorized" deprivation of a protected interest does not result in a violation of procedural due process, as long as the state provides an adequate postdeprivation remedy); *Rivera–Powell*, 470 F.3d at 465 (holding that "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy").

In New York, a child support debtor is entitled to the post-judgment judgment remedies outlined in Section 52 of the New York Civil Practice Law and Rules (CPLR). [2] When a support collection unit (SCU) issues an execution for enforcement of current support or arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and "shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy" of the execution. *See* C.P.L.R. § 5241(a)(8) & (e). The appropriate agency rules on the objection and "notif[ies] the debtor of its determination within 45 days." C.P.L.R. § 5241(e). If the agency does not

agree with the debtor's objection, the debtor may file an Article 78 proceeding in state court to have the state court review the agency's determination. *Beattease v. Washington Cty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (2d Dep't 2012) (noting that applicant for relief should commence an Article 78 proceeding after exhausting his remedies before the SCU).

**\*3** Even if the Court assumes that Plaintiff's property was seized without notice or opportunity to challenge the seizure before it occurred, such facts do not give rise to a due process claim. State law, specifically, Section 52 of the CPLR, provides for due process to child support debtors facing seizure or garnishment. If a city or state employee or agency failed to comply with state law, such an omission would constitute a random and unauthorized deprivation that does not constitute a procedural due process violation, as long as the state provides an adequate postdeprivation remedy. Plaintiff does not mention having filed an Article 78 proceeding; however, the fact that such a remedy was available to him satisfies due process because it is an adequate post-deprivation remedy to a random and unauthorized deprivation. *See Rivera–Powell*, 470 F.3d at 465. Plaintiff therefore fails to plausibly allege a violation of his right to procedural due process.

Plaintiff's allegations may also be read as raising a substantive due process claim. Substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Interport Pilots Agency Inc. v. Sammis*, 14 F.3d 133, 144 (2d Cir. 1994) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Substantive due process rights are violated only when the government has engaged in conduct so egregious it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). The Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Conduct that is merely incorrect or ill-advised does not meet this high standard. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

There is nothing in the complaint that rises to the level of "shocking the conscience." *See, e.g., Weinstein v. Albright*, No. 00-CV-1193 (JGK), 2000 WL 1154310, at \*5 (S.D.N.Y. 2000) (rejecting substantive due process challenge to federal law authorizing the denial or revocation of a passport to an

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 166 of 229

Williams v. NYU Hospital Center Finance & Payroll Support, Not Reported in Fed....

individual who owes child support arrears exceeding $5,000), *aff'd*, 261 F.3d 127, 142-43 (2d. Cir. 2001). Instead, Plaintiff appears to disagree with the fact that he has been ordered to pay child support and with the garnishment of his wages to pay that support. Plaintiff therefore fails to plausibly allege a violation of his substantive due process rights.

Plaintiff's due-process claims must therefore be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## B. Rooker-Feldman Doctrine

Moreover, federal courts lack subject matter jurisdiction to review cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine – named for *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983) – applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, Plaintiff can be understood as complaining that the child support order violates his rights. If so, then Plaintiff's claim is for an injury "caused by the state-court judgment." *Exxon*, 544 U.S. at 284. Plaintiff cannot ask this Court to review and reject the child support order. The *Rooker-Feldman* doctrine bars this Court from hearing such a challenge to the child support order. *See Remy v. New York State Dep't of Tax. and Finance*, 507 Fed. App'x 16, 18 (2d Cir. 2013) ("*Rooker-Feldman* doctrine barred father's § 1983 action challenging state court's child support orders and state agencies' enforcement efforts arising from those orders....").

## C. Domestic Relations Abstention Doctrine

**\*4** The domestic relations abstention doctrine bars this Court from considering any challenge Plaintiff may be making to entry of the child support order itself. In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues, so long as those

claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal-question jurisdiction over claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child...." *Id.* (internal quotation marks and citation omitted).

Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject-matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992).

On October 30, 2019, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019), *pet. for cert. filed*, No. 19-1111 (Mar. 6, 2020). Thus, "[a]lthough the domestic relations 'exception' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrant ... does not apply* in federal-question cases, the domestic relations *abstention* doctrine articulated in *American Airlines* does." *Id.* (emphasis in original). When claims involving domestic-relations issues are presented under a court's federal-question jurisdiction, the court must therefore *abstain* from exercising its federal-question jurisdiction over the claims; when they are presented under a court's diversity jurisdiction, the court must dismiss them for *lack of jurisdiction. See id.* at 621-24.

Plaintiff asks this Court to order NYU to "cease and desist garnishing [his] wages" and "to stop the garnishment of [his] pay and reinstate [his] wages lost as a result of NYU['s] unlawful actions. (ECF 2 at 5.) His claims therefore involve domestic-relations issues. Thus, unless he shows that there is an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts, this Court must abstain from exercising its federal-question jurisdiction over his claims arising from the Family Court's order and its enforcement. *Am. Airlines*, 905 F.2d at 14; *Simmons*, 2019 WL 5810307, at \*4 n.2 (S.D.N.Y. Nov. 5, 2019) ("Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing"); *Myers v. Sara Lee Corp.*, No. 08-

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 167 of 229

Willliams v. NYU Hospital Center Finance & Payroll Support, Not Reported in Fed....

CV-1421, 2009 WL 10706711, at *10 (E.D.N.Y. Apr. 13, 2009) ("As in *American Airlines*, the income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court. Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here for the same reasons it was required as to the non-final judgment amounts in *American Airlines*.").

**D. Request for Preliminary Injunctive Relief**

Plaintiff seeks to have the Court stop the garnishment his wages and to reinstate the wages lost as a result of Defendant's alleged unlawful actions. To obtain such relief, Plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.,*

*Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

**\*5** As set forth above, Plaintiff fails to state a claim for relief. The Court therefore finds that Plaintiff has failed to show (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. Accordingly, Plaintiff's request for injunctive relief is denied.

**CONCLUSION**

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's request for injunctive relief is denied.

All other requests are denied as moot.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1878119

---

**Footnotes**

1    Page numbers refer to those generated by the Court's electronic case filing (ECF) system.

2    The city, state and federal statutory and regulatory scheme governing child support enforcement is discussed in *O'Brien v. Hansell*, No. 09-CV-629, 2010 WL 1371366, at *4-*7 (E.D.N.Y. Mar. 31, 2010).

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1371366
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William O'BRIEN, Plaintiff,
v.
David A. HANSELL, in his Capacity as the
Commissioner of the New York State Office of
Temporary and Disability Assistance, and Robert Doar,
in his Capacity as the Commissioner of The New York
City Human Resources Administration, Defendants.

No. 09–CV–629 (RRM)(JO).
|
March 31, 2010.

West KeySummary

1    **Child Support** 👍 Execution

    **Child Support** 👍 Administrative
    Enforcement; Orders and Proceedings

    **Constitutional Law** 👍 Child Custody,
    Visitation, and Support

    The New York civil practice statute, the
    New York social services statute, and the
    Social Security Act all allowed Social Security
    payments to be restrained and executed in
    fulfillment of child support arrears. Thus, obligor
    parent, whose bank account had been restrained
    by the commissioner of the New York State
    Office of Temporary and Disability Assistance
    and the commissioner of the city human
    resources administration failed to state a § 1983
    claim against the commissioners for violation of
    his due process rights under the United States
    and New York Constitutions, even though the
    income in his account, which derived solely
    from recurring Social Security payments, was
    exempt from collection under the New York
    self-support reserve requirement. U.S.C.A.
    Const.Amend 14; McKinney's Const. Art. 1,
    § 6; 42 U.S.C.A. § 1983; McKinney's CPLR
    5222; McKinney's Social Services Law § 111–t;
    Social Security Act, § 466(a)(4), (c)(1)(G)(2), 42

U.S.C.A. § 666(a)(4), (c)(1)(G)(2); McKinney's
Family Court Act § 413(1).

**Attorneys and Law Firms**

Edward J. Josephson, Johnson M. Tyler, South Brooklyn
Legal Services Corp., John C. Gray, Brooklyn Legal Services,
Brooklyn, NY, for Plaintiff.

Garvin V. Smith, Vincent Leong, Attorney General State of
New York, Michael Anthony Suarez, Toni Lynn Gantz, New
York City Law Department, New York, NY, for Defendants.

*MEMORANDUM & ORDER*

MAUSKOPF, District Judge.

**\*1** Plaintiff William O'Brien brings this action pursuant to
42 U.S.C. § 1983 for declaratory and injunctive relief for
alleged violations of the Due Process Clause of the Fourteenth
Amendment of the United States Constitution, and, pursuant
to this Court's supplemental jurisdiction, for violations of
the Due Process Clause of Article 1, § 6 of the New York
State Constitution, Section 413(1) of the New York Family
Court Act, and the Official Compilation of Codes, Rules, &
Regulations of the State of New York title 18, § 347(9)(e)(2).
Defendants move to dismiss the Complaint and for judgment
on the pleadings for, *inter alia,* failure to state a claim. For
the reasons set forth below, the Court grants the Defendants'
motions, and Plaintiff's Complaint is dismissed.

*BACKGROUND*

Plaintiff, 52, is a resident of Brooklyn, and a child
support obligor/debtor with emancipated children who owes
arrears of approximately $50,000. Defendant David A.
Hansell, Commissioner of the New York State Office of
Temporary and Disability Assistance (the "OTDA"), is
responsible for the supervision of enforcement of child
support obligations via the New York State Office of Child
Support Enforcement, a bureau within the OTDA. Defendant
Robert Doar, Commissioner of the New York City Human
Resources Administration (the "HRA"), is responsible for the
supervision of child support obligations within New York
City.

Plaintiff is a Social Security recipient with monthly payments of $739 in 2008 and $787 at the time he filed his Complaint. Plaintiff and his wife had three children between 1977 and 1981, but Plaintiff's marriage ended sometime prior to 1993, when Plaintiff was ordered to pay child support in the amount of $267 every two weeks. In May 1997, Plaintiff sought a downward modification in the amount of his payments due to his unemployment. While that petition was pending, he was struck by a car and severely injured, going into a coma. Although Plaintiff emerged from the coma, he claims to suffer from severe signs and symptoms of traumatic brain injury, which causes him great difficulty in organizing his thoughts, remaining focused, picking up social cues, following instructions, and controlling his emotions. Following his injury, Plaintiff became homeless for a number of years starting about 1998.

As a result of his injuries, Plaintiff failed to appear at the downward modification hearing scheduled after his initial petition, but the family court magistrate nevertheless modified the child support order on March 31, 1998 to $100 every two weeks. In June 2002, Plaintiff petitioned the Family court to terminate his child support obligations because his children were all adults. That motion was granted on December 12, 2002, but Plaintiff still owed significant arrears on his child support payments. With counsel, Plaintiff filed another petition for a downward modification retroactive to 1997 on the grounds that his income was below the self-support reserve [1] from 1997 onward, and that his injuries had prevented him from seeking a downward modification prior to June 2002. On June 13, 2003, the family court magistrate hearing Plaintiff's petition issued a "finding of fact" that Plaintiff, as of January 1, 2002, lived below the self-support reserve, but that there was insufficient evidence to show that he was incapable of filing a petition for a downward modification prior to June 2002. Accordingly, an order was entered on August 29, 2003 terminating Plaintiff's child support obligations, but fixing his arrears at $48,937, to be paid in a manner "to be determined by the Support Collection Unit." (Compl.(Doc. No. 1) ¶ 52.)

**\*2** Plaintiff's monthly Social Security payment is electronically deposited into his Dime Savings Bank account on the third of each month. Plaintiff uses this money to pay for rent, food, and other necessities, usually spending the entire amount each month. On April 3, 2008, Plaintiff received a Social Security payment of $739. On April 11, 2008, Plaintiff's bank account, with a balance of $2.38,

was restrained by the Defendants. On April 21, 2008, Plaintiff received a "Notice to Judgment Debtor/Obligor of Restraining Notice," dated April 11, 2008. The notice advised Plaintiff that money or property of his might have been restrained to satisfy child support arrears. It advised him that unless he filed a written objection within fifteen days, an execution notice would be issued to take the restrained money or property. The notice provided that "YOU MAY ASSERT A MISTAKE OF FACT IF YOU THINK YOU DO NOT OWE THE ARREARS OR YOU MAY CLAIM THAT YOUR MONEY OR PROPERTY SHOULD NOT BE USED TO SATISFY ANY ARREARS BECAUSE IT IS EXEMPT (see below for more information.)" (*Id.* ¶ 63.) The notice explained that "the following types of money or property are always exempt from the payment of ... child support arrears: 1. Supplemental Security Income ("SSI"); 2. Public assistance (welfare); and 3. Alimony or child support." (*Id.* ¶ 64.)

On April 28, 2008, Plaintiff contacted South Brooklyn Legal Services ("SBLS") for assistance in responding to the notice of restraint. On May 3, 2008, Plaintiff's next monthly Social Security payment was electronically deposited into his bank account, which was still frozen. On May 5, 2008, an SBLS attorney (counsel for Plaintiff in this case) faxed a letter with supporting documents to the New York City Office of Child Support Enforcement requesting that Plaintiff's account be released from restraint because Plaintiff lived below the self-support reserve, and that his only income, Social Security, was regularly deposited into his bank account. Plaintiff alleges that at the time this request was made he was distressed by his lack of money, and had to seek assistance from friends and acquaintances to survive. On or about May 9, 2008, approximately twenty-eight days after the initial restraint, Plaintiff's account was released and Plaintiff regained access to his account.

On or about October 10, 2008, Plaintiff's account, with a balance of $0.19, was restrained for a second time by the Defendants. On October 22, 2008, Plaintiff received a notice of restraint identical to the one he had earlier received in April 2008. On October 24, 2008, Plaintiff again contact SBLS for assistance, and on October 30, 2008, SBLS faxed a similar letter to that sent previously to the New York City Office of Child Support Enforcement asking them to release the account. Plaintiff's account was released on November 3, 2008, approximately thirteen days after it had been restrained. Plaintiff alleges that he is fearful that his account will be restrained again. He also alleges that he lives in poverty, and

that even when his account is not restrained, he needs to go to food pan tries and soup kitchens for food.

**\*3** Plaintiff filed his Complaint in this Court on February 13, 2009, alleging that Defendants violated his due process rights under the United States and New York Constitutions by restraining his bank account in an attempt to collect arrears owed by Plaintiff on his child support payments without advising him that the income in his account, which derived solely from recurring Social Security payments, might be exempt from collection pursuant to the self-support reserve exemption. Plaintiff also argues that Defendants violated his due process rights, Section 413(1) of the New York Family Court Act, and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e) (2) by restraining his bank account a first time in April 2008 without having first obtained evidence refuting or at least bringing into question the validity of the 2003 Family Court finding that Plaintiff was living below the selfsupport reserve, and violated the same provisions in restraining his bank account a second time in October 2008 without determining that his income or assets were above the self-support reserve.

Plaintiff seeks a declaration that the Notice to Judgment Debtor/Obligor of Restraining Notice authored by the OTDA and issued by the HRA is unconstitutional because it violates his due process rights under the United States and New York Constitutions, and that the Defendants' practice of restraining Plaintiff's bank account without regard to previous findings that he lives below the self-support reserve is unconstitutional and also violates Section 413(1) of the New York Family Court Act and the Official Compilation of Codes, Rules, & Regulations of the State of New York title 18, § 347.9(e) (2). Plaintiff also seeks to enjoin Defendants to implement procedures to ensure that a child support obligor/debtor with emancipated children receives notice of his right to seek the release of a restrained account when he lives below the self-support reserve. Plaintiff also seeks to enjoin the Defendants to implement procedures preventing them from restraining his bank account unless they first obtain evidence suggesting that he has income above the self-support reserve. Finally, Plaintiff seeks to recover actual damages resulting from Defendants' restraint of his account.

Defendants now move separately to dismiss Plaintiff's Complaint and/or for judgment on the pleadings. Defendant Hansell moves to dismiss, arguing that the Complaint fails to state a claim against him, that the Eleventh Amendment to the United States Constitution bars any claim for damages

or for past violations of federal law, and finally that, in any case, New York law does not impose a self-support reserve limitation on restraining notices and executions to enforce child support obligations, and thus Plaintiff's claims founded on the existence of such a limitation are without merit. Defendant Doar moves for judgment on the pleadings, arguing that Plaintiff lacks standing to bring his Complaint, that Plaintiff fails to state a claim because the HRA is authorized by statute to restrain Plaintiff's bank account under the circumstances of this case and using the notice at issue, and that Defendant Doar, in any case, was not personally involved in the restraint of Plaintiff's bank account.

### *LEGAL STANDARDS*

#### I. Standards Applicable to Motions To Dismiss and for Judgment on the Pleadings
**\*4** Defendants move to dismiss Plaintiff's Complaint under both Federal Rule of Civil Procedure 12(b)(6) and Rule 12(c). However, in deciding a Rule 12(c) motion for judgment on the pleadings, courts apply the same standard as that applicable to a motion to dismiss for failure to state a claim under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475–76 (2d Cir.2009).

In deciding a Rule 12(b)(6) motion, a complaint should be dismissed only if it does not contain sufficient allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (citing *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). " 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' " *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

## II. Statutory and Regulatory Framework Governing Child Support Obligations

A non-custodial parent has an obligation to support his or her child, and, "if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may determine." N.Y. Fam. Ct. Act § 413(1)(a). Federal law requires that states wishing to receive federal welfare funds establish administrative agencies to, *inter alia,* enforce child support debts. 42 U.S.C. § 654.

In New York, the New York State Office of Temporary and Disability Assistance, Division of Child Support Enforcement, supervises the child support enforcement program in the State. N.Y Soc. Servs. Law § 111–b(1). Each local social services district, through a Support Collection Unit ("SCU"), is required to take all steps necessary to establish, collect, and enforce child support orders. *Id.* §§ 111–c, 111–h. In New York City, the Office of Child Support Enforcement, part of the HRA, is the SCU that enforces child support orders entered in the five counties that constitute the City of New York.

 **\*5** Once a child support order has been entered, the local SCU establishes an account for the named child support debtor, the terms of which are established by the order of support. *Id.* § 111–h(1). Any past due support is treated as a judgment by operation of law, 42 U.S.C. § 666(a)(9)(A), and is enforceable in the same manner as a judgment, N.Y. C.P.L.R. 5101. The SCU has various methods of enforcing child support arrears, including, *inter alia,* (1) the issuance of income executions for child support enforcement, see 42 U.S.C. § 666(a)(1), (8), (b); N.Y. C.P.L.R. 5241, and (2) the imposition of child support liens against real and personal property and seizure of assets, bank accounts, and insurance settlements, see 42 U.S.C. §§ 666(a)(4), (c)(1)(G); N.Y. Soc. Servs. Law §§ 111–t, 111–u; N.Y. C.P.L.R. 5222.

In attempting to collect child support arrears under either of the two methods noted, certain limits are placed on the SCU. For example, welfare and Supplemental Security Income cannot be garnished for arrears, see N.Y. Fam. Ct. Act § 413(1)(a)(5)(vii) (e), (f); likewise, money will not be taken from a bank account via a property execution if the money in the account derives from welfare, SSI, or child-support payments. N.Y. C.R.L.R. 5205(c), (d). Additionally,

New York recognizes a self-support reserve whereby the SCU must reduce the amount of additional child support it attempts to collect from a child support arrears debtor via income execution, over and above current child support due, if collection of that additional amount would reduce the debtor's remaining income below the self-support reserve. [2] N.Y.Code, Rules, & Regs. Tit. 18, § 347.9(e)(2). The statutes and regulations governing property execution, however, do not contain any similar reference to the self-support reserve. *Cf. id.* § 346.11 (limiting debtor's defense to mistake of fact); N.Y. C.P.L.R. 5222(k) (clarifying that certain restrictions on property execution do not apply when the debt enforced is for child support arrears); *see also infra,* Discussion, Part II.

## *DISCUSSION*

## I. Plaintiff Has Standing To Assert His Claims

Defendant Doar asserts that Plaintiff lacks standing to bring this action in federal court. As it is axiomatic that federal courts may only decide cases in which the plaintiff establishes an actual case or controversy, this Court must first satisfy itself that Plaintiff has standing. *See Lujan v. Defenders of Wild Life,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To satisfy Article Ill's standing requirements, a plaintiff must show (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendants; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

 **\*6** As noted by Plaintiff, "Injury in fact is a low threshold, which [the Second Circuit] ha[s] held 'need not be capable of sustaining a valid cause of action,' but 'may simply be the fear or anxiety of future harm.' " *Ross v. Bank of Am., N.A.,* 524 F.3d 217, 222 (2d Cir.2008) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir.2006)). Here, Plaintiff alleges that he was deprived of his property for a total of forty-one days, and that during that time he had to seek loans and charity in order to survive. He also was forced to contact an attorney in order to have his account unfrozen on two occasions. And, while Doar minimizes the amount of money held in the frozen account, the facts alleged in the complaint, taken as true for the purposes of deciding these motions, establish that Plaintiff was deprived of his entire Social Security payment of $739 for five days in

April 2008. Even the taking of small amounts of property can satisfy the injury in fact test. *See, e.g., Wash. Legal Found. v. Legal Found., of Wash.,* 271 F.3d 835, 848–50 (9th Cir.2001) (holding that plaintiff who suffered the loss of a small amount of escrow interest had standing to assert Fifth Amendment takings claim), *aff'd,* 538 U.S. 216, 123 S.Ct. 1406, 155 L.Ed.2d 376 (2003). Moreover, Plaintiff alleges that he suffered additional injuries because he could not access his account, including the need to borrow money to pay for food, and fear and anxiety arising out of his inability to access his sole source of income. Accordingly, Plaintiff has met the first part of the standing test. Because Doar does not challenge Plaintiff's ability to meet the other elements of the standing requirement, and because this Court finds that Plaintiff has established both causation and redressability, Plaintiff has standing to bring this Complaint. However, for the reasons below, Plaintiff's claims fail.

## II. Plaintiff Fails To State A Claim Because New York State Law Does Not Impose A Self–Support Reserve Limitation on Restraining Notices and Executions To Enforce Child Support Obligations

Plaintiff grounds all of his claims on the erroneous assertion that the self-support reserve applicable to income garnishment must also apply to property restraint and execution. Plaintiff bases his argument on an overly-broad reading of U.S. Supreme Court cases holding that exemption statutes should be "liberally construed," *Porter v. Aetna Cas. & Surety Co.,* 370 U.S. 159, 161, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1963), and that "technicalities" in the functioning of the banking system should not defeat the purpose of the exemption statutes, *id.* (*See* Pls.' Mem. (Doc. No. 21) at 13–16 (also citing *Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) (applying the holding of *Porter* to Social Security benefits)). Defendants correctly distinguish the cases cited by Plaintiff, however, by noting that each dealt with an exemption embodied in federal law that applied comprehensively to certain categories of payments (such as veterans' benefits or social security benefits), and not, as here, to a state law created reserve attempting to generally protect impoverished, non-custodial parents from financial hardship when paying child support.

**\*7** As discussed above, state and federal law authorize the restraint and seizure of the personal property of child support debtors, including bank accounts, to enforce child support debts. 42 U.S.C. § 666(a)(4), (c)(1)(G)(2); N.Y. C.P.L.R. 5222; N.Y. Soc. Serv. Law § 111–t. The categories of money that are exempt from restraint, execution, or levy

for child support enforcement are set forth in the N.Y. Civil Practice Law and Rules ("CPLR"). *See* N .Y. C.P.L.R. 5205 (exempting (1) Supplemental Security Income, (2) public assistance, including employment earnings considered in calculating the public assistance grant, and (3) child support, spousal support, maintenance, or alimony payments). Social Security payments, such as those received by Plaintiff and at issue here, are not exempt from alienation for child support debts. *See* 42 U.S.C. 659(h); N.Y. Soc. Servs. Law § 111–t. Challenges to notices of restraint may only be challenged on the basis of mistake of fact. *See* N.Y. C.P.L.R. 5222(f); N.Y. Comp.Codes R. & Regs. tit. 18, § 346.11(d)(5), (e).

There is no limitation on restraint or seizure of personal property based on the child support obligor's income level, Plaintiff's arguments to the contrary notwithstanding. Plaintiff cites only to the state statute and regulations applicable to income execution as support for his claim that the self support reserve applies to restraining notices. (*See* Pls.' Mem. at 13 (citing N .Y. Fam. Ct. Act § 413(1)(g); N.Y.Code, Rules, & Regs. tit. 18, § 347.9(e)(2)).) Moreover, while Plaintiff argues that the Supreme Court has "twice ruled that the exempt character of statutorily exempt payments is not lost when exempt money is deposited into an account, provided it remains available for daily use and the debtor needs the money for daily expenses," his argument fails because the moneys at issue here never were exempt. (Pls.' Mem. at 14.)

For example, in *Porter,* the exempt character of veterans' benefit payments, which pertained even after they were deposited into a bank account, was not lost simply because of the "technicality" that deposit into a savings and loan account was made by purchase of shares in the savings and loan that could be converted into liquid funds. 370 U.S. at 161–62. The Court's holding turned on its focus in the earlier case of *Trotter v. Tennessee,* 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358 (1933), on whether the benefit funds "lost the quality of moneys" and were converted into "permanent investments," or whether, instead, the funds were equivalent to moneys and used for the support and maintenance requirements of the debtor. *Porter,* 370 U.S. at 161–62. The Court also relied on its prior jurisprudence regarding the Congressional intent that exemption legislation "should be liberally construed to protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof," *id.* at 162, to hold that the deposits at issue should remain inviolate. [3]

**\*8** Here, however, as discussed above, both state and federal law allow Social Security payments to be restrained and

executed in fulfillment of child support arrears. The only policy identified by Plaintiff to the contrary is a creation of the New York Legislature, and specifically applies only to income executions, and not to restraints of personal property. This distinguishes the instant case from *Porter* and *Philpott,* and argues against accepting Plaintiff's invitation to rewrite the New York child support laws. This is especially so in light of the New York legislature's recent amendment of the CPLR provisions governing property executions to specifically exempt from restraint and execution the first $2,500 of statutorily exempt payments, N.Y C.P.L.R. 5222(h), or the first $1,740 of any moneys in the debtors account, N.Y C.P.L.R. 5222(i), *except* when "the debt enforced is for child support, spousal support, maintenance or alimony," N.Y. C.P.L.R. 5222(k), in which case the new restrictions do not apply. Given this clear evidence of the Legislature's intent, the Court finds no support for Plaintiff's argument that the self-

support reserve should be extended to protect from restraint and execution Social Security payments deposited into a child support debtor's bank account. Accordingly, Plaintiff's claims must be dismissed.

### CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' motions to dismiss and for judgment on the pleadings are GRANTED in full, and the Complaint is DISMISSED. [4]

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1371366

---

## Footnotes

1    As discussed more fully below, *infra* at 10, the self-support reserve is defined by the New York Family Court Act as "one hundred thirty-five percent of the poverty income guidelines amount for a single person as reported by the federal department of health and human services." N.Y. Fam. Ct. Act § 413(1)(b)(6). Plaintiff alleges that this was $1,219 monthly in 2009. (Compl.¶ 1.)

2    Plaintiff alleges that in 2009 this amount was $1,219 per month. *Supra,* note 1.

3    Notably, veterans' benefit payments are not exempt from attachment or seizure once deposited in a bank account if the debt to be enforced is one for child support. *See Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987); *see also* 42 U.S.C. § 659(h)(1) (allowing Social Security payments to be withheld to enforce child support obligations).

4    Because this Court finds that Plaintiff has failed to state a claim, it is unnecessary to address Defendants' additional arguments that (1) Plaintiff's claims against Hansell are barred by the Eleventh Amendment, especially where even Hansell admits that Plaintiff may still maintain his prospective claims for injunctive relief, and (2) Plaintiff's claims against Doar fail to allege that Doar was personally involved in the deprivation of Plaintiff s constitutional rights, an issue difficult to decide in the absence of a record.

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 81421
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Gregory LIONS, Plaintiff,

v.

NEW YORK STATE OFFICE OF CHILD
SUPPORT ENFORCEMENT, and Human
Resources Administration, Defendants.

1:24-cv-7181-GHW
|
Signed January 10, 2025

**Attorneys and Law Firms**

Gregory Lions, Pennsauken, NJ, Pro Se.


ORDER OF DISMISSAL WITH LEAVE TO REPLEAD

GREGORY H. WOODS, United States District Judge:

**\*1** In 2002, the custodial parent of Plaintiff Gregory Lions' sons filed a petition for paternity in Staten Island. Plaintiff alleges that, since at least 2017, the State and City of New York have been garnishing his wages and imposing other penalties in attempt to collect his outstanding child support arrears. Because Plaintiff's claims against the State are barred by the Eleventh Amendment, and because the claims against the City are, in effect, an appeal from a state court judgement, the Court dismisses this action but grants Plaintiff 30 days' leave to amend the Complaint.


# I. BACKGROUND

## A. Facts [1]

Plaintiff alleges that on or about January 29, 2002, the custodial parent of his two sons filed a petition for paternity in Staten Island. Compl. at 5. He alleges that "since 2017, the New York Office of Child Support Enforcement [2] has been garnishing my wages, [3] and intercepting my Federal tax refund money ...." *Id.* Plaintiff also alleges that on September 28, 2023 a $3,500 "bail settlement from New York State" was taken "as a 'deduction for outstanding child support liens' for 'arrears' in my child support case." *Id.* He also contends that his "right to receive a passport" has been withheld. *Id.* Finally, Plaintiff alleges that "[t]he Office of Child Support

Enforcement never notified me that I had become an obligor for an arrears contract" and "never furnished me with the terms of interest either." *Id.* at 4.

Plaintiff argues that "no collection actions should have taken in the first place" because "the original family court petition" stated that " '[t]he petitioner does not wish to make application [sic] for child support enforcement services.' " *Id.* at 5. Plaintiff also contends that "[t]he New York State IV-D child support law" violates due process and "is not a valid debt under the law," because "the state has been found to not properly notify individuals of child support proceedings ...." *Id.* at 4. In his prayer for relief, Plaintiff asks the Court to "order the NY State Office of Child Support Enforcement to (1) cease all arrears collection efforts" and "(2) [r]eturn $12,805.10 of arrears that it has illegally garnished from my wages, settlements, and other income." *Id.* at 6. He asserts that "[t]he actions of the New York State Office of Child Support Enforcement have negatively impacted my ability to pay my bills and support myself." *Id.* at 5. He adds that "[t]he constant mail notices from OCSE with the ever increasing amount, monthly interest of $527.93, currently at $96,787.78 has caused me a constant level of mental anguish as well. I am currently unemployed and receiving unemployment, due to run out the first week of December 2024, and social security benefits as my sole source of income." *Id.*


## B. Procedural History

**\*2** Plaintiff Gregory Lions filed this action *pro se* on September 27, 2024. *See id.* Plaintiff resides in New Jersey. *Id.* at 2. He paid the fees to bring this action. Plaintiff sues the New York State Division of Child Support Enforcement (the "NYS DCSE"), and the New York City Office of Child Support Enforcement (the "NYC OCSE") (collectively, "Defendants"). [4] *See* Compl. at 1–2.

Plaintiff's Complaint expressly asserts claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment's Excessive Fines Clause. *See* Compl. at 3. Because Plaintiff is proceeding *pro se*, the Court construes the complaint liberally to assert additional claims for Defendants' allegedly incorrect enforcement of Title IV-D of the Social Security Act ("Title IV-D"), and under state law, including for violations of the New York State Constitution's due process and excessive fines clauses. N.Y. Const. art. I, §§ 5 & 6.


# II. STANDARD OF REVIEW

The Court is obliged to construe *pro se* pleadings liberally. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The Court must also interpret *pro se* complaints "to raise the strongest arguments that they *suggest*." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

Even when the *pro se* plaintiff has paid fees to bring a civil action, the Court must dismiss the action *sua sponte* if the Court determines that it lacks subject matter jurisdiction. *See Fed. R. Civ. P. 12(h)(3)* ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The Court may also dismiss an action *sua sponte* for failure to state a claim on which relief may be granted, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted), *abrogated on other grounds*, *Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Fed. R. Civ. P. 8(a)(2)*. Rule 8 requires a complaint to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## III. DISCUSSION

**\*3**  The Court must dismiss each of Plaintiff's claims. First, all of Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment. With respect to Plaintiff's claims against the NYC OCSE, the Court is barred from reviewing Plaintiff's claims that challenge the family court judgment against him under the *Rooker-Feldman* doctrine. To the extent that Plaintiff asks the Court to modify his child support obligations, the Court must abstain under the domestic relations abstention doctrine. Plaintiff's Complaint also fails to state a claim under *Section 1983*. Finally, with respect to any parallel state law claims brought under the Court's diversity jurisdiction, the Court is similarly barred

from considering those claims under the *Rooker-Feldman* doctrine, and lacks diversity jurisdiction to resolve those claims under the domestic relations exception.

### A. The Eleventh Amendment Bars Plaintiff's Claims Against the State

Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment because the NYS DCSE is a state agency. The Eleventh Amendment states the following: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *U.S. Const. amend. XI*; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original); *see also Green v. Mansour*, 474 U.S. 64, 68, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Unless a state waives its immunity, a district court lacks subject matter jurisdiction over claims asserted against the state. *See Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted); *see also Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." (internal quotation marks and citation omitted)).

Congress has not abrogated the states' immunity for claims under *Section 1983*, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The NYS DCSE is an agency of the State

of New York; it is, thus, an arm of that state and enjoys Eleventh Amendment immunity. *See Dixon v. Jordan*, No. 1:23-CV-9227 (LTS), 2024 WL 37096, at *2 (S.D.N.Y. Jan. 2, 2024). Thus, the Court dismisses Plaintiff's claims against the NYS DCSE under the doctrine of Eleventh Amendment immunity. [5]

### B. Plaintiff's Claims Against the City Are Either Barred or Inadequately Pleaded

#### 1. The OCSE is Not a Suable Entity

**\*4** The Court must dismiss all claims against the NYC OCSE because, as an agency of the City of New York, the NYC OCSE is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismiss all claims against the NYC OCSE.

However, in view of Plaintiff's *pro se* status, the Court substitutes the City of New York as the proper defendant pursuant to Federal Rule of Civil Procedure 21. *See Obah v. Dep't of Admin. for Children's Servs.*, 2024 WL 2848903, at *5 (S.D.N.Y. May 2, 2024), *report and recommendation adopted sub nom. Obah v. Dep't of Admin. for Child. Servs.*, 2024 WL 2848883 (S.D.N.Y. May 30, 2024). Consequently, although the Court dismiss all claims against the NYC OCSE, the Court substitutes the City of New York (the "City") in its place.

#### 2. Plaintiff's Federal Claims Against the City Must be Dismissed

With respect to Plaintiff's Section 1983 claims against the City, the Court is barred from reviewing Plaintiff's claim that challenges his family court judgment under the *Rooker-Feldman* doctrine, and must abstain from considering Plaintiff's claim seeking modification of his child support order under the domestic relations abstention doctrine. Any other claims arising under Section 1983 must be dismissed

because Plaintiff has failed to plead the existence of a municipal policy that led to any alleged harm.

##### i. The Rooker-Feldman Doctrine Bars Review of the State Court Proceeding

The Court is barred from reviewing Plaintiff's Section 1983 claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order. "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).

The Second Circuit "has articulated four requirements that must be met for *Rooker-Feldman* to apply: (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Dorce*, 2 F.4th at 101–02 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in original and internal quotation marks omitted). "The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him." *Davis v. Westchester Cnty. Family Court*, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017); *see generally Hoblock*, 422 F.3d at 87 ("If [a] father sues in federal court ... on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.").

**\*5** "Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu v. Lopez*, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases); *see also Davis*, 2017 WL 4311039, at *8 ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears"); *Hall v. Clinton Cnty.*, 2020 WL 1923236, at *4

(N.D.N.Y. Apr. 21, 2020); *Williams v. NYU Hosp. Ctr. Fin. & Payroll Support*, 2020 WL 1878119, at *3 (S.D.N.Y. Apr. 14, 2020) (citing *Remy v. New York State Dep't of Taxation and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013) (summary order)).

Here, the *Rooker-Feldman* doctrine bars the Court from reviewing any claims arising from Plaintiff's assertion that the family court violated his right to due process, and that the garnishment of his wages constitutes an excessive fine. All four of the *Rooker-Feldman* factors are met in this case. First, the Court can reasonably infer that Plaintiff "lost in state court," *Dorce* 2 F.4th at 101, as his wages have been garnished since at least 2017, his federal tax refund seized, his right to receive a passport suspended, and the state issued a "bail settlement" in 2023 "as a 'deduction for [Plaintiff's] outstanding child support liens' for 'arrears' in [his] child support case." *See* Complaint at 5.

Second, Plaintiff "complain[s] of injuries caused by a state-court judgment." *See Dorce*, 2 F.4th at 101. "Once a child support order has been entered ... [a]ny past due support is treated as a judgment by operation of law and is enforceable in the same manner as a judgment." *O'Brien*, 2010 WL 1371366, at *5 (internal citations omitted). Here, Plaintiff complains that the garnishment of $12,805 in wages and income was illegal, and asks the Court to enjoin further collection of his $96,787 unpaid balance, all of which stem from the state's child support order against him. *See* Compl. at 5–6. In seeking such an order, Plaintiff "invite[s] the Court to review and reject a family court judgment that "rendered before the district court proceedings commenced," *Dorce*, 2 F.4th at 101, given that the family court petition was filed against Plaintiff in 2002 and collections began in or around 2017.[6] *See* Compl. at 5. Consequently, under the *Rooker-Feldman* doctrine, the Court is barred from reviewing Plaintiff's claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order.

### ii. The Domestic Relations Doctrine Requires Abstention

The Court must also abstain from considering Plaintiff's claim seeking modification of his child support order under the domestic relations abstention doctrine. In *American Airlines, Inc. v. Block*, the Second Circuit held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full

and fair determination in state courts." 905 F.2d 12, 14 (2d Cir. 1990) (holding that court erred in not abstaining from adjudicating dispute over ex-spouse's maintenance obligations); *see Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition—in a non-diversity case involving a child custody dispute—that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.") (citations and internal quotation marks omitted).

**\*6** Here, Plaintiff's challenge to the amount of his child support obligations falls squarely within the domestic relations doctrine. *See, e.g., Simmons v. NYS Dep't of Soc. Servs.*, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[E]ven if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing."); *Myers v. Sara Lee Corp.*, 2009 WL 10706711, at *10 (E.D.N.Y. Apr. 13, 2009) ("[T]he income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court. Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here ...."). Accordingly, the Court must abstain from reviewing Plaintiff's family court proceeding to the extent that he asserts a claim seeking modification of the underlying family court child support order.

### iii. The Complaint Fails to State a Claim Against the City Under Section 1983

Plaintiff's Complaint also fails to state a claim against the City under Section 1983 because he does not allege the existence of a municipal policy that gave rise to the alleged violation. *See Harris*, 572 F.3d at 73; *Wachtler*, 35 F.3d at 82. Section 1983 states in relevant part the following: "Every person who, under color of any statute ... custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured ...." 42 U.S.C. § 1983. "Under the standards of *Monell v. Department of Social Services*, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal citation omitted); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Plaintiff fails to establish the existence of a municipal custom, policy, or usage that would support a claim under Section 1983. First, Plaintiff takes issue with "[t]he New York *State* IV-D [7] child support law" and alleges that the state law violates due process because "the *state* has been found to not properly notify individuals of child support proceedings ...." Compl. at 4 (emphasis added). Consequently, on its face, Plaintiff challenges a state—not a municipal—policy.

 **\*7** Plaintiff also fails to allege that the City's enforcement of the state's IV-D program can be construed to be a municipal policy under *Monell*. The Second Circuit has "establishe[d] the framework for assessing asserted constitutional violations arising from municipal enforcement of state law." *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 688 (2d Cir. 2022). "First, [the Court] ask[s] whether the municipality had a 'meaningful choice' as to whether it would enforce the law. If it did, then [the Court] ask[s] whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers. If both conditions are met, then the municipality exercises a sufficient degree of autonomy to face liability for its policy choices." *Id.* (quoting *Vives v. City of New York*, 524 F.3d 346, 351–53 (2d Cir. 2008)).

Plaintiff does not allege any facts that permit the Court to conclude that the City, in enforcing New York State's IV-D program, adopted a municipal custom, policy, or usage. *See Jones*, 691 F.3d at 80. Nor does he offer facts alleging that any municipal policymaker made a conscious choice to enforce the State's child support proceedings in a particular manner that violated Plaintiff's rights. *See Vives*, 524 F.3d at 351–53. For example, Plaintiff makes no allegations that the City enacted a policy of withholding notice to individuals in child support proceedings; that the City's failure to notify individuals was "sufficiently widespread and persistent;" or that "supervisory authorities must have been aware of the practice ...." *See Jones*, 691 F.3d at 81.

Second, that Plaintiff was allegedly "never notified that [he] had become an obligor for an arrears contract" or "never furnished" with "the terms of interest" also fails to allege the existence of a municipal policy because he only alleges one instance of conduct. Compl. at 4. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "*Monell*'s language makes clear that it expressly envisioned [liability for] officials 'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability under Section 1983." *Id.* (internal citations omitted). The Second Circuit has held, however, "that municipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Here, Plaintiff does not allege any additional facts showing that the single instance of conduct—that he was allegedly not notified of his child support obligations—constituted an official policy by the City to withhold notice: he does not allege that an official made a deliberate choice to engage in a practice to withhold notice from child support obligors, when compared to alternative methods; nor does he allege that an official responsible for establishing final policy made a decision to enact a policy that led to the alleged failure to provide him with notice. Plaintiff's Complaint therefore fails to adequately state a claim against the City under Section 1983. The Court dismisses Plaintiff's claims against the City, but grants Plaintiff leave to replead his claim under Section 1983 against the City in an amended complaint. [8]

### *iv. There is No Private Right of Action Under Title IV-D to Enforce Substantial Compliance*

 **\*8** Finally, to the extent that Plaintiff seeks to enforce Title IV-D's requirement that New York State operate its child support program in "substantial compliance" with Title IV-D, he may not because the statute does not give rise to a private right of action. [9] "If a [s]tate does not 'substantially comply' with the requirements of Title IV–D," the state may be "penalize[d] ...." *Blessing*, 520 U.S. at 335. "Because the requirement that a [s]tate operate its child support program in "substantial compliance" with Title IV-D was not intended to benefit individual children and custodial parents' the provision [does] not create a federal right and, therefore, [is]

not enforceable via Section 1983." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 511 (2d Cir. 2006) (quoting *Blessing*, 520 U.S. at 343). Although "the possibility that some provisions of Title IV-D give rise to individual rights" is not "foreclosed," Title IV–D "contains no private remedy —either judicial or administrative—through which aggrieved persons can seek redress" for a state's alleged failure to "substantially comply" with federal IV-D guidelines. *See Blessing v. Freestone*, 520 U.S. at 346–49 (holding that plaintiffs could not, through a Section 1983 action, seek a declaratory judgment that Arizona's IV-D program violated the "substantial compliance" requirements under Title IV–D, including that state agency failed to take adequate steps to obtain their child support payments, because in that context Title IV-D "contains no private remedy"; *see also Smith v. Stack*, 2024 WL 54292, at *8 (S.D.N.Y. Jan. 2, 2024) ("[B]ecause Plaintiff does not have a private right of action to sue the defendants for their allegedly incorrect enforcement of Title IV-D, the Court dismisses these claims for failure to state a claim on which relief may be granted."); *Simmons*, 2019 WL 1988673, at *3 (same). Thus, Plaintiff cannot pursue a private action to require New York State to "substantially comply" with Title IV-D.

### 3. Plaintiff's State Law Claims Are Dismissed

#### i. The Court Declines Supplemental Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court declines to accept supplemental jurisdiction over any residual state law claims, including claims that Defendants violated the New York State Constitution's due process and excessive fines clauses. *See Triestman*, 470 F.3d at 474 (noting that pro se pleadings must be interpreted "to raise the strongest arguments that they suggest") (internal quotation marks and emphasis omitted). A federal district court may decline to exercise supplemental jurisdiction over claims under state law if it "has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c). Accordingly, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any claims under state law that may be implied from Plaintiff's pro se pleading. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d

Cir. 2006) (noting the "discretionary nature" of the exercise of supplemental jurisdiction).

#### ii. The Court Lacks Diversity Jurisdiction Over Plaintiff's Residual State Law Claims

Finally, the Court lacks diversity jurisdiction over Plaintiff's residual state law claims. Plaintiff is a resident of New Jersey. *See* Compl. at 2. He is suing New York defendants. *Id.* at 1–2. And it appears that the amount in controversy exceeds $75,000. *See id.* at 5–6. As a result, at first blush, it would appear that the Court has diversity jurisdiction to hear any state law claims that his Complaint can be construed to raise. *See* 28 U.S.C. § 1332. That does not end the story in this case, however.

**\*9** "Even if Plaintiff[ ] [was] able to ... establish diversity of citizenship, the Court would still lack subject matter jurisdiction over this matter pursuant to the *Rooker–Feldman* doctrine." *See Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 513 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016); *see also Andrews v. Citimortgage, Inc.*, 2015 WL 1509511, at *4 (E.D.N.Y. Mar. 31, 2015) ("Even if diversity or federal question jurisdiction were present here, the Court would not exercise jurisdiction because of the *Rooker–Feldman* doctrine.").

Additionally, under "the domestic relations doctrine exception to the court's [diversity] jurisdiction ... federal courts are divested of jurisdiction in 'cases involving the issuance of a divorce, alimony, or child custody decree.' " *See Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (summary order) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 622 (2d Cir. 2019) (distinguishing between "the domestic relations '*exception*' to subject matter jurisdiction" in diversity cases and "the domestic relations *abstention*" doctrine" in federal-question cases) (emphasis original); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of [plaintiff's] child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). Federal district courts must therefore dismiss claims involving domestic relations issues for lack of jurisdiction when asserted under diversity jurisdiction. *See Deem*, 941 F.3d at 621–24.

For the same reasons that the Court must abstain from exercising its federal question jurisdiction, the Court lacks diversity jurisdiction to review Plaintiff's family court proceeding to the extent that the Complaint can be construed to assert claims seeking modification of the child support order based on violations of the New York State Constitution's due process and excessive fines clauses.

## IV. Leave to amend is granted

Plaintiff's claims are dismissed without prejudice. It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). That is especially true where, as here, a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."), and where a plaintiff is proceeding pro se and his complaint is dismissed *sua sponte*, *see Salahuddin*, 861 F.2d at 42–43; *Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000) (explaining that courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

**\*10** Accordingly, Plaintiff is granted leave to amend the complaint. Any amended complaint must be filed within 30 days from the date of this order. If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

## All Citations

Slip Copy, 2025 WL 81421

---

## Footnotes

1      The facts are drawn from Plaintiff's Complaint. Dkt. No. 1 (the "Complaint").

2      Plaintiff lists both the "New York State Office of Child Support Enforcement" and New York City's "Office of Child Support Enforcement" as defendants, but does not specify which agency he is referring to. *See id.* at 1–2, 4. Given Plaintiff's *pro se* status, the Court reads the complaint as alleging that both agencies garnished Plaintiff's wages.

3      Plaintiff also alleges that the "Office of Child Support Collections Enforcement garnished my social security." *See id.* at 4.

4      The caption of Plaintiff's Complaint lists the New York State Office of Child Support Enforcement as the defendant, which the Court understands to be the NYS DCSE, the state agency responsible for supervising the child support enforcement program. Compl. at 1. Page two of the Complaint also lists the Human Resources Administration, Office of Child Support Enforcement as the defendant. *Id.* at 2. The Court construes this to be in reference to the OCSE, which is an agency within the city Human Resources Administration, Department of Social Services. *See O'Brien v. Hansell*, 2010 WL 1371366, at \*4 (E.D.N.Y. Mar. 31, 2010) (explaining the city, state, and federal statutory and regulatory scheme governing child support enforcement).

5      "The landmark case of *Ex parte Young* created an exception to [the] general principle [of Eleventh Amendment immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green*, 474 U.S. at 68 (internal citations omitted). Even when construed

liberally, however, Plaintiff's Complaint cannot be read as challenging the constitutionality of a state official's action such that the Eleventh Amendment does not apply.

6    Plaintiff does not allege that the child support proceedings are still pending. However, to the extent that the proceedings are ongoing, this Court would likely not intervene. *See Younger v. Harris*, 401 U.S. 37 (1971).

7    Title IV-D of the Social Security Act is a federal law that "funds [state] agencies tasked with collecting child support payments." *See Chris H. v. New York*, 2017 WL 2880848, at *7 (S.D.N.Y. July 5, 2017), *aff'd*, 764 F. App'x 53 (2d Cir. 2019); *see also Blessing v. Freestone*, 520 U.S. 329, 334–35 ("[E]ach State's Title IV–D agency ... must conform to federal guidelines ... each participating State must enact laws designed to streamline paternity and child support actions."); *see generally Roger of the Fam. Forrest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 2019 WL 4194332, at *5 (S.D.N.Y. Aug. 30, 2019) ("Title IV-D underwrites States' child-support efforts and requires States 'to establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders.' ") (citing *Blessing*, 520 U.S. at 333-34); *Myers v. Sara Lee Corp.*, 2009 WL 10706711, at *4 (E.D.N.Y. Apr. 13, 2009) (discussing Title IV-D). In New York, the NYS DCSE "supervises the child support enforcement program in the State," and "[e]ach local social services district ... is required to take all steps necessary to establish, collect, and enforce child support orders." *See O'Brien*, 2010 WL 1371366, at *4. In New York City, the NYC OCSE is the body "that enforces child support orders entered in the five counties that constitute the City of New York." *Id.*

8    The Court notes, however, that should Plaintiff seek to replead, his *Monell* claims may not be timely. "Section 1983 actions in New York are subject to a three-year statute of limitations running from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal citations omitted). "Plaintiff ultimately would have to show that he neither knew nor should have known that the City's challenged conduct resulted from a policy or custom until on or after ... three years before this action was filed. Any Amended Complaint would be subject to dismissal if it were plain on its face that Plaintiff knew or should have known of the alleged policy or custom before that date." *See Chris H*, 2017 WL 2880848, at *6. The Court does not reach whether Plaintiff's claims are barred by the statute of limitations; Plaintiff alleges that his wages have been garnished since 2017 but indicates that that a new bail settlement was taken against him as recent as September 2023. Compl. at 5.

9    "The structure of each State's Title IV–D agency, like the services it provides, must conform to federal guidelines. For example, States must create separate units to administer the plan and to disburse collected funds, each of which must be staffed at levels set by the Secretary. If a State delegates its disbursement function to local governments, it must reward the most efficient local agencies with a share of federal incentive payments. To maintain detailed records of all pending cases, as well as to generate the various reports required by federal authorities, States must set up computer systems that meet numerous federal specifications. Finally, in addition to setting up this administrative framework, each participating State must enact laws designed to streamline paternity and child support actions." *See Blessing*, 520 U.S. at 334–35 (internal citations omitted).

---

**End of Document**                                                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 5810307
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ricardo R. SIMMONS, Jr, Plaintiff,
v.
NYS DEPT OF SOCIAL SERVICES; NYS
Dept of Child Support Services; Rockland
County Child Support Services/DSS; Onadaga
County Child Support Services/DSS, Defendants.

19-CV-3633 (CM)
|
Signed 11/04/2019
|
Filed 11/05/2019

**Attorneys and Law Firms**

Ricardo R. Simmons, Jr., Bronx, NY, pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

**\*1** Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated his rights. By order dated May 3, 2019, the Court directed Plaintiff to amend his complaint to address deficiencies in his original pleading. Plaintiff then filed a motion seeking to "suspend action" by the New York State Department of Social Services in connection with his past-due child support and "restore his rights." The Court notified Plaintiff that, unless he filed an amended complaint as directed, the Court would construe his motion as an amended complaint. Plaintiff filed nothing further, and the Court therefore construes his motion (ECF No. 6) as the operative amended complaint. For the reasons set forth below, the Court dismisses the amended complaint.

STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*,

141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted) (emphasis in original).

BACKGROUND

Plaintiff Ricardo Simmons includes the following facts in his amended complaint. In 1989, the Rockland County Department of Social Services (DSS) "summoned" Simmons to the Rockland County Courthouse. Simmons appeared before Judge Jane Doe, and Jane Doe Public Defender represented Plaintiff. Simmons was taken to a room and told that he "had to sign several papers about a child born to ... Sherri Bookwalter." (Am. Compl., ECF No. 6, at 22.) Plaintiff asked what papers he was signing and was told that it was the "child's birth certificate and other papers pertaining to his health." (*Id.*) Plaintiff asked, "Is that all?" and the Public Defender told him that it was. Plaintiff seems to argue that he did not consent to pay child support: "Who in the[i]r right mind would knowingly enter into something that would ruin their credit[,] their ability [to] gain employment and their ability to get housing not t[o] mention being incarcerated." (*Id.* at 23.)

Several months later, Plaintiff was notified that he was required to appear in the Family Court and "was told [that he] was in violation of a court order" for child support. Plaintiff indicated that he was unaware of any child support order and was told that he "had signed papers with DSS that said [he] would pay child support." (*Id.* at 22.) Plaintiff asked to see the papers that he had allegedly signed but never received a copy. One week later, on an unspecified date in 1989 or 1990, Plaintiff "was arrested and sent to jail" for nonpayment of child support. Plaintiff "challenged the validity of the order," but he does not plead any facts about the outcome of that challenge. (*Id.*)

**\*2** Plaintiff was "then handed a notice that [he] was being brought to court for a child [L.R.] again having no knowledge of the child or that his mother had filed for" income support. "[I]n a few instances, Plaintiff was picked up in the streets on ... bogus warrants issued by judge[s] Jane Doe and John

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 183 of 229

Simmons v. NYS Dept of Social Services, Not Reported in Fed. Supp. (2019)

Doe, locked up and then brought to court never being told why a warrant was issued for me but then let go." (*Id.*) After being incarcerated, Plaintiff was "brought before the judge ... and told that [he] had to make a payment agreement or [he] wouldn't be released." (*Id.*) Plaintiff's court-appointed counsel told him that he "ha[d] to agree." (*Id.*)

Plaintiff contends that he had a recorded conversation with a judge in Onondaga County, and he "sent in several modifications stating that [his] son was currently incarcerated and [he] has the documents to prove" it. (*Id.*)

Plaintiff includes a document from the Onondaga Family Court stating that as of June 2, 2017, he owed child support arrears of $4,483.83, in connection with court orders entered on February 24, 2006. (*Id.* at 5.) The 2017 notice states that unless Plaintiff pays that amount or takes appropriate action to challenge the arrears within 45 days, the Onondaga County Child Support Enforcement Unit (CSEU) will notify the New York State Department of Motor Vehicles (DMV) to suspend his driving privileges. (*Id.* at 5.) Plaintiff also attaches a notice dated June 13, 2017, from the County of Onondaga DSS that states:

> I am in receipt of your challenge to DMV, in which you claim charges are fraudulent. Your Rockland County Order Dated 12/16/97 was transferred here in 2005 as mother & child moved to Onondaga County. At the time of the transfer current care was metering at $20 weekly per Rockland County $4120 was due to Dept of Social Services & $420 was due to Petitioner/ Diane. There were three modification petitions requested in 2005, 2006 & 2007. All dismissed for failure to appear. The order continued to meter at $20 weekly til child: Lloyd was emancipated on 8/30/2009. (21st birthday) You claim you are demanding a court date. You must file a petition on Onondaga County Family Court in order to have your day in court. Their #315/671-2000. You will need a petition, co[p]y of the order & teleconference o[r]ders to testify via telephone ... The sy[s]tem shows ...

tota[l] due was $9325.00 of which $4868.17 was received through 4/9/13. The remain[ing] arrears balance is: $4483.83....

(*Id.* at 4.) Plaintiff filed a Family Court petition on June 22, 2017, seeking "modification of arrears and modification of order of support." (*Id.* at 7.) By order dated July 27, 2017, the Onondaga Family Court dismissed the petition without prejudice to Plaintiff's refiling it, stating that "after examination and inquiry into the facts and circumstances of the case ... the petition is dismissed due to failure to state cause of action (petition is insufficient on its face). (*Id.*) The order further indicates that objections may be filed within 30 days. (*Id.*)

Plaintiff also attaches a more recent "child support bill as of 3/29/2019" stating that the past due balance was $4483.83 and listing a credit for $693.92, for a "new past due balance: $3.789.91." (*Id.* at 13.)

On an unspecified date, DSS "took $100.00" from Plaintiff's account at Chase Bank, and he seeks damages for this "double dipping." (*Id.* at 22.) Plaintiff also seeks to have information about child support arrears "cleared immediately" from his "credit history." (*Id.*)

Plaintiff asks "the court to suspend action by DSS further" and wants all of his "rights restored." (*Id.* at 1.) Plaintiff requests $100,000 in damages for Defendants' having taken "monies from [his] account, *i.e.*, double dipping and never returning it." (*Id.*) In his amended complaint, Plaintiff names the New York State DSS; the Rockland County CSEU, and the Onondaga County DSS.

## DISCUSSION

### A. No Jurisdiction to Review State Court Orders

**\*3** Federal district courts lack authority to review state court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (noting that "28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments."); *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) (district courts are not authorized "to exercise appellate jurisdiction over state-court judgments").

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 184 of 229

Simmons v. NYS Dept of Social Services, Not Reported in Fed. Supp. (2019)

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F. 3d 77, 85 (2d Cir. 2005). Federal review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by the state court judgment"; (3) "the plaintiff must invite district court review and judgment of the state court judgment"; and (4) "the state court judgment must have been rendered before the district court proceedings commenced." *Id.* at 83-92 (relying on *Exxon Mobil Corp.*, 544 U.S. at 284).

### 1. Paternity

Under New York law, an Acknowledgment of Paternity "shall establish the paternity of a child and have the same force and effect as an order of paternity or filiation issued by a court of competent jurisdiction." Public Health Law § 4135–a(3)(a); Family Court Act § 516–a(a); *see also Emily R. v. Emilio R.*, 53 Misc. 3d 325, 331-32 (N.Y. Fam. Ct. 2016) (describing limited options under New York law to challenge or rescind an Acknowledgment of Paternity, FCA § 516–a(b)(iv)).

Here, the acknowledgments of paternity establishing that Plaintiff is the father of these children became final decades before Plaintiff brought this action; thus, judgments adverse to Plaintiff were entered before this action was filed, and the first and fourth *Rooker-Feldman* requirements are satisfied. Because Plaintiff challenges the validity of the paternity orders, this claim complains of injuries caused by state court judgments. Although Plaintiff argues that he did not intend to consent to payment of child support (rather than arguing that he is not the father of the children, at least one of whom he refers to as "my son"), the "injury" of paying child support follows from the determination that Plaintiff is the legal father of the children. Plaintiff's claim, attempting to "restore his rights" not to pay child support arrears and "suspend enforcement" on the ground that he did not "knowingly enter into" a paternity order, thus invites "district court review and judgment of the state court judgment" regarding paternity. *Hoblock*, 422 F. 3d at 85.

This Court lacks jurisdiction to review and overturn state court decisions, including the acknowledgment of paternity that is the basis for imposing child support, and the Court must therefore dismiss Plaintiff's challenge to the validity of the paternity order.

### 2. Challenge to Child Support Arrears

To the extent that Plaintiff asks this Court to reconsider the Family Court's determination that he owes child support arrears, the *Rooker-Feldman* doctrine also bars such a claim. Plaintiff's arguments are not entirely clear, but he appears to reassert in this complaint the arguments that he made to the Family Court – that child support should not have accrued during periods when his son was incarcerated, and that the amount owed was "fraudulent" or incorrectly determined when the child moved from Rockland to Onondaga County. Plaintiff also submits documents, some dating back to 1997, which state that various warrants were vacated and canceled (without affecting the underlying child support orders), and he may be seeking to show that certain amounts were not properly credited.

 **\*4** Plaintiff attaches a Family Court order dated July 27, 2017, rejecting his motion to modify arrears and the order of support on the ground that the "petition is insufficient on its face." [1] Because orders of the Family Court have determined the amount of Plaintiff's child support arrears, and this Court lacks jurisdiction to review such orders, the Court must dismiss Plaintiff's challenges to the calculation of the arrears that he owes. The Court cannot entertain Plaintiff's request that it "suspend action by DSS," insofar as this would require that the Court review and overturn the Family Court decisions that Plaintiff owes child support arrears. [2]

### B. Levying to Collect Child Support Arrears

Plaintiff attaches an Income Withholding Order dated March 25, 2019, which directs the Social Security Administration to deduct $36.00 weekly for past-due child support. [3] Plaintiff contends that on an unspecified date, $100.00 was withdrawn from his account at Chase Bank. He states that he is "seeking monetary judgment against the DSS for double dipping into my [C]hase acct where they took $100.00 And not returning it and I want it and compounding a daily interest at 60%." (Am. Compl. at 22.) The *Rooker-Feldman* doctrine does not prevent the Court from reaching this challenge because enforcement is "wholly separate from the validity of the underlying [child support] order." *Sykes v. Bank of America*, 723 F.3d 399, 404 (2d Cir. 2013).

Plaintiff's allegations that Defendant DSS took more money in a single withdrawal than the Family Court Income Withholding Order authorized can be construed as a claim that he was deprived of his property without due process. The

two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a property (or liberty) interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

**\*5**   "[I]n situations where the State feasibly can provide a predeprivation hearing before taking property, it must do so regardless of the adequacy of the postdeprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) ("[W]hen the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing"). But when a plaintiff brings a procedural due process claim based on random unauthorized acts by state employees, a post-deprivation hearing is the only form of due process that can be made available because the state could not have predicted that the deprivation would occur. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (1996).

Nothing in Plaintiff's amended complaint suggests that excess money for child support arrears was taken pursuant to an established DSS policy. It therefore appears that Plaintiff is asserting a claim for a random, unauthorized taking of his money. In this context, no due process claim will lie where a post-deprivation process is available to the plaintiff in the state court. Plaintiff has a remedy in the state court for an overcharge in the enforcement of his child support arrears. As such, he cannot state a claim under § 1983 for a denial of his right to procedural due process based on the alleged overcharge in collecting child support. The Court therefore dismisses Plaintiff's procedural due process claim premised on the withdrawal of $100.00, for failure to state a claim on which relief can be granted.

## C. Suspension of Driver's License

Plaintiff's claim that his driver's license was unlawfully suspended could also be construed as a potential procedural due process claim. New York law has an established procedure for notifying a child support debtor before suspending his driver's license and providing an opportunity for him to be heard. When child support arrears total four months or more of support payments, the Support Collection Unit "shall notify the support obligor in writing that his ... continued failure to pay the support arrears shall result in notification to the department of motor vehicles to suspend

the support obligor's driving privileges...." N.Y. Soc. Serv. Law § 11-b(12)(b)(1). [4] "A support obligor who has received such a notice may avoid the suspension" by (1) making full payment of all past due support; (2) making satisfactory payment arrangements for current and past due support, or (3) documenting that he is receiving public assistance or supplemental security income, or that his income falls below the self-support reserve. N.Y. Soc. Serv. Law § 111-b(12)(e).

If an obligor whose driving privileges were suspended did not actually receive the required notice, he "may at any time request a review" from the Support Collection Unit. If the Support Collection Unit determines that the obligor either "has not accumulated" four months of support arrears, or that he meets any of the requirements in N.Y. Soc. Serv. Law § 111-b(12)(e) for avoiding suspension (such as making a payment arrangement or demonstrating income below certain levels), then the Support Collection Unit shall notify the DMV that the suspension of driving privileges shall be terminated. *See* N.Y. Soc. Serv. Law § 111-b(12)(f).

**\*6**   New York's established procedures thus provide for predeprivation notice and an opportunity to be heard before suspension of a driver's license. If, as a result of random and unauthorized action, a child support obligor does not receive the required notice, New York law also provides an opportunity for review and termination of the suspension if the obligor makes the required showing. N.Y. Soc. Serv. Law § 111-b(12)(f).

Plaintiff attaches to the amended complaint a copy of the notice that his driver's license would be suspended because of child support arrears and documents showing that he then filed a petition in the Family Court to modify the child support arrears. The Family Court concluded, however, that Plaintiff's petition was inadequate on its face and denied it. These allegations do not state a claim that Plaintiff was deprived of his driver's license without predeprivation notice and an opportunity to be heard, even though Plaintiff did not prevail in the Family Court.

Moreover, courts in this Circuit have repeatedly rejected substantive due process challenges based on the denial of a driver's license or revocation of a passport to an individual who owes child support arrears. *See, e.g., Collins v. Saratoga Cnty. Support Collection Unit*, No. 12-CV-494, 2012 WL 2571288, at \*5 (N.D.N.Y. July 3, 2012) (holding that temporary suspension of the plaintiff's driver's license in connection with child support arrears, even if erroneous,

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 186 of 229

Simmons v. NYS Dept of Social Services, Not Reported in Fed. Supp. (2019)

did not violate his substantive due process rights), *aff'd*, 528 F. App'x 15 (2d Cir. 2013); *Weinstein v. Albright*, 2000 WL 1154310, at *5 (S.D.N.Y. 2000) (rejecting substantive due process challenge to federal law authorizing the denial or revocation of a passport to an individual who owes child support arrears exceeding $ 5,000), *aff'd*, 261 F.3d 127, 142-43 (2d. Cir. 2001). The Court therefore dismisses Plaintiff's Fourteenth Amendment claims in connection with suspension of his driver's license for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**D. Fair Credit Reporting Act**

Federal law, in Title IV, Part D, of the Social Security Act, requires each state to have a law allowing past due child support to be reported to consumer reporting agencies. Under New York law, each social services district shall "report periodically to consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. § 1681a(f)) information regarding past-due support owed by the parent owing support." N.Y. Soc. Serv. Law § 111-c. Child support debtors are notified before child support arrears are reported. *See* N.Y. Soc. Serv. Law § 111-c ("A social services official, at least ten days prior to making the information available to a consumer reporting agency, must provide notice to the parent who owes the support informing such parent of the proposed release of the information to the consumer reporting agency and informing such parent of the opportunity to be heard and the methods available for contesting the accuracy of the information.").

Plaintiff's allegations that Defendants violated his rights by reporting his child support arrears to credit bureaus could be construed as attempting to assert a claim under the Fair Credit Reporting Act (FCRA). Defendants have reported Plaintiff's child support arrears as required under N.Y. Soc. Serv. Law § 111-c. Plaintiff requests removal of this information from his credit report, apparently because he objects to the determination that he owes past due child support. *See, e.g.*, *Gottlieb v. City of New York*, 129 A.D.3d 724, 726 (N.Y. App. Div. 2015) (dismissing claims where "[t]he substance of the cause of action alleging a violation of the Fair Credit Reporting Act was, in essence, a challenge to the determination by the OCSE that the petitioner's account was in arrears, which authorized the OCSE, pursuant to Social Services Law §§ 111–b, 111–c, and 111–t, to take enforcement action and report his arrears to the credit reporting agencies").

As set forth previously, a parent can seek relief in the state court to modify child support arrears. N.Y. Family Court Act § 451. Plaintiff's efforts to modify the arrears have so far been rejected, and there is no basis for concluding that Defendants' reporting of the amount of child support arrears is unlawful. Plaintiff's allegations that Defendants reported his child support arrears thus fail to state a claim under the FCRA, and the Court must reject his request that it order Defendants to have it immediately removed from his credit reports.

**\*7** District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**CONCLUSION**

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over any state law claims that Plaintiff is asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5810307

---

## Footnotes

1    Nothing in the July 27, 2017 Family Court order, which dismissed Plaintiff's claim seeking to modify arrears owed "without prejudice," appears to prevent him from filing a new petition in the Family Court to modify the arrears, in which he can attempt to show that he had good cause for failing to apply for relief prior to accrual of the arrears. *See* N.Y. Family Court Act § 451 ("[T]he court shall not reduce or annul any other arrears unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing payment prior to the accrual of the arrears.").

2    "[W]here a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child," courts have applied a domestic relations exception to diversity jurisdiction. *See Deem v. Deem* No. 18-2266, —— F.3d ——, 2019 WL 5581584, at *2 (2d Cir. Oct. 30, 2019) (citing *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859)). "Although the domestic relations 'exception' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), does not apply in federal-question cases, the domestic relations abstention doctrine articulated in *American Airlines* [*Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)] does." *Id.* at *2. Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.

3    In the Court's order granting Plaintiff leave to amend, the Court noted that because Social Security Disability Insurance program (SSDI) benefits, unlike Supplemental Security Income (SSI) benefits, are "based upon remuneration for employment," 42 U.S.C. § 659(h)(1)(A)(ii)(I), such benefits are not categorically exempt from garnishment. *Sykes v. Bank of America*, 723 F.3d 399, 404 (2d Cir. 2013) (holding that because SSI benefits are not monies received in remuneration for employment, SSI benefits are not attachable). In the amended complaint, Plaintiff does not argue that his SSDI benefits are not attachable.

4    The Support Collection Unit must provide the notice "by first class mail to the support obligor's last known address or such other place where the support obligor is likely to receive notice, or in the same manner as a summons may be served. Forty-five days after the date of such notice, if the support obligor has not challenged the determination of the support collection unit ... or if the support obligor has failed to satisfy the arrears/past due support ..., the department shall notify the department of motor vehicles that the support obligor's driving privileges are to be suspended" N.Y. Soc. Serv. Law § 111-b.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 188 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

2009 WL 10706711

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Chandra MYERS, pro se, Plaintiff,

v.

SARA LEE CORPORATION, Defendant.

08-CV-1421 (KAM)

|

Signed 04/13/2009

**Attorneys and Law Firms**

Chandra Myers, 189-05 Mangin Avenue, Saint Albans, New York 11412, Pro Se.

Edwards Angell Palmer & Dodge LLP, One Giralda Farms, Madison, New Jersey 07940, Attorneys for Defendant, By Paulette Brown.

## MEMORANDUM AND ORDER

KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE

**\*1** This action was commenced in the Family Court of the State of New York, Queens County ("Family Court") by *pro se* plaintiff Chandra Myers, who brought suit pursuant to N.Y. C.P.L.R. § 5241 to enforce an income execution which defendant Sara Lee Corporation ("Sara Lee") allegedly failed to honor between August 2003 and June 2004. (Doc. No. 1, Notice of Removal, Ex. A ("Family Ct. Compl.").) The income execution order was issued by the Queens Support Collection Unit to enforce the child support obligations of plaintiff's ex-husband, who allegedly worked as an independent contractor for Sara Lee during that period of time. (Id. at 2; see also, generally, Doc. No. 53, Attach. 1-3 ("Family Ct. Aff."), an affidavit filed by plaintiff in Family Court and, per defense counsel's letter of January 15, 2009 (Doc. No. 57), provided to the court by defendant.) Sara Lee removed this action from Family Court pursuant to 28 U.S.C. § 1441 by Notice of Removal filed in this court on April 7, 2008. (Doc. No. 1, Notice of Removal.) Sara Lee did not file the state court record as required by Local Civil Rule 81.1(b).

Plaintiff now moves the court to remand this case to Family Court on the basis of the domestic relations exception to federal diversity jurisdiction, or, in the alternative, to abstain.[1] (See Doc. No. 23: "Objection Motion" to Remand to State Court.) For reasons more fully explained below, the court determines that neither the "federal question" requirement of 28 U.S.C. § 1331, nor the "amount in controversy" requirement of 28 U.S.C. § 1332 is satisfied in this case, and therefore the court remands the case to Family Court due lack of federal subject matter jurisdiction. The court also finds that the exercise of jurisdiction by this court would require deciding a matter "on the verge" of being matrimonial, and that the abstention doctrine of Block v. American Airlines, 905 F.2d 12 (2d Cir. 1990) (per curiam) therefore applies.

## I. BACKGROUND

**\*2** Plaintiff commenced this action in Family Court in early 2008.[2] The Family Court complaint, filed *pro se* by plaintiff, alleges, under the heading "Failure to Remit Court Ordered Child Support Payments," that from "August 2003 until June 2004" defendant caused plaintiff "to be denied court ordered child support payments" because defendant "acknowledged receipt of the Income Execution Order" but "proceeded to violate the Family Court Act, The CPLR, The U.S.C., the C.F.R. and NYS Law" by "failing to remit any payments at all" in "violation of the law and [plaintiff's] Court Order of Support." (Family Ct. Compl. at 2, ¶ 1.) Plaintiff alleged that as a result she "sustained serious economic loss and damages in the amount in excess of the 44 weeks of $1000.00 per week civil penalties ($44,000.00), accrued child support for 44 weeks ($11,007.12), 9% interest, reasonable attorney fees and fines ($54,507.12) totaling $163,521.36." (Id. at 3, ¶ 15.)[3] Under the heading "Failure to Grant Petitioner's Court Ordered Child Support after Petitioner Contacted Counsel for the Respondent," plaintiff alleged that, for a second cause of action, defendant "failed to remit Court Ordered Child Support and ignored [plaintiff's] requests for years and continued to withhold Child Support payments." (Id. at 4, ¶ 16.) Plaintiff alleged as damages for the second count the exact same amounts described above: "in excess of the 44 weeks of $1000.00 per week civil penalties ($44,000.00), accrued child support for 44 weeks ($11,007.12), 9% interest, reasonable attorney fees and fines ($54,507.12) totaling $163,521.36." (Id., ¶ 21.) In the body of the complaint, plaintiff did not state or cite the basis in law for either claim for relief. (See generally id.) In her prayer for relief at the end of the complaint, plaintiff indicated that she "demands judgment

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 189 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

against [defendant] for Violation of CPLR 5241, Violation of 42 U.S.C. 666, and Violation of 45 C.F.R. 303.100" and "an award of compensatory and punitive damages ... IN EXCESS of Five Million Dollars." (Id. at 5.)

Defendant asserts that counsel for defendant first received the complaint on March 6, 2008 at a hearing before the Family Court, because plaintiff's initial attempt at service by first class mail was misaddressed and the letter was returned to plaintiff by the U.S. Post Office. (Notice of Removal ¶ 2.) According to plaintiff, the case was set for trial in the Family Court before Support Magistrate Michael J. Fondacaro on April 10, 2008, three days after defendant filed the Notice of Removal on April 7, 2008. (Objection Motion at 2; Doc. No. 7 at 5.)

In the Notice of Removal, defendant invokes federal subject matter jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) because plaintiff is a citizen of New York, defendant is a corporation incorporated in Maryland with its principal place of business in Illinois, and plaintiff "alleges actual damages of $163,521.36 and seeks punitive damages in the amount of $5,000,000." (Notice of Removal ¶ 6.) Defendant also invokes subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) because plaintiff "seeks judgment" against defendant for violations of 42 U.S.C. § 666 and 45 C.F.R. § 303.100, respectively a federal law and a federal regulation of the United States. (Id. ¶ 7.)

This case was initially assigned to the Honorable Frederic Block on April 7, 2008. On April 14, 2008, defendant filed a letter indicating its intention to move for dismissal (Doc. No. 4) and, on April 18, 2008, plaintiff's then-counsel, Lawrence Bloom, filed a letter indicating plaintiff's intent to move for remand to state court (Doc. No. 7). In her letter, plaintiff outlined the grounds for her intended motion to remand, based upon the domestic relations exception to federal diversity jurisdiction and the doctrine of abstention. (Id.) Judge Block held a pre-motion conference on May 16, 2008 and directed the parties to file their motions pursuant to his individual rules. (Doc. No. 11.) On June 13, 2008, after the deterioration of the relationship between plaintiff and her counsel, Mr. Bloom, the undersigned granted Mr. Bloom's request to withdraw. (Doc. No. 20.)

**\*3** Thereafter, on July 10, 2008, plaintiff filed, *pro se*, her motion to remand (Doc. No. 23, Objection Motion), to which she attached a copy of an income execution order directed to Sara Lee (Attach. 1) and a memorandum of law in support

of a motion for remand that Mr. Bloom had filed on her behalf in a parallel case, Myers v. Bimbo Bakeries USA, Docket No. 08-CV-1179 (Attach. 2). Plaintiff argued in her motion and supporting memorandum that this court did not have jurisdiction due to the domestic relations exception to federal jurisdiction. (Objection Motion at 2.) In the attached memorandum which Mr. Bloom had filed on plaintiff's behalf in the Bimbo Bakeries USA case, and to which plaintiff referred in her filing, plaintiff argued in the alternative that the doctrine of abstention applied. (Id., Attach. 2 at 8-12.)

On July 15, 2008, Judge Block recused himself and the case was reassigned to the Honorable Eric N. Vitaliano (Doc. No. 25). On September 24, 2008, the case was again reassigned, to the undersigned.

On October 17, 2008, defendant filed a memorandum opposing remand (Doc. No. 35, "Opp."). Defendant's response argued that, pursuant to the Second Circuit's decision in American Airlines, Inc. v. Block, 905 F.2d 12 (2d Cir. 1990) (per curiam), the domestic relations exception is "narrowly confined" to cases "where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child." (Opp. at 9, citing American Airlines, 905 F.2d at 14.) Defendant also argued that the doctrine of abstention did not apply. (Id.)

Plaintiff filed her reply on November 13, 2008 (Doc. No. 42, Answer To Sara Lee Bakeries Corporation's Answer To Motion To Remand ("Reply") ) and Sara Lee submitted a sur-reply on November 26, 2008 (Doc. No. 45, Reply in Opposition to Plaintiff's Reply in Further Support of Motion ("Sur-Reply") ). In her reply, plaintiff asserted, for the first time, that defendant failed to remove the case within 30 days of receipt of the Family Court complaint, as required by 28 U.S.C. § 1446(b). (See generally Reply.) Apparently in support of that proposition, plaintiff submitted as Attachment 1 to her reply a document she marked "Amended Summons." (Reply, Attach. 1.) The Amended Summons is signed by plaintiff, bears the typewritten date October 22, 2008 [4] and the caption of the Family Court case, and purports to summon Sara Lee to Family Court on January 16, 2008. (Id.) Immediately following the Amended Summons, plaintiff included in Attachment 1 to her reply a copy of the Family Court complaint, bearing the date February 18, 2008. [5] (Id.) Defendant argues that plaintiff's "Amended Summons" is a falsified document created by plaintiff in an attempt to support her belatedly-raised contention that removal was untimely, [6] and asserts

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 190 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

that the Notice of Removal was timely filed within 30 days of defendant's receipt of the complaint. (Sur-Reply at 1-2; Opp. at 7-8 and Attach. 1, Declaration of Paulette Brown, ¶¶ 7-8.)

## II. DISCUSSION

**\*4** "[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." United Food & Commercial Workers Union v. CenterMark Prop. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) (quoting Manway Constr. Co. v. Housing Auth. of Hartford, 711 F.2d 501, 503 (2d Cir. 1983) (per curiam) ). "Where jurisdiction is lacking, ... dismissal is mandatory," id.; Manway Constr. Co., 711 F.2d at 503. The court reviews the basis for federal subject matter jurisdiction over this case under the federal question and diversity statutes (28 U.S.C. §§ 1331 and 1332, respectively).

### A. Federal Question Jurisdiction

Defendant claims that plaintiff's cause of action arises under the laws of the United States because the complaint alleges violations of 42 U.S.C. § 666 and 45 C.F.R. § 303.100. (Opp. at 7.) To invoke jurisdiction under 28 U.S.C. § 1331, however, it is not sufficient to merely recite federal statutes or regulations; the claim must attempt to enforce a "private right of action" that "*depend[s] necessarily* on a substantial question of federal law." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 807, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (quoting and affirming Merrell Dow Pharm. Inc. v. Thompson, 766 F.2d 1005, 1006 (6th Cir. 1985) ). Where the complaint merely "cites a number of federal statutes ... that have absolutely no relevance to plaintiff's allegations, federal question jurisdiction is not conferred." Newman v. WABC Talkradio 770 AM, 97 CIV. 3996 (JFK), 1998 WL 99632 (S.D.N.Y. March 4, 1998) (citing Anderson v. Bowen, 881 F.2d 1, 5 n. 10 (2d Cir. 1989) ) (aff'd, 164 F.3d 618 (2d Cir. 1998) ) ) (unpublished table decision).

The statute cited by plaintiff in her complaint, 42 U.S.C. § 666, is a provision of Title IV-D of the Social Security Act. The statute is entitled, "Requirement of statutorily prescribed procedures to improve effectiveness of child support enforcement," and it places various requirements on the States to develop procedures to enforce child support orders. See generally 42 U.S.C. § 666. In a lawsuit by

parents against the Director of Arizona's child support agency, seeking an injunction requiring compliance with Title IV-D, the Supreme Court, in Blessing v. Freestone, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), indicated that "it was incumbent upon [plaintiff parents] to identify with particularity the rights they claimed." Id. at 342, 117 S.Ct. 1353. The Court held that "Title IV-D was not intended to benefit individual children and custodial parents, and therefore does not constitute a federal right" because "[f]ar from creating an *individual* entitlement to services, the standard is simply a yardstick for the Secretary [of Health and Human Services] to measure the *system-wide* performance of a State's Title IV-D program." Id. at 342-43, 117 S.Ct. 1353; see also Alexander v. Sandoval, 532 U.S. 275, 289, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (stating that "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.") (quotations and citations omitted); Brinkley v. Hill, 981 F.Supp. 423, 440 (S.D. W. Va. 1997) (finding that 42 U.S.C. § 666, in particular, gives no private right of action, but instead serves "as a guideline to help the states improve their process of efficient collection."). But see Beasley v. Ginsburg, Civ. No. H-86-619, 1989 WL 202144, at \*6-7 (D. Conn. Oct. 2, 1989) (holding, before Blessing, that 42 U.S.C. § 666 and 45 C.F.R. § 303.100 provided a private right of action against a noncompliant state via an action under 42 U.S.C. § 1983) This court finds that, pursuant to Blessing, there is no private right of action under 42 U.S.C. § 666. In any case, the statute is directed to the States, not corporate entities, and does not purport to directly regulate non-state actors. See generally 42 U.S.C. § 666. Section 666, therefore, does not grant a private right of action against a corporation or other defendant. Federal question jurisdiction is not created by this *pro se* plaintiff's mere citation of the statute in the Family Court complaint.

**\*5** The same analysis applies with regard to 45 C.F.R. § 303.100. That regulation, entitled "Procedures for income withholding," which derives its authority in part from 42 U.S.C. § 666, requires repeatedly that "the State must" establish various procedures, including methods to enforce support orders against noncustodial parents. The Brinkley court found that the language of 45 C.F.R. § 303.100 "is far removed from that which, under the proper analysis, can be said to create rights in the custodial parent." 981 F.Supp. at 440-41. The court finds that 42 C.F.R. § 303.100, like 42 U.S.C. § 666, is intended to create "a yardstick for the Secretary [of Health and Human Services] to measure the *system-wide* performance of a State's Title IV-D program"

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 191 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

and to provide enforcement procedures, Blessing, 520 U.S. at 342-43, 117 S.Ct. 1353, and does not create a private right of action. The court also notes that 45 C.F.R. § 303.100, like 42 U.S.C. § 666, does not purport to directly regulate the behavior of corporate entities, and therefore creates no cause of action against corporate defendants. See generally 45 C.F.R. § 303.100.

The court thus finds itself without federal question jurisdiction over this case because the complaint alleges no private cause of action arising under federal law, as required to establish federal question jurisdiction under 28 U.S.C. § 1331.

### B. Diversity Jurisdiction

Federal law provides for the removal to federal court of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," or, in other words, any case which could have been brought initially in federal court instead of state court. 28 U.S.C. § 1441(a). Defendant argues that this case could have been brought in federal court pursuant to 28 U.S.C. § 1332(a), which gives federal courts jurisdiction over actions in which (1) the parties are citizens of different States and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

The citizenship requirement is not at issue here, because defendant is a citizen of Maryland and Illinois, and plaintiff is a citizen of New York. Diversity of citizenship is thus established.

The court next examines the amount in controversy. The party seeking to invoke federal jurisdiction bears the burden of establishing "to a reasonable probability" that the amount in controversy is over the jurisdictional amount of $75,000. Scherer v. The Equitable Life Assurance Society of the United States, 347 F.3d 394, 397 (2d Cir 2003) (quotations and citations omitted). In a case brought to federal court via the removal statute, it is thus the removing party that must demonstrate the existence of the requisite amount in controversy. Video Connection of America, Inc. v. Priority Concepts, Inc., 625 F.Supp. 1549, 1550 (S.D.N.Y. 1986). In a removal case in which the complaint does not set out the amount sought with specificity, the defendant must offer evidence establishing the threshold amount. Id. The court must ascertain the amount in controversy "as of the time of filing, without regard to waivable 'affirmative defenses.' " Scherer, 347 F.3d at 395 (holding that it was error for the

district court to "winnow down the amount in controversy," under the waivable affirmative defense of res judicata, by excluding amounts that were the subject of a state court judgment).

The amount in controversy requirement may be met by aggregating the value of each of plaintiff's claims. Wolde-Meskel v. Vocational Instruction Project Comm. Serv., Inc., 166 F.3d 59, 62 (2d Cir. 1999). There is a rebuttable presumption that "the face of the complaint is a good faith representation of the actual amount in controversy." Scherer, 347 F.3d at 395. The "face of the complaint" presumption can be overcome if "the party opposing jurisdiction [can] show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." Scherer, 347 F.3d at 397 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ). In addition, "[w]here the pleadings themselves are inconclusive as to the amount in controversy ... federal courts may look outside those pleadings to other evidence in the record." United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark, 30 F.3d 298, 305 (2d Cir. 1994) (citing Land v. Dollar, 330 U.S. 731, 735 & n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ), and "[r]emand is appropriate where jurisdiction is doubtful," to avoid "the possibility of relitigating the matter should an appellate court later rule that original jurisdiction was lacking" and to "avoid[ ] the possibility of extending federal jurisdiction at the expense of state sovereignty." Video Connection, 625 F.Supp. at 1550-51 (citations omitted).

**\*6** Here, the face of plaintiff's complaint—which, the court notes, plaintiff filed *pro se*—is unclear and contradictory as to the precise amount in controversy. Plaintiff claims, for each purported cause of action, statutory penalties of $44,000, accrued child support of $11,007.12, and "9% interest, reasonable attorney fees and fines" of $54,507.12, for which the complaint calculates a total of $163,521.36. (Family Ct. Compl. at 3, 4.) The court notes that the amount sought in the complaint, $163,521.36, does not result from adding the specific amounts claimed. Rather, those amounts—statutory penalties of $44,000, accrued child support of $11,007.12, and "9% interest, reasonable attorney fees and fines" of $54,507.12—add up to $109,514.24. The court further notes that 28 U.S.C. § 1332 specifically excludes "interest and costs" from the calculation of the amount in controversy. There is no basis for attorney's fees because plaintiff was not represented by counsel at the time she filed the complaint and had incurred no attorney's fees. Furthermore, the complaint

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 192 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

does not provide a basis for the "fines" referred to here, and N.Y. C.P.L.R. § 5241 does not allow for the collection of fines by the plaintiff. The claim for "fines" appears to be a second reference to the statutory penalties provided by N.Y. C.P.L.R. § 5241, and plaintiff appears to have calculated those penalties, in the amount of $44,000, twice. Therefore, excluding $54,507.12—the amount claimed for "9% interest, reasonable attorney fees and fines"—the complaint alleges an amount in controversy of only $55,007.12, the total of the statutory penalties and accrued child support alleged.

Plaintiff provides no explanation or basis for the claimed "compensatory and punitive damages ... IN EXCESS of Five Million Dollars," which is only mentioned in the prayer for relief. (Family Ct. Compl. at 5.) New York does not provide an "independent cause of action for punitive damages." A.J. v. Long Island Surgi-Center, 46 A.D.3d 74, 842 N.Y.S.2d 558, 564 (2d Dept. 2007). Conduct warranting an award of punitive damages under New York law is connected to the public policy questions of whether the punished conduct was "intentional, malicious, and done in bad faith," or constituted "willful or wanton negligence or recklessness." See id. Punitive damages in New York are generally available in common law "ordinary civil actions" such as tort cases, as well as in "certain statutory actions," but not all statutory actions. 36 New York Juris. 2d Damages §§ 184-185. Compensatory damages "compensate a plaintiff for actual injury or loss," but do not allow the plaintiff to "be made more than whole [or] make a profit." 22 Am. Jur. 2d Damages §§ 24, 28.

Defendant, addressing the amount in controversy, appears to assume that the "compensatory damages" referred to by plaintiff are the judgment amounts for which she seeks enforcement. Defendant acknowledges that "it is difficult to gauge" the amount of claimed compensatory damages on the basis of plaintiff's computation, since plaintiff includes in the $54,507.12 amount "fines, in addition to interest and costs." (Opp. at 6, n. 4.) Defendant asserts that the amount in controversy is "in excess of $5,000,000" because New York allows the recovery of punitive damages and plaintiff has demanded that amount in combined compensatory and punitive damages. (Opp. at 6.)

The statute under which plaintiff's cause of action arises, N.Y. C.P.L.R. § 5241, is a mechanism for the enforcement of Family Court judgments, not a cause of action allowing recovery of damages. It is therefore no surprise that § 5241 does not directly provide for punitive or compensatory

damages. Rather, § 5241 allows recovery of the amount of the Family Court judgment for which enforcement is sought.

This court has located no New York cases regarding the availability of punitive or compensatory damages pursuant to N.Y. C.P.L.R. § 5241, and neither plaintiff nor defendant cite any. The court notes that the Second Circuit, in Home Ins. Co. v. American Home Prod. Corp., 873 F.2d 520, 521-22 (2d Cir. 1989), reviewed a suit regarding insurer liability for punitive damages under New York law. Finding no New York cases on point, and determining that the question of punitive damages was closely connected to New York's public policy, the Court certified to the New York Court of Appeals the question of whether punitive damages were available under the cause of action at issue. Id. See also generally Home Ins. Co. v. American Home Prod. Corp., 75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (N.Y. 1990) (New York Court of Appeals decision upon certification). A similar certification in the current case would not be appropriate, because a remand to Family Court would allow the state courts to address the issue directly.

*7 The court finds that the precise amount in controversy here is unclear from the face of the complaint, but in any case falls well below the statutory threshold of $75,000. As even defendant notes, the amount asserted is "difficult to gauge" from the face of the complaint. The actual amount in controversy, calculated (as it must be) as of the time this suit was filed, cannot include the $54,507.12 amount claimed for "9% interest, reasonable attorney fees and fines", and therefore amounts to only $55,007.12. The court finds that N.Y. C.P.L.R. § 5241, as discussed above, does not explicitly provide for punitive or compensatory damages beyond the amount of the judgment for which enforcement is sought, and declines to extend the statute beyond its plain language to cover damages as to which the New York courts have been silent.

This case is, therefore, materially similar to Video Connection, supra, in which the face of the complaint did not resolve the amount in controversy, the removing defendant did not meet the burden of establishing that amount by putting in proof of the damages at issue, and in which remand was "appropriate" because jurisdiction was "doubtful," and the court found it appropriate to avoid "the possibility of relitigating the matter should an appellate court later rule that original jurisdiction was lacking" and to "avoid[ ] the possibility of extending federal jurisdiction at the expense of state sovereignty." Video Connection, 625 F.Supp. at

1550-51. This is especially true where, as here, the court would have to consider the availability of punitive and compensatory damages in a child support income execution context in order to find that the jurisdictional amount in controversy had been met, yet that very question raises important issues of state public policy that have not been decided by the state courts.

For these reasons, the court finds that the amount in controversy does not meet the statutory threshold and consequently holds that the court lacks federal subject matter jurisdiction over this action under 28 U.S.C. § 1332.

### C. Domestic Relations Exception

Plaintiff also argues that this case must be remanded to Family Court because the domestic relations exception to diversity jurisdiction divests the court of jurisdiction. (See generally Objection Motion.) The domestic relations exception is extremely narrow—the Supreme Court has held that it "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree[.]" Ankenbrandt v. Richards, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). See also Marshall v. Marshall. 547 U.S. 293, 307-08, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); American Airlines. 905 F.2d at 14.

The plaintiff in Ankenbrandt brought a tort suit on behalf of her minor children, seeking damages for sexual and physical abuse of the children by her ex-husband and his new wife. 504 U.S. at 691, 112 S.Ct. 2206. The district court dismissed the case pursuant to the domestic relations exception and the doctrine of abstention, and the appeals court affirmed. Id. at 692, 112 S.Ct. 2206. The Supreme Court reviewed the history of the domestic relations exception to federal jurisdiction, finding that it originally arose from the common law, but had been implicitly incorporated into 28 U.S.C. § 1332 by Congress's reenactment of that statute in 1948 "with full cognizance of the Court's nearly century-long interpretation of the prior [diversity] statutes, which had construed [those statutes] to contain an exception for certain domestic relations matters." Id. at 700-01, 112 S.Ct. 2206. The Court reversed the lower courts, however, ruling that the domestic relations exception is strictly limited to core family law matters in which a federal court is asked to enter a decree of divorce, alimony, or child custody. Id. at 704, 112 S.Ct. 2206. The Court held that federal courts have jurisdiction over matters collateral to such proceedings, such as the tort suit underlying Ankenbrandt. Id.

**\*8** Plaintiff in this action seeks no divorce, alimony, or child custody decree. Defendant is not an individual involved in a domestic relationship with plaintiff, but rather a corporation. Neither party to this action seeks the modification of the Family Court's child custody decree. Therefore, under the Supreme Court's holding in Ankenbrandt, the domestic relations exception does not apply in the current case.

Rulings in this district have recently applied the domestic relations exception in cases in which plaintiffs brought federal civil rights actions based on alleged interference with parental rights, and sought injunctive and declaratory relief as well as monetary damages. Puletti v. Patel, No. 05-CV-2293 (SJ), 2006 WL 2010809 (E.D.N.Y. July 14, 2006); Lomtevas v. Cardozo, No. 05-CV-2779 (DLI), 2006 WL 229908 (E.D.N.Y. Jan. 31, 2006). The domestic relations exception has been applied in these cases because the injunctive relief sought would necessarily require the federal court to enter an order that would directly enjoin or declare invalid a state court child custody decree, which is impermissible under Ankenbrandt. See Puletti, 2006 WL 2010809, at \*4, and Lomtevas, 2006 WL 229908, at \*3. These cases are inapplicable here because plaintiff does not seek injunctive or declaratory relief against a child custody decree.

### D. Doctrine of Abstention

Plaintiff also asserts that this court should abstain from exercising its jurisdiction. Abstention applies only in narrow circumstances because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quotations and citations omitted). However, "federal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." Id. (quotations and citations omitted). Such countervailing interests may arise where adjudication in federal court "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Id. at 727-28, 116 S.Ct. 1712 (quotations and citations omitted). Although the domestic relations exception is narrow, the Second Circuit has stated that "a federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." American Airlines, 905 F.2d at 14.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 194 of 229

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

In American Airlines, Marsha Block, the ex-wife of American Airlines pilot Robert Block, had obtained judgments in state court against her ex-husband which reduced maintenance arrears to a final judgment. Id. at 13. Ms. Block then served a New York state income execution order on American Airlines pursuant to N.Y. C.P.L.R. § 5241, attempting to garnish Mr. Block's wages in order to satisfy the final judgment as well as ongoing maintenance obligations. Id. American Airlines failed to honor the income execution, and Ms. Block sued American Airlines in state court to enforce the income execution. Id. American Airlines responded by commencing an interpleader action in federal court pursuant to 28 U.S.C. § 1335 and Fed. R. Civ. P. 22. Id. The district court initially enjoined Ms. Block's state court action for enforcement of the income execution; the state court action was subsequently removed to the district court and consolidated with the interpleader action. Id. American Airlines was ordered by the federal district court to pay a portion of Mr. Block's monthly wages into the court registry while the case was pending. Id. The district court eventually awarded damages to Ms. Block for a combination of arrearages in ongoing maintenance obligations and arrearages that had been reduced to final judgment by the state court. Id. at 13-14. Mr. Block appealed on the grounds that the court lacked jurisdiction due to the domestic relations exception or, alternatively, should have abstained. Id. at 14.

**\*9** Although the Second Circuit decided the American Airlines case two years before the Supreme Court articulated the narrow domestic relations exception of Ankenbrandt, the court nevertheless characterized the domestic relations exception the same way that the Supreme Court later would in Ankenbrandt—as applying only "where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child." Id. (citations and quotations omitted). Despite rejecting the domestic relations exception, the Second Circuit found that partial abstention was appropriate:

> [T]he district court should have abstained *in part* from adjudicating this action. Although the district court, in the interests of economy, could properly have abstained from the entire action, it was within its discretion in collecting and distributing the interpleader fund for those maintenance arrears reduced to

valid final judgments in state court. The mechanical enforcement of these final judgments did not require the district court to interpret New York's domestic relations law, or otherwise to immerse itself in domestic relations matters that are properly the province of the state courts. On the other hand, the district court, we believe, intruded impermissibly upon state law matrimonial jurisdiction to the extent that it collected and ordered the distribution of funds corresponding to continuing maintenance obligations and arrears which had not been reduced to final judgment in state court.

Id. at 15. [7]

Defendant claims that American Airlines does not require abstention here because plaintiff seeks enforcement of an income execution order "which has been reduced to a final judgment." (Opp. at 12.) Defendant, however, has provided no factual support in the record for the assertion that the Family Court reduced the income execution to a final judgment. The court notes that this problem is compounded by defendant's failure to comply with Local Civil Rule 81.1(b), which requires that "within twenty (20) days after filing the notice of removal, the removing party shall file with the clerk a copy of all records and proceedings in the state court." Although the Family Ct. Aff., Doc. No. 53, contains copies of two money judgments against plaintiff's ex-husband, this court cannot determine from the record whether those judgments are related to, or included in, the amount sought by the income execution upon which this action is based. [8]

**\*10** At least some of the amounts plaintiff seeks to enforce in this suit are based on ongoing, non-final support obligations, given that the income execution order underlying this suit indicates an amount of withholding designated "current support." (Objection Motion, Attach. 1, Page 2 of the document marked "Exhibit S"). As in American Airlines, the income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court. Enforcement by this court would thus require interference with the ability of the Family Court to

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 195 of 229

modify ongoing child support obligations, and abstention would be mandated here for the same reasons it was required as to the non-final judgment amounts in American Airlines.

### CONCLUSION

The court finds that this case presents no federal question under 28 U.S.C. § 1331, and finds that the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332. The court therefore concludes that it lacks federal subject matter jurisdiction over this case, and the case is therefore remanded to the Family Court. The Clerk shall serve a copy of this order on the *pro se* plaintiff and remand the case to the clerk of the Family Court of the State of New York, Queens County.

### SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10706711

---

### Footnotes

1    It is well-established in the Second Circuit that a *pro se* litigant's filings must be "construed liberally" with a "lenient eye," Phillips v. Girdlich, 408 F.3d 124, 127-28 (2d Cir. 2005) (quotations and citations omitted) and "interpreted to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citation omitted). The court has applied this approach in reviewing plaintiff's submissions in this case. Although plaintiff did not specifically outline her abstention argument in the body of her motion, she referred to the abstention argument articulated in detail in a memorandum filed by her then-counsel in a parallel case, Myers v. Bimbo Bakeries USA, 08-CV-1179 (KAM), and she also attached the memorandum to her motion in this action. (See Doc. 23, Attach. 2.) This was sufficient to raise the argument, pursuant to Graham, and to allow Sara Lee to address abstention—which Sara Lee did, in detail, in its opposition memorandum. (See Doc. No. 35: Memorandum in Opposition to Plaintiff's Motion to Remand.)

2    A dispute, described more fully in footnote 4 below, has arisen between plaintiff and defendant as to the date of plaintiff's Family Court complaint. The copy of the Family Court complaint attached by defendant as an exhibit to the Notice of Removal bears the date February 18, 2008, however this date is not clerk-stamped, but rather part of the document apparently prepared by plaintiff on a personal computer. This court makes no determination regarding the date that plaintiff filed her complaint in Family Court, as the records of the Family Court are not before this court.

3    The court notes, as discussed in more detail *infra,* that the listed amounts of $44,000.00, $11,007.12, and $54,507.12 do not total $163,521.36 as stated in the complaint, but rather total $109,514.24.

4    This date is not clerk-stamped, but is rather part of the body of the document, which appears to have been prepared by plaintiff on a personal computer.

5    This date is also not clerk-stamped, but rather part of the document apparently prepared by plaintiff on a personal computer.

6    The court notes that a copy of the Family Court complaint and verification, both bearing the date February 18, 2008, were attached to defendant's Notice of Removal (Notice of Removal, Ex. A), and that two copies of each of the summons, complaint and verification, all bearing the date February 18, 2008, were attached as exhibits to a state court affidavit filed by plaintiff (see Doc. No. 53, Family Ct. Aff., Bates numbers 000010-000016 and 000022-000028). Both copies of the summons included in the Family Court Affidavit bear the stamp of the Family Court clerk dated February 25, 2008.

Myers v. Sara Lee Corporation, Not Reported in Fed. Supp. (2009)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 196 of 229

7    Ankenbrandt did not disturb the holding of American Airlines regarding abstention. See Schottel v. Kutyba, 2009 WL 230106, at *1, 2009 U.S. App. LEXIS 1916, at *l-4 (2d Cir. February 2, 2009) (summary order); Mitchell-Angel v. Cronin, No. 95-7937, 101 F.3d 108, 1996 U.S. App. LEXIS 4416 *5 (2d Cir. Mar. 8, 1996) (summary order), cert. denied, 519 U.S. 897, 117 S.Ct. 244, 136 L.Ed.2d 172 (1996); Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995); Minot v. Eckardt-Minot, 13 F.3d 590, 594-95 (2d Cir. 1994) (upholding abstention post-Ankenbrandt in a case involving a couple's separation agreement because the state court had "a continuing power to modify or enforce" the agreement); Puletti, 2006 WL 2010809, at *4.

8    The first money judgment, dated November 3, 2003, orders that "judgment be entered for Chandra Myers against [Robert Sean Myers] in the amount of $13,906.55[.]" (Doc. No. 53, Bates Nos. 000096-97). The second money judgment, dated November 9, 2007, is contained in an "Order Modifying and Order of Support by Default," and orders a "SECOND MONEY JUDGMENT FOR $37,374.44, WITHOUT PREJUDICE." (Id., Bates Nos. 000098-100.) The court finds puzzling the use of the term "judgment ... without prejudice."

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    9

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 197 of 229

Gerald v. Akron Bar Association, Not Reported in Fed. Supp. (2018)

2018 WL 2985142
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio, Eastern Division.

Jeremy X. GERALD, Plaintiff,
v.
AKRON BAR ASSOCIATION, et al., Defendants.

CASE NO. 5: 18 CV 414
|
Signed 06/14/2018

**Attorneys and Law Firms**

Jeremy Gerald, St. Clairsville, OH, pro se.

## OPINION AND ORDER

CHRISTOPHER A. BOYKO, United States District Judge

### Introduction

**\*1** *Pro se* Plaintiff Jeremy X. Gerald, a convicted and
sentenced state prisoner, has filed a Four-Count Civil Rights
Complaint in this matter pursuant to 42 U.S.C. § 1983,
alleging constitutional rights violations against the Akron Bar
Association, the Summit County Prosecutor's Office, Summit
County Court of Common Pleas Clerk Sandra Kurt and
the Summit County Jail. (Doc. No. 1.) He alleges the conduct he
complains of "resulted in [his] incarceration," and he seeks $
4 million in damages. (*Id.* at 13.)

In Counts One and Two, he alleges the Akron Bar
Association, through "various lawyers who practice criminal
law defense in a private capacity" and who have been
appointed or retained to represent criminal defendants
in Summit County, and the Summit County Prosecutor's Office,
through the "various attorneys who work for the office"
are "conspiring" to "undermine, sabotage or otherwise leave
defenseless the rights of all who are charged with criminal
offenses in Summit County" and have "traded cases in an
effort to gain leverage to negotiate plea agreements." (*Id.* at
12.)

In Count Three, he alleges that the Summit County Court of
Common Please Clerk Sandra Kurt is liable for "tampering
with evidence" and refusing to ensure that her office properly
handles document filings and court notifications. (*Id.* at 13.)

In Count Four, he alleges that the Summit County Jail
has "conspired" with the Prosecutor's Office to hold "those
charged with offenses" in the County "for exorbitant bond
amounts which are not proportional to any flight risk." (*Id.*
at 14.)

The Plaintiff has filed a Motion to Proceed *In Forma Pauperis*
(Doc. No. 2), which has been granted by separate order. He
has also filed a Motion to Certify a Class. (Doc. No. 3.)

### Standard of Review

Although filings by *pro se* litigants are liberally construed,
*Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), federal
district courts are required, under 28 U.S.C. § 1915(e)(2)(B)
to screen all *in forma pauperis* actions brought in Federal
Court, and to dismiss before service any such action that
the Court determines is frivolous or malicious, fails to state
a claim on which relief may be granted or seeks monetary
relief from defendant who is immune from such relief. *See* 28
U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F.3d 468, 470-71
(6th Cir. 2010). In order to state a claim on which relief may be
granted, a complaint must set forth sufficient factual matter,
accepted as true, to state claim to relief that is plausible on
its face. *See Hill*, 630 F.3d at 471 (holding that the dismissal
standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
governs dismissals for failure to state a claim under 28 U.S.C.
§ 1915(e)(2)(B) ).

### Discussion

The Court finds the Plaintiff's Complaint fails to allege any
plausible claim under § 1983 and must be dismissed pursuant
to § 1915(e)(2)(B).

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme
Court held that

> **\*2** in order to recover damages for
> allegedly unconstitutional conviction
> or imprisonment, or for other harm
> caused by actions whose unlawfulness
> would render a conviction or sentence
> invalid, a § 1983 plaintiff must

prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486-87.

A favorable judgment on the Plaintiff's constitutional claims in this case, whatever they are against each Defendant, would necessarily impugn the validity of his outstanding criminal conviction for which he is presently incarcerated. The Plaintiff himself expressly states that the Defendants' alleged conduct "resulted in [his] incarceration." Accordingly, in order for the Plaintiff to pursue a damages action under § 1983 based on the conduct he alleges and which resulted in his conviction, the Plaintiff must demonstrate that his conviction has been called into question or rendered invalid in one of the ways articulated in *Heck*. Nothing in the Plaintiff's Complaint suggests that his conviction has been so invalidated. Accordingly, the Plaintiff's constitutional claims in this case are all barred by *Heck* and must be dismissed for failure to state a claim. *See Hunt v. Michigan*, 482 Fed.Appx. 20, 22 (6th Cir. 2012) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Morris v. Cason*, 102 Fed.Appx. 902, 903 (6th Cir. 2004) (same).

Furthermore, the Plaintiff's Complaint fails to allege any plausible claim under § 1983 even if *Heck* did not bar his claims. Summit County Court of Common Pleas Clerk Kurt enjoys absolute immunity from suits seeking monetary damages on claims arising out of the performance of her quasi-judicial functions. *See Wappler v. Carniak*, 24 Fed.Appx. 294, 295-96 (6th Cir. 2001); *Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988) (finding court clerk immune). The Summit County Jail is not *sui juris* and lacks capacity to be sued under § 1983. *See Jackson v. Mowry*, No. 1:12 CV 3083, 2013 WL 526916, at *3 (N.D. Ohio Feb. 11, 2013); *Boggs v. Miami Cty. Jail*, No. 3:11 CV 00122, 2011 WL 3813079, at *2 (S.D. Ohio Aug. 9, 2011) (a county jail "is merely an administrative vehicle" by which a county operates and therefore "lacks the capacity to be sued"), report and recommendation adopted, No. 3:11 CV 00122, 2011 WL 3813033 (S.D. Ohio Aug. 29, 2011). Additionally, the allegations in the Plaintiff's Complaint do not suggest that the misconduct he complains of came about pursuant to an unconstitutional policy, statement, regulation, decision or custom of Summit County itself, and it is well-established that a local government may be liable under § 1983 only when its own official policy or custom inflicts the injury that forms the basis of the claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A private bar association is not a state actor that may be sued under § 1983. *See Jordan v. Kentucky*, Case No. 3:09 CV 424, 2009 WL 2163113, at *4 (W.D. Ky. July 16, 2009).

**Conclusion**

For all of the reasons stated above, the Plaintiff's Complaint fails to state a plausible claim and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). His Motion to Certify a Class is denied. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**\*3  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2985142

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                              2

2010 WL 2901744
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. Ohio,
Eastern Division.

Ronnie Lee JENNINGS, Plaintiff,
v.
Sherri WALSH, et al., Defendants.

No. 1:10CV1078.
|
July 22, 2010.

**Attorneys and Law Firms**

Ronnie Lee Jennings, Grafton, OH, pro se.

*MEMORANDUM OF OPINION AND ORDER*

CHRISTOPHER A. BOYKO, District Judge.

**\*1** Plaintiff *pro se* Ronnie Lee Jennings filed this action under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The defendants are Sherri Walsh, Summit County, Ohio Prosecutor, Nancy Mercurio, Assistant Summit County Prosecutor, Judge Judith Hunter, Summit County Common Pleas Court Judge, Judge Carla Moore. Ohio Ninth District Court of Appeals Judge, James Gilbride, Akron, Ohio Police Officer, William Bosak, Detective with the Akron, Ohio Police Department, Daniel Horrigan, Summit County Common Pleas Clerk of Courts and Alicia Foot, the complainant in Plaintiff's criminal case.

On February 5, 2004, Plaintiff was found guilty after a jury trial in the Summit County Common Pleas Court of kidnapping, R.C. 2905.01(A)(4), attempted rape, R.C. 2907.02(A)(2), abduction, 2905.02(A)(2), and gross sexual imposition, R.C. 2907.05. *State of Ohio v. Jennings,* Case No. CR 03 09 2933. He was sentenced to a term of imprisonment of 9 years and found to be a sexual predator.

The allegations of the Complaint arise out of Plaintiff's criminal conviction. He asserts that he was denied a fair trial because of perjury, fraud, false statements, obstruction of

justice, evidence tampering and conspiracy, all in violation of the Fourteenth Amendment to the United States Constitution. Plaintiff seeks a declaration that Defendants violated the Ohio Revised Code, i.e., R.C. 2921.11 and R.C. 2921.32, an injunction ordering the Summit County Clerk's Office to turn over audio tapes to this Court and that a handwriting expert be appointed to examine certain documents. Also before the Court is Plaintiff's Motion for Appointment of Counsel. (ECF 3).

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Lawler v. Marshall,* 898 F.2d 1196 (6th Cir.1990); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

Although Plaintiff is asserting that Defendants are criminally liable, the facts set forth in the Complaint clearly constitute an instance where a court decision would express an opinion as to the validity of Plaintiff's conviction, as any opinion by this court on the issue he seeks to raise would necessarily implicate the validity of that conviction. Thus, absent an allegation that Plaintiff's conviction has been reversed, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. In other words, a complaint seeking relief under 42 U.S.C. § 1983 is not a permissible alternative to a petition for writ of habeas corpus if the Plaintiff essentially challenges the legality of his conviction. *Preiser v. Rodriguez,* 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Kuehne v. Foley,* 2009 WL 1045897 * 2 (S.D.Ohio, Apr.20, 2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 342, 175 L.Ed.2d 227 (2009).

**\*2** Judge Moore, a court of appeals judge, allegedly failed to respond to his notice that he had filed a criminal complaint and thereby participated in the alleged conspiracy. Plaintiff asserts that Judge Hunter, a common pleas court judge, presided over his biased trial. It is well established that judges are immune from liability for actions taken within the scope of their official duties. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This is true

even if a judge acts erroneously, corruptly, or in excess of jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). When the function complained of is truly a judicial act, judicial immunity applies. *Yarbrough v. Garrett,* 579 F.Supp.2d 856, 860 (E.D.Mich., 2008) (citing *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994)). There are no facts alleged reasonably suggesting Judges Moore and Hunter acted outside the scope of their official duties.

Prosecutors are absolutely immune from liability under § 1983 for their conduct as long as that conduct is intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). "The analytical key to prosecutorial immunity ... is advocacywhether the actions in question are those of an advocate." *Skinner v. Govorchin,* 463 F.3d 518, 525 (6th Cir.2006) (citations and internal quotation marks omitted). There is no indication in the Complaint that Prosecutor Walsh and Assistant Prosecutor Mercurio were acting outside of the scope of their responsibilities.

Plaintiff alleges that Defendant Horrigan failed to appropriately file an official document and intentionally mis-

lead him into believing that in order to file a criminal complaint, one must first file a Petition for Reclassification. Defendant Horrigan, as Summit County Clerk of Courts is entitled to absolute immunity when performing judicial functions even if acting erroneously, corruptly or in excess of jurisdiction. *Bolling v. Garrett,* 2008 WL 2610234 * 2 (E.D.Mich., Jun. 30, 2008) (citing *Mireles v. Waco,* 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Collyer v. Darling,* 98 F.3d 211, 221 (6th Cir.1996)). His alleged conduct is within his official responsibilities. Thus, he is not a proper party to this action.

Accordingly, Plaintiff's Motion for Appointment of Counsel is denied. This action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be taken in good faith

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2901744

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 201 of 229

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1**  The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 202 of 229

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 203 of 229

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 204 of 229

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 205 of 229

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dismiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 206 of 229

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

856 Fed.Appx. 331
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Douglas E. KAMPFER, Plaintiff-Appellant,

v.

Richard ARGOTSINGER, Town of Mayfield, Town
Supervisor and Board Member, Jack Putman, Town of
Mayfield, Town Councilman, Steven Van Allen, Town of
Mayfield, Town Councilman, Thomas Ruliffson, Town
of Mayfield, Town Councilman, Vincent Coletti, Town
of Mayfield, Town Councilman, Defendants-Appellees.

20-784
|
April 7, 2021

*** Start Section
...

**Synopsis**
**Background:** Former dog control officer brought § 1983
action against town supervisor and four members of town
board, alleging that they violated his constitutional due
process rights, including by declining to reappoint him
for a subsequent term without affording him notice and a
hearing. Supervisor and board members moved for summary
judgment, and officer cross-moved for summary judgment.
The United States District Court for the Northern District of
New York, Lawrence E. Kahn, Senior District Judge, 2020
WL **906274**, granted summary judgment to supervisor and
board members. Officer appealed.

**Holdings:** The Court of Appeals held that:

[1] termination of officer without cause and without a hearing
did not violate officer's procedural due process rights, and

[2] officer failed to state a claim for violation of his
substantive due process rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (2)

[1]    **Constitutional Law**  ⟜  Termination or
discharge

       **Constitutional Law**  ⟜  Termination or
discharge

       **Public Employment**  ⟜  State, local, and other
non-federal personnel in general

       **Towns**  ⟜  Appointment or election,
qualification, tenure, and removal of officers or
employees

       Town's termination of former dog control
officer without cause and without a hearing
did not violate officer's Fourteenth Amendment
procedural due process rights, in officer's §
1983 action against town supervisor and four
members of town board, where officer possessed
no statutory basis for his alleged property interest
in continued employment as a dog control officer
and had no contract with the town. U.S. Const.
Amend. 14; 42 U.S.C.A. § 1983.

       1 Case that cites this headnote
...

2014 WL 4357466
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Tricia WHITE, Plaintiff,

v.

The CITY OF NEW YORK; New York City Department
of Education; Dennis Walcott, Chancellor; Elisa Brown,
Principal of P.S. 249; Ana Dejesus, Siolen Kelly
Ho, Assistant Principals, P.S. 249; Buffie Simmons,
Community District Superintendent District 17; All Sued
in Their Official and Individual Capacity, Defendants.

No. 13 Civ. 7156(ER).
|
Signed Sept. 3, 2014.

### OPINION AND ORDER

RAMOS, District Judge.

**\*1** Plaintiff Tricia White (the "Plaintiff" or "Mrs. White"), appearing *pro se,* brings this action against her former employers, supervisors and co-workers: the City of New York (the "City"), the New York City Department of Education (the "BOE"), [1] Dennis Walcott, Elisa Brown, Ana DeJesus and Buffie Simmons (collectively, the "Individual Defendants," and together with the City and BOE, the "Defendants") in their official and individual capacities. Plaintiff claims that Defendants unlawfully terminated her from her position as a special education teacher in retaliation for speaking out against the school's administration and exposing "special education fraud" there. She further alleges that Defendants discriminated against her due to her pregnancy, harassed her, caused the premature birth of her child, and lodged false accusations of corporal punishment against her, then deprived her of the ability to defend herself against them. Plaintiff asserts that Defendants' false accusations not only contributed to her termination, but also prevented her from obtaining new employment.

Liberally construed, the Complaint asserts claims pursuant to 42 U.S.C. §§ 1983 and 1985 for violations of Plaintiff's rights, and conspiracy to violate Plaintiff's rights, under the First and Fourteenth Amendments; an employment discrimination claim under Title VII of the Civil Rights Act of 1964; New York state law claims for wrongful termination, intentional and negligent infliction of emotional distress, fraud, "verbal harassment, with unjustified threats of future harm," and defamation; and claims under New York Civil Service Law § 75–b. Compl., Doc. 1. Plaintiff seeks more than two million dollars in damages, punitive damages and costs, a declaratory judgment stating that Defendants violated her rights, and injunctive relief. *Id.*

Before the Court is Defendants' motion to dismiss all of Plaintiff's claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 11. Defendants seek dismissal on the grounds that Plaintiff has failed to: (1) timely file notice for her New York state law claims, which are also time-barred; (2) state a claim pursuant to 42 U.S.C. §§ 1983 or 1985; (3) exhaust her administrative remedies for her Title VII claim; (4) allege municipal liability for her claims against the BOE or its officers in their official capacities; and (5) allege liability against the City, as it is an improper party. *See* Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") 2, Doc. 12.

For the reasons discussed below, Defendants' motion is GRANTED and Plaintiff's complaint is dismissed.

## I. BACKGROUND

The Court accepts the following allegations as true for purposes of this motion. [2]

### A. The Parties

#### 1. Plaintiff

On September 7, 2010, Plaintiff began employment as an untenured special education teacher for Defendant BOE. [3] Compl. ¶¶ 27, 31. She was assigned to work at the Caton School, also known as "P. S. 249," in Brooklyn, New York. *Id.* Mrs. White has a license for "Special Education Day" [4] and several certifications within the State of New York that allow her to teach general students and students with disabilities in all grade levels, from pre-kindergarten through twelfth grade. *Id.* ¶ 18. Throughout the 2010–2011 academic year, Plaintiff received a rating of "satisfactory" for her lesson observations and performance evaluations. *Id.* ¶¶ 19, 28. This case arises from allegations of harassment, discrimination and retaliation that Mrs. White claims she suffered during the 2011–2012 school year.

#### 2. Defendants

**\*2** Defendant Dennis Walcott ("Chancellor Walcott") is the Chancellor of Defendant BOE. *Id.* ¶ 21. Plaintiff alleges that Chancellor Walcott worked with the other co-Defendants to "assist in the[ir] misconduct and [lodge] false claims" against her. *Id.* Defendant Buffie Simmons ("Superintendent Simmons") was, and is, the "Community District Superintendent" for District 17, which includes the Caton School. *Id.* ¶ 22. Defendant Elisa Brown ("Principal Brown") served as the principal of the Caton School, and Defendants Ana DeJesus ("Assistant Principal DeJesus") and Siolen Kelly Ho ("Assistant Principal Ho") were both assistant principals there. *Id.* ¶¶ 23–25. Plaintiff alleges that each of the Individual Defendants had responsibility for creating and implementing policies that comply with city, state and federal law. *Id.* ¶¶ 21–25.

### B. Factual Allegations

At the start of the 2011–2012 academic year, Plaintiff was three months pregnant. *Id.* ¶ 31. Assistant Principal DeJesus told Plaintiff that she should not have a baby while working as an untenured teacher. *Id.*

In addition to "harassing" her due to her pregnancy, Plaintiff claims that Defendants targeted her for disciplinary action because they wanted to suppress information about their failure to provide appropriate educational services for special needs students at the Caton School. *Id.* ¶ 37. As a supplement to the lessons provided by special education teachers in public schools, "related service providers" implement Individual Education Programs ("IEPs")—personalized plans for student growth—for special education students. Plaintiff appears to allege that, at the Caton School, such special education service providers—who are employed by outside agencies, not the school itself—are supposed to work with students in person, on an individual basis, and during school hours, as set forth in each student's IEP. At one point,[5] Assistant Principal DeJesus asked Plaintiff to write IEP goals for students who were not receiving services from related service providers. *Id.* ¶ 29. Specifically, Ms. DeJesus instructed Plaintiff to write "speech codes," meaning, speech—related education plans, for students who did not receive speech services. *Id.* "Supervisors" threatened Plaintiff that they would give her an unsatisfactory ("U") rating on her evaluation if she did not comply with this directive, even though Plaintiff believed that it was out of compliance with special education protocol. *Id.* ¶ 30.

Documents attached to the Complaint[6] indicate that, on Thursday, September 22, 2011, Assistant Principal DeJesus observed an occupational therapist working with a student in Plaintiff's classroom. Assistant Principal DeJesus and Mrs. White discussed the possibility that the therapist would work with that particular student in the classroom at certain times, and Mrs. White apparently agreed to permit such services in the classroom. Assistant Principal DeJesus emphasized to Mrs. White the importance of allowing related service providers to work with students in the classroom, noting "that the child must be able to function in her classroom and can only do so when the services needed for her academic growth are provided where she spends most of her day, in the classroom." Compl. Ex. 2 (Oct. 28, 2011 Ltr.).

**\*3** On Saturday, September 24, 2011, Mrs. White sent several e-mails (the "September 24, 2011 Emails") to certain related service providers that she believed were not appropriately providing services to her students. Plaintiff claims that these service providers had not been communicating feedback to her, and parents had expressed reservations about their children's progress. Compl. ¶ 32, Ex. 1. Mrs. White copied Assistant Principal DeJesus on the September 24, 2011 Emails, the first of which stated as follows:

> [8:23 a.m.]
>
> All service providers MUST FOLLOW each individual student's IEP. If a student [sic] IEP states, "2 twice a week, 30 minutes, SEPARATE LOCATION," please provide theses [sic] services as is. Students [sic] IEP should not be amended based on personal opinions or judgments. If you have any questions about any student receiving related services and you want to make any changes, please follow the correct protocols to do so.
>
> Mrs. White

Compl. Ex. 1 at 1–3 (emphasis in original). At 8:36 a.m., Assistant Principal DeJesus emailed Mrs. White to ask who the email was for, and instructed Plaintiff to meet with her on Monday, September 26, 2011 "as soon as you get in." *Id.;* Compl. ¶¶ 33–34. At 2:02 p.m., Mrs. White responded: "I am just doing my job while providing and advocating for my students, based on their needs and what is written on a state legal document. I will definitely speak to you [as soon as possible] on Monday about the matter." *Id.* at Ex. 1. Minutes later, Mrs. White sent another email to related service

providers, again copying Assistant Principal DeJesus, which stated:

[2:13 p.m.]

If you have not provided me with your schedule, please try and do so [as soon as possible] so that I could informed [sic] students [sic] parents. If schedules overlap with other related service providers, please make an extra effort to work out a time that will work for everyone. If a prescription is needed in order to provide services, please put it in writing, so that I could [sic] inform the parents. Also, reader's workshop is a very important instruction time. It is usually during 2nd period, so if possible, please could related services be schedule [sic] around that time:) [sic]. However, based on each student, exceptions could be made.

Mrs. White

*Id.*

At the meeting on September 26, 2011, Assistant Principal DeJesus directed Mrs. White not to "put 'stuff' like that in e-mails"—referring to the content of the September 24, 2011 Emails—"because the school could get in trouble." *Id.* ¶ 34. According to documents attached to the Complaint, on September 26, 2011, Assistant Principal DeJesus also saw Mrs. White rubbing Principal Brown's hair while telling her that Ms. DeJesus displayed favoritism. *Id.* at Ex. 2 (Oct. 28, 2011 Ltr.). When Ms. DeJesus asked Mrs. White to name the favorites, she responded by laughing and did not answer. *Id.*

On September 28, 2011, Plaintiff attended a meeting with her union representative, Assistant Principal DeJesus and Principal Brown. At this meeting, Ms. DeJesus asked Plaintiff if she read the page of the teachers' handbook for P.S. 249 which provides, in relevant part, that all e-mails must be preapproved by the principal. *Id.* Plaintiff stated, "I am not sure." *Id.* Plaintiff also indicated that she had forwarded the September 24, 2011 Emails to three principals and two CEC[7] representatives, and they did not believe that the content was insubordinate. *Id.* When asked by Principal Brown if Plaintiff addressed her concerns about the related service providers with Assistant Principal DeJesus before sending the September 24, 2011 Emails, Plaintiff replied that she "[did not] want to bother Ms. DeJesus." *Id.*

**1. The October 28, 2011 Disciplinary Letter**

**\*4** Plaintiff asserts that, in retaliation for sending the September 24, 2011 Emails, Assistant Principal DeJesus placed a letter in her personnel file on October 28, 2011 (the "October 28, 2011 Letter") that described several acts of "insubordination" committed by Plaintiff. *Id.* ¶ 35; Ex. 2. First, the October 28, 2011 Letter states:

On Thursday, September 22, 2011, I [Assistant Principal DeJesus] entered your classroom at approximately 9:15 [a.m.] and Mrs. Williams, [a student's] occupational therapist[,] was servicing [the student] in your classroom. We briefly discussed the possibility of servicing [that student] in the classroom at certain times. I stated that this was acceptable and directed the [occupational therapy] provider to provide services within the classroom. We further discussed that related service providers can provide services within the classroom. In addition, I stated that the child must be able to function in her classroom and can only do so when the services needed for her academic growth are provided where she spends most of her day, in the classroom. On Saturday, September 24, 2011 at 8:23 [a.m.], I received an email from you directing all related service providers to conduct all services in a separate location. In addition, you directed all related service providers to follow the student's IEP without my approval.

*Id.* at Ex. 2. The October 28, 2011 Letter also cites the portion of the P.S. 249 teacher's handbook requiring that all emails be pre-approved by Principal Brown and describes the encounter on September 26, 2011 during which Plaintiff allegedly rubbed Principal Brown's hair. *Id.* The letter concludes as follows:

[T]he conduct you [Mrs. White] exhibited, namely failing to take my directive of allowing the related

service providers to provide the
services within the classroom at
certain times, writing an email
without approval to all related service
providers, your inappropriate touching
of the principal and your remarks
to me constitutes insubordination,
dereliction of duty and conduct
unbecoming a professional educator ...
You are reminded of your obligation
to follow my supervisory directions
and address me in a professional
manner. Please be advised this incident
may lead to further disciplinary action
including an unsatisfactory rating and
your termination.

*Id.* at 2.

Plaintiff claims that "the staff at P.S. 249 routinely sent emails
without first obtaining approval of the principal," a fact which
Plaintiff pointed out at the time of her disciplinary letter. *Id.*
¶ 36. Plaintiff believes that she was "singled out" because of
her attempt to expose the "lack of proper servicing of special
needs children" at the Caton School. *Id.* ¶¶ 36–37. After
this incident, Assistant Principal DeJesus "verbally harassed"
and threatened to terminate Mrs. White because of her non-
tenured status. *Id.* ¶ 38.

### 2. Denial of External Professional Development
   Opportunities

**\*5** Acting in further retaliation for her speech, and to
punish her status as a pregnant person, Defendants allegedly
denied Mrs. White opportunities to engage in professional
development ("PD") workshops outside of the school, in
violation of her "tenure process rights." *Id.* ¶ 39. Principal
Brown explained to Plaintiff that the school did not want to
be held responsible if she was harmed on the way in or out
of the building. *Id.* Assistant Principal DeJesus "repeatedly
told Plaintiff that she should never have become pregnant
during her probationary period." *Id.* Defendants did not offer
Plaintiff any external PD opportunities until after she gave
birth. *Id.*

### 3. Plaintiff's December 11, 2011 Union Grievance

Plaintiff filed a "Special Ed Complaint Form" with the
United Federation of Teachers ("UFT") on December 11,

2011. *See* Compl. Ex. 6 (the "Special Ed Complaint").
Plaintiff informed UFT that she received satisfactory ratings
for her evaluation during the 2010–2011 academic year,
but complained that her students were not receiving related
services and that nothing changed with respect to provision
of services after she brought the issue to Principal Brown's
attention. *Id.* Plaintiff explained to UFT that Assistant
Principal DeJesus placed a letter in her file after she sent the
September 24, 2011 Emails. Plaintiff also complained that
Ms. DeJesus told her (1) to "rewrite 12 IEPs this week for
the 12 ... students [she had]," and (2) that because Plaintiff
had planned on taking maternity leave for six weeks at the
end of February, she should " 'go ahead and write the IEP[s]
even though most of them are due in April, May, [and] June ...
because I don't know your situation,' implying that [Plaintiff]
might not be coming back." *Id.* Plaintiff told Assistant
Principal DeJesus that "it is illegal to re-write IEPs before
giving the students the opportunity and time length to meet
their goals—which is equivalent to one year." *Id.* Assistant
Principal DeJesus responded by issuing another disciplinary
letter to Plaintiff requesting a meeting with Principal Brown.
*Id.* [8]

In response to Plaintiff's Special Ed Complaint, Emma
Mendez of UFT advised Plaintiff to consult the UFT Chapter
Leader and District Representative regarding "guidance ...
on how to document and proceed with" the issue of "the
harassment that you seem to be experiencing." *Id.*

### 4. The January 11, 2012 Incident and April 4, 2012
   Disciplinary Letter

Plaintiff alleges that Defendants continued to retaliate against
her by falsely accusing her of corporal punishment. On
January 11, 2012, during Plaintiff's seventh month of
pregnancy, a student threw a book at her when she requested
that the students hand in their books (the "January 11, 2012
Incident"). *Id.* ¶ 40. Plaintiff claims that she gently slid the
book back to the student and asked the student to hand the
book to her. *Id.*

**\*6** Several days later, Plaintiff received a letter requesting
that she meet with Assistant Principal DeJesus and a union
representative on January 23, 2012. *Id.* ¶¶ 40–41. During that
meeting, Plaintiff stated that she threw the book at the student
but felt she did nothing wrong "because she did not hit [the
student]." *Id.* at Ex. 2. Plaintiff claims that, as a result of
Defendants' harassment, she prematurely went into labor on

January 27, 2012.[9] *Id.* ¶¶ 39, 41. Her due date had been in March 2012. *Id.* ¶ 41.

Plaintiff returned from maternity leave in April 2012. *Id.* ¶ 42. Thereafter, Assistant Principal DeJesus informed Plaintiff that an investigation regarding the January 11, 2012 Incident had been conducted, and another letter was placed in her personnel file for corporal punishment dated April 4, 2012 (the "April 4, 2012 Letter"). *Id.* at Ex. 2 at 3–4. Specifically, the April 4, 2012 Letter describes the investigation as follows:

> Chancellor[']s [R]egulation A–420 defines corporal punishment as "any act of force upon a pupil for the purpose of punishment[.]"
>
> On January 11, 2012 at approximately 9:15 AM in Room 103, you, out of anger, threw the book at [the student] rather than following a more appropriate manner of punishing the student for his mis-behavior [sic].
>
> ...
>
> On January 11, 2012, at approximately 9:15 AM in Room 103, you behaved in a manner unbecoming of a professional when you threw a book at [the student] because he threw it at you first.
>
> On January 11, 2012, at approximately 9:15 AM, in Room 103, you were in violation of Chancellor's Regulation A–420 when you threw a book at a student. This allegation of corporal punishment is substantiated against you.

According to the April 4, 2012 Letter, Plaintiff declined to submit a written statement to the administration regarding the January 11, 2012 Incident. *Id.* The April 4, 2011 Letter directed Plaintiff to "in the future be in compliance with all Chancellors' regulations" and school policies, and informed her that she may be rated "unsatisfactory" for the current school year, which could lead to termination. *Id.*[10]

Plaintiff contends that the allegation of corporal punishment lodged against her was false, and that Defendants denied her due process to defend herself. Plaintiff claims the BOE did not question her or inform her of any investigation before she received the April 4, 2011 Letter, and that the BOE did not inform her, the students' parents or her union that they filed an incident report with the Office of Special Investigation. *Id.* ¶ 40.

Plaintiff claims that, in addition to satisfactory ratings that she received for four observations during the school year, she had an excellent attendance record, even in spite of her maternity leave. *Id.* ¶ 42. However, on June 7, 2012, the administration at the Caton School told Plaintiff that she would be receiving an unsatisfactory ("U") rating for the 2011–2012 school year. *Id.* On June 29, 2012, Superintendent Simmons "affirmed Plaintiff's discontinuance" due to the "U" rating. *See* Compl. Ex. 5 (Letter from B. Simmons). On August 13, 2012, Plaintiff discussed the discontinuance with Simmons, who informed Plaintiff that she received a placement at a new school, P.S. 375. *Id.* ¶ 42. However, Plaintiff was never hired at P.S. 375 because her fingerprints were "flagged" as ineligible by the Department of Education Office of Personnel Investigations ("OPI") as a result of the January 11, 2012 Incident. *Id.* Plaintiff claims that, since the discontinuance, she has not been able to obtain employment due to the "false 'U' rating." *Id.*

**\*7** Plaintiff appeared at a Discontinuance Hearing[11] on October 26, 2012. Her allegations do not state what transpired at that hearing. However, Plaintiff believes that she remained on an "HR Connect blacklist"[12] until August 8, 2013, when she "cleared her file" by bringing Betsy Combier, a teacher advocate, and Steven Perez, a paraprofessional who witnessed the Incident, to OPI and explaining her innocence. Compl. ¶ 42. Mr. Perez also drafted an undated written statement corroborating Plaintiff's version of the events, indicating that he did not observe any abuse by Mrs. White. *Id.* at Ex. 4 at 2. Plaintiff claims that Mr. Perez would have testified on her behalf at an earlier juncture, but did not want to initially support her because Assistant Principal DeJesus threatened him by saying "remember who gave you a job." *Id.* ¶ 40.

On October 9, 2013, Plaintiff filed the instant action.

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In order to satisfy the pleading

standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* at 678 (citing *Twombly,* 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (quoting *Twombly,* 550 U.S. at 557).

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011), and to interpret the claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citing *Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (citing *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

## III. DISCUSSION

### A. Plaintiff's Section 1983 Claims Are Dismissed

**\*8** In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999). "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)). Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Id.*

Liberally construed, the Complaint asserts claims under 42 U.S.C. § 1983 for First Amendment retaliation and violations of her rights guaranteed by the Due Process and Equal Protection clauses of the Fourteenth Amendment. [13]

### 1. First Amendment Retaliation Claim

Plaintiff claims that Defendants retaliated against her for speaking out regarding "special education fraud" at the Caton School.

"Government employers, like private employers, need a significant degree of control over their employees' words and actions" to ensure that employees do not "contravene governmental policies or impair the proper performance of governmental functions." *Garcetti v. Ceballos,* 547 U.S. 410, 418–19 (2006). A government entity in the form of an "employer charged with providing such essential services as public safety and education," rather than a sovereign governing its citizens, has "greater leeway" under the Constitution "to control employees' speech that threatens to undermine its ability to perform its legitimate functions." *Jackler v. Byrne,* 658 F.3d 225, 234 (2d Cir.2011) (citation omitted).

While government employees have diminished speech rights as compared with private citizens, government employment "does not ... eviscerat[e] ... an employee's First Amendment rights." *Johnson v. Ganim,* 342 F.3d 105, 112 (2d Cir.2003) (quoting *Hale v. Mann,* 219 F.3d 61, 70 (2d Cir.2000) (quoting *Connick v. Myers,* 461 U.S. 138, 140 (1983)). "It is by now well established that public employees do not check all of their First Amendment rights at the door upon accepting public employment." *Lewis v. Cowen,* 165 F.3d 154, 158 (2d Cir.1999). Regarding certain topics, it "is essential that public employees be able to speak out freely without fear of retaliatory dismissal." *Connick,* 461 U.S. at 149. Accordingly, in First Amendment, public employee freedom of speech cases, courts must achieve a balance between the interest of the public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968).

**\*9** Following *Garcetti,* courts employ a two-step approach to evaluate whether the First Amendment protects employee speech from retaliation. First, the court inquires "whether the employee spoke as a citizen on a matter of public

concern." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks and citation omitted). If the answer to this question is no, then "the employee has no First Amendment cause of action based on ... her employer's reaction to the speech." *Garcetti,* 547 U.S. at 418. If the answer is yes, the court must then decide "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotation marks and citation omitted); *see also Garcetti,* 547 U.S. at 418.

The first factor, "whether the employee spoke as a citizen on a matter of public concern," consists of two subcomponents: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Matthews v. City of New York,* 957 F.Supp.2d 442, 451 (S.D.N.Y.2013) (quoting *Jackler,* 658 F.3d at 235). Speech is of public concern if it relates to political, social or other community concerns, rather than an employee's personal concerns. *Johnson,* 342 F.3d at 112 (citing *Connick,* 461 U.S. at 146); *Hoyt v. Andreucci,* 433 F.3d 320, 330 (2d Cir.2006) (same). Generally, "discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern"; if the government entity cannot show that such speech would impact or disrupt the government employer's functions, then it may receive First Amendment protection. *See Harman v. City of New York,* 140 F.3d 111, 118 (2d Cir.1998) (citation and internal punctuation omitted). Matters of public concern also include "speech aimed at uncovering wrongdoing or breaches of the public trust." *Wrobel v. Cnty. of Erie,* 692 F.3d 22, 31 (2d Cir.2012) (quoting *Glass v. Dachel,* 2 F.3d 733, 741 (7th Cir.1993)).

Importantly, however, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421, 423; *Connick,* 461 U.S. at 146; *Healy v. City of New York Dep't of Sanitation,* 286 F. App'x 744, 746 (2d Cir.2008) (summary order) (holding that speech is not protected where it "ar[i]se[s] in the course of official job duties ."). Thus, the First Amendment does not shield work environment correspondence. *Frisenda v. Incorporated Village of Malverne,* 775 F.Supp.2d 486, 507 (E.D.N.Y.2011) (holding that correspondence between police officer employees pertained to the "core function"

of the officers' employment thus fell beyond the First Amendment's purview). Although context determination for public employees' speech may be fact-intensive, it is a matter of law left to the court. *Johnson,* 342 F.3d at 112; *accord Ruotolo,* 514 F.3d at 189. While "there is no categorical approach," courts evaluate the "content, form, and context of a given statement." *Norton v. Breslin,* No. 13 Civ.1962, 2014 WL 1851888, at *1–*2 (2d Cir. May 9, 2014) (summary order) (quoting *Hoyt,* 433 F.3d at 330).

**\*10** Here, Plaintiff claims that Defendants terminated her in retaliation for sending the September 24, 2011 Emails and complaining to parents about the policies for servicing special needs students at the Caton School. Compl. ¶ 11. Plaintiff contends that her speech regarding the servicing of special needs students is protected by the First Amendment because she spoke as a private citizen on a matter of public concern. Pl.'s Opp. 17–21, Doc. 18. While possible violations of special education laws may be of public concern, Plaintiff was clearly acting within the scope of her official duties when she made specific, work-related demands of the service providers that she emailed. After Assistant Principal DeJesus asked to speak with her concerning the September 24, 2011 Emails, Plaintiff responded by acknowledging that "[she was] just doing [her] job while providing and advocating for [her] students, based on their needs and what is written on a state legal document." Compl. Ex. 1 at 2. Indeed, Plaintiff alleges that she sent the emails "with the *sole* purpose of improving the education and performance of her students." Compl. ¶ 33 (emphasis added). The Court thus finds Plaintiff's argument that she "was not speaking generally as an advocate for her students, nor as an employee as part of her duties" (Pl.'s Opp. 20) unavailing.

The Court also rejects Plaintiff's argument that her speech was protected because it was not a required part of her job description or "core function." *Frisenda,* 775 F.Supp.2d at 507 (holding that communication stimulated by employee's concern about abilities to perform job-related functions is not speech made as a public citizen); Pl.'s Opp. ¶ 34. Arguments that job responsibilities do not expressly encompass the speech in question are particularly unpersuasive. *See Ross v. New York City Dep't of Educ.,* 935 F.Supp.2d 508, 521 (E.D.N.Y.2013) (referring to such arguments as "red herring [s]"); *see also Massaro v. The Dep't of Educ. of the City of New York,* No. 08 Civ. 10678(LTS)(FM), 2011 WL 2207556, at *4 (S.D.N.Y. June 3, 2011), *aff'd sub nom. Massaro v. New York City Dep't of Educ.,* 481 F. App'x 653, 656 (2d Cir.2012) (summary order) ("Regardless of whether Plaintiff was formally tasked with alerting the school to the

unsanitary condition in her classroom, ensuring that the room provided a safe learning environment was part of her duties as an educator."). "[F]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient" to establish that it falls "within the scope of the employee's professional duties for First Amendment purposes." *Garcetti,* 547 U.S. at 424–25. Speech that is not expressly required can still be "pursuant to official duties," as long as the speech is in furtherance of those duties expressed. *Id.* at 421, 444.

**\*11** Plaintiff's speech pertaining to the location and scheduling of the services for her special education students clearly falls within the scope of her professional duties. Compl. Ex. 1. The language that she used in the September 24, 2011 Emails does not "[bear] similarities to letters [or e-mails] submitted by numerous citizens every day"—it is that of a concerned teacher, not a concerned citizen. *Garcetti,* 547 U.S. at 422 (citing *Pickering,* 391 U.S. 563). Although Plaintiff argues that a teacher's job description might not explicitly require reporting on "special education irregularities," duties of "ensuring that a classroom is well supplied, safe, and conducive to learning and that the curriculum is substantively appropriate—are quintessentially those of a teacher." *Felton v. Katonah Lewisboro Sch. Dist.,* No. 08 Civ. 9340(SCR), 2009 WL 2223853, at \*5 (S.D.N.Y. July 27, 2009) (granting motion to dismiss First Amendment claim due to plaintiffs' failure to adequately plead that they spoke as citizens, "rather than pursuant to their official duties").

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is GRANTED. [14]

### 2. Fourteenth Amendment Claims

#### i. Due Process

Plaintiff asserts that Defendants violated her rights by discontinuing her employment and giving her an unsatisfactory rating for the 2011–2012 school year without affording her due process of law.

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). When analyzing procedural due process violations, the threshold

issue is always whether the plaintiff possessed a valid property or liberty interest. *See Oneida Indian Nation of N.Y. v. Madison Cnty.,* 665 F.3d 408, 427–28 (2d Cir.2011); *see also Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir.1995) (citing *Brady v. Town of Colchester,* 863 F.2d 205, 211–12 (2d Cir.1988)) ("a party must *first* establish that he had a valid 'property interest' in a benefit that was entitled to constitutional protection at the time he was deprived of that benefit." (emphasis in original)).

#### 1. Property Interest

The Constitution protects, but does not create, property rights. "Rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 629 (2d Cir.1996) (citation omitted). Thus, here, Plaintiff must show that, under New York law, she "had a constitutionally-protected 'legitimate claim of entitlement' " to employment. *Id.* (citation omitted).

**\*12** Plaintiff started working for the BOE on September 7, 2010. Compl. ¶ 18. Throughout her employment at the Caton School, Plaintiff was an untenured or "probationary" employee, as she had not completed the three years of probationary employment required to be eligible for tenure. Compl. ¶ 39; N.Y. Educ. Law § 2573(1)(a) (McKinney). It is well-settled under New York law that a teacher lacks a property interest in probationary employment because "services of a probationary teacher may be discontinued at any time during the probationary period." *Federico v. Bd. of Educ. of Pub. Sch. of Tarrytowns,* 955 F.Supp. 194, 202 n. 1 (S.D.N.Y.1997) (citing *Donato,* 96 F.3d at 629); *accord Blasi v. New York City Bd. of Educ.,* No. 00 Civ. 5320(RRM) (MDG), 2012 WL 3307227, at \*9 (E.D.N.Y. Mar. 12, 2012), *report and recommendation adopted,* No. 00 Civ. 5320, 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012), *aff'd,* 544 F. App'x 10 (2d Cir.2013). "An interest that can be terminated 'at the whim of another person' is not protected by the Due Process clause." *McPherson v. New York City Dep't of Educ.,* 457 F.3d 211, 216 (2d Cir.2006) (citation omitted). Thus, as a probationary employee, Plaintiff lacked a property interest in her continued employment. *Rivera v. Cmty. Sch. Dist. Nine,* 145 F.Supp.2d 302, 306–07 (S.D.N.Y.2001) ("Where there is no property interest in the employment, there can be no property interest in the procedures that follow from the employment.").

### 2. Liberty Interest

Nonetheless, Plaintiff's allegations may also be construed to assert that Defendants violated her due process rights by lodging false accusations against her that precluded her from obtaining a new job. "A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica,* 370 F.3d 322, 329–30 (2d Cir.2004). However, the Second Circuit has "recognized that a probationary employee can 'invoke the protections of the Due Process Clause' where that employee has suffered a loss of reputation 'coupled with the deprivation of a more tangible interest, such as government employment.' " *Segal v. City of N.Y.,* 459 F.3d 207, 212 (2d Cir.2006) (quoting *Patterson,* 370 F.3d at 330). "A liberty interest is implicated where defamatory statements, made in connection with a probationary employee's termination, denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice ... her profession." *Rivera,* 145 F.Supp.2d at 307; *see also Donato,* 96 F.3d 623, 630 (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 573 (1972)) (a previous employer's stigmatizing statements can constitute a deprivation of liberty if, for example, the employer's actions deny the employee "freedom to take advantage of other employment opportunities.").

**\*13** The test for statements impacting an employee's reputation is commonly known as "stigma plus." *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir.2005). To state a "stigma plus" claim, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Id.* (quoting *Donato,* 96 F.3d at 631–32). An employee plaintiff must also allege that her former employer made statements of "professional incompetence" and denied her of a chance to clear or redeem her reputation. *Roth,* 408 U.S. at 573; *Donato,* 96 F.3d at 630 ("When a state fires an employee and publicly charges that she acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her good name."). The statements and allegations must discuss the employee's inability to do a particular job and not simply state that an employee performed poorly. *O'Neill v. City of Auburn,* 23 F.3d 685, 692 (2d Cir.1994). Remarks that an unsatisfactory rating was based on "substantiated corporal punishment" can cause

constitutional concerns "since the comment likely would limit employment or reassignment opportunities in a profession that places its members in positions of trust and authority over children's physical safety and emotional well-being." *Storman v. Klein,* No. 09 Civ. 0338(SHS)(AJP), 2009 WL 1035964, at \*14 (S.D.N.Y. Apr. 20, 2009) (citations omitted). A plaintiff must allege that the defendant employers publicly attacked the professional competency of the plaintiff and that the defendant employers publicized unfavorable reasons for plaintiff's dismissal.

Here, Plaintiff fails to establish that Defendants made stigmatizing remarks about her professional competency. Although Plaintiff refers to Defendants flagging her fingerprints for the "ineligible/inquiry list," Plaintiff cites her discontinuance due to the "false 'U' rating" as the reason she has been unable to obtain new employ. Compl. ¶ 42. Nor does she explain what the "HR Connect blacklist" is. The existence of a discontinuance on Plaintiff's record "might make [her] somewhat less attractive to some other employers" but "would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of liberty." *Russell v. Hodges,* 470 F.2d 212, 216 (2d Cir.1972) (quoting *Roth,* 408 U.S. at 574 n. 13). Even if Plaintiff had alleged that her "chances for equivalent future employment anywhere else [were] thin to none," such allegations, standing alone, are "insufficient to show that [a plaintiff] has been foreclosed from a range of other employment opportunities." *Koehler v. New York City,* 04 Civ. 6929(RMB), 2005 WL 3502042, at \*3 (S.D.N.Y. Dec. 20, 2005). Finally, because Plaintiff fails to allege facts indicating that the "ineligible/inquiry" or "HR Connect" lists were public to future employers, she fails to state a "stigma plus" claim. *Id.* (holding that probationary employee's placement on the "ineligible list" for future employment after being charged with corporal punishment did not constitute stigmatization because the plaintiff did not allege that the ineligible list publicly disclosed grounds for dismissal and therefore could not have attacked professional competency); *Longarzo v. Anker,* 578 F.2d 469, 472 (2d Cir.1978) (dismissing claim by public school teacher where he failed to allege that the BOE publicized the unfavorable ratings that he received). Consequently, Plaintiff has failed to allege a deprivation of liberty under the Due Process Clause.

### 3. Procedural Rights

**\*14** Even if Plaintiff had adequately alleged a protected property or liberty interest, her Due Process claim would nonetheless fail because she does not plead the deprivation of any process to which she was entitled.

"The second step of the [procedural due process] analysis ... asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided." *Rivera,* 145 F.Supp.2d at 306; *see also Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881–82 (2d Cir.1996). "Due process requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful manner." *Adams v. New York State Educ. Dep't,* 752 F.Supp.2d 420, 455 (S.D.N.Y.2010) (citations and internal quotation marks omitted), *aff'd sub nom. Ebewo v. Fairman,* 460 F. App'x 67 (2d Cir.2012) (summary order). A "stigma plus" due-process claim cannot survive merely because a government employer said something allegedly stigmatizing or false about the plaintiff; the claim must be based on a denial of adequate processes to contest the allegedly damaging statement. *Segal,* 459 F.3d at 214 ("the availability of an adequate, reasonably prompt, post-termination name-clearing hearing [is] sufficient to defeat a stigma-plus claim" by an at-will government employee plaintiff). As the Second Circuit explained in *Segal:*

> Because stigma plus is a species within the phylum of procedural due process claims, however, it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest; in order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim.

*Id.*

Plaintiff contends that she was discontinued due to a "false 'U' rating" and that BOE Office of Personnel Investigations ("OPI") "flagged" her fingerprints for the " 'ineligible/ inquiry' list." Compl. ¶ 42. However, New York state law provides for special proceedings pursuant to Article 78, at which individuals—such as Plaintiff—may challenge actions by governmental bodies such as the BOE. N.Y. C.P.L.R. §§ 7801–06. "In cases where the state actor engaged in random and unauthorized acts, an Article 78 proceeding 'constitutes a wholly adequate post-deprivation hearing for due process

purposes.' " *Sindone v. Kelly,* 254 F. App'x 58, 59 (2d Cir.2008) (summary order) (quoting *Locurto v. Safir,* 264 F.3d 154, 175 (2d Cir.2001)); *see also Koehler,* 2005 WL 3502042, at *2 ("[A] non-tenured employee is not entitled to a pre-deprivation hearing because such an employee does not have a property interest in her position." (citation omitted)). Because Article 78 provides a "meaningful opportunity" for Plaintiff to challenge her discontinuance, due process is not lacking simply because she "fail[ed] to avail [her]self of the opportunity." *Giglio v. Dunn,* 732 F.2d 1133, 1134–35 (2d Cir.1984); *accord Anemone v. Metro. Transp. Auth.,* 629 F.3d 97, 121 (2d Cir.2011) ("An Article 78 proceeding provides the requisite post-deprivation process—even if [plaintiff] failed to pursue it.").

**\*15**  Moreover, Plaintiff's allegations reveal that she received a post-termination discontinuance hearing on October 26, 2012, and that she ultimately "cleared her file" on August 8, 2013, when she presented witnesses and argument OPI to demonstrate her innocence while represented by a "teacher advocate" (Compl.¶ 42). *See Moore v. New York City Dep't of Educ.,* No. 03 Civ.2034(LAP), 2004 WL 691523, at *4 (S.D.N.Y. Mar. 31, 2004). Though she concedes that her name has been cleared, "[t]o the extent plaintiff believes that the hearing officer reached an erroneous conclusion, plaintiff could have challenged the results at an Article 78 proceeding." *Id.* As such, Plaintiff cannot establish a violation of her due process rights.

Thus, the Court GRANTS Defendants' motion to dismiss Plaintiff's Due Process claim.

### ii. Equal Protection

Plaintiff alleges that she was wrongfully terminated because Defendants discriminated against her based on her pregnancy, in violation of the Equal Protection Clause of the Fourteenth Amendment.

Courts evaluate Section 1983 employment discrimination claims asserted as equal protection violations under the same standards as Title VII claims. *See Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004). Generally, to state a claim for discriminatory discharge under the Equal Protection clause: "the plaintiff must show (1) that [s]he belongs to a protected class; (2) that [s]he was performing h[er] duties satisfactorily; (3) that [s]he was discharged; and (4) that h[er] discharge occurred under circumstances giving rise to an inference of discrimination on the basis of h [er] membership in that class." *Chick v. Cnty. of Suffolk,* 546

F. App'x 58, 59 (2d Cir.2013) (summary order) (quoting *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994)).

Sex-based classifications, like race, national origin, and alienage, are considered protected classes. *Frontiero v. Richardson,* 411 U.S. 677, 682 (1973) (citing *Reed v. Reed,* 404 U.S. 71 (1971)). Here, while Plaintiff does not allege that she belongs to a protected class, the Court can assume that she is a woman based upon the allegations concerning her pregnancy. Compl. ¶ 31. Although discrimination against pregnant women is not, per se, a sex-based form of discrimination, *see Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 271 (1993), in 1978, Congress passed the Pregnancy Discrimination Act ("PDA"), which amended Title VII "to prohibit sex discrimination on the basis of pregnancy ." *Codrington v. Carco Grp.,* No. 13 Civ. 2780(SJF), 2014 WL 2945987, at *3 (E.D.N.Y. June 27, 2014). To bring a claim under the PDA, a plaintiff must show that she suffered an adverse employment action "while she was 'affected by pregnancy, childbirth, or related medical conditions.' " *Briggs v. Women in Need, Inc.,* 819 F.Supp.2d 119, 126 (E.D.N.Y.2011) (quoting 42 U.S.C. § 2000e(k)); *see also Helmes v. South Colonie Cent. Sch. Dist.,* 564 F.Supp.2d 137, 147 (N.D.N.Y.2008) ("Certainly, women who are pregnant at or very near the time of the adverse employment action are members of the protected class, as are women who are on maternity leave or recently have returned to work from maternity leave when the employment action occurs."). Courts determine when a plaintiff stops being "affected by pregnancy, childbirth, or related medical conditions" based on the particular facts and circumstances of the case; however, "leaves-of-absence for childrearing purposes are not conditions protected under the PDA." *Briggs,* 819 F.Supp.2d at 127. Additionally, while the determination of when a pregnant woman loses her status as a member of a protected class varies based upon the facts of each case, "a pattern has developed in this Circuit establishing a loose line at approximately four months from the date of birth." *Albin v. LVMH Moet Louis Vuitton, Inc.,* No. 13 Civ. 4356(JPO), 2014 WL 3585492, at *4 (S.D.N.Y. July 8, 2014) (collecting cases); *see also Pellegrino v. Cnty. of Orange,* 313 F.Supp.2d 303, 317 (S.D.N.Y.2004).

**\*16** "A plaintiff can establish a *prima facie* case of pregnancy discrimination under Title VII by showing that (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee." *Codrington,* 2014 WL 2945987, at *3 (quoting *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir.1998) (internal quotation marks omitted)). Alternatively, a plaintiff may establish the fourth element "by alleging that the discharge occurred under circumstances giving rise to an inference of discrimination." *Hill v. Dale Electronics Corp.,* No. 03 Civ. 5907(MBM), 2004 WL 2937832, at *2 (S.D.N.Y. Dec. 19, 2004).

Here, even assuming *arguendo* that Plaintiff adequately alleged that she was a member of a protected class, she fails to state a claim for discrimination based on her status as a pregnant person. Plaintiff alleges that she gave birth on January 27, 2012 and that Superintendent Simmons affirmed her discontinuance on June 29, 2012, five months later. Compl. ¶¶ 41–42. The timeframe alleged "is considered quite weak temporal correlation in this Circuit." *Pellegrino,* 313 F.Supp.2d at 317 (deeming a "four month temporal gap between knowledge of pregnancy and adverse employment action ... [a] quite weak" proximity).

Moreover, Plaintiff does not claim that a non-pregnant —or any—employee filled her position, nor does she plead any facts describing treatment of similarly-situated pregnant persons. While she alleges that Defendant DeJesus criticized her for becoming pregnant, she never alleges that her pregnancy was the reason for her termination; such allegations of "stray remarks," standing alone, cannot support a discrimination suit. *Cf. Danzer v. Norden Sys.,* 151 F.3d 50, 56 (2d Cir.1998) (internal quotations omitted) (holding that the employee had been fired due to discriminatory practices because he demonstrated more than just stray remarks). Plaintiff's failure to allege facts that give rise to an inference of pregnancy-based discrimination is fatal to her claim. *Cf. Albin,* 2014 WL 3585492, at *5 (finding that plaintiff stated a claim for discriminatory discharge based on pregnancy where she alleged that she was not promoted, she was recently pregnant and on maternity leave, a non-pregnant candidate was hired instead, the non-pregnant candidate was hired before she received her second interview, and that candidate was less qualified than plaintiff). Accordingly, Defendants' motion to dismiss Plaintiff's Equal Protection claim is GRANTED. [15]

### 3. Plaintiff's Title VII Claims Are Dismissed

Defendants also argue that, to the extent that Plaintiff seeks to assert a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Court must dismiss it because she has

failed to exhaust her administrative remedies relative to such claims. Defs.' Mem. ¶ 20.

**\*17** Claimants under Title VII must file a complaint with the Equal Employment Opportunity Commission ("EEOC") "within 180 days after the alleged discriminatory act occurred," or "if [s]he has already filed the charge with a state or local agency that monitors fair employment practices, [she] must file [her] EEOC charge within 300 days of the alleged discriminatory act." *Falso v. Gates Chili Cent. Sch. Dist.,* 408 F. App'x 494, 495 (2d Cir.2011) (summary order); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109–10 (2002); *EEOC v. Bloomberg L.P.,* 967 F.Supp.2d 816, 831 (S.D.N.Y.2013) (citing 42 U.S.C. § 2000e–5(e)(1)). "The filling deadlines for a charge of discrimination act as a 'statute of limitations' and a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. New York City Dep't Of Hous. Pres. And Dev.,* No. 00 Civ. 6307(KMK), 2007 WL 259937, at \*6 (S.D.N.Y. Jan. 29, 2007), *aff'd sub nom. Butts v. NYC Dep't of Hous. Pres. & Dev.,* 307 F. App'x 596 (2d Cir.2009) (summary order); *see also Francis v. City of N.Y.,* 235 F.3d 763, 767 (2d Cir.2000) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385 (1982)).

Plaintiff does not claim to have filed a complaint with the EEOC prior to initiating the instant action, or ever. Plaintiff was required to file a claim with the EEOC within 300 days of the last discriminatory incident or within 180 days of filing a complaint with a State or local agency that monitors discriminatory behavior by employers. *Nat'l R.R. Passenger Corp.,* 536 U.S. at 109–10. She has failed to do so. The Court construes the last alleged discriminatory act by the Defendants as occurring on June 29, 2012, the date of the letter affirming Plaintiff's termination. Compl. Ex. 5. at 1. Plaintiff filed the instant action on October 9, 2013, more than 300 days after June 29, 2012. Doc. 1. Moreover, Plaintiff submitted the Special Ed Complaint to UFT—a local agency —on December 8, 2011. Compl. Ex. 6 at 1–4. More than 180 days have passed since she filed that complaint.

Accordingly, to the extent that Plaintiff seeks to assert a Title VII claim, the Court GRANTS Defendants' motion to dismiss it due to her failure to comply with the applicable exhaustion requirements.

### 4. Plaintiff's § 1985 Claims Are Dismissed

Plaintiff also brings claims under 42 U.S.C. § 1985(2)-(3) alleging that the Defendants conspired to deprive her of her constitutional rights. In order to state of claim under § 1985,

a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102–03 (1970)).

**\*18** Because she only alleges that BOE employees conspired with one another, Plaintiff's claim fails due to the "legal impossibility of pleading conspiracy by exclusive reference to actions of employees of a single corporation." *Farbstein v. Hicksville Pub. Library,* 254 F. App'x 50, 51 (2d Cir.2007) (citing *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978)); *see also Hartline v. Gallo,* 546 F.3d 95, 99 n. 3 (2d Cir.2008) (affirming the dismissal where defendants were all Southampton Police Department employees). While an exception to the intracorporate conspiracy doctrine exists where coconspirators purportedly act based on personal motives wholly distinct from the interests of their organization, the exception does not apply where, as here, the alleged co-conspirators acted within the scope of their employment. *Chillemi v. Town of Southampton,* No. 12 Civ. 3370(ADS)(ETB), 2013 WL 1876443, at \*12 (E.D.N.Y. May 4, 2013) ("For the exception to apply, '[t]he [P]laintiff must ... allege that [the Defendants] acted other than in the normal course of their corporate duties.' " (citation omitted)). Even if Plaintiff alleged that Assistant Principal DeJesus harbored personal biases against her, or wanted to "get rid of" her, such biases "do[ ] not constitute personal interest[s] and [are] not sufficient to defeat the intracorporate conspiracy doctrine." *Bond v. Board. of Educ. of City of New York,* No. 97 Civ. 1337(NG), 1999 WL 151702, at \*2 (E.D.N.Y. Mar. 17, 1999).

Accordingly, Defendants' motion is GRANTED with respect to Plaintiff's § 1985 claims.

### 5. Plaintiff's Claims against the City Are Dismissed

Defendants argue that the City is a distinct legal entity from the BOE, and cannot be held liable for alleged wrongdoing committed by the BOE in the absence of any allegation directly implicating it. Defs.' Mem. 24; *Linder v. City of New York,* 263 F.Supp.2d 585, 590–91 (E.D.N.Y.2003) (citing *Campbell v. City of New York,* 203 A.D.2d 504 (2d Dep't 1994)).

The Mayor of the City of New York appoints the Chancellor of the New York City Department of Education. N.Y. Educ. Law § 2690–h. Notwithstanding the Mayor's appointment powers, however, the City and the BOE remain distinct legal entities. *Gonzalez v. Esparza,* No. 02 Civ. 4175(SWK), 2003 WL 21834970, at *2 (S.D.N.Y. Aug. 6, 2003) (describing recent "changes in the statutory scheme regarding the interplay between the Board and the City" as purely " 'political,' with the [BOE] continuing to exist as a separate and distinct legal entity from the City."). Thus, neither can be held liable for the torts of the other. *Id.; accord Perez v. City of New York,* 41 A.D.3d 378, 379 (1st Dep't 2007) (noting that City and BOE remain separate).

Here, Plaintiff names the City as a party, but fails to allege anything more. In *Linder v. City of New York,* the court dismissed the plaintiff's claims against the City brought by a teacher because it was not implicated in the sexual harassment and sexual assault claims that she asserted against a fellow male teacher. 263 F.Supp.2d at 590–91. So too here, the City is an improper party because Plaintiff has not alleged any facts implicating it in the alleged wrongdoing. *Wade v. New York City Dep't of Educ,* No. 11 Civ. 05278(LGS), 2014 WL 941754, at *5 (S.D .N.Y. Mar. 10, 2014) (citing *Linder,* 263 F.Supp.2d at 590) (dismissing claims because plaintiff failed to "include allegations against agents of the City of New York," as distinct from the BOE).

**\*19** Accordingly, the Court GRANTS Defendants' motion to dismiss all of Plaintiff's claims against the City.

### 6. State Law Claims

Defendants argue that Plaintiffs' state law claims are barred because she failed to timely file a notice of claim, nor has she complied with the applicable statute of limitations. Defs.' Mem. 7–9. Because the Court dismisses all claims over which it has original jurisdiction, it declines to exercise pendent jurisdiction over Plaintiff's remaining state law claims. 28 U.S.C. § 1367(b)(3).

### IV. Conclusion

For the reasons set forth above, Defendants' motion is GRANTED. [16] The Clerk of the Court is respectfully directed to terminate the motion, Doc. 11, mail a copy of the instant Opinion and Order to Plaintiff, and close the case.

It is so ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 4357466

---

## Footnotes

1    Defendants refer to the New York City Department of Education as the "BOE," designating the Board of Education of the City School District of the City of New York. *See, e.g.,* Defs.' Reply Br. 1 n. 1, Doc. 19.

2    Some of the allegations appear in documents attached to the complaint and incorporated by reference, as well as in Plaintiff's opposition to the motion to dismiss. "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (quotation marks omitted) (collecting district court cases), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

3    The BOE is considered a "public employer" as defined by the New York State Civil Service Law. N.Y. Civ. Serv. Law § 75–b (1)(a)(iii) (McKinney).

4    Presumably, to teach special education students during the daytime.

5    Although the Complaint specifies the 2010–2011 academic year for this allegation, the Court assumes that Plaintiff meant to state 2011–2012 in light of her contention that the "critical period" for her retaliation claim started in September 2011. *See* Compl. ¶¶ 31–32.

6    As discussed *infra*, Plaintiff attaches several letters to the Complaint, including a disciplinary letter dated October 28, 2011 written by Assistant Principal DeJesus. To the extent that they are consistent with Plaintiff's allegations, the Court deems such letters incorporated into the Complaint by reference. *Donhauser,* 314 F.Supp.2d at 121.

7    The meaning of this acronym is not apparent to the Court, as Plaintiff's allegations do not define the term.

8    Other than the limited reference to it in the Special Ed Complaint, the record is silent regarding the content of this disciplinary letter.

9    While Exhibit 2 to the Complaint indicates that she attended a meeting on January 23, 2012, prior to going into labor, Plaintiff appears to allege that she went into labor *before* the meeting (Compl.¶ 41).

10   The letter bears Plaintiff's signature, an apparent acknowledgement of receipt.

11   Section 4.3.2 of the BOE's bylaws, entitled "Appeals re Discontinuance of Probationary Service," provides that:

> Any person in the employ of the City School District who appears before the Chancellor, or a committee designated by the Chancellor, concerning the discontinuance of service during the probationary term, or at the expiration thereof, shall have a review of the matter before a committee which shall be designated in accordance with contractual agreements covering employees or by regulations of the Chancellor, as appropriate.

> After the review, the committee shall forward its advisory recommendation to the community superintendent or to the Chancellor in accordance with contractual agreements.

*Kahn v. N.Y.C. Dep't of Educ.,* 18 N.Y.3d 457, 463 (N.Y.2012). Pursuant to section 4.3.3, "the employee is entitled to appear in person at the hearing, accompanied by an advisor; to be confronted by and call witnesses; and to examine exhibits and introduce relevant evidence. The CBA calls for the section 4.3.2 review to be conducted by a tripartite committee of professional educators, with one selected by the teacher, one by BOE and the third by the other two from an agreed-upon list." *Id.*

12   The Court interprets the "HR Connect blacklist" to be internal to the City of New York Department of Education based on facts alleged by the Plaintiff.

13   While Plaintiff also cites the Fifth and Seventh Amendments, *see* Compl. ¶ 1, neither amendment provides a basis for an additional cause of action. The Court construes Plaintiff's citation to the Seventh Amendment as support for her request for a civil jury trial, U.S. Const. Amend. VII, and the Fifth Amendment has no applicability here, as Defendants are state, not federal, actors.

14   To the extent that the Complaint can be construed to allege First Amendment retaliation for Plaintiff's decision to file the Special Ed Complaint, the Court likewise dismisses such claim. Plaintiff's Special Ed Complaint expressed concern about the Defendants' response to the September 24, 2011 Emails and complained of "special education fraud" at P.S. 249. Compl. Ex. 6. Yet, because filing a grievance with a union is "not a form or channel of discourse available to non-employee citizens," it is not speech made as a public citizen, and thus falls outside of the umbrella of First Amendment protection. *Weintraub v. Bd. Of Educ.,* 593 F.3d 196, 204 (2d Cir.2010). "[T]he First Amendment invests public employees with certain rights, [but] it does not empower them to 'constitutionalize the employee grievance.' " *Garcetti,* 547 U.S. at 420 (quoting *Connick,*

461 U.S. at 154). Thus, Plaintiff's grievance lacks First Amendment protection and cannot form the basis of a retaliation claim.

15    Claims under the Fourteenth Amendment are not restricted to multi-person classes; an individual, as a "class of one," can seek Equal Protection under the Fourteenth Amendment. *See, e.g., Engquist v. Or. Dep't of Agric.,* 553 U.S. 591 (2008). However, the Supreme Court has held that equal protection "class of one" claims do not apply in the public employer context. *Id.* at 605–607. Accordingly, Plaintiff cannot seek relief as a "class of one" here. *See id.* at 602.

16    To the extent that the Complaint can be construed as an attempt to allege violations of the witness tampering statute, 18 U.S.C. § 1512, the Court also dismisses such claims. Compl. ¶ 11. None of Plaintiff's allegations involve a witness threatened with physical force or death at an "official proceeding"—but most significantly, the witness tampering statute does not provide for a private right of action.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail;
Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).

|

Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

### *DECISION and ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New York,* No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

## Footnotes

1    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 225 of 229

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

1998 WL 382055
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Angel GONZALEZ, Plaintiff,

v.

THE CITY OF NEW YORK; New York
City Department of Correction; Warden, Otis
Bantum Correctional Center; Corrections
Officer Summer, Shield No. 11856, Defendants.

No. 97 CIV. 2246(MGC).
|
July 9, 1998.

MEMORANDUM OPINION AND ORDER

CEDARBAUM, J.

**\*1** Plaintiff *pro se,* Angel Gonzalez, brings this action under 42 U.S.C. § 1983. He alleges that while in the custody of the New York City Department of Correction ("NYC DOC"), he was beaten by Correction Officer Summer. This is a motion to dismiss the complaint as against the City of New York, Warden of Otis Bantum Correctional Center (the "Warden") and NYC DOC pursuant to Fed.R.Civ.P. 12(b)(6).

On April 22, 1998, a letter was sent to Gonzalez directing him to respond to this motion by June 22, 1998. The letter advised Gonzalez that if he did not respond by June 22, the motion would be decided on the basis of the existing record, and the City of New York, New York City Department of Correction and Warden of Otis Bantum Correctional Facility might be dismissed from the action. Gonzalez has not responded. For the reasons that follow, the motion to dismiss is granted.

BACKGROUND

The complaint alleges that plaintiff was assaulted by Correction Officer Summer while he was incarcerated at Otis Bantum Correctional Center on Rikers Island, New York City. According to the complaint, as plaintiff was coming into the facility's recreation area from the "yard," he passed through a metal detector which registered that he had a metal object on his person. Defendant Summer then swore at plaintiff and told him to hurry up. As plaintiff passed through the

metal detector a second time, he said to Summer, "You don't have to act like that!" Summer then struck plaintiff in the face repeatedly until he lost consciousness. According to the complaint, when plaintiff regained consciousness, he found Summer "still abusing" him and swearing at him. Plaintiff left, found his way back to the housing area and felt as if he "had been hit with a bat to the face ." Plaintiff alleges that he suffered a cut under his left eye, serious swelling of his face and head, and lacerations of his scalp. He alleges that black and blue shadows still show under his eyes, and that he suffers from headaches. He seeks damages in the amount of three million dollars.

DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations of the complaint must be accepted as true, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), and all reasonable inferences must be drawn in favor of the plaintiff, *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

1. NYC DOC and the City of New York
Defendants argue that Gonzalez cannot assert a claim against NYC DOC based on any legal theory because it is not a suable entity. They also contend that the complaint fails to state a claim against the City of New York because it does not allege that the actions complained of were the result of an official policy, custom or practice of the City of New York.

**\*2** In addition to the defect that NYC DOC is an agency of the City of New York that is not a suable entity, [1] the complaint fails to state a claim upon which relief can be granted against either NYC DOC or the City. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege or immunity guaranteed by federal law. To state a claim against a municipality, a plaintiff must also plead that the wrongful action alleged was the result of an official policy, custom or practice of the municipality, and that that policy caused plaintiff's injury. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 226 of 229

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

The complaint, however, alleges no official policy, custom or practice resulting in injury to Gonzalez. Indeed, the complaint does not even mention the City of New York or NYC DOC, except to the extent that they are listed as parties.

2. Warden of Otis Bantum Correctional Center

Defendants also urge dismissal of the complaint against the Warden, on the ground that there are no allegations in the complaint concerning that defendant. When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or, (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As noted above, § 1983 imposes liability on a municipality only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell,* 436 U.S. at 690–91.

From the complaint, it is unclear whether the warden is being sued in his personal or official capacity. However, *pro se* complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075, at *1 (S.D.N.Y. Nov.8, 1995) (citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

The complaint does not allege the personal involvement of the Warden. The complaint mentions the Warden only in the caption, and fails to allege any act or omission by that party. *See Crown v. Wagenstein,* 1998 WL 118169, at *1 (S.D.N.Y. Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997) (same).

**\*3** Finally, to the extent that the complaint asserts an official-capacity claim against the Warden, the claim fails for the same reason that the claims against the City of New York and NYC DOC fail. There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation precludes a finding of liability against the Warden in his official capacity.

Accordingly, the complaint fails to the state a claim against the Warden upon which relief can be granted.

CONCLUSION

For the foregoing reasons, the motion to dismiss the complaint as against defendants the City of New York, New York City Department of Correction, and Warden of Otis Bantum Correctional Facility is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1998 WL 382055

---

### Footnotes

1    Defendants correctly point out that New York City agencies, such as NYC DOC, are organizational subdivisions of the City of New York lacking independent legal existence and are not themselves subject to suit. *See, e.g., Adams v. Galletta,* 966 F.Supp. 210, 212 (S.D.N.Y.1997) ("where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity").

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 227 of 229

Gonzalez v. City of New York, Not Reported in F.Supp. (1998)

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 118169
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lakim CROWN, Plaintiff,

v.

Warden WAGENSTEIN; Parker T. # 10639 of
Emergency Response Unit, et al., Defendants.

No. 96 CIV. 3895(MGC).
|
March 16, 1998.

**Attorneys and Law Firms**

Lakim Crown, Brooklyn, for Plaintiff, Pro Se.

Paul A. Crotty, Esq., Corporation Counsel of the City of New York, Attorney for Defendants Wangenstein and Parker, New York, By Renee R. Nebens, Esq.

OPINION AND ORDER

CEDARBAUM, J.

**\*1** This is an action for damages brought by a pro se plaintiff pursuant to 42 U.S.C. § 1983. Defendant Wangenstein moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted against him in either his personal or official capacity. For the reasons discussed below, defendant's motion is granted.

The complaint alleges that on November 28, 1995, while plaintiff was incarcerated at New York City's Otis Bantum Correctional Center ("OBCC"), plaintiff was assaulted by a number of correction officers. (Compl. at 3–4). As a result, plaintiff alleges that he sustained injuries to his head, neck, back, and right leg. (Compl. at 4). In addition to the officers involved in the assault, plaintiff sues Wangenstein, the warden of OBCC at the time of the alleged assault.

Discussion

A motion to dismiss for failure to state a claim must be granted if, when viewed in the light most favorable to the plaintiff and when all allegations of the complaint are accepted as true, it appears beyond doubt that the plaintiff can prove no set

of facts in support of the claim which would entitle him to relief. *Bolt Electric, Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). In addition, a complaint and supporting papers prepared by a pro se plaintiff must be read liberally and interpreted to "raise the strongest arguments they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

When an individual defendant is sued under § 1983, that defendant's personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). For a claim under § 1983, a complaint sufficiently alleges personal involvement of a supervisory official if it alleges one of the following: (a) direct participation in the alleged wrong; (b) failure to remedy a violation after receiving notice of it; (c) creation of a policy or custom under which unconstitutional practices occur; or (d) grossly negligent management of subordinates who cause the constitutional violation. *See Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

A § 1983 claim against a municipal official in his official capacity is treated as a claim against the municipality itself. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). Section 1983 imposes liability on municipalities only when the action that is alleged to be unconstitutional implements or executes an official policy or custom. *See Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

From the complaint, it is unclear whether Wangenstein is being sued in his personal or official capacity. However, pro se complaints, if possible, should be construed as asserting both claims. *Jackson v. Dinkins,* 1995 WL 657075 at \*1 (S.D.N.Y. Nov.8, 1995)(citing *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.)("a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other"), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993)).

**\*2** The complaint does allege an assault by certain members of the OBCC Emergency Response Unit. (Compl. at 3–4). It alleges that while the plaintiff was making a telephone call, members of the Emergency Response Unit entered housing area 1N and defendant Parker verbally harassed the plaintiff, and with the assistance of other members of the Emergency Response Unit, assaulted him. (Compl. at 3–4). However, the complaint does not allege the personal involvement of Warden Wangenstein. The complaint mentions Warden

**Crown v. Wagenstein, Not Reported in F.Supp. (1998)**

Case 3:24-cv-01141-AJB-ML    Document 7    Filed 01/28/25    Page 229 of 229

Wangenstein only in the caption, and fails to allege any act or omission by Wangenstein. *See Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)(Edelstein, J.)(finding mere inclusion of warden's name in a complaint insufficient to allege personal involvement).

As for Warden Wangenstein's liability in his official capacity, the complaint fails to allege a municipal policy or custom that defendant was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by *Monell.* The absence of any such allegation prevents a finding of liability for defendant Wangenstein in his official capacity. *See Monell,* 436 U.S. at 694.

### Conclusion

Because the complaint fails to state a claim against Warden Wangenstein upon which relief can be granted, the motion to dismiss defendant Wangenstein is granted.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1998 WL 118169

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.